1    XAVIER BECERRA
     Attorney General of California
2    THOMAS S. PATTERSON
     Senior Assistant Attorney General
3    MARK R. BECKINGTON
     Supervising Deputy Attorney General
4    GABRIELLE D. BOUTIN, SBN 267308
     R. MATTHEW WISE, SBN 238485
5    Deputy Attorneys General
      1300 I Street, Suite 125
6     P.O. Box 944255
      Sacramento, CA 94244-2550
7     Telephone:  (916) 210-6046
      Fax:  (916) 324-8835
8     E-mail:  Matthew.Wise@doj.ca.gov
     *Attorneys for Plaintiff State of California, by and*
9    *through Attorney General Xavier Becerra*

10

            IN THE UNITED STATES DISTRICT COURT
11
            FOR THE NORTHERN DISTRICT OF CALIFORNIA
12

13

14

| | |
|---|---|
| 15 **STATE OF CALIFORNIA, BY AND THROUGH ATTORNEY GENERAL XAVIER BECERRA; COUNTY OF LOS ANGELES; CITY OF LOS ANGELES; CITY OF FREMONT; CITY OF LONG BEACH; CITY OF OAKLAND; CITY OF STOCKTON,** | Case No. 3:18-cv-01865 **FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** (Second Cause of Action – Administrative Procedure Act Case) |

15   **STATE OF CALIFORNIA, BY AND
16   THROUGH ATTORNEY GENERAL XAVIER
    BECERRA; COUNTY OF LOS ANGELES;
    CITY OF LOS ANGELES; CITY OF
17   FREMONT; CITY OF LONG BEACH;
    CITY OF OAKLAND; CITY OF
18   STOCKTON,**

19                 Plaintiffs,

20          **v.**

21

22   **WILBUR L. ROSS, JR., IN HIS OFFICIAL
    CAPACITY AS SECRETARY OF THE U.S.
    DEPARTMENT OF COMMERCE; U.S.
23   DEPARTMENT OF COMMERCE; RON
    JARMIN, IN HIS OFFICIAL CAPACITY AS
24   ACTING DIRECTOR OF THE U.S. CENSUS
    BUREAU; U.S. CENSUS BUREAU; DOES 1-
25   100,**

26                 Defendants.

Case No. 3:18-cv-01865

**FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF**

(Second Cause of Action – Administrative
Procedure Act Case)

Dept:          3
Judge:        The Honorable Richard G.
               Seeborg
Trial Date:    None set
Action Filed:   3/26/2018

27

28

1

**INTRODUCTION**

1.      The United States Constitution requires that all persons in each state be counted every ten years.  U.S. Const. art. I, § 2, cl. 3, and amend. XIV, § 2.  The Constitution mandates the "actual Enumeration" of the population for the purpose of apportioning congressional representatives among the states.  U.S. Const. art. I, § 2, cl. 3.  For this foundational step in our country's democratic process, the Constitution recognizes no exception based on citizenship status.  It is long settled that *all* persons residing in the United States—citizens and non-citizens alike—must be counted to fulfill the Constitution's "actual Enumeration" mandate.  *Id.*; *Fed'n for Am. Immigration Reform v. Klutznick*, 486 F. Supp. 564, 576 (D.D.C. 1980).

2.      The U.S. Census Bureau (Bureau), a division of the U.S. Department of Commerce, will conduct the next census, also known as the "decennial census," in 2020.  The census surveys the number of persons in each household and, in the process, gathers certain demographic information about those persons.  But not since 1950 has the decennial census asked whether each respondent is a citizen of the United States.   Consistent with the modern practice, when in March 2017, as required by statute, the Bureau submitted to Congress a report of the proposed subjects planned for the 2020 Census, none related to citizenship or immigration status.

3.      In a December 12, 2017 letter, late in the census planning process and months after the statutory deadline for reporting proposed subjects, the U.S. Department of Justice requested that the Bureau include a citizenship question on the 2020 Census.  While the letter suggested that adding a citizenship question would assist the Department of Justice in enforcing Section 2 of the Voting Rights Act, it did not address whether or how a citizenship question would facilitate the Bureau's constitutional duty to capture the "actual Enumeration" of the U.S. population.  Nor did the letter consider whether adding a citizenship question would serve the Voting Rights Act's purpose of ensuring fair representation for all communities, ignoring substantial evidence—and the Bureau's own past admissions—that fewer people would respond to the 2020 Census if it included a citizenship question.

4.      On March 26, 2018, the Department of Commerce, setting aside decades of practice, announced that the final list of census questions that it will submit to Congress will include a

1   question asking the citizenship status of every person in every household in the United States.

2   The Department of Commerce concedes that it "is not able to determine definitively how

3   inclusion of a citizenship question on the decennial census will impact responsiveness" to the

4   2020 Census.  *See* Ex. 1, p. 7 [Letter of Wilbur Ross to Karen Dunn Kelley, dated Mar. 26, 2018].

5       5.      Including the citizenship question on the 2020 Census will directly impede the

6   Bureau from procuring the "actual Enumeration" of the U.S. population.  Numerous studies—

7   including those conducted by the Bureau—point to the same conclusion:  asking about citizenship

8   will repress responses from non-citizens and their citizen relatives.  At least four former Bureau

9   directors share the view that inquiring about citizenship status on the census "would likely

10  exacerbate privacy concerns and lead to inaccurate responses from non-citizens worried about a

11  government record of their immigration status."  Brief of Former Directors of the U.S. Census

12  Bureau as Amici Curiae in Support of Appellees at 23-26, *Evenwel v. Abbott,* 136 S.Ct. 1120

13  (2016) (No. 14-940), 2015 WL 5675832.

14      6.      In particular, the State of California and its counties, cities, and residents stand to lose

15  if the citizenship question is included on the 2020 Census.  According to 2016 figures from the

16  Bureau's American Community Survey (ACS), California has more foreign-born residents (over

17  10 million) and non-citizens (over 5 million) than any other state.[1]  And a recent study from the

18  University of Southern California's Center for the Study of Immigrant Integration found that

19  California has the highest number of U.S.-born citizens who live with at least one undocumented

20  family member.[2]  Undercounting the sizeable number of Californian non-citizens and their citizen

21

22  _____

23      [1] *Selected Characteristics of the Native and Foreign-Born Population – 2012-2016 American Community Survey 5-Year Estimates*, U.S. Census Bureau, https://factfinder.census.gov/faces/tableservices/jsf/pages/productview.xhtml?src=bkmk (last

24  visited Mar. 26, 2018); *Nativity and Citizenship Status in the United States—Universe: Total Population in the United States – 2012-2016 American Community Survey 5-Year Estimates*, U.S.

25  Census Bureau, https://factfinder.census.gov/faces/tableservices/jsf/pages/productview.xhtml?pid=ACS_16_5YR

26  _B05001&prodType=table (last visited Mar. 26, 2018).
        [2] *Keeping Families Together*, Silva Mathema, University of Southern California's Center

27  for the Study of Immigrant Integration and Center for American Progress (Mar. 16, 2017), https://cdn.americanprogress.org/content/uploads/2017/03/15112450/KeepFamiliesTogether-

28  brief.pdf (last visited Mar. 26, 2018).

relatives will imperil the State's fair share of congressional seats and Electoral College electors and will cost Plaintiffs billions of dollars in federal funding over the next decade.

7.     Plaintiffs State of California, by and through Attorney General Xavier Becerra, County of Los Angeles, City of Los Angeles, City of Fremont, City of Long Beach, City of Oakland, and City of Stockton seek a declaration that including the citizenship question on the 2020 Census violates the Constitution's "actual Enumeration" mandate and the Administrative Procedure Act's (APA) prohibition against "arbitrary and capricious" agency action.  Further, to avoid irreparable harm, Plaintiffs seek an injunction prohibiting the Bureau from including the citizenship question on the 2020 Census.

**JURISDICTION AND VENUE**

8.     This Court has jurisdiction under 28 U.S.C. § 1331 (action arising under the laws of the United States), 28 U.S.C. § 1361 (action to compel officer or agency to perform duty owed to Plaintiffs), and 5 U.S.C. §§ 701-706 (APA).  An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a), and this Court may grant declaratory relief, injunctive relief, and other relief against the Defendants pursuant to 28 U.S.C. §§ 2201-2202 and 5 U.S.C. §§ 705-706.

9.     Defendants' submission of the final census questions to Congress no later than March 31, 2018, is a final agency action and is therefore judicially reviewable under the APA.  5 U.S.C. §§ 704, 706.

10.    Venue is proper in this Court under 28 U.S.C. § 1391(e) because this is a judicial district in which Plaintiffs State of California, City of Fremont, and City of Oakland reside, and the other Plaintiffs consent to this jurisdiction.  This action seeks relief against federal agencies and an official acting in his official capacity.

**INTRADISTRICT ASSIGNMENT**

11.    Under Civil Local Rules 3-5(b) and 3-2(c), Plaintiffs allege that there is no basis for assignment of this action to any particular location or division of this Court.

/ / /

/ / /

**PARTIES**

12.    Plaintiff, the State of California, by and through Attorney General Xavier Becerra, brings this action as a sovereign state in the United States of America.  The Attorney General is the chief law officer of the State and has the authority to file civil actions in order to protect public rights and interests.  Cal. Const. art. V, § 13; Cal. Gov't Code § 12511.  This challenge is brought under the Attorney General's independent constitutional, statutory, and common-law authority to bring suit and obtain relief on behalf of the State.

13.    The State of California has standing to bring this action because Defendants' actions would cause the State to suffer concrete and substantial harm, and such harm would be redressed by this lawsuit.  The State has an interest in ensuring that the 2020 Census counts all Californians. Including the citizenship question on the 2020 Census will cause Californians to be undercounted, threatening the State's fair share of congressional seats and Electoral College electors, and depriving the State of billions of dollars of federal funding.

14.    Plaintiff County of Los Angeles is a political subdivision of the State of California.

15.    Plaintiff City of Los Angeles is a municipal corporation organized and existing under the laws of the State of California.

16.    Plaintiff City of Fremont is a municipal corporation organized and existing under the laws of the State of California.

17.    Plaintiff City of Long Beach is a municipal corporation organized and existing under the laws of the State of California.

18.    Plaintiff City of Oakland is a municipal corporation organized and existing under the laws of the State of California.

19.    Plaintiff Stockton is a municipal corporation organized and existing under the laws of the State of California.

20.    Defendant Wilbur L. Ross is the Secretary of the Department of Commerce and is sued in his official capacity.  Secretary Ross is responsible for fulfilling the Department of Commerce's duties under the Constitution, the APA, and the Census Act.

/ / /

21.   Defendant Department of Commerce is a federal agency.  The Department of Commerce, led by Secretary Ross, oversees the Bureau, which is tasked with executing the 2020 Census.

22.   Defendant Dr. Ron Jarmin is responsible for performing the non-exclusive functions and duties of the Director of the U.S. Census Bureau and is sued in his official capacity.  Dr. Jarmin's duties include ensuring that the Bureau executes the 2020 Census.

23.   Defendant U.S. Census Bureau is an agency within, and under the jurisdiction of, the Department of Commerce.  The Census Bureau is the agency responsible for planning and administering the 2020 Census.

**LEGAL BACKGROUND**

24.   The Constitution provides legal authority for the census, referred to as "Enumeration," in article I, section 2, clause 3, which states in relevant part, "Representatives . . . shall be apportioned among the several States which may be included within this Union, according to their respective Numbers . . . The actual Enumeration shall be made within three Years after the first Meeting of the Congress of the United States, and within every subsequent Term of ten Years, in such Manner as they shall by Law direct."  The Fourteenth Amendment to the Constitution makes clear that the count must include "the whole number of persons in each state."

25.   Congress has delegated the duty of taking the census to the Secretary of Commerce. Under 13 U.S.C. § 141(a), "[t]he Secretary shall, in the year 1980 and every 10 years thereafter, take a decennial census of population as of the first day of April of such year."  The Secretary has authority to conduct the census "in such form and content as he may determine . . . ."  *Id.* Likewise, the Bureau Director "is necessarily invested with discretion in matters of form and procedure when these are not specifically provided for by law . . . ."  *U.S. ex rel. City of Atlanta, Ga. v. Steuart*, 47 F.2d 979, 982 (D.C. Cir. 1931).

26.   Defendants' discretion in taking the census is not unfettered, and in particular, is subject to congressional oversight.  Three years before the census, the Secretary must submit to Congress a report proposing the subjects to be included in the census.  13 U.S.C. § 141(f)(1).

Two years before the census, the Secretary must submit to Congress the specific questions to be included in the census.  13 U.S.C. § 141(f)(2).  The Secretary may only later modify the subjects or questions if he submits a report to Congress finding that "new circumstances exist which necessitate" the modification.  13 U.S.C. § 141(f)(3).

27.    Defendants' discretion in taking the census is also subject to the APA.  Under the APA, Defendants must ensure that any agency action is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right, power, privilege or immunity," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706.

28.    Congress and the states use census data for many purposes, including for allocating federal funding and for state legislative districting.  *City of Los Angeles v. U.S. Dept. of Commerce*, 307 F.3d 859, 864 (9th Cir. 2002); *Wisconsin v. City of New York*, 517 U.S. 1, 5-6 (1996).  But the only constitutional purpose of the census is to apportion congressional representatives based on the "actual Enumeration" of the population of each state.

29.    To fulfill this constitutional purpose, as the Bureau itself has recognized, the 2020 Census will succeed only if it achieves its aim "to count everyone once, only once, and in the right place."[3]

## FACTUAL AND PROCEDURAL BACKGROUND

30.    Under the direction of the Secretary of Commerce and the Bureau Director, the Bureau conducts the constitutionally required census every ten years by counting all U.S. residents in the place where they live.  Besides using the results of the decennial census for the constitutional purpose of determining the number of seats for each state in the House of Representatives, the federal government relies on census data to determine how to distribute billions of dollars of funding each year, including funding for Medicaid, Medicare Part B, the Supplemental Nutrition Assistance Program (SNAP), the State Children's Health Insurance Program (S-CHIP), and the Highway Planning and Construction Program.

---

[3] *Why We Conduct the Decennial Census*, United States Census Bureau, https://www.census.gov/programs-surveys/decennial-census/about/why.html (last visited March 26, 2018).

31.    In addition to the decennial census, every year the Bureau conducts the ACS.  The ACS contains a more expansive set of questions than the decennial census.  Unlike the decennial census, the ACS is not required by the Constitution.   And while the decennial Census requires an actual enumeration of all U.S. residents, the ACS surveys only a sample of the population.  Compared to the decennial census, the ACS gathers more detailed information about U.S. residents.

32.    The decennial census has not included a question on citizenship since the 1950 Census.  Since that time, the question has appeared only on the ACS.

33.    On March 28, 2017, Secretary Ross timely submitted a report containing the subjects proposed to be included in the 2020 Census.  The subjects, which were unchanged from the 2010 Census, did not include citizenship or immigration status.

34.    Nearly nine months after the subjects for the 2020 Census had been identified, on December 12, 2017, the U.S. Department of Justice sent a letter to the Bureau requesting the inclusion of a citizenship question on the 2020 Census.  The Department of Justice's stated rationale for adding a citizenship question was to assist the Department of Justice in enforcing Section 2 of the Voting Rights Act.  The letter failed to address the likelihood that a citizenship question would decrease the accuracy of the Census by deterring responses from non-citizens and their relatives and that this consequence would undermine the Voting Rights Act's purpose of ensuring fair representation for all communities.

35.    On March 26, 2018, setting aside decades of practice, Secretary Ross and the Department of Commerce announced that the final list of census questions that it will submit to Congress will include a question on citizenship status.  Specifically, the question will ask, for every member of every household, whether that person is a citizen of the United States.

36.    Secretary Ross explained that, to address the Department of Justice's request, he had determined that the best option was to add the ACS citizenship question to the decennial census.  Secretary Ross speculated that the citizenship question may not cause an undercount because "there is no information available to determine the number of people who would in fact not respond due to a citizenship question being added, and no one has identified any mechanism for

8

1   making such a determination." Ex. 1, p. 5.  Secretary Ross concluded that "the need for accurate

2   citizenship data" was worth the risk of an undercount.  *Id.*

3        37.    Notwithstanding the rationale stated in this letter, the Bureau is well aware that

4   adding the citizenship question will directly cause an undercount in the 2020 Census.  Its own

5   2017 study revealed "an unprecedented ground swell in confidentiality and data sharing concerns,

6   particularly among immigrants or those who live with immigrants" and that these concerns "may

7   present a barrier to participation in the 2020 Census."[4]  This apprehension about participating in

8   the census is unsurprising in the current political climate.  The studies' respondents "express[ed]

9   new concerns about topics like the 'Muslim ban,' discomfort 'registering' other household

10  members by reporting their demographic characteristics, the dissolution of the 'DACA' (Deferred

11  Action for Childhood Arrival) program, repeated references to Immigration and Customs

12  Enforcement (ICE), etc."[5]  These types of concerns are not new to the Bureau.  Since at least

13  1980, the Bureau has recognized that, because of immigrants' fear of how information disclosed

14  on the Census may be used against them, "any effort to ascertain citizenship will inevitably

15  jeopardize the overall accuracy of the population count."  *Fed'n for Am. Immigration Reform*, 486

16  F. Supp. at 568.

17       38.    The Bureau is currently conducting its "2018 Census Test" in Providence County,

18  Rhode Island.  The 2018 Census Test is a dress rehearsal for the 2020 Census.  As the Bureau's

19  website states, "Throughout the decade, the Census Bureau has conducted extensive research and

20  testing to inform census design.  The 2018 Census Test is the culmination of that research,

21  providing a rich environment to test all major components of the 2020 Census.  The primary

22  objective of the test is to confirm key technologies, data collection methods, outreach and

23       [4] *See* Mikelyn Meyers, Center for Survey Management, U.S. Census Bureau, Presentation
     on Respondent Confidentiality Concerns and Possible Effects on Response Rates and Data
24   Quality for the 2020 Census, presented at National Advisory Committee on Racial, Ethnic, and
     Other Populations Fall Meeting (Nov. 2, 2017),
25   https://www2.census.gov/cac/nac/meetings/2017-11/Meyers-NAC-Confidentiality-
     Presentation.pdf (last visited Mar. 26, 2018).
26       [5] *See* Ex. 2, Memorandum from Center for Survey Measurement on Respondent
     Confidentiality Concerns to Associate Directorate for Research and Methodology, U.S. Census
27   Bureau (Sept. 20, 2017), https://www2.census.gov/cac/nac/meetings/2017-11/Memo-Regarding-
     Respondent-Confidentiality-Concerns.pdf (last visited Mar. 26, 2018).

28

promotional strategies, and management and response processes that will be deployed in support of the 2020 Census."[6]  No citizenship question or similar question was included in the 2018 Census Test.  Having failed to adequately test the question before including it in the 2020 Census, the Bureau will be unable to take sufficient measures to avoid or mitigate the resulting undercount of non-citizens and their citizen relatives if the citizenship question is included in the 2020 Census.

39.    The Bureau plans to finalize the 2020 Census paper questionnaires for print in May 2019.  Ensuring that the 2020 Census is not compromised by the inclusion of the citizenship question will become more difficult with each passing day, as more of the Bureau's resources are dedicated to including the question on the census.

40.    The undercount of Californians in the 2020 decennial census resulting from the citizenship question will cause significant harm to the State of California, its counties, cities, including Plaintiffs County of Los Angeles, City of Los Angeles, City of Fremont, City of Long Beach, City of Oakland, and City of Stockton, and California's residents.  Before the citizenship question was added, California was predicted to retain its current number of seats in the House of Representatives and, consequently, the Electoral College, but only by a very slim margin. Because California has a proportionately large population of non-citizens and relatives of non-citizens compared to other states, the citizenship question will now likely cause California to lose seats for the first time in its history. [7]

41.    The undercount that will result from the citizenship question will also cause each of the Plaintiffs to lose federal funding.  Plaintiffs receive billions of dollars in funding from the

---

[6] 2018 Census Test—About this Test, U.S. Census Bureau, https://www.census.gov/programs-surveys/decennial-census/2018-census-test/about.html (last visited Mar. 26, 2018).
[7] Election Data Services, *Some Change in Apportionment Allocations with New 2017 Census Estimates; But Greater Change Likely by 2020*, Dec. 26, 2017, https://www.electiondataservices.com/wp-content/uploads/2017/12/NR_Appor17c2wTablesMapsC1.pdf (last visited Mar. 26, 2018).

sixteen large federal assistance programs that distribute funds on the basis of decennial census-derived statistics.[8]

42.     For example, the U.S. Census Bureau estimate of population for City of Los Angeles, last updated as of July 1, 2016, is listed at 3,976,322.  The City of Los Angeles has one of the largest populations of immigrants in the country.  According to the 2012-2016 American Community Survey data from the U.S. Census Bureau, more than one-third (37.8%) of residents in the City of Los Angeles, are foreign born, which is approximately 1.5 million residents.  Los Angeles City residents receive the benefits of federal and state funds, allocated based upon population numbers using data from the decennial U.S. Census, for a variety of crucial programs to promote public health, safety, and welfare for residents of the City of Los Angeles.  Just a few examples of these programs include:

- Medicaid to County of Los Angeles ($3,217,914,113 during Fiscal Year ("FY") 2015-2016)
- Federal funding to LAUSD[9] (approx. $705,700,000 estimated for FY 2016-2017)
- Transportation and Infrastructure Funding to the City of Los Angeles Department of Transportation, Bureau of Street Services and Bureau of Engineering, including funds for Bus Maintenance Facility Construction and the San Fernando Road Bike Path to City of Los Angeles ($413,713,473 as of FY 2017-2018)
- Department of Homeland Security Urban Area Security Initiative to City of Los Angeles ($14,049,220 during FY 2017-2018)
- Internet Crimes Against Children to the City of Los Angeles from the State of California ($2,056,364 during FY 2015-2016).

---

[8] Reamer, The George Washington Institute of Public Policy, *Counting for Dollars 2020 – California*, Aug. 18, 2017, https://gwipp.gwu.edu/sites/gwipp.gwu.edu/files/downloads/California%2008-18-17.pdf (last visited Mar. 26, 2018).
[9] The Los Angeles Unified School District ("LAUSD") is the second largest school district in the United States and includes most of the City of Los Angeles within its boundaries, as well as independent jurisdictions within the greater Los Angeles metropolitan area.  As of October 2017, approximately 4.8 million people lived within the boundaries served by the LAUSD.

43.     The City of Oakland also stands to face significant harm if the citizenship question is included on the 2020 Census.  Approximately 27.3% of Oakland residents (over 110,000) are foreign born and 14.8% are non-citizens.[10]  A 2014 report estimated that 5.3% of the larger San Francisco-Oakland-Hayward metropolitan population were undocumented.[11]  In addition to representational harm, undercounting Oakland's diverse community will significantly reduce the City's receipt of federal funding in years to come.  Because census-based federal funding is aimed at serving low-income and vulnerable households, it is particularly important for traditionally underserved and low-income communities to be properly counted in the census.

44.     The City of Fremont, with nearly 240,000 residents, is highly diverse and ranks among highest American cities in percentage of residents who are foreign-born.  According to the Census Bureau in 2016, Fremont is home to four times as many foreign-born residents (46.4%) as the average American city by percentage.  Fremont also has dramatic language diversity, with some 130 languages spoken, and 53% of residents speaking a language other than English at home.  Significantly, 20.6% of Fremont residents identified as non-citizens, much higher than the national average of 7%, as reported in the 2016 American Community Survey.  A Census question on citizenship will stifle responsiveness to the Census in Fremont's immigrant communities, causing the City to lose out on significant federal and state funds.

45.     The City of Stockton, home to over 320,000 residents, is the 13th largest city in California and ranks among the most diverse cities in the nation.  According to the U.S. Census Bureau, 26% of Stockton residents are foreign-born and 46.1% live in households where a language other than English is spoken. In addition, 41.7% are of Latino descent, 21.8% are of Asian descent, and 11.5% are of African-American descent.  Diversity is not just a part of Stockton's data and rich heritage, but a strength that drives its community building, civic engagement, and economic development.  A full and accurate counting of all residents, regardless

---

[10] See *Advanced Search: Place of Birth By Nativity and Citizenship Status – 2012-2016 American Community Survey 5-Year Estimates*, U.S. Census Bureau, https://factfinder.census.gov/bkmk/table/1.0/en/ACS/16_5YR/B05002/1600000US0653000 (last visited Apr. 20, 2018).

[11] *Estimates of unauthorized immigrant population, by metro area, 2014*, PEW Research Center, Hispanic Trends (Feb. 13, 2017), http://www.pewhispanic.org/2017/02/13/estimates-of-unauthorized-immigrant-population-by-metro-area-2014/.

of their race, ethnicity, or immigration status is paramount to Stockton, which relies on Census-driven Federal and State funds to help sustain its fiscal health and provide essential programs and services. A citizenship question in the 2020 Census risks suppression of Census response rates, particularly from historically undercounted communities, like Stockton's immigrant population.

46.     Plaintiff County of Los Angeles is the largest county in the nation, with more than 10 million residents.  It is also one of the country's most diverse counties, with millions of immigrants calling it home.  According to the U.S. Census Bureau, 34.5% of Los Angeles County residents are foreign-born and 48.5% are of Latino descent.[12]  The County of Los Angeles seeks to ensure a full and accurate counting of all of its residents, regardless of their race, ethnicity, or immigration status, as is required by the Constitution.  A citizenship question on the 2020 Census will cause an undercount of Los Angeles County's immigrant population, significantly diminish vital funding the County receives from the federal government, and undermine the County's ability to effectively serve its residents.

## FIRST CAUSE OF ACTION

**(Violation of Constitution's "Actual Enumeration" Mandate; U.S. Const. art. I, § 2, cl. 3)**

47.     Plaintiffs reallege and incorporate herein by reference each and every allegation and paragraph set forth previously.

48.     The Constitution requires the "actual Enumeration" of all people in each state every ten years for the sole purpose of apportioning representatives among the states.  U.S. Const. art. I, § 2, cl. 3, and amend. XIV, § 2.

49.     By including the citizenship question on the 2020 Census, Defendants are in violation of the "actual Enumeration" clause of the Constitution.  Because the question will diminish the response rates of non-citizens and their citizen relatives, California, which has the largest immigrant population in the country, and the County and City Plaintiffs will be disproportionately affected by the census undercount.  Inclusion of the question thus directly interferes with

---

[12] *QuickFacts: Los Angeles County, California*, U.S. Census Bureau, https://www.census.gov/quickfacts/fact/table/losangelescountycalifornia,CA/POP645216#viewtop (last visited May 2, 2018).

1   Defendants' fulfillment of their constitutional responsibility, as delegated by Congress, to conduct

2   an "actual Enumeration" of the U.S. population.

3       50.   This violation harms Plaintiffs and their residents, given that the State is entitled

4   under the Constitution to a proportionate share of congressional representatives based on its total

5   population.  The violation will also harm Plaintiffs' interests in receiving federal funds allocated

6   to states, counties, and cities on the basis of the population data collected during the 2020 Census.

7       51.   Defendants' violation has caused and will continue to cause ongoing, irreparable

8   harm to Plaintiffs and their residents.

9       52.   An actual controversy exists between Plaintiffs and Defendants regarding whether

10   Defendants' inclusion of a citizenship question on the 2020 Census violates the "actual

11   Enumeration" clause of the U.S. Constitution.

12   **SECOND CAUSE OF ACTION**

13   **(Violation of APA; 5 U.S.C. § 706)**

14       53.   Plaintiffs reallege and incorporate herein by reference each and every allegation and

15   paragraph set forth previously.

16       54.   The APA requires courts to "hold unlawful and set aside" agency action that is,

17   among other things, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

18   with law," "contrary to constitutional right, power, privilege or immunity," or "in excess of

19   statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706.

20       55.   Defendants' inclusion of the citizenship question on the 2020 Census is all of the

21   above.  Because the question will diminish the response rates of non-citizens and their citizen

22   relatives, California, which has the largest immigrant population in the country, and the County

23   and City Plaintiffs will be disproportionately affected by the census undercount.  Inclusion of the

24   question thus directly interferes with Defendants' fulfillment of their constitutional responsibility,

25   as delegated by Congress, to conduct an "actual Enumeration" of the U.S. population, as well as

26   Secretary Ross' statutory duty to "take a decennial census of population" under 13 U.S.C. §

27   141(a).  A citizenship question, moreover, would not serve the purpose articulated by the U.S.

28   Department of Commerce, because an undercount of non-citizens and their citizen relatives will

1  decrease the accuracy of census data available to prove voter dilution under Section 2 of the

2  Voting Rights Act.  Finally, Defendants failed to follow their own internal agency policies and

3  guidelines, including under the Information Quality Act, in reaching their decision to add the

4  citizenship question.

5       56.    Defendants' decision to add a citizenship question to the 2020 Census thus violates

6  the APA's prohibition against "arbitrary and capricious" agency action.

7       57.    These violations harm Plaintiffs and their residents, given that the State is entitled

8  under the Constitution to a proportionate share of congressional representatives based on its total

9  population.  The violations will also harm Plaintiffs' interests in receiving federal funds allocated

10  to states, counties, and cities on the basis of the population data collected during the 2020 Census.

11       58.    Defendants' violation has caused and will continue to cause ongoing, irreparable

12  harm to Plaintiffs and their residents.

13       59.    An actual controversy exists between Plaintiffs and Defendants regarding whether

14  Defendants' inclusion of a citizenship question on the 2020 Census violates the APA.

15  **PRAYER FOR RELIEF**

16      WHEREFORE, Plaintiffs, respectfully request that this Court:

17      1.    Issue a declaratory judgment, under 28 U.S.C. §§ 2201 and 2202, that including the

18  citizenship question on the 2020 Census violates Article I, Section 2, Clause 3 of the United

19  States Constitution and the APA.

20      4.    Issue a preliminary injunction prohibiting all Defendants and all those acting in

21  concert with them from including a citizenship question on the 2020 Census and from taking any

22  irreversible steps to include a citizenship question on the 2020 Census;

23      5.    Issue a permanent injunction prohibiting all Defendants and all those acting in concert

24  with them from including the citizenship question on the 2020 Census;

25      6.    Award Plaintiffs costs, expenses, and reasonable attorney fees; and

26      7.    Award such other relief as the Court deems just and proper.

27  / / /

28  / / /

Dated:  May 4, 2018

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
MARK R. BECKINGTON
Supervising Deputy Attorney General

*/s/ Gabrielle D. Boutin* _____

GABRIELLE D. BOUTIN
R. MATTHEW WISE
Deputy Attorneys General
*Attorneys for Plaintiff State of California,*
*by and through Attorney General Xavier*
*Becerra*

*/s/ Margaret L. Carter* _____
MARGARET L. CARTER, SBN 220637
DANIEL R. SUVOR
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
Telephone: (213) 430-8000
Fax: (213) 430-6407
Email: dsuvor@omm.com
*Attorneys for Plaintiff County of Los Angeles*

MIKE FEUER
City Attorney for the City of Los Angeles

*/s/ Valerie Flores* _____
VALERIE FLORES, SBN 138572
Managing Senior Assistant City Attorney
200 North Main Street, 7th Floor, MS 140
Los Angeles, CA  90012
Telephone: (213) 978-8130
Fax: (213) 978-8222
Email: Valerie.Flores@lacity.org

HARVEY LEVINE
City Attorney for the City of Fremont

*/s/ Harvey Levine* _____
SBN 61880
3300 Capitol Ave.
Fremont, CA 94538
Telephone: (510) 284-4030
Fax: (510) 284-4031
Email: hlevine@fremont.gov

CHARLES PARKIN
City Attorney for the City of Long Beach

*/s/ Michael J. Mais* _____
MICHAEL K. MAIS, SBN 90444
Assistant City Attorney
333 W. Ocean Blvd., 11th Floor
Long Beach CA, 90802
Telephone: (562) 570-2200
Fax: (562) 436-1579
Email: Michael.Mais@longbeach.gov

1

BARBARA J. PARKER                                JOHN LUEBBERKE
City Attorney for the City of Oakland            City Attorney for the City of Stockton

2

3    */s/ Erin Bernstein* _____                   */s/ John Luebberke* _____
MARIA BEE                                        SBN 164893
Special Counsel                                  425 N. El Dorado Street, 2nd Floor
4    ERIN BERNSTEIN, SBN 231539                      Stockton, CA 95202
Supervising Deputy City Attorney                 Telephone: (209) 937-8333
5    MALIA MCPHERSON                                 Fax: (209) 937-8898
Attorney                                         Email: John.Luebberke@stocktonca.gov
6    City Hall, 6th Floor
1 Frank Ogawa Plaza
7    Oakland, California 94612
Telephone: (510) 238-3601
8    Fax: (510) 238-6500
Email: ebernstein@oaklandcityattorney.org

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

First Amended Complaint for Declaratory and Injunctive Relief (3:18-cv-01865)