1  XAVIER BECERRA
   Attorney General of California
2  MARK R. BECKINGTON
   Supervising Deputy Attorney General
3  R. MATTHEW WISE, SBN 238485
   GABRIELLE D. BOUTIN, SBN 267308
4  Deputy Attorneys General
    1300 I Street, Suite 125
5   P.O. Box 944255
    Sacramento, CA 94244-2550
6   Telephone:  (916) 210-6053
    Fax:  (916) 324-8835
7   E-mail:  Gabrielle.Boutin@doj.ca.gov
   *Attorneys for State of California, by and through*
8  *Attorney General Xavier Becerra*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **STATE OF CALIFORNIA, BY AND THROUGH ATTORNEY GENERAL XAVIER BECERRA; COUNTY OF LOS ANGELES; CITY OF LOS ANGELES; CITY OF FREMONT; CITY OF LONG BEACH; CITY OF OAKLAND; CITY OF STOCKTON,**<br><br>Plaintiffs,<br><br>v.<br><br>**WILBUR L. ROSS, JR., in his official capacity as Secretary of the U.S. Department of Commerce; U.S. DEPARTMENT OF COMMERCE; RON JARMIN, in his official capacity as Acting Director of the U.S. Census Bureau; U.S. CENSUS BUREAU; DOES 1-100,**<br><br>Defendants. | Case No. 3:18-cv-01865<br><br>**PLAINTIFFS' OPENING BRIEF RE: RIGHT TO TAKE DISCOVERY**<br><br>Date:  June 28, 2018<br>Time:  2:30 p.m.<br>Dept:  3<br>Judge:  The Honorable Richard G. Seeborg<br><br>Trial Date:  None set<br>Action Filed:  March 26, 2018 |

**TABLE OF CONTENTS**

**Page**

Introduction .................................................................................................................................. 1

Background ................................................................................................................................... 2

Argument ....................................................................................................................................... 4

    I.     The Court Should Confirm that Defendants May Conduct Discovery to Advance Their Constitutional Claim for Violation of the Actual Enumeration Clause ................................................................................................ 4

    II.    Discovery Is Appropriate to Expand the Administrative Record Because the Decision to Add a Citizenship Question Was Made in Bad Faith .................... 6

    III.   The Scope of Discovery Should Not Be Limited at This Early Stage in the Litigation, Given the Importance of the Issues at Stake ...................................... 10

Conclusion ................................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Animal Def. Council v. Hodel*
    840 F.2d 1432 (9th Cir. 1988) ......................................................................................... 6, 9

*Bolton v. Pritzker*
    No. C15-1607 MJP, 2016 WL 4555467 (W.D. Wash. Sept. 1, 2016) ................................. 4

*California v. U.S. Dep't of Labor*
    No. 2:13-CV-02069-KJM, 2014 WL 1665290 (E.D. Cal. Apr. 24, 2014) ........................... 8

*Carlsson v. U.S. Citizenship and Immigration Servs.*
    No. 2:12-CV-07893-CAS, 2015 WL 1467174 (C.D. Cal. Mar. 23, 2015) .......................... 5

*Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*
    450 F.3d 930 (9th Cir. 2006) ............................................................................................... 6

*Grill v. Quinn*
    No. CIV S-10-0757 GEB, 2012 WL 174873 (E.D. Cal. Jan. 20, 2012) .............................. 5

*Harkness v. Sec. of Navy*
    858 F.3d 437 (6th Cir. 2017) ............................................................................................... 5

*J.E.F.M. v. Lynch*
    No. C14-1026 TSZ, 2015 WL 9839679 (W.D. Wash. Aug. 27, 2015) ............................... 5

*Nat. Res. Def. Council, Inc. v. U.S. E.P.A.*
    638 F.3d 1183 (9th Cir. 2011) ............................................................................................. 5

*Nat. Res. Def. Council v. U.S. E.P.A.*
    526 F.3d 591 (9th Cir. 2008) ............................................................................................... 5

*Pub. Power Council v. Johnson*
    674 F.2d 791 (9th Cir. 1982) ......................................................................................... 1, 6, 9

*Puerto Rico Pub. Hous. Admin. v. U.S. Dep't of Hous. and Urban Dev.*
    59 F. Supp. 2d 310 (D. P.R. 1999) ...................................................................................... 4

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dept. of Agric.*
    499 F.3d 1108 (9th Cir. 2007) ............................................................................................. 6

*San Luis & Delta-Mendota Water Auth. v. U.S.*
    672 F.3d 676 (9th Cir. 2012) ............................................................................................... 6

**TABLE OF AUTHORITIES**
(continued)

Page

*Slockish v. U.S. Fed. Highway Admin.*
  No. 3:08-CV-1169-ST, 2012 WL 3637465 (D. Or. June 19, 2012) .........................................5

*Sokaogon Chippewa Cmty. (Mole Lake Band of Lake Superior Chippewa) v. Babbitt*
  961 F. Supp. 1276 (W.D. Wis. 1997)...............................................................................6, 7

*Stand Up for California! v. U.S. Dep't of Interior*
  71 F. Supp. 3d 109 (D.D.C. 2014) ......................................................................................9

*Thompson v. U.S. Dep't of Labor*
  885 F.2d 551 (9th Cir. 1989)................................................................................................9

*Tummino v. Von Eschenbach*
  427 F. Supp. 2d 212 (E.D.N.Y. 2006) .................................................................................8

*Vietnam Veterans of Am. v. C.I.A.*
  No. 09-CV-0037 CW JSC, 2011 WL 4635139 (N.D. Cal. Oct. 5, 2011)..................................4

*Webster v. Doe*
  486 U.S. 592 (1988).........................................................................................................1, 4

*Wisconsin v. City of New York*
  517 U.S. 1 (1996) ..................................................................................................................6

**STATUTES**

5 United States Code § 706(2)(A)..................................................................................................5

Federal Advisory Committee Act (5 U.S.C. Appendix 2) ..............................................................8

Voting Rights Act § 2 ............................................................................................................2, 3, 7

**CONSTITUTIONAL PROVISIONS**

United States Constitution, Article I, § 2, cl. 3, and Amendment XIV, § 2 .................................1, 8

**COURT RULES**

Federal Rules of Civil Procedure
  Rule 26(a)(1)(C)..................................................................................................................4
  Rule 26(b)(1) ...............................................................................................................1, 4, 10
  Rule 26(f) ............................................................................................................................4

## INTRODUCTION

The United States Constitution requires that all persons in each state be counted every ten years for the purpose of apportioning congressional representatives among the states. U.S. Const. art. I, § 2, cl. 3, and amend. XIV, § 2. Defendants' decision to include a question on citizenship in the 2020 Census will depress responses from non-citizens and their citizen relatives, impeding Defendants from fulfilling this constitutional responsibility. Plaintiff State of California, which has the largest immigrant population in the country, and the County and City Plaintiffs, which are similarly diverse, will suffer disproportionate harm.[1]

The scope of discovery is generally broad. Fed. R. Civ. Proc. 26(b)(1). Yet Defendants argue that Plaintiffs should be prohibited from taking any discovery in this case, and that instead, the case must be decided purely based on the administrative record. Stipulation for Hearing and Briefing Deadlines Re: Discovery Outside the Administrative Record ¶ 2, ECF No. 18. Not so. This Court should confirm Plaintiffs' fundamental right to discovery on two grounds.

First, Plaintiffs may conduct discovery to advance their constitutional claim in the First Amended Complaint (FAC), which raises separate and distinct issues from their Administrative Procedure Act (APA) claim. The former claim focuses on the effect of adding the citizenship question on the apportionment of congressional representatives, while the latter claim addresses the decision-making process that led to the arbitrary and capricious agency action to add the question to the 2020 Census. The right to discovery related to a constitutional claim—even in cases in which an APA claim is also alleged—is well established. *See*, *e.g.*, *Webster v. Doe*, 486 U.S. 592, 604 (1988).

Second, where, as here, the final agency decision was made in bad faith, discovery outside the administrative record is appropriate.[2] *See*, *e.g.*, *Pub. Power Council v. Johnson*, 674 F.2d

---

[1] Plaintiffs are the State of California, County of Los Angeles, City of Los Angeles, City of Fremont, City of Long Beach, City of Oakland, and City of Stockton. Defendants are Secretary of Commerce Wilbur L. Ross, Jr., the U.S. Department of Commerce, Ron Jarmin (the Acting Director of the U.S. Census Bureau), and the U.S. Census Bureau.

[2] Given that Plaintiffs just received the administrative record on June 8, 2018, this brief does not address in detail whether there are bases other than bad faith to supplement the administrative record. Plaintiffs do not waive their right to seek to supplement the record after they have had a sufficient opportunity to review its contents.

791, 795 (9th Cir. 1982) ("[C]ourts will go beyond the agency record when agency bad faith is claimed."). The administrative record itself shows that Defendants' stated rationale for adding the citizenship question—to assist the U.S. Department of Justice in enforcing Section 2 of the Voting Rights Act (VRA)—is pretextual. It also shows that Defendants decided to add the citizenship question in the face of expert advice exclusively to the contrary.

The parties bring this dispute to the Court now, because the Bureau's deadlines to prepare for the 2020 Census require a speedy resolution of the issues presented in this case. For the foregoing reasons, and to prevent delay, this Court should issue an order confirming Plaintiffs' right to discovery outside the administrative record.

## BACKGROUND

The U.S. Census Bureau (Bureau), a division of the U.S. Department of Commerce, will conduct the next census, also known as the "decennial census," in 2020. FAC ¶ 2, ECF No. 12. The census surveys the number of persons in each household and, in the process, gathers certain demographic information about those persons. *Id.* But not since 1950 has the decennial census asked whether each respondent is a citizen of the United States. *Id.* In March 2017, as required by statute, the Bureau submitted to Congress a report of the proposed subjects planned for the 2020 Census; none related to citizenship or immigration status. *Id.*

During that same period in early 2017, Kansas Secretary of State Kris Kobach contacted Defendant Secretary of Commerce Ross "at the direction of" Presidential advisor Steve Bannon to request that a citizenship question be added to the 2020 Census. Administrative Record (AR) 763. In a July follow-up email to Secretary Ross, Kobach suggested that the question would address the purported "problem that that aliens who do not actually 'reside' in the United States are still counted for congressional apportionment purposes." *Id.* at 764.

Months later, on December 12, 2017, the U.S. Department of Justice (DOJ) sent a formal letter to the Bureau requesting the addition of a citizenship question on the 2020 Census. AR 663-65. Spearheaded by Acting Assistant Attorney General John Gore,[3] who, before his

---

[3] *See* email from Michelle M. Allen to Arthur Gary (Nov. 29, 2017, 05:17 EST) at 28-34, *available at* https://www.documentcloud.org/documents/4403719-JMD-Response-

1  appointment, was active in defending Republican state redistricting plans, the letter suggested that
2  adding a citizenship question would assist the Department of Justice in enforcing Section 2 of the
3  VRA.  *Id.*

4      The administrative record shows that Bureau staff and advisors repeatedly advised
5  Secretary Ross not to include the citizenship question on the 2020 Census, primarily because of
6  "[major] potential quality and cost disruptions" and a "substantial lowering of the response rate."
7  AR at 794-96, 1277-78.  Secretary Ross was advised that the Bureau could instead gather
8  citizenship data that was more accurate, cheaper, and less likely to harm the overall 2020 Census
9  count by analyzing administrative records.  AR 1277-1278, 1312.  Yet, in a March 26, 2018
10 memo, setting aside decades of practice, Secretary Ross announced that the final list of census
11 questions submitted to Congress would include the citizenship question.  AR 1313.  In that
12 memo, he conceded that the Department of Commerce "is not able to determine definitively how
13 inclusion of a citizenship question on the decennial census will impact responsiveness" to the
14 2020 Census.  AR 1319.

15     Before and after Secretary Ross decided to include the citizenship question on the 2020
16 Census, President Trump publicly advocated for its inclusion in two campaign emails.[4]  Neither
17 email indicated the need for this data for VRA enforcement or any other purpose.[5]  According to
18 the DOJ's own website, since President Trump's term began, DOJ has not initiated any legal
19 actions to enforce Section 2 of the VRA.[6]

---

Documents.html; *see also* Justin Elliott, *The Trump Appointee Behind the Move to Add a Citizenship Question to the Census*, PROPUBLICA (Mar. 7, 2018), https://www.propublica.org/article/john-gore-trump-appointee-citizenship-question-census (last visited June 13, 2018).
  [4] Tara Bahrampour, *Trump's Reelection Campaign Calls For Adding Citizenship Question to 2020 Census Amid Criticism That He is Politicizing the Count*, WASHINGTON POST (Mar. 20, 2018), https://www.washingtonpost.com/local/social-issues/trump-campaign-calls-for-adding-citizenship-question-to-2020-census-amid-accusations-that-the-president-is-politicizing-the-annual-count/2018/03/20/dd5929fe-2c62-11e8-b0b0-f706877db618_story.html?utm_term=.2aa226c999e1 (last visited June 13, 2018); Tal Kopan, *Trump Campaign Rallies Supporters on Census Citizenship Question*, CNN (Mar. 28, 2018), https://www.cnn.com/2018/03/28/politics/trump-census-citizenship/index.html (last visited June 13, 2018).
  [5] *Id.*
  [6] *See* The United States Department of Justice, *Voting Section Litigation*, https://www.justice.gov/crt/voting-section-litigation#sec2cases. (last visited June 13, 2018).

Plaintiffs' FAC states two claims—a constitutional claim alleging that Defendants' inclusion of a citizenship question will impede Defendants from fulfilling their obligation to conduct an "actual enumeration" of the total population of each state and an APA claim alleging that Defendants' decision to add a citizenship question was arbitrary and capricious. FAC ¶¶ 47-59, ECF No. 12.

On June 5, 2018, the parties participated in a conference under Federal Rules of Civil Procedure, rule 26(f), during which Defendants reiterated their opposition to discovery in this case, and stated their intention not to make initial disclosures under Federal Rules of Civil Procedure, rule 26(a)(1)(C). On June 6, 2018, this Court approved the parties' stipulation to briefing deadlines and a June 28, 2018 hearing to address the scope of discovery outside the administrative record. Stipulation for Hearing and Briefing Deadlines Re: Discovery Outside the Administrative Record, ECF No. 18.

## ARGUMENT

**I. THE COURT SHOULD CONFIRM THAT DEFENDANTS MAY CONDUCT DISCOVERY TO ADVANCE THEIR CONSTITUTIONAL CLAIM FOR VIOLATION OF THE ACTUAL ENUMERATION CLAUSE**

A party may take discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Fed. R. Civ. P. 26(b)(1). Despite this general rule favoring broad discovery—and the constitutional claim Plaintiffs have alleged—Defendants argue that Plaintiffs should be barred from taking any discovery, and that this case should be decided solely on the administrative record. Yet courts have repeatedly held that when a complaint alleges a constitutional claim in addition to an APA claim, discovery is permitted on the constitutional claim. *See Webster*, 486 U.S. at 604 (noting that discovery was available against the CIA in case alleging APA and constitutional claims); *Puerto Rico Pub. Hous. Admin. v. U.S. Dep't of Hous. and Urban Dev.*, 59 F. Supp. 2d 310, 328 (D. P.R. 1999) ("[A] plaintiff who is entitled to judicial review of its constitutional claims under the APA is entitled to discovery in connection with those claims.").[7] Although some courts have denied

---

[7] *See also Vietnam Veterans of Am. v. C.I.A.*, No. 09-CV-0037 CW JSC, 2011 WL 4635139, at *5 (N.D. Cal. Oct. 5, 2011); *Bolton v. Pritzker*, No. C15-1607 MJP, 2016 WL

4

1   discovery in cases in which a party's constitutional claim derives from its APA claim, *see*, *e.g.*,

2   *Harkness v. Sec. of Navy*, 858 F.3d 437, 451 & n.9 (6th Cir. 2017) (finding that the presence of a

3   constitutional claim, in itself, does not justify extra-record discovery), such circumstances do not

4   apply here, where Plaintiffs have brought "[a] direct constitutional challenge [] reviewed

5   independent of the APA." *Grill v. Quinn*, No. CIV S-10-0757 GEB, 2012 WL 174873, at *2

6   (E.D. Cal. Jan. 20, 2012) (citing *Porter v. Califano*, 592 F.2d 770, 781 (5th Cir. 1979)).

7       Discovery is particularly appropriate in this case, given the conceptual differences between

8   Plaintiffs' constitutional claim and their APA claim.  The APA claim addresses whether

9   Defendants' decision to add the citizenship question was "arbitrary, capricious, an abuse of

10  discretion, or otherwise not in accordance with law."  *See* 5 U.S.C. § 706(2)(A); *Nat. Res. Def.*

11  *Council, Inc. v. U.S. E.P.A.*, 638 F.3d 1183, 1190 (9th Cir. 2011).  "An agency action is arbitrary

12  and capricious if the agency has relied on factors which Congress has not intended it to consider,

13  entirely failed to consider an important aspect of the problem, offered an explanation for its

14  decision that runs counter to the evidence before the agency, or is so implausible that it could not

15  be ascribed to a difference in view or the product of agency expertise."  *Nat. Res. Def. Council v.*

16  *U.S. E.P.A.*, 526 F.3d 591, 602 (9th Cir. 2008) (quoting *Motor Vehicle Mfrs. Assn. of United*

17  *States, Inc. v. State Farm Mutual Automobile Ins. Co.*, 463 U.S. 29, 43 (1983)).  The APA claim

18  thus centers on Defendants' *process* in deciding to add the citizenship question, and whether

19  appropriate factors and evidence guided Defendants' ultimate decision.

20      The constitutional claim, in contrast, focuses not on Defendants' decision-making process,

21  but on the actual *effect* of the citizenship question on congressional apportionment.  More

22  specifically, this claim addresses whether Defendants' inclusion of a citizenship question on the

23  2020 Census bears "a reasonable relationship to the accomplishment of an actual enumeration of

24  the population, keeping in mind the constitutional purpose of the census," which is "to determine

---

26  4555467, at *4 (W.D. Wash. Sept. 1, 2016); *Carlsson v. U.S. Citizenship and Immigration Servs.*, No. 2:12-CV-07893-CAS, 2015 WL 1467174, at *13 (C.D. Cal. Mar. 23, 2015); *Slockish v. U.S.*
27  *Fed. Highway Admin.*, No. 3:08-CV-1169-ST, 2012 WL 3637465, at *14 (D. Or. June 19, 2012), *report and recommendation adopted* No. 3:08-CV-01169-ST, 2012 WL 3637715 (D. Or. Aug.
28  22, 2012); *J.E.F.M. v. Lynch*, No. C14-1026 TSZ, 2015 WL 9839679, at *1 (W.D. Wash. Aug. 27, 2015).

the apportionment of the Representatives among the States." *Wisconsin v. City of New York*, 517 U.S. 1, 20 (1996).

Given the distinct question raised by their constitutional claim, Plaintiffs have an absolute right to seek discovery on any matters that may bear on the citizenship question's effect on congressional apportionment, whether or not Defendants considered such matters and included them in the administrative record. Examples of matters that would be addressed through document requests and deposition testimony include Bureau research on the impact of adding a citizenship question on census response rates, and whether the impact of the question, if any, is likely to influence the distribution of congressional seats among the states. Plaintiffs should also be allowed to discover any matters relevant to their constitutional claim that postdate the March 27, 2018 decision to add the citizenship question; that evidence is not otherwise available in connection with Plaintiffs' APA claim because a party may not use "post-decision information as a new rationalization either for sustaining or attacking the Agency's decision."[8] *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 943 (9th Cir. 2006). This discovery is necessary for Plaintiffs to develop their constitutional claim.

## II. DISCOVERY IS APPROPRIATE TO EXPAND THE ADMINISTRATIVE RECORD BECAUSE THE DECISION TO ADD A CITIZENSHIP QUESTION WAS MADE IN BAD FAITH

"[E]ven when judicial review is confined to the record of the agency, as in reviewing informal agency actions, there may be circumstances to justify expanding the record or permitting discovery." *Pub. Power Council*, 674 F.2d at 793. These circumstances include when plaintiffs make a showing of agency bad faith. *Id.* at 795; *accord San Luis & Delta-Mendota Water Auth. v. U.S.*, 672 F.3d 676, 713 (9th Cir. 2012); *see also Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dept. of Agric.*, 499 F.3d 1108, 1117 (9th Cir. 2007). The bad-faith exception applies when a plaintiff shows either bad faith itself or that discovery would assist in showing bad faith. *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1438 (9th Cir. 1988),

---

[8] For example, the Bureau materials in the administrative record indicate plans to conduct a focus group on April 19, 2018, that "will provide critical data on small population groups and people who speak languages other than English." AR 382. This data is but one illustration of the evidence Plaintiffs would seek in discovery.

6

1  amended, 867 F.2d 1244 (9th Cir. 1989); *see also Sokaogon Chippewa Cmty. (Mole Lake Band of Lake Superior Chippewa) v. Babbitt*, 961 F. Supp. 1276, 1280 (W.D. Wis. 1997) (*Babbitt*) ("Courts should weigh the limited means plaintiffs have at this stage of the proceedings to uncover political impropriety. . . .").

Although Plaintiffs have had less than a week to review and consider the administrative record (*see* ECF. No. 23), there is already ample evidence that Defendants acted in bad faith and that their public justifications for adding the citizenship question are pretextual.  First, Defendants misrepresented their justification for adding the citizenship question by claiming that it will aid DOJ's enforcement of Section 2 of the VRA.  In fact, the administrative record indicates that Defendants' true reason for adding the citizenship question was to support Republican redistricting efforts, and likely, to depress the 2020 Census response rates of immigrants and their families.  This is evidenced by the following facts:

- Secretary Ross represented in his March 26 memorandum that the request to add the question to the 2020 Census first came from DOJ in the December 12 letter, and that the decision to add the question was to obtain data to assist the DOJ with VRA enforcement.  AR 1313.

- The request for the citizenship question did not originate from DOJ in the December 12 letter, but from Kris Kobach in early 2017 "at the direction of" Presidential advisor Steve Bannon based on the purported "problem that aliens who do not actually 'reside' in the United States are still counted for congressional apportionment purposes."  AR 764.

- The December 12 letter from DOJ was spearheaded by John Gore, an attorney with substantial experience defending Republican state redistricting plans.[9]

- President Trump's re-election campaign sent two fundraising emails to supporters advocating for the citizenship question—one before and one after Secretary Ross announced his final decision—and neither email makes any reference to VRA enforcement.[10]

- DOJ has not initiated a single VRA Section 2 enforcement action during the Trump administration.[11]

This evidence supports a finding that Secretary Ross's public representation of the reason behind the citizenship question was made in bad faith.  *See Babbitt*, 961 F. Supp. at 1280 ("If there are

---

[9] *See* footnote 3.
[10] *See* footnote 4.
[11] *See* footnote 6.

7

adequate grounds to suspect that an agency decision was tainted by improper political pressure, courts have a responsibility to bring out the truth of the matter.")

Second, Secretary Ross's decision to add the citizenship question was against the recommendations of Bureau professionals and advisors. *See Tummino v. Von Eschenbach*, 427 F. Supp. 2d 212, 231–33 (E.D.N.Y. 2006) (bad faith indicated where FDA's senior decision-makers overruled recommendation of professional staff); *California v. U.S. Dep't of Labor*, No. 2:13-CV-02069-KJM, 2014 WL 1665290, at *14 (E.D. Cal. Apr. 24, 2014). By far, the most detailed analyses in the administrative record regarding the pros and cons of the citizenship question appear in memoranda to Defendants from John M. Abowd, the Bureau's Chief Scientist and Associate Director for Research and Methodology. AR 1277-1312. In those memos, Abowd repeatedly recommends *not* adding a citizenship question, explaining that there is an alternative means to gather more accurate citizenship information in a manner that is cheaper and that, unlike the citizenship question, will not diminish the overall accuracy of the census. AR 1277-1278, 1312. Similarly, members of the Census Scientific Advisory Committee[12] also advised against including the citizenship question. AR 794-96. On the other hand, the administrative record contains no recommendation from any Bureau officials to add the citizenship question.

Third, Defendants rushed to add the citizenship question to the Census without following the proper procedures to timely and adequately test the question's impact on census responses. *See Tummino*, 427 F. Supp. 2d at 233-234 (bad faith indicated by FDA's deviation from usual practices). The contents of all other new or revised Census questions were tested in 2012 and 2015.[13] Although the citizenship question was already on the Bureau's American Community Survey[14] (ACS), any ACS-related testing would not capture the recent "unprecedented ground

---

[12] The Census Scientific Advisory Committee is a committee chartered by the Commerce Department under the authority of the Federal Advisory Committee Act (5 U.S.C. App. 2).

[13] *See* U.S. CENSUS BUREAU, 2020 CENSUS OPERATIONAL PLAN: A NEW DESIGN FOR THE 21ST CENTURY (2017) at 35, 44, https://www2.census.gov/programs-surveys/decennial/2020/program-management/planning-docs/2020-oper-plan3.pdf.

[14] The American Community Survey (ACS) is a yearly survey administered by the Bureau. Unlike the decennial Census, the ACS collects data from only a portion of U.S. residents, is not required by the U.S. Constitution, and does not provide the data used for congressional apportionment. *See* https://www.census.gov/content/dam/Census/programs-surveys/acs/about/ACS_Information_Guide.pdf; *see also* U.S. Const. art. I, § 2, cl. 3, and amend.

swell in confidentiality and data sharing concerns, particularly among immigrants or those who live with immigrants," which "may present a barrier to participation in the 2020 Census."[15] Before adding the citizenship question, the Bureau should have conducted new testing to determine whether the question would depress responses. The Bureau's failure to do so is evidence of bad faith.

Based on this all of this evidence, Plaintiffs have shown that Defendants acted in bad faith in considering, making, and justifying their decision to add the citizenship question, or at the very least that discovery would assist in demonstrating bad faith. *See Animal Def. Council*, 840 F.2d at 1437. Because there is thus no presumption that the administrative record is complete, Plaintiffs should be permitted to inquire into the thought processes of administrative decision-makers. *See Stand Up for California! v. U.S. Dep't of Interior*, 71 F. Supp. 3d 109, 124 (D.D.C. 2014); *Animal Def. Council*, 840 F.2d at 1437. Plaintiffs seek depositions and documents related to: (1) the agencies' consideration of the citizenship question, (2) the likely impact of the citizenship question on 2020 Census response rates and on congressional apportionment (for example, all documents relied on by Mr. Abowd in preparing his recommendations to Secretary Ross),[16] and (3) the likely impact of the citizenship question on VRA enforcement. Depositions should include the agency officials with information related to these subjects, including, but not limited to Defendants Ross and Jarmin, Mr. Abowd, senior Bureau official Enrique Llamas (*see e.g.* AR 1277, 1308), senior Commerce Department official Karen Kelley (*see e.g.* AR 1277, 1308), and other Bureau staff who have relevant information.

---

XIV, § 2.
[15] *See* Mikelyn Meyers, Center for Survey Management, U.S. Census Bureau, Presentation on Respondent Confidentiality Concerns and Possible Effects on Response Rates and Data Quality for the 2020 Census, presented at National Advisory Committee on Racial, Ethnic, and Other Populations Fall Meeting (Nov. 2, 2017), https://www2.census.gov/cac/nac/meetings/2017-11/Meyers-NAC-Confidentiality-Presentation.pdf (last visited June 12, 2018).
[16] Discovery of these documents is proper under not only the bad faith exception, but also the exceptions for when (1) "the agency has relied on documents not in the record," and (2) supplementing the record is necessary to explain complex subject matter. *See Animal Def. Council*, 840 F.2d at 1438; *see also Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (explaining that the record includes all documents "directly or *indirectly*" considered by agency decision-makers); *Pub. Power Council v. Johnson*, 674 F.2d at 794.

**III.   THE SCOPE OF DISCOVERY SHOULD NOT BE LIMITED AT THIS EARLY STAGE IN THE LITIGATION, GIVEN THE IMPORTANCE OF THE ISSUES AT STAKE**

This case addresses a significant question—whether adding the citizenship question to the 2020 Census violates the Constitution and the APA. As shown above, Plaintiffs need certain documents and deposition testimony to answer this question. "[T]he importance of the issues at stake in the action" and "the importance of the discovery in resolving the issues" thus weigh in favor of granting the discovery permitted in civil litigation. Fed. R. Civ. P. 26(b)(1). The minimal burden of the proposed discovery—which is likely to be requested and produced over a period of mere months, given the expedited timeline for this litigation—does not outweigh its benefit. *Id.* In confirming Plaintiffs' right to conduct discovery, no limitations beyond those inherent in the Federal Rules of Civil Procedure should be imposed at this early stage in the litigation.

**CONCLUSION**

Plaintiffs respectfully request that this Court issue an order (1) confirming Plaintiffs' right to discovery outside the administrative record, and (2) directing the parties to make initial disclosures within ten (10) days.

Dated: June 14, 2018

Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General

*/s/ R. Matthew Wise*

GABRIELLE D. BOUTIN
R. MATTHEW WISE
Deputy Attorneys General
*Attorneys for State of California, by and through Attorney General Xavier Becerra*

SA2018100904
13108771.docx

# CERTIFICATE OF SERVICE

Case Name: **State of California, et al. v. Wilbur L. Ross, et al.**    No. **3:18-cv-01865**

I hereby certify that on <u>June 14, 2018</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**PLAINTIFFS' OPENING BRIEF RE: RIGHT TO TAKE DISCOVERY**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>June 14, 2018</u>, at Sacramento, California.

| Tracie L. Campbell | */s/ Tracie Campbell* |
|---|---|
| Declarant | Signature |

SA2018100904
13125512.docx