CHAD A. READLER
Acting Assistant Attorney General
CARLOTTA P. WELLS
Assistant Director
KATE BAILEY
STEPHEN EHRLICH
CAROL FEDERIGHI
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Tel.: (202) 305-9803
Email: stephen.ehrlich@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| STATE OF CALIFORNIA, *et al.*, | Civil Action No. 3:18-cv-01865-RS |
| Plaintiffs, | |
| v. | **DEFENDANTS' MEMORANDUM IN SUPPORT OF REVIEW ON THE ADMINISTRATIVE RECORD** |
| WILBUR L. ROSS, JR., *et al.*, | |
| Defendants. | |

Pursuant to the Court's *Order Granting Stipulation*, *see* ECF No. 18, Defendants write to address the propriety of discovery in this case. On June 8, 2018, Defendants produced an administrative record consisting of more than 1,300 pages of all non-privileged factual material directly or indirectly considered by the Secretary in deciding whether to reinstate a citizenship question on the 2020 Census. *See* ECF No. 23. This record serves as the proper basis upon which to decide this case should it survive Defendants' impending motion to dismiss.

Despite this being a challenge to an agency decision under the Administrative Procedure Act ("APA"), Plaintiffs assert that discovery should be permitted. ECF No. 18, at 2. This contention should be rejected for at least three reasons. First, with certain limited exceptions not applicable here, review of claims challenging final agency action—including where, as here, constitutional claims overlap with APA claims—is limited to the administrative record produced by the agency. Plaintiffs have not shown that the administrative record does not contain appropriate information to permit this Court to review the Secretary's decision. *See Animal Def. Council v. Hodel*, 840 F.2d 1432, 1437 (9th Cir. 1988) (affirming no discovery where "[t]he [plaintiff] makes no showing that the district court needed to go outside the administrative record to determine whether the [agency] ignored information"), *as amended by* 867 F.3d 1244 (9th Cir. 1989). Second, no extra-record discovery should occur until the Court has resolved whether the Secretary's decision to reinstate a citizenship question on the 2020 Census is judicially reviewable, as the Supreme Court recently explained in an analogous case from this District. *In re United States*, 138 S. Ct. 443, 445 (2017) (directing that "[t]he District Court should proceed to rule on the Government's threshold arguments" before addressing issues regarding completeness of the administrative record). Third, Defendants should not be required to produce a privilege log in conjunction with the administrative record, as privileged materials are not properly part of an administrative record.

**BACKGROUND**

**I.     CONSTITUTIONAL AND STATUTORY AUTHORITY FOR THE CENSUS**

The U.S. Constitution requires that an "actual Enumeration" of the population be conducted every 10 years and vests Congress with the authority to conduct that census "in such Manner as they shall by Law direct." U.S. Const. art. I § 2, cl. 3. Through the Census Act, Congress has delegated

to the Secretary of Commerce the responsibility to conduct the decennial census "in such form and content as he may determine," 13 U.S.C. § 141(a), and has "authorized [him] to obtain such other census information as necessary," *id*. The Bureau of the Census assists the Secretary in the performance of this responsibility. *See id.* §§ 2, 4. As required by the Constitution, a census of the population has been conducted every 10 years since 1790. *See* U.S. Census Bureau, Measuring America: The Decennial Censuses From 1790 to 2000, https://www2.census.gov/library/publications/2002/dec/pol_02-ma.pdf. Censuses from 1890-1950, as well as many of the earlier censuses, asked all respondents whether, if foreign born, they were citizens or (in a different formulation of the same basic inquiry) had naturalized. *Id.* Censuses from 1960-2000 asked a sizeable sample of the population for citizenship or naturalization status, *id.*, and the American Community Survey ("ACS") has asked a sample of the population for citizenship every year since 2005, *see* U.S. Census Bureau, Archive of Am. Community Survey Questions, https://www.census.gov/programs-surveys/acs/methodology/questionnaire-archive.html.

II.     **REINSTATEMENT OF A CITIZENSHIP QUESTION IN THE 2020 CENSUS**

In early 2017, the new leadership at the Department of Commerce began evaluating various issues in connection with the upcoming 2020 census, including the reinstatement of a citizenship question. As part of that evaluation process Commerce reached out to federal government components, including the Department of Justice ("DOJ").

On December 12, 2017, DOJ submitted a letter to the Census Bureau "formally request[ing] that the Census Bureau reinstate on the 2020 Census questionnaire a question regarding citizenship." Letter from Arthur Gary, General Counsel, DOJ, to Ron Jarmin, performing the nonexclusive duties of the Director, U.S. Census Bureau (Dec. 12, 2017) ("DOJ Letter"), Administrative Record ("A.R.") at 663. DOJ stated that "this data is critical to the Department's enforcement of Section 2 of the Voting Rights Act" ("VRA"), now codified at 52 U.S.C. § 10301, and instrumental "[t]o fully enforce those requirements." *Id.*

On March 26, 2018, after examining the issue and considering input from a variety of sources, the Secretary of Commerce issued a memorandum reinstating a citizenship question on the 2020 census questionnaire. Memorandum to Karen Dunn Kelley, Under Secretary for Economic Affairs,

from the Sec'y of Commerce on Reinstatement of a Citizenship Question on the 2020 Decennial Census Questionnaire (Mar. 26, 2018) ("Ross Memo"), A.R. at 1313.  The Secretary determined that the census should collect such information in order to provide DOJ with census-block-level data to assist in enforcing the VRA.  *Id.*  DOJ had explained that "the decennial census questionnaire is the most appropriate vehicle for collecting that data" because it would provide census-block-level citizenship voting age population ("CVAP") data that are not currently available from the ACS (which provides data only at the larger census block group level).  *Id.*  DOJ explained that having citizenship data at the census block level will permit more effective enforcement of the VRA.  *Id.* at 663-64.

In his decision, the Secretary first emphasized the goal of conducting a complete and accurate decennial census.  A.R. at 1313.  The Secretary also observed that collection of citizenship data in the decennial census has a long history and that the ACS has included a citizenship question since 2005.  *Id.* at 1314.  The Secretary therefore found that "the citizenship question has been well tested."  *Id.*  He also confirmed with the Census Bureau that census-block-level citizenship data are not available using the annual ACS.  *Id.*

The Secretary had asked the Census Bureau to evaluate the best means of providing the data requested by DOJ, and the Census Bureau initially presented three alternatives: Option A would have continued the status quo and provided DOJ with ACS citizenship data at the census-block-group level, rather than the block level requested in the DOJ Letter; Option B would have placed the ACS citizenship question on the decennial census, which goes to every American household; and Option C instead would have provided block-level citizenship data for the entire population using existing federal administrative-record data.[1]  A.R. at 1314-16.  In his decision memo, the Secretary concluded that Option A would not provide DOJ with improved CVAP data, as there was no guarantee that the accuracy or level of detail of the ACS data could be enhanced to meet DOJ's requirements even using sophisticated modeling methods.  *Id.* at 1314-15.  After discussing Options B and C, *id.* at 1315-16,

---

[1] Administrative records include data from the Internal Revenue Service, the Social Security Administration, the Centers for Medicare and Medicaid Services, the Department of Housing and Urban Development, the Indian Health Service, the Selective Service, and the U.S. Postal Service. *2020 Census Operational Plan: A New Design for the 21st Century*, at 22-26 (Sept. 2017, v.3.0), https://www2.census.gov/programs-surveys/decennial/2020/program-management/planning-docs/2020-oper-plan3.pdf.  Administrative records will be utilized only if the data is corroborated by at least two sets of records.

the Secretary indicated that he had asked the Census Bureau to develop and implement a fourth alternative, Option D, which would effectively combine Options B and C. *Id.* at 1316. Under this fourth option, a citizenship question would be reinstated on the decennial census in the same form as it appears on the ACS, imposing on each of the country's inhabitants the legal obligation to respond. *Id.* at 1316-17. The Secretary directed the Census Bureau to work to further enhance its administrative-record data sets, protocols, and statistical models to maximize its ability to match the decennial census responses with administrative records. *Id.* at 1316. The combination of responses to the question and more-developed practices for comparing those responses with administrative records would then permit the Census Bureau to determine the inaccurate response rate (whether for non-response, conflicting responses, or other reasons) for the entire population. *Id.* at 1317. The Secretary concluded that this combined option would provide DOJ with the most complete and accurate CVAP data. *Id*.

In addition to discussing the operational aspect of DOJ's request with the Census Bureau, the Secretary described how he considered stakeholder views. He reviewed letters from local, state, and federal officials and advocacy groups, monitored stakeholder commentary in the press, and spoke personally to interested parties on both sides of the issue. A.R. at 1313-14. The Secretary considered but rejected concerns raised by a number of parties that reinstating a citizenship question on the decennial census would negatively impact the response rate for noncitizens. *Id.* at 1315-16, 1317-18. While the Secretary agreed that a "significantly lower response rate by non-citizens could reduce the accuracy of the decennial census and increase costs for non-response follow up operations," *id.* at 1315, he concluded that "neither the Census Bureau nor the concerned stakeholders could document that the response rate would in fact decline materially" as a result of reinstatement of the citizenship question. *Id.* Based on his discussions with outside parties, Census Bureau leadership and others within the Department of Commerce, the Secretary determined that, to the best of everyone's knowledge, limited empirical data exists on how reinstatement of a citizenship question might impact response rates on the 2020 Census. *Id.* at 1315, 1317. Thus, "while there is widespread belief among many parties that adding a citizenship question could reduce response rates, the Census Bureau's analysis did not provide definitive, empirical support for that belief." *Id.* at 1316.

4

DEFS.' MEM. IN SUPP. OF REVIEW ON THE ADMIN. RECORD – No. 3:18-cv-01865-RS

Certain stakeholders advised the Secretary that they believed that reinstating a citizenship question could negatively impact response rates because of heightened, general distrust of the government. But the Secretary concluded that those commenters referred to individuals who may decline to participate regardless of whether the census includes a citizenship question and noted that "no one provided evidence that there are residents who would respond accurately to a decennial census that did not contain a citizenship question but would not respond if it did." A.R. at 1317. The Secretary further observed that, based on past experience, "certain interest groups consistently attack the census and discourage participation." *Id.* at 1318. The Secretary explained the Census Bureau intends to take steps to conduct respondent and stakeholder-group outreach in an effort to mitigate the impact of the foregoing issues on the 2020 decennial census. *Id.*

## **ARGUMENT**

The Court should reject Plaintiffs' request to conduct discovery in this administrative-record case. First, no exception applies to the general rule that judicial review of final agency action is limited to the administrative record and no extra-record discovery should be allowed. Specifically, the APA contemplates review of constitutional claims and APA claims on the same administrative record where, as here, such claims overlap. Second, as the Supreme Court recently held in an analogous case, no extra-record discovery should occur until this Court has decided whether the Secretary's decision is judicially reviewable. Third, Defendants should not be required to produce a privilege log in conjunction with the administrative record because privileged materials are not considered part of an administrative record.

I.  **NO DISCOVERY BEYOND THE ADMINISTRATIVE RECORD SHOULD BE PERMITTED.**

Judicial review of final agency action is generally limited to the administrative record. *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 943 (9th Cir. 2006). This rule "ensures that the reviewing court affords sufficient deference to the agency's action" because "[w]hen a reviewing court considers evidence that was not before the agency, it inevitably leads the reviewing court to substitute its judgment for that of the agency." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014) (citation and quotations omitted). Hence, "the focal point for judicial review should be the administrative record already in existence, not some new record

made initially in the reviewing court." *Ctr. for Biological Diversity*, 450 F.3d at 943 (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)).

The Ninth Circuit has recognized four exceptions to the record-review rule:  (1) when extra-record evidence provides background information necessary to determine whether the agency considered all relevant factors, (2) when extra-record evidence is necessary to determine whether the agency relied on documents not in the record, (3) when supplementing the record is necessary to explain technical terms or complex subject matter, or (4) when plaintiffs make a showing of agency bad faith.  *San Luis & Delta-Mendota*, 776 F.3d at 992.  These exceptions are "narrowly construed," and "the party seeking to admit extra-record evidence initially bears the burden of demonstrating that a relevant exception applies."  *Id.*; *see also Las Virgenes Mun. Water Dist.-Triunfo Sanitation Dist. v. McCarthy*, Nos. 14-cv-01392 & 98-cv-04825, 2016 WL 393166, at *5 (N.D. Cal. Feb. 1, 2016), *appeal dism'd,* 2017 WL 3895004 (9th Cir. Apr. 12, 2017); *Save Strawberry Canyon v. U.S. Dep't of Energy*, 830 F. Supp. 2d 737, 759 (N.D. Cal. 2011).

Plaintiffs' First Amended Complaint ("FAC"), however, does not seek to invoke any of these exceptions.[2]  It instead relies on a record-review exception not recognized by the Ninth Circuit: extra-record evidence should be permitted, they say, because their FAC asserts a constitutional claim in addition to an APA claim.  But Congress did not carve out constitutional claims from the record-review procedures that govern challenges to final agency actions.  Indeed, § 706 of the APA provides for judicial review of final agency action that is "contrary to constitutional right, power, privilege, or immunity."  5 U.S.C. § 706(2)(B).  Courts across the country have held that § 706 precludes discovery beyond the administrative record even where constitutional claims are presented.  *See Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 58 F. Supp. 3d 1191, 1232–33 (D.N.M. 2014); *Evans v. Salazar*, No. 08-cv-0372, 2010 WL 11565108, at *2 (W.D. Wash. July 7, 2010); *Harvard Pilgrim Health Care of New England v. Thompson*, 318 F. Supp. 2d 1, 10 (D.R.I. 2004); *Charlton Mem'l Hosp. v. Sullivan*, 816 F. Supp. 50, 51 (D. Mass. 1993) (adding constitutional claims

---

[2] Pursuant to the Court's June 6, 2018 Order, *see* ECF No. 18, the Parties are filing simultaneous letters concerning whether discovery is appropriate in this action.  Accordingly, Defendants address these discovery-related issues only insofar as they are raised by Plaintiffs' Amended Complaint.  Defendants will respond, as appropriate, to any arguments in Plaintiffs' letter when we file our reply letter on June 21, 2018.

to APA claims "cannot so transform the case that it ceases to be primarily a case involving judicial review of agency action").[3]

Extra-record discovery is particularly inappropriate in cases where, as here, Plaintiffs' constitutional claims fundamentally overlap with their other APA claims. *See, e.g.*, *Chiayu Chang v. U.S. Citizenship & Immigration Servs.*, 254 F. Supp. 3d 160, 162 (D.D.C. 2017); *Alabama-Tombigbee Rivers Coal. v. North*, No. 12-cv-0194, 2002 WL 227032, at *3-6 (N.D. Ala. Jan. 29, 2012). Indeed, Plaintiffs' constitutional challenge under the Enumeration Clause duplicates their APA claim: under both theories, Plaintiffs allege that the Secretary's decision to reinstate a citizenship question will diminish census response rates, resulting in an undercount of the population. FAC ¶¶ 49-50, 55-57. Permitting discovery for such overlapping constitutional and APA challenges would "incentivize every unsuccessful party to agency action to allege . . . constitutional violations to trade in the APA's restrictive procedures for the more even-handed ones of the Federal Rules of Civil Procedure." *Jarita Mesa Livestock*, 58 F. Supp. 3d at 1238. Accordingly, Plaintiffs should not be allowed to circumvent the APA's record-review rule in here.[4]

## II. NO DISCOVERY SHOULD TAKE PLACE BEFORE RESOLUTION OF THRESHOLD ARGUMENTS IN DEFENDANTS' MOTION TO DISMISS.

In the event the Court rules that extra-record discovery is permissible in this case, such discovery should be stayed pending the Court's resolution of the threshold arguments in Defendants' motion to dismiss, which will be filed shortly. That motion will present substantial threshold arguments under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), including that (1) Plaintiffs lack standing to bring this action, (2) Plaintiffs' case is barred by the political question doctrine,

---

[3] While some courts have allowed extra-record discovery when a plaintiff asserts both constitutional claims and APA claims, they have done so under unique circumstances. For example, discovery has been allowed where there is no administrative record with respect to certain claims, *Puerto Rico Pub. Hous. Admin. v. U.S. Dep't of Hous. & Urban Dev.*, 59 F. Supp. 2d 310, 328 (D.P.R. 1999), where there is a procedural due process claim not countenanced by the administrative record, *Grill v. Quinn*, No. 10-cv-0757, 2012 WL 174873, at *2 (E.D. Cal. Jan. 20, 2012), or where there are alleged constitutional violations that are either "*ultra vires* or [are] made pursuant to an unconstitutional grant of power from the sovereign," *Evans*, 2010 WL 11565108, at *2 (distinguishing *Little Earth of United Tribes, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 675 F. Supp. 497, 531 (D. Minn. 1987)). Even in such cases, however, courts admonish that "wide-ranging discovery is not blindly authorized at a stage in which an administrative record is being reviewed." *Tafas v. Dudas*, 530 F. Supp. 2d 786, 802 (E.D. Va. 2008) (quoting *Puerto Rico Pub. Hous. Admin.*, 59 F. Supp. 2d at 328).

[4] In any event, if the record is inadequate to support the Secretary's decision, the remedy is not to open up the agency's files to discovery—rather, if the decision of the agency "is not sustainable on the administrative record made, then the . . . decision must be vacated and the matter remanded . . . for further consideration." *Camp*, 411 U.S. at 143.

(3) judicial consideration of Plaintiffs' APA claim is barred because the Secretary's decision is committed to agency discretion, and (4) Plaintiffs fail to state a claim under the Enumeration Clause. An analogous situation recently arose from this District, involving a request to expand the administrative record and obtain burdensome discovery before the Court had ruled on the justiciability of a decision by the Acting Secretary of the Department of Homeland Security.  There, the Supreme Court granted a writ of mandamus and overturned an order to supplement the administrative record, concluding that the District Court should have "first resolved the Government's threshold arguments" because "[e]ither of those arguments, if accepted, likely would eliminate the need for the District Court to examine a complete administrative record." *In re United States*, 138 S. Ct. at 445.  This Court likewise should resolve Defendants' motion to dismiss—raising similar justiciability issues— before authorizing any extra-record discovery.

### III. PLAINTIFFS ARE NOT ENTITLED TO A PRIVILEGE LOG FOR THE ADMINISTRATIVE RECORD.

Defendants should not be required to provide a privilege log listing privileged materials (such as deliberative memoranda or attorney-client communications) that were not included in the administrative record.  Privileged materials, including those that are deliberative in nature, do not form part of the record.  *See In re Subpoena Duces Tecum*, 156 F.3d at 1279-80; *San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Comm'n*, 789 F.2d 26, 45 (D.C. Cir. 1986); *San Luis & Delta-Mendota Water Auth. v. Jewell*, No. 15-cv-01290, 2016 WL 3543203, at *19 (E.D. Cal. June 23, 2016) ("deliberative documents are not part of the administrative record" (quoting *Nat'l Ass'n of Chain Drug Stores v. U.S. Dep't of Health & Human Servs.,* 631 F. Supp. 2d 23, 27-28 (D.D.C. 2009))).  The Ninth Circuit has declined to require an agency to supply a privilege log with the record. *See Cook Inletkeeper v. U.S. EPA*, 400 F. App'x 239, 240 (9th Cir. 2010) (denying motion to require preparation of a privilege log).  Numerous district courts within this circuit have applied this rule.  *See San Luis & Delta-Mendota Water Auth.*, 2016 WL 3543203, at *19 ("To require a privilege log as a matter of course in any administrative record case where a privilege appears to have been invoked would undermine the presumption of correctness."); *California v. U.S. Dep't of Labor*, No. 13-cv-02069, 2014 WL 1665290, at *13 (E.D. Cal. Apr. 24, 2014) ("[B]ecause internal agency deliberations are properly excluded from the administrative record, the agency need not provide a privilege log.");

*Sierra Pac. Indus. v. U.S. Dep't of Agric.*, No. 11-cv-1250, 2011 WL 6749837, at *3 (E.D. Cal. Dec. 22, 2011) (denying motion to include privilege log filed in separate litigation where "plaintiffs have failed to articulate any argument for why the court should include extra-record materials that implicate the intent of the administrative decisionmakers"); *see also*, *e.g.*, *Great Am. Ins. Co. v. United States*, No. 12-cv-9718, 2013 WL 4506929, at *8-9 (N.D. Ill. Aug. 23, 2013); *but see, e.g., Ctr. for Food Safety v. Vilsack*, No. 15-cv-01590, 2017 WL 1709318, at *4 (N.D. Cal. May 3, 2017); *Inst. for Fisheries Res. v. Burwell*, No. 16-cv-01574, 2017 WL 89003, at *1 (N.D. Cal. Jan. 10, 2017).

Practical considerations further warrant denial of any request for a privilege log, as requiring such a log would invite tangential discovery disputes about the adequacy of *that* document and likely lead to unnecessary and distracting motions practice incompatible with the purposes of limited APA review of agency decisions. As the Supreme Court has made clear, when review of an agency decision is at issue, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp*, 411 U.S. at 142. This form of judicial review permits the Court to focus on the agency's stated reasons, rather than probing the immaterial subjective views of individual agency personnel. *In re Subpoena*, 156 F.3d at 1279. A rule "requiring the United States to identify and describe on a privilege log all of the deliberative documents would invite speculation into an agency's predecisional process and potentially undermine the limited nature of review available under the APA." *Great Am. Ins. Co.*, 2013 WL 4506929, at *9. It would also pose substantial burdens on agencies, requiring them to collect and catalogue the privileged materials, and then create delay as "[t]he privilege question would have to be resolved before judicial review of the administrative decision could even begin." *Blue Ocean Inst. v. Gutierrez*, 503 F. Supp. 2d 366, 372 & n.4 (D.D.C. 2007). Such burdens and delays would frustrate the scheme for orderly and limited judicial review on the merits set forth in the APA. Accordingly, no privilege log should be required.

| | |
|---|---|
| Date: June 14, 2018 | Respectfully submitted, |
| | CHAD A. READLER<br>Acting Assistant Attorney General |
| | BRETT A. SHUMATE<br>Deputy Assistant Attorney General |
| | JOHN R. GRIFFITHS<br>Director, Federal Programs Branch |
| | CARLOTTA P. WELLS<br>Assistant Director |
| | _/s/ Stephen Ehrlich_<br>KATE BAILEY<br>STEPHEN EHRLICH<br>CAROL FEDERIGHI<br>Trial Attorneys<br>United States Department of Justice<br>Civil Division, Federal Programs Branch<br>20 Massachusetts Ave., NW<br>Washington, DC 20530<br>Tel.: (202) 305-9803<br>Fax: (202) 616-8470<br>Email: stephen.ehrlich@usdoj.gov |
| | *Attorneys for Defendants* |