CHAD A. READLER
Acting Assistant Attorney General
BRETT A. SHUMATE
Deputy Assistant Attorney General
CARLOTTA P. WELLS
Assistant Director
KATE BAILEY
STEPHEN EHRLICH
CAROL FEDERIGHI
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC  20044
Tel.: (202) 514-9239
Email: kate.bailey@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| STATE OF CALIFORNIA, *et al.*,<br><br>　　Plaintiffs,<br><br>v.<br><br>WILBUR L. ROSS, JR., *et al.*,<br><br>　　Defendants. | Civil Action No. 3:18-cv-01865-RS<br><br>**DEFENDANTS' REPLY IN SUPPORT OF REVIEW ON THE ADMINISTRATIVE RECORD** |

## INTRODUCTION

Plaintiffs' motion to engage in discovery beyond the administrative record is premised on a fundamental misunderstanding of the nature and scope of judicial review in challenges to agency action under the Administrative Procedure Act ("APA"). Contrary to Plaintiffs' assertion, they have no "fundamental right to discovery" in this case, *see* Pls.' Mot. for Disc., ECF No. 27 (hereinafter "Pls.' Mot."), at 1—regardless of the presence of an overlapping constitutional claim—because the APA and its strictures on judicial review govern all claims in this case.

As explained in Defendants' memorandum supporting review on the administrative record, it is black-letter administrative law that where, as here, there is a "contemporaneous explanation" for an agency's decision, its validity "must … stand or fall on the propriety of that finding." *Camp v. Pitts*, 411 U.S. 138, 143 (1973) (per curiam). "The task of the reviewing court is to apply the appropriate APA standard of review to the agency decision based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985) (citation omitted). "If that finding is not sustainable on the administrative record made, then the … decision must be vacated and the matter remanded to [the agency] for further consideration" because "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp*, 411 U.S. at 142-43 (citation omitted).

Here, the decision to reinstate a citizenship question on the decennial census is not subject to judicial review in the first place: Plaintiffs lack standing to maintain this action, and review of the Secretary's decision is barred by both the political question doctrine and the fact that the Census Act commits the form and content of the census to the Secretary's discretion by law. Defendants nonetheless have produced a 1,300+ page administrative record that includes all of the non-privileged documents that were directly or indirectly considered by the decisionmaker. If Plaintiffs believe that that record is inadequate to support the agency's decision, then the next step is not to expand the basis for this Court's review to include documents never even considered by the decisionmaker or testimony probing the minds of agency officials—it is instead for Plaintiffs to file a merits brief asking that the decision be set aside. *See Camp*, 411 U.S. at 143.

To be sure, supplementation of an administrative record may be appropriate in some instances— namely, upon a "strong showing" that the agency has acted in bad faith, *Citizens to Preserve Overton Park,*

*Inc. v. Volpe*, 401 U.S. 402, 420 (1971), or where it is "clear" that the decisionmaker relied on documents outside the administrative record, *Havasupai Tribe v. Robertson*, 943 F.2d 32, 34 (9th Cir. 1991). But Plaintiffs have not come close to satisfying their burden to demonstrate bad faith here, and they identify no nonprivileged document actually considered by the decisionmaker that was not included in the administrative record. Nor could Plaintiffs satisfy the basic rationale underlying these exceptions: that the administrative record produced by the agency reflects "such [a] failure to explain administrative action as to frustrate effective judicial review." *Camp*, 411 U.S. at 142-43. To the contrary, the Secretary's decision memo, and the documents on which he based that decision, set forth his reasoning in great detail. Plaintiffs may disagree with the Secretary's rationale, but they cannot credibly claim that additional information is needed to *understand* it. Because Plaintiffs fail to meet their burden to demonstrate bad faith or provide clear evidence that any nonprivileged document was wrongly withheld—and notwithstanding the presence of a constitutional claim, which also is reviewable (if at all) only under the APA—the Court should deny Plaintiffs' motion to obtain discovery.

**ARGUMENT**

Defendants certified and lodged an administrative record consisting of all non-privileged documents considered by the Secretary in deciding whether to reinstate a citizenship question on the decennial census. *See* AR 1-1,320. That record amply explains the basis for the agency's decision, and Plaintiffs do not credibly contend otherwise. Plaintiffs' alternative conception of the proper contents of the record—to include documents that were never considered by the decisionmaker, that are deliberative or otherwise privileged, and that would directly probe the minds of agency decisionmakers—bears no resemblance to any traditional or recognized definition of an administrative record and therefore should be squarely rejected. Despite Plaintiffs' attempts to obscure the nature of this action—a challenge to a discrete, final agency action—the APA provides the waiver of sovereign immunity, and the vehicle for review, of all claims here, *including* Plaintiffs' constitutional claim. Wide-ranging discovery under the Federal Rules of Civil Procedure should not be permitted.

Plaintiffs' claim to "have an absolute right to seek discovery on *any* matters that may bear on the citizenship question's effect on congressional apportionment, whether or not Defendants considered such matters and included them in the administrative record," is flatly incorrect. Pls. Mot. 6 (emphasis added). As explained in Defendants' memorandum for review on the administrative record, ECF No. 28,

2

1  Congress did not carve out constitutional claims from the APA's strictures governing challenges to agency
2  decisions. Indeed, the APA specifically provides for review of agency action that is "contrary to
3  constitutional right, power, privilege, or immunity," 5 U.S.C. § 706(2)(B), and that statute provides the
4  waiver of sovereign immunity for "*all* equitable actions for specific relief against a Federal agency or
5  officer acting in an official capacity," regardless whether suit is brought under the APA itself. *See Trudeau*
6  *v. Fed. Trade Comm'n*, 456 F.3d 178, 186-87 (D.C. Cir. 2006) (citation omitted). Plaintiffs' attempt to portray
7  their constitutional claim as distinct from, and not subject to, the limitations imposed by the APA on
8  judicial review are unavailing.

9        Plaintiffs' insistence that "the conceptual differences" between their claims—i.e., that the "APA
10 claim … centers on Defendants' *process*" while the "constitutional claim, in contrast, focuses … on the
11 actual *effect* of the citizenship question on congressional apportionment," Pls.' Mot. 5, is merely subterfuge.
12 Plaintiffs' claims both challenge the same discrete, final agency action; reframing those claims to rely on
13 subtly distinct theories "cannot so transform the case that it ceases to be primarily a case involving judicial
14 review of agency action." *Charlton Mem'l Hosp. v. Sullivan*, 816 F. Supp. 50, 51 (D. Mass. 1993); *see also*
15 *Harkness v. Sec. of Navy*, 858 F.3d 437, 451 & n.9 (6th Cir. 2017), *cert. denied sub nom. Harkness v. Spencer*, No.
16 17-955, 2018 WL 303822 (June 18, 2018) (rejecting as meritless argument that presence of constitutional
17 claim warranted extra-record discovery and explaining that constitutional claim "is properly reviewed on
18 the administrative record" absent showing of bad faith).

19       Plaintiffs' reliance on *Webster v. Doe*, 486 U.S. 592, 604 (1988), and *Puerto Rico Pub. Hous. Admin. v.*
20 *U.S. Dep't of Hous. And Urban Dev.*, 59 F. Supp. 2d 310, 328 (D. P.R. 1999), is similarly misplaced. Both
21 involve situations where some discovery was deemed proper *in the absence of an administrative record*—indeed,
22 *Webster* involved a challenge to an individual employee's termination, not a discrete agency action of the
23 kind at-issue here. Neither of these decisions supports Plaintiffs' position.

24       Plaintiffs' argument that the bad-faith exception to record-review principles warrants discovery
25 likewise should be rejected. Pls.' Mot. 6-9. As an initial matter, Plaintiffs' assertion that this "exception
26 applies when … discovery would assist in showing bad faith," *id.* 6, mischaracterizes the applicable legal
27 standard. The case on which Plaintiffs rely, *Animal Def. Council v. Hodel,* 840 F.2d 1432 (9th Cir. 1988),
28 applied the well-established principle that "there must be a strong showing of bad faith or improper
behavior before the court may inquire into the thought processes of administrative decisionmakers," *id.*

at 1437 (quoting *Overton Park*). True, the court went on to say that appellants there had "fail[ed] to show that the [defendants] acted in bad faith or acted improperly … or that discovery would have helped … make that showing," *id.*, but that brief statement applying the familiar standard to the facts of that case does not, as Plaintiffs portray, support the proposition that discovery is proper simply because it "would assist in showing bad faith," Pls.' Mot. 6. Such a gaping exception would swallow the rule that agency decisions be reviewed on the record absent a strong showing of impropriety.

This Court should afford the agency the presumption of having properly designated the administrative record "absent clear evidence to the contrary." *Cook Inletkeeper v. EPA*, 400 F. App'x 239, 240 (9th Cir. 2010) (internal quotation and citation omitted). To overcome this presumption, it is not enough merely to cast aspersions at the agency's motives, *see* Pls.' Br. 7 (alleging that "there is already ample evidence that Defendants acted in bad faith and that their public justifications … are pretextual"), or to suggest that the record is incomplete because its contents fall short of Plaintiffs' capacious imaginations, *see id.* 9 n.16 (arguing that discovery is warranted based on agency reliance on documents absent from the record or to explain complex subject matter). Rather, a "plaintiff must present 'well-nigh irrefragable proof' of bad faith or bias on the part of government officials," to overcome the presumption that the agency discharged its duties in good faith. *Adair v. England*, 183 F. Supp. 2d 31, 60 (D.D.C. 2002) (citations omitted).

Plaintiffs have not discharged their duty here. They first speculate that "Defendants' true reason for adding the citizenship question was to support Republican redistricting efforts, and likely, to depress the 2020 Census response rates of immigrants and their families." Pls. Mot. 7. But their "evidence" for that assertion falls flat: Plaintiffs contend that the DOJ request to reinstate a citizenship question was "spearheaded by John Gore, an attorney with substantial experience defending Republican state redistricting plans," *id.* This assertion elides the fact that, regardless of his past experience in private practice, Gore *now* heads the Department's Civil Rights Division and would naturally be the official with the greatest stake in voting-rights enforcement. Plaintiffs similarly point to a lack of "VRA Section 2 enforcement action during the Trump administration," *id.*, but the number of recent enforcement actions is meaningless absent a comparison of the frequency with which past actions have been brought or data on the number of *investigations* currently being undertaken. Indeed, during its eight years in office, the Obama Department of Justice brought just five Section 2 enforcement actions, only one of which

4

challenged a statewide redistricting plan. *See* DOJ Voting Section Litigation, *available at* https://www.justice.gov/crt/voting-section-litigation (last visited June 21, 2018). Plaintiffs also fail to recognize the possibility that the Department's voting-rights investigations might be hindered by a lack of citizenship data, or that such actions are cyclical in nature and tied temporally to redistricting that takes place after each decennial census, such as the 2010 census that occurred during the Obama Administration.

Plaintiffs' contention that isolated, unsolicited communications from Kris Kobach demonstrate bad faith on the part of Secretary Ross also misses the mark. Pls.' Mot. 7 (citing A.R. 764). Kobach's stated opinion that a lack of citizenship data for the entire U.S. population "leads to the problem that aliens … are still counted for congressional apportionment purposes," *id.* at 764, does not, as Plaintiffs argue, support the inference that Ross based his decision on a desire to support Republican redistricting. Pls. Mot. 7. Kobach's rationale for contacting the Secretary cannot be imputed to the Secretary. Nothing in the record remotely suggests that Ross shares Kobach's view on the proper basis for apportionment— even aside from the fact that Ross's "actual subjective motivation … is *immaterial* as a matter of law— unless there is a showing of bad faith or improper behavior." *In re Subpoena Duces Tecum on the Office of the Comptroller of the Currency*, 156 F.3d 1279, 1279-80 (D.C. Cir. 1998) (emphasis added). Plaintiffs' assertion that evidence of outreach to the Secretary by a state official establishes bad faith is unpersuasive.

Moreover, even if Kobach reached out to the Secretary at the request of the President or his staff, such communications are neither improper nor evidence of bad faith. Interactions and consultations between the President and high-ranking members of the Executive Branch are not only commonplace, but entirely appropriate, and do not change the relevant analysis here. "The authority of the President to control and supervise executive policymaking is derived from the Constitution … Our form of government simply could not function effectively or rationally if key executive policymakers were isolated from each other and from the Chief Executive." *Sierra Club v. Costle*, 657 F.2d 298, 406-07 (D.C. Cir. 1981) (recognizing that "courts [must] tread with extraordinary caution in mandating disclosure" of Presidential communications with Executive officials). And there is nothing untoward in an agency decisionmaker then exercising independent judgment to make a decision on the stated basis—*even if* additional motivations may be present—as long as the decision may be sustained on the articulated rationale. *See id.* at 407 (explaining that record review does not require disclosure of White House communications in

5

DEFS.' REPLY IN SUPP. OF REVIEW ON THE ADMIN. RECORD – No. 3:18-cv-01865-RS

informal rulemaking setting because any decision "must have the requisite factual support in the rulemaking record").

Plaintiffs' reliance on the President's campaign emails falls short for the simple reason that they are irrelevant to Secretary Ross's decision, and the fact that a political fundraising email purporting to support the decision without "any reference to VRA enforcement" has no bearing on the actual decision itself.

And Plaintiffs' more general suggestions that bad faith is evidenced by, as they characterize it, a decision that "was against the recommendations of Bureau professionals and advisors," and the "rush[] to add the citizenship question to the Census without following the proper procedures to timely and adequately test the question's impact," Pls.' Mot. 8, go to the *merits* inquiry whether the decision survives arbitrary-and-capricious review,[1] not whether the stated rationale is pretextual. Even accepting Plaintiffs' portrayal of the decision, "the mere fact that the Secretary's decision overruled the views of some of his subordinates is by itself of no moment in any judicial review of his decision." *Wisconsin v. City of New York*, 517 U.S. 1, 22-23 (1996). But even if these facts were relevant, the decision "must … stand or fall on the propriety" of the "contemporaneous explanation" given by the agency, *Camp*, 411 U.S. at 143, meaning that, if Plaintiffs believe that the advice of career scientists or the process by which the question was reinstated undermine the Secretary's decision, then the proper remedy is to move for summary judgment on the record supplied by the agency—not to engage in expansive and intrusive discovery. At a bare minimum, this Court should "rule on the Government's threshold arguments" before requiring the production of additional materials because "those arguments, if accepted, likely would eliminate the need for the District Court to examine a complete administrative record." *In re United States*, 138 S. Ct. 443, 445 (2017) (granting writ of mandamus to district court).

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to engage in discovery beyond the administrative record should be denied.

---

[1] As set forth in Defendants' motion to dismiss, Defendants maintain that the form and content of the census is committed to the Secretary's discretion by law and therefore not subject to APA review.

6

DEFS.' REPLY IN SUPP. OF REVIEW ON THE ADMIN. RECORD – No. 3:18-cv-01865-RS

Date:  June 21, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

BRETT A. SHUMATE
Deputy Assistant Attorney General

JOHN R. GRIFFITHS
Director, Federal Programs Branch

CARLOTTA P. WELLS
Assistant Director

 /s/ *Kate Bailey*
KATE BAILEY
STEPHEN EHRLICH
CAROL FEDERIGHI
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW
Washington, DC 20530
Tel.: (202) 514-9239
Fax: (202) 616-8470
Email: kate.bailey@usdoj.gov

*Attorneys for Defendants*