Vladimir F. Kozina, SBN 95422
MAYALL HURLEY, P.C.
2453 Grand Canal Blvd.
Stockton, CA 95207
Tel. (209) 477-3833
Email: vkozina@mayallaw.com

Jay Alan Sekulow*
Stuart J. Roth*
Jordan Sekulow*
AMERICAN CENTER FOR LAW AND JUSTICE
201 Maryland Avenue, NE
Washington, DC 20002
Tel. (202) 546-8890

* Not admitted in this jurisdiction

*Counsel for Amicus Curiae ACLJ*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| STATE OF CALIFORNIA, *et al.*, | ) Civil Action No. 3:18-cv-01865-RS |
| | ) |
|     Plaintiffs, | ) **American Center for Law and Justice's** |
| | ) **Notice of Motion & Motion for Leave** |
| v. | ) **to File Memorandum of Law as Amicus** |
| | ) **Curiae in Support of Defendants'** |
| WILBUR L. ROSS, JR., *et al.*, | ) **Motion to Dismiss** |
| | ) |
|     Defendants. | ) Date: August 9, 2018 |
| | ) Time: 1:30 p.m. |
| | ) Judge: Honorable Richard Seeborg |
| _____ | ) Dept.: 3 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on August 9, 2018, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 3 of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, non-party, the American Center for Law and Justice, will and hereby does move this Court for an order granting leave to file the accompanying MEMORANDUM OF LAW OF AMICUS CURIAE THE AMERICAN CENTER FOR LAW AND JUSTICE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS. All parties have consented to the filing of the motion and the memorandum of law.

The ACLJ is an organization dedicated to the defense of constitutional liberties secured by law. Counsel for the ACLJ have presented oral argument, represented parties, and submitted amicus curiae briefs before the Supreme Court of the United States and other courts around the country in many cases involving issues of constitutional law.[1] The ACLJ believes that the amicus curiae brief will be helpful in the Court's consideration of 1) whether Plaintiffs have Article III standing to bring this lawsuit (they do not), and 2) whether the Constitution forbids the inclusion of a question concerning United States citizenship on census questionnaires (it does not). The ACLJ recently filed an amicus brief in similar litigation in the Southern District of New York. *State of New York v. U.S. Dep't of Commerce*, No. 1:18-cv-2921-JMF (S.D.N.Y.).

---

[1] *See, e.g.*, *Trump v. Hawaii*, No. 16-1540, 2017 U.S. LEXIS 4322 (July 19, 2017); *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080 (2017); *United States v. Texas*, 136 S. Ct. 2271 (2016); *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009); *FEC v. Wis. Right to Life*, 551 U.S. 449 (2007); *McConnell v. FEC*, 540 U.S. 93 (2003); *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384 (1993); *Bd. of Educ. v. Mergens*, 496 U.S. 226 (1990).

1   Respectfully submitted on June 29, 2018.

2   /s/ Vladimir F. Kozina

3   Vladimir F. Kozina, SBN 95422
    MAYALL HURLEY, P.C.

4   2453 Grand Canal Blvd.
    Stockton, CA 95207

5   Tel. (209) 477-3833
    Email: vkozina@mayallaw.com

6

7   Jay Alan Sekulow*
    Stuart J. Roth*

8   Jordan Sekulow*
    AMERICAN CENTER FOR LAW AND JUSTICE

9   201 Maryland Avenue, NE
    Washington, DC 20002

10  Tel. (202) 546-8890

11  * Not admitted in this jurisdiction

12
    *Counsel for Amicus Curiae ACLJ*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ACLJ's Notice of Motion & Motion for Leave to File
Amicus Curiae Memorandum - Civil Action No. 3:18-cv-01865-RS

Vladimir F. Kozina, SBN 95422
MAYALL HURLEY, P.C.
2453 Grand Canal Blvd.
Stockton, CA 95207
Tel. (209) 477-3833
Email: vkozina@mayallaw.com

Jay Alan Sekulow*
Stuart J. Roth*
Jordan Sekulow*
AMERICAN CENTER FOR LAW AND JUSTICE
201 Maryland Avenue, NE
Washington, DC 20002
Tel. (202) 546-8890

* Not admitted in this jurisdiction

*Counsel for Amicus Curiae ACLJ*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| STATE OF CALIFORNIA, *et al.*, | ) Civil Action No. 3:18-cv-01865-RS |
| Plaintiffs, | ) |
| | ) **Memorandum of Law of Amicus** |
| v. | ) **Curiae the American Center for Law** |
| | ) **and Justice in Support of Defendants'** |
| WILBUR L. ROSS, JR., *et al.*, | ) **Motion to Dismiss** |
| Defendants. | ) |
| | ) Date: August 9, 2018 |
| | ) Time: 1:30 p.m. |
| | ) Judge: Honorable Richard Seeborg |
| | ) Dept.: 3 |

1

**Table of Contents**

2  Table of Authorities ................................................................................................. ii

3  Statement of Interest ................................................................................................. 1

4  Argument ................................................................................................................... 1

5  I.     Plaintiffs lack Article III standing to bring this lawsuit. .................................... 1

6  II.    The First Claim for Relief, alleging that inclusion of a citizenship question on the
        2020 Census is unconstitutional, is without merit and should be dismissed. ..................... 4

7
8          A.     The Constitution and federal statutes give the political branches nearly
                 unfettered discretion to determine the manner in which the census is
9                conducted, including the content of census questionnaires. ................................... 4

10         B.     The Constitution and federal statutes authorize the Census Bureau to collect
                 a wide range of information about the population—beyond a mere head
11               count—as a part of the census process. ................................................................ 7

12         C.     Citizenship is a constitutionally permissible area of inquiry on a census
                 questionnaire. ......................................................................................................... 9

13  Conclusion ................................................................................................................. 12

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Table of Authorities**

**Cases**

*Baldrige v. Shapiro*, 455 U.S. 345 (1982) ...............................................................4, 5, 7

*Bd. of Educ. v. Mergens*, 496 U.S. 226 (1990) ...................................................................1

*Borough of Bethel Park v. Stans*, 319 F. Supp. 971 (W.D. Pa. 1970), *aff'd by* 449 F.2d 575
(3d Cir. 1971) ...............................................................................................................6, 7

*Burns v. Richardson*, 384 U.S. 73 (1966)........................................................................11

*City of Detroit v. Sec'y of Commerce*, 4 F.3d 1367 (6th Cir. 1993) .................................7

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006)...................................................1, 3

*Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316 (1999)....................2

*Evenwel v. Abbott*, 136 S. Ct. 1120 (2015)......................................................................11

*FEC v. Wis. Right to Life*, 551 U.S. 449 (2007) .................................................................1

*Fed'n for Am. Immigration Reform (FAIR) v. Klutznick*, 486 F. Supp. 564 (D.D.C. 1980) ...........4

*Franklin v. Massachusetts*, 505 U.S. 788 (1992) ...............................................2, 3, 5, 6

*Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384 (1993)...............1

*Lampkin v. Connor*, 239 F. Supp. 757 (D.D.C. 1965),
*aff'd* 360 F.2d 505 (D.C. Cir. 1966) ......................................................................... 3-4, 11

*Legal Tender Cases*, 79 U.S. (12 Wall) 457 (1871) ..........................................................7

*Mathews v. Diaz*, 426 U.S. 67 (1976)...............................................................................10

*McConnell v. FEC*, 540 U.S. 93 (2003) .............................................................................1

*Meza v. Galvin*, 322 F. Supp. 2d 52 (D. Mass. 2004).....................................................11

*Morales v. Daley*, 116 F. Supp. 2d 801 (S.D. Tex. 2000)........................................2, 8, 9

*Negron v. City of Miami Beach*, 113 F.3d 1563 (11th Cir. 1997) ...................................11

*Pleasant Grove City v. Summum*, 555 U.S. 460 (2009) ....................................................1

*Quon v. Stans*, 309 F. Supp. 604 (N.D. Cal. 1970)........................................................4, 7

*Reyes v. City of Farmers Branch Tex.*, 586 F.3d 1019 (5th Cir. 2009) .........................................11

*Ridge v. Verity*, 715 F. Supp. 1308 (W.D. Pa. 1989).........................................................................4

*Romero v. City of Pamona*, 883 F.2d 1418 (9th Cir. 1989), *overruled in part on other grounds by Townsend v. Holman Consulting Corp.*, 914 F.2d 1136 (9th Cir. 1990)...........................11

*Saunders v. Wilkins*, 152 F.2d 235 (4th Cir. 1945)........................................................................11

*Sharrow v. Brown*, 447 F.2d 94 (2d Cir. 1971) ..........................................................................3, 11

*Sharrow v. Peyser*, 443 F. Supp. 321 (S.D.N.Y. 1977), *aff'd* 582 F.2d 1271 (2d Cir. 1978) .........3

*Trump v. Hawaii*, No. 16-1540, 2017 U.S. LEXIS 4322 (July 19, 2017) .........................................1

*Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080 (2017)................................................1

*Tucker v. U.S. Dep't of Commerce*, 958 F.2d 1411 (7th Cir. 1992)...........................................6, 7

*United States v. Bethlehem Steel Corp.*, 21 F.R.D. 568 (S.D.N.Y. 1958).......................................8

*United States v. Little*, 321 F. Supp. 388 (D. Del. 1971)...........................................................7, 9

*United States v. Moriarity*, 106 F. 886 (C.C.S.D.N.Y. 1901) ........................................................8

*United States v. Rickenbacker*, 309 F.2d 462 (2d Cir. 1962) ........................................................8

*United States v. Sharrow*, 309 F.2d 77 (2d Cir. 1962) .................................................................11

*United States v. Texas*, 136 S. Ct. 2271 (2016) .............................................................................1

*U.S. ex rel. City of Atlanta v. Steuart*, 47 F.2d 979 (D.C. Cir. 1931) .........................................6, 9

*Utah v. Evans*, 536 U.S. 452 (2002).................................................................................2, 5, 6, 9

*Wisconsin v. City of New York*, 517 U.S. 1 (1996)......................................................................5, 6

**Constitutions and Statutes**

13 U.S.C. § 5.......................................................................................................................................4

13 U.S.C. § 22...................................................................................................................................10

13 U.S.C. § 141(a) .............................................................................................................................4

32 Stat. 51, 53 (1902) .......................................................................................................................10

Census Act, 13 U.S.C. 1, *et seq.* ..........................................................................3, 4, 8, 10

U.S. Const. Art. I, § 2, cl. 2 ..........................................................................................10

U.S. Const. Art. I, § 2, cl. 3 ......................................................................................*passim*

U.S. Const. Art. I, § 3, cl. 3 ..........................................................................................10

U.S. Const. Art. II, § 1, cl. 5 ........................................................................................10

U.S. Const. Art. III..................................................................................................... 1-3, 10

U.S. Const. Amend. XIV, § 1 ......................................................................................10

U.S. Const. Amend. XIV, § 2 ..................................................................................10, 11

U.S. Const. Amend. XV, § 1 ........................................................................................10

U.S. Const. Amend. XIX ..............................................................................................10

U.S. Const. Amend. XXIV, § 1 ....................................................................................10

U.S. Const. Amend. XXVI, § 1 ....................................................................................10

Voting Rights Act, 52 U.S.C. § 10101, *et seq.* ...........................................................11


**Other Authorities**

14 *Am. Jur. 2d Census* § 5 ............................................................................................9

14 *Am. Jur. 2d Census* § 8 ............................................................................................6

41 Op. Att'y Gen. 31 (1949)..........................................................................................6

41 Op. Att'y Gen. 59 (1950)..........................................................................................6

George David Zuckerman, *A Consideration of the History and Present Status of Section 2 of the Fourteenth Amendment*, 30 Fordham L. Rev. 93 (1961)....................................11

Legal Authority for American Community Survey, 2002 U.S. Comp. Gen. LEXIS 268..............9

Thomas A. Berry, *The New Federal Analogy:* Evenwel v. Abbott *and the History of Congressional Apportionment*, 10 NYU J.L. & Liberty 208 (2016)......................................11

**Statement of Interest**

Amicus, the American Center for Law and Justice ("ACLJ"), is an organization dedicated to the defense of constitutional liberties secured by law. Counsel for the ACLJ have presented oral argument, represented parties, and submitted amicus curiae briefs before the Supreme Court of the United States and other courts around the country in many cases involving issues of constitutional law.[1] The ACLJ believes that this brief will be helpful in the Court's consideration of 1) whether Plaintiffs have Article III standing to bring this lawsuit (they do not), and 2) whether the Constitution forbids the inclusion of a question concerning United States citizenship on census questionnaires (it does not). The ACLJ recently filed an amicus brief in similar litigation in the Southern District of New York. *State of New York v. U.S. Dep't of Commerce*, No. 1:18-cv-2921-JMF (S.D.N.Y.). The parties have consented to this filing.

**Argument**

**I.    Plaintiffs lack Article III standing to bring this lawsuit.**

"[T]he case-or-controversy limitation is crucial in maintaining the 'tripartite allocation of power' set forth in the Constitution." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (citation omitted). Plaintiffs "carry the burden of establishing their standing under Article III" by alleging injury that is "concrete and particularized" (rather than "conjectural or hypothetical"), "actual or imminent," "fairly traceable to the defendant's allegedly unlawful conduct," and "likely to be redressed by the requested relief." *Id.* at 342 (citations omitted).

The Amended Complaint rests upon a series of speculative assumptions that are fatal to Plaintiffs' ability to establish Article III standing. *See* Mot. to Dismiss ("MTD"), Dkt. #37, at (ECF page numbers) 11-17. Plaintiffs allege that the inclusion of the citizenship question on census questionnaires will cause an undercount in the final census numbers (in 2020 or later) for their particular jurisdictions that will ultimately harm them in various ways. This is pure speculation. Most

---

[1] *See, e.g.*, *Trump v. Hawaii*, No. 16-1540, 2017 U.S. LEXIS 4322 (July 19, 2017); *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080 (2017); *United States v. Texas*, 136 S. Ct. 2271 (2016); *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009); *FEC v. Wis. Right to Life*, 551 U.S. 449 (2007); *McConnell v. FEC*, 540 U.S. 93 (2003); *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384 (1993); *Bd. of Educ. v. Mergens*, 496 U.S. 226 (1990).

1  censuses conducted since 1820 have included questions concerning citizenship. *See, e.g.,* MTD at 1,

2  3-4, 26-27; *Morales v. Daley*, 116 F. Supp. 2d 801, 806 (S.D. Tex. 2000). Plaintiffs have no basis to

3  support their conjecture that somehow the accuracy of the 2020 Census will be markedly different

4  than past censuses due to the inclusion of the citizenship question, let alone that *each individual*

5  *Plaintiff* will be harmed in a *concrete, particularized manner* by the inclusion of the citizenship

6  question.

7       Furthermore, the collection of information in response to census questionnaires is only one

8  step in a long process that will eventually result in the final census figures that Plaintiffs fear will

9  provide a basis for hypothetical future harms to be inflicted upon them, making Plaintiffs' pre-census

10  challenge particularly inappropriate. As the Supreme Court has explained,

11       *For potential litigants . . . the "decennial census" still presents a moving target*, even after

12  the Secretary reports to the President. . . . *It is not until the President submits the information to Congress that the target stops moving*, because only then are the States entitled by § 2a to a particular number of Representatives. . . . *The President, not the Secretary, takes the final*

13  *action that affects the States*.

14

15  *Franklin v. Massachusetts*, 505 U.S. 788, 797-99 (1992) (emphasis added).[2]

16       Additionally, at this stage of the pre-census process, Plaintiffs cannot allege with any

17  plausible degree of likelihood which particular States will gain or lose Representatives in Congress,

18  let alone which States, if any, will gain or lose Representatives *because the citizenship question will*

19  *be included*. In census-related cases decided on the merits by the Supreme Court, the plaintiffs

20  established a much higher likelihood of a concrete, specific injury. *See, e.g., Utah v. Evans*, 536 U.S.

21  452, 458-64 (2002) (Utah had standing to bring a *post-census* lawsuit challenging use of a counting

22  method, as it was *undisputed* that Utah would gain a Congressional seat at the expense of North

23  Carolina should it prevail); *Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 330-

24  34 (1999) (certain plaintiffs had standing to challenge the use of certain sampling techniques because

25  it was "virtually certain" that their state would lose a Representative or "substantially likely" that

26

27  ───────────────────

28  [2] Although the foregoing discussion occurred in the context of addressing the merits of an APA claim, it illustrates that the present lawsuit is not ripe for Article III purposes.

1  their local jurisdictions would lose voting power in state elections due to such techniques); *Franklin*,

2  505 U.S. at 802 (considering the merits of certain claims brought in *post-census* lawsuit challenging

3  use of a counting method, as it was clear that Massachusetts would gain a Congressional seat at the

4  expense of Washington should it prevail; plaintiffs lacked standing to challenge the accuracy of the

5  data used, however, because they "have neither alleged nor shown . . . that Massachusetts would have

6  had an additional Representative if the allocation had been done using some other source of 'more

7  accurate' data").

8      Here, by contrast, Plaintiffs assert (among other things) that the citizenship question will

9  cause an undercount of immigrants that will, in turn, result in the loss of Congressional seats and

10  federal funding. Article III jurisdiction cannot be supported by such a thin reed. Plaintiffs cannot

11  demonstrate whether, or how, the citizenship question will impact overall response rates, let alone

12  that rates in their jurisdictions will be negatively impacted more than in other States or cities.

13  Furthermore, even assuming that Plaintiffs could actually make such a showing, no one can predict

14  what the complex federal funding scheme will look like years from now at the point at which the

15  final census figures are eventually released. For instance, Congress could implement provisions that

16  account for the alleged undercount that Plaintiffs fear, negating any anticipated harm to Plaintiffs'

17  financial interests. *Cf. DaimlerChrysler Corp.*, 547 U.S. at 344-45 (noting that speculating how

18  elected officials will exercise their taxing and spending powers in the future is an insufficient basis

19  for establishing Article III standing).[3] The present lawsuit is similar to cases in which courts deemed

20  the injuries alleged too speculative.[4]

---

[3] Plaintiffs' other alleged injuries are also too speculative to meet Article III's requirements. For instance, Plaintiffs are not barred by the Constitution or the Census Act from taking the now-hypothetical undercount into consideration when they draw electoral district lines or allocate state and local funds (if a Plaintiff can demonstrate that such an undercount actually occurs).

[4] *See, e.g., Sharrow v. Brown*, 447 F.2d 94, 97 (2d Cir. 1971) (voter lacked standing to bring lawsuit seeking to require the Census Bureau to compile statistics on the number of male adult citizens whose right to vote has been improperly denied; "to establish standing . . . Sharrow would have to show, at least approximately, the apportionment his interpretation of 14/2 would yield, not only for New York but for every other State as well. This would necessitate a state-by-state study of the disenfranchisement of adult males, a task of great proportions."); *Sharrow v. Peyser*, 443 F. Supp. 321 (S.D.N.Y. 1977), *aff'd* 582 F.2d 1271 (2d Cir. 1978) (similar holding); *Lampkin v. Connor*, 239

---

1  **II.     The First Claim for Relief, alleging that inclusion of a citizenship question on the 2020**
2  **Census is unconstitutional, is without merit and should be dismissed.**

3      **A.     The Constitution and federal statutes give the political branches nearly**
        **unfettered discretion to determine the manner in which the census is conducted,**
4      **including the content of census questionnaires.**

5          The Constitution gives Congress virtually unlimited authority to decide the manner in which

6  the census will be conducted: "The actual Enumeration shall be made within three Years after the

7  first Meeting of the Congress of the United States, and within every subsequent Term of ten Years,

8  *in such Manner as they shall by Law direct*." U.S. Const. Art. I, § 2, cl. 3 (emphasis added); *see also*

9  MTD at 1, 2, 18-22. Congress, in turn, has given the Secretary of Commerce broad discretion to

10  determine how the Census Bureau should conduct the census: "The Secretary shall . . . take a

11  decennial census of population . . . *in such form and content as he may determine*. . . . In connection

12  with any such census, the Secretary is authorized to obtain such other census information as

13  necessary." 13 U.S.C. § 141(a) (emphasis added); *cf.* 13 U.S.C. § 5 ("The Secretary shall prepare

14  questionnaires, and shall determine the inquiries, and the number, form, and subdivisions thereof, for

15  the statistics, surveys, and censuses provided for in this title.").

16          Given the Secretary's unmistakably broad authority to determine the form and content of the

17  census, it is unsurprising that courts have routinely rejected lawsuits—like the present one—alleging

18  that the census is being conducted in an unconstitutional manner. For example, in *Baldrige v.*

19  *Shapiro*, 455 U.S. 345 (1982), the Supreme Court emphasized, in a unanimous decision, the broad

20  discretion that the Constitution gives the political branches to determine how to conduct the census.

21  *Id.* at 347-48. The Court held that Congress' decision to prohibit the disclosure of raw data reported

22

23  F. Supp. 757, 760-62 (D.D.C. 1965), *aff'd* 360 F.2d 505 (D.C. Cir. 1966) (United States citizens
24  lacked standing to assert claim that their states would be entitled to more Representatives if Section
    2 of the 14th Amendment were enforced; "it would be sheer speculation that [data concerning
25  disenfranchised U.S. citizens] would result in the acquisition of one or more House seats by any one,
    let alone all of the States in which Group 1 plaintiffs reside. . . . The resulting reapportionment could
26  add to, take away from, or even leave unaffected the number of House seats. . . ."); *see also Ridge v.*
    *Verity*, 715 F. Supp. 1308, 1311 (W.D. Pa. 1989); *Fed'n for Am. Immigration Reform (FAIR) v.*
27  *Klutznick*, 486 F. Supp. 564, 565-66, 570-72 (D.D.C. 1980); *Quon v. Stans*, 309 F. Supp. 604, 607
28  (N.D. Cal. 1970).

by individuals "was within congressional discretion, for Congress is vested by the Constitution with authority to conduct the census 'as they shall by Law direct.' *The wisdom of its classifications is not for us to decide* in light of Congress' 180 years' experience with the census process." *Id.* at 361 (emphasis added).

Furthermore, in *Wisconsin v. City of New York*, 517 U.S. 1 (1996), the Court rejected a challenge to the Secretary's decision not to statistically adjust the 1990 Census in a manner that the plaintiffs alleged would have helped correct the undercount of minorities. The Court emphasized that "the Constitution vests Congress with wide discretion over apportionment decisions and the conduct of the census." *Id.* at 15 (citing *Franklin*, 505 U.S. 788). As the Court explained,

> [t]he text of the Constitution vests Congress with virtually unlimited discretion in conducting the decennial "actual Enumeration," see Art. I, § 2, cl. 3, and notwithstanding the plethora of lawsuits that inevitably accompany each decennial census, there is no basis for thinking that Congress' discretion is more limited than the text of the Constitution provides. . . . [S]o long as the Secretary's conduct of the census is "consistent with the constitutional language and the constitutional goal of equal representation," *Franklin*, 505 U.S. at 804, it is within the limits of the Constitution. In light of the Constitution's broad grant of authority to Congress, the Secretary's decision not to adjust need bear only a reasonable relationship to the accomplishment of an actual enumeration of the population, keeping in mind the constitutional purpose of the census. . . .
>
> [T]he basis for our deference to the Secretary's determination . . . . arises not from the highly technical nature of his decision, but rather from the wide discretion bestowed by the Constitution upon Congress, and by Congress upon the Secretary. Regardless of the Secretary's statistical expertise, it is he to whom Congress has delegated its constitutional authority over the census. . . .

*Id.* at 19-20, 23-24.

Similarly, in *Utah v. Evans*, the Court rejected Utah's claim that "the words 'actual Enumeration' as those words appear in the Constitution's Census Clause" "require the Census Bureau to seek out each individual." 536 U.S. at 473 (quoting Art. I, § 2, cl. 3). The Court stated,

> The Constitution's text does not specify any such limitation. Rather the text uses a general word, "enumeration," that refers to a counting process without describing the count's methodological details. . . . The final part of the sentence says that the "actual Enumeration" shall take place "in such Manner as" Congress itself "shall by Law direct," thereby suggesting the breadth of congressional methodological authority, rather than its limitation.

*Id.* at 474 (citing *Wisconsin*, 517 U.S. at 19); *id.* at 478-79 (the Framers did not "prescribe[] . . . the precise method by which Congress was to determine the population," and "they did not write detailed census methodology into the Constitution"); *Franklin*, 505 U.S. at 792-93, 806 (upholding the Secretary's decision to utilize a practice that had only been previously used for the 1900 and 1970 Censuses because it was "a judgment, consonant with, though not dictated by, the text and history of the Constitution").

Various other legal opinions have recognized the broad authority that the Constitution and relevant statutes grant to the political branches to determine how the census should be conducted. For instance, the U.S. Court of Appeals for the D.C. Circuit has acknowledged that

> the national census is exclusively within the authority of the Congress of the United States, and the Director of the Census has been designated as the administrative agency through which that authority shall be exercised. The director is necessarily invested with discretion in matters of form and procedure when these are not specifically provided for by law. . . .

*U.S. ex rel. City of Atlanta v. Steuart*, 47 F.2d 979, 981-82 (D.C. Cir. 1931) (cited in 14 *Am. Jur. 2d Census* § 8). A 1949 Opinion of the U.S. Attorney General similarly noted that

> "[t]he statutes governing the decennial censuses have uniformly left the actual administration of a great number of necessary details to the judgment and discretion of the Director of the Census. . . . Innumerable problems . . . which have not been dealt with in the statutes, obviously arise frequently in the taking of censuses. Decisions on such matters have, historically, been made by the Director of the Census, and the Congress has through the years acquiesced in this practice."

41 Op. Att'y Gen. 31, 33 (1949) (quoted in *Borough of Bethel Park v. Stans*, 319 F. Supp. 971, 976 (W.D. Pa. 1970), *aff'd by* 449 F.2d 575 (3d Cir. 1971)); *cf.* 41 Op. Att'y Gen. 59, 62 (1950).

Additionally, in *Tucker v. U.S. Dep't of Commerce*, 958 F.2d 1411 (7th Cir. 1992), the U.S. Court of Appeals for the Seventh Circuit affirmed dismissal of a lawsuit that alleged that the Census Bureau violated, *inter alia*, the Apportionment Clause by declining to adjust raw census figures to account for undercounts. The court stated:

> [T]he question remains whether the various provisions invoked by the plaintiffs should be construed to authorize suits for judicial review of inaccurate census determinations, and our answer is no. The decennial census is a part--maybe the most important part, but a part nevertheless--of a vast federal activity of collecting and publishing statistics. Every methodological decision made in the government's statistical programs has a potentially adverse impact on some, perhaps many, persons. . . .

It might be different if the apportionment clause, the census statutes, or the Administrative Procedure Act contained guidelines for an accurate decennial census, for that would be some evidence that the framers of these various enactments had been trying to create a judicially administrable standard. There is nothing of that sort, and the inference is that these enactments do not create justiciable rights.

*Id.* at 1417-18.[5]

### B. The Constitution and federal statutes authorize the Census Bureau to collect a wide range of information about the population—beyond a mere head count—as a part of the census process.

The Supreme Court has long recognized that the federal government has broad power to obtain, through the census process, an array of information about the country's population. Shortly after the post-Civil War Amendments were ratified, the Supreme Court stated:

Congress has often exercised, without question, powers that are not expressly given nor ancillary to any single enumerated power. . . . Another illustration of this may be found in connection with the provisions respecting a census. The Constitution orders an enumeration of free persons in the different States every ten years. The direction extends no further. Yet Congress has repeatedly directed an enumeration not only of free persons in the States but of free persons in the Territories, and not only an enumeration of persons but the collection of statistics respecting age, sex, and production. Who questions the power to do this?

*Legal Tender Cases*, 79 U.S. (12 Wall) 457, 535-36 (1871); *see also* MTD at 2, 3, 27-29.

Moreover, in *Baldrige v. Shapiro*, the Court noted that, although the "initial constitutional purpose [of the census] was to provide a basis for apportioning representatives among the states in the Congress," "the census also provides important data for Congress and ultimately for the private sector." 455 U.S. at 353. As the Court explained,

[d]uring congressional debates James Madison emphasized the importance of census information beyond the constitutionally designated purposes and encouraged the new Congress to "embrace some other subjects besides the bare enumeration of the inhabitants." "This kind of information, [Madison] observed, all legislatures had wished for. . . . If the plan was pursued in taking every future census, it would give them an opportunity of marking the progress of the society, and distinguishing the growth of every interest."

*Id.* at 353, n.9 (citation omitted).

---

[5] *See also City of Detroit v. Sec'y of Commerce*, 4 F.3d 1367, 1376-78 (6th Cir. 1993); *United States v. Little*, 321 F. Supp. 388, 391 (D. Del. 1971); *Quon*, 309 F. Supp. at 607; *Borough of Bethel Park*, 319 F. Supp. at 975-76.

1    Numerous other decisions reaffirm these principles. In *United States v. Moriarity*, 106 F. 886
2  (C.C.S.D.N.Y. 1901), a census taker was indicted for submitting a false census questionnaire that
3  sought business-related information from a manufacturer. He argued that there was no constitutional
4  basis for the questionnaire because the government is only authorized to take a basic head count of
5  the population. *Id.* at 890-91. The court rejected this argument, stating:

> For the national government to know something, if not everything, beyond the fact that the
> population of each state reaches a certain limit, is apparent, when it is considered what is the
> dependence of this population upon the intelligent action of the general government.
>
> . . . [For many purposes] the government needs each item of information demanded by the
> census act, and such information, when obtained, requires the most careful study, to the end
> that the fulfillment of the governmental function may be wise and useful. . . . A government
> whose successful maintenance depends upon the education of its citizens may not blindly
> legislate, but may exercise the right to proclaim its commands, after careful and full
> knowledge of the business life of its inhabitants, in all its intricacies and activities.

*Id.* at 891-92. The court added that "there could be no objection to acquiring this information through
the same machinery by which the population is enumerated, especially as such course would favor
economy as well as the convenience of the government and the citizens." *Id.* at 891. Another decision
has also recognized that "[t]he authority to gather reliable statistical data reasonably related to
governmental purposes and functions is a necessity if modern government is to legislate intelligently
and effectively." *United States v. Rickenbacker*, 309 F.2d 462, 463 (2d Cir. 1962); *cf. United States
v. Bethlehem Steel Corp.*, 21 F.R.D. 568, 570 & n.1 (S.D.N.Y. 1958).

    Furthermore, in *Morales v. Daley*, the court rejected a lawsuit brought by several United
States Citizens who alleged that use of the short form and long form 2000 Census questionnaires,
both of which asked numerous questions in addition to the mere number of people residing at the
location, were unconstitutional. 116 F. Supp. 2d 801. The court reviewed several cases recognizing
that the census-related provisions of the Constitution and the Necessary and Proper Clause give the
federal government wide-ranging authority to request information in the course of conducting the
census. *Id.* at 809-10, 814 (citations omitted).

In addition, the court noted that, "from the first census, taken in 1790, the Congress has never performed a mere headcount. It has always included additional data points, such as race, sex, and age of the persons counted." *Id.* at 809; *id.* at 818 ("The fact that the First Congress included questions in addition to the head count is strong support for the constitutionality of additional questions as a general proposition."). The court also stated that

> Plaintiffs may disagree with the government's need to know such information, but Congress has delegated to the Bureau the authority to decide what is needed and to ask the appropriate questions. . . . The issue raised by the plaintiffs is one properly addressed by Congress, not by the courts.

*Id.* at 814-15; *cf.* 14 *Am. Jur. 2d Census* § 5; Legal Authority for American Community Survey, 2002 U.S. Comp. Gen. LEXIS 268, at *2, 4-5, B-289852 (Apr. 4, 2002) (the Census Bureau has the authority to conduct the American Community Survey; "courts have generally viewed the authority of Commerce and the Bureau to gather census information broadly"); *Little*, 321 F. Supp. at 392 (rejecting argument that census questionnaire constituted an unconstitutional invasion of privacy; the court noted that the primary purpose of the questionnaire was "to provide statistical information on which the legislative and executive departments may wisely and effectively act in those governmental areas to which this information pertains").

One particularly problematic aspect of Plaintiffs' constitutional claim is that it represents an attempt by State and local governments to rewrite the census questionnaire. One of the "important constitutional determinations" reflected in the Census Clause is "that Congress, not the States would determine the manner of conducting the census." *Utah*, 536 U.S. at 477; *see also Steuart*, 47 F.2d at 981-82 (noting that the Census Bureau "is necessarily invested with discretion in matters of form and procedure when these are not specifically provided for by law, and the exercise of this authority cannot be controlled by state legislation").

## C.   Citizenship is a constitutionally permissible area of inquiry on a census questionnaire.

Although any lawsuit challenging the constitutionality of the subject matter of census questionnaires is highly dubious for the reasons discussed previously, the constitutional basis for

1  citizenship-related questions is particularly strong. The Supreme Court has noted that "a host of

2  constitutional and statutory provisions rest on the premise that a legitimate distinction between

3  citizens and aliens may justify attributes and benefits for one class not accorded to the other," and

4  has also observed that "[a] multitude of federal statutes distinguish between citizens and aliens."

5  *Mathews v. Diaz*, 426 U.S. 67, 78 & n.12 (1976). It is quite notable that the Census Act states that

6  "[a]ll permanent officers and employees of the Bureau shall be citizens of the United States." 13

7  U.S.C. § 22. This requirement was first implemented in 1902. 32 Stat. 51, 53 (1902).

8      The Constitution includes many provisions that differentiate between United States Citizens

9  and other individuals.[6] For instance, Section 2 of the 14th Amendment states:

10     Representatives shall be apportioned among the several States according to their respective
       numbers, counting the whole number of persons in each State, excluding Indians not taxed.
11     But when the right to vote at any election for the choice of electors for President and Vice
       President of the United States, Representatives in Congress, the Executive and Judicial
12     officers of a State, or the members of the Legislature thereof, is denied to any of the male
       inhabitants of such State, being twenty-one years of age, and citizens of the United States, or
13     in any way abridged, except for participation in rebellion, or other crime, the basis of
       representation therein shall be reduced in the proportion which the number of such male
14     citizens shall bear to the whole number of male citizens twenty-one years of age in such State.

15

16     This provision clearly gives the federal government authority to collect information

17  concerning, *inter alia*, "the whole number of male citizens twenty-one years of age" within each

18  State.[7]

19     [I]t would be impossible to carry out the express command of . . . Section 2 of the Fourteenth
       Amendment, without an accurate count of both franchised and disenfranchised male adult
20     citizens. . . . [T]here is little doubt that when the Fourteenth Amendment was passed, its
       enactors intended that the census take note of whether every male 21-year-old citizen is
21     eligible to vote, and if not, for what reason.

22  _____

23  [6] *See, e.g.*, U.S. Const. Art. I, § 2, cl. 2, Art. I, § 3, cl. 3, and Art. II, § 1, cl. 5 (imposing various
    citizenship requirements for Representatives, Senators, and Presidents); Art. III, § 2, cl. 1 (federal
24  judicial power "shall extend . . . to Controversies . . . between a State, or the Citizens thereof, and
    foreign States, Citizens or Subjects"); Amend. XIV, § 1 ("All persons born or naturalized in the
25  United States, and subject to the jurisdiction thereof, are citizens of the United States. . . . No State
    shall make or enforce any law which shall abridge the privileges or immunities of citizens of the
26  United States."); Amends. XV, § 1, XIX, XXIV, § 1, and XXVI, § 1 (the right of United States
    citizens to vote shall not be denied or abridged on account of various bases).
27  [7] In light of the ratification of the 19th and 26th Amendments, Section 2 of the 14th Amendment
28  should be understood to encompass all United States citizens eighteen years of age or older.

Thomas A. Berry, *The New Federal Analogy:* Evenwel v. Abbott *and the History of Congressional Apportionment*, 10 NYU J.L. & Liberty 208, 263-64, 270-71 (2016); *id.* at 265, n.177; *see also* George David Zuckerman, *A Consideration of the History and Present Status of Section 2 of the Fourteenth Amendment*, 30 Fordham L. Rev. 93, 108-11, 136 (1961). During the 1870 Census (the first taken after the 14th Amendment was ratified), the Secretary of the Interior directed that census takers count, among other things, the number of male United States citizens twenty-one years of age or older within each State, and that information was provided to Congress. *Id.* at 110-11, 136; Berry, *supra*, at 268-69; MTD at 3 n.2.

Although Section 2 of the 14th Amendment *authorizes* the political branches of the federal government to collect information concerning the number of U.S. Citizens within each State, courts will not *require* such collection in light of the broad discretion that the Constitution affords to the political branches to determine the manner and content of the census.[8] There will be many other valid uses for the citizenship data that the 2020 Census will yield; for instance, data concerning the United States Citizen voting-age population (CVAP) in a particular jurisdiction is often relevant, and necessary, in Voting Rights Act cases.[9] Moreover, some States may desire to consider citizenship data in their future redistricting decisions.[10]

---

[8] *See, e.g., Sharrow*, 447 F.2d at 98 & n.9; *United States v. Sharrow*, 309 F.2d 77, 79-80 (2d Cir. 1962); *Lampkin*, 239 F. Supp. at 765-66; *cf. Saunders v. Wilkins*, 152 F.2d 235 (4th Cir. 1945).

[9] *See, e.g.,* MTD at 1; *Reyes v. City of Farmers Branch Tex.*, 586 F.3d 1019, 1021-22 & n.12 (5th Cir. 2009); *Negron v. City of Miami Beach*, 113 F.3d 1563, 1569 (11th Cir. 1997); *Romero v. City of Pamona*, 883 F.2d 1418, 1426 (9th Cir. 1989), *overruled in part on other grounds by Townsend v. Holman Consulting Corp.*, 914 F.2d 1136, 1141 (9th Cir. 1990); *Meza v. Galvin*, 322 F. Supp. 2d 52, 59-60 (D. Mass. 2004).

[10] The Supreme Court has left open the question of whether "States may draw districts to equalize voter-eligible population rather than total population." *Evenwel v. Abbott*, 136 S. Ct. 1120, 1133 (2015); *id.* at 1142 (Thomas, J., concurring) ("[A] State has wide latitude in selecting its population base for apportionment. . . . It can use total population, eligible voters, or any other nondiscriminatory voter base."); *id.* at 1144 (Alito, J., concurring); *Burns v. Richardson*, 384 U.S. 73, 93-94 (1966) (upholding state authority to use registered-voter data for districting decisions).

**Conclusion**

This lawsuit is based upon speculative assumptions about hypothetical future injuries that may not materialize. Additionally, the extent to which the census seeks information concerning United States citizenship is a discretionary policy decision for Congress, the Secretary of Commerce, and the Census Bureau to make. Plaintiffs' constitutional claim should be dismissed.

Respectfully submitted on June 29, 2018.

/s/ Vladimir F. Kozina
Vladimir F. Kozina, SBN 95422
MAYALL HURLEY, P.C.
2453 Grand Canal Blvd.
Stockton, CA 95207
Tel. (209) 477-3833
Email: vkozina@mayallaw.com

Jay Alan Sekulow*
Stuart J. Roth*
Jordan Sekulow*
AMERICAN CENTER FOR LAW AND JUSTICE
201 Maryland Avenue, NE
Washington, DC 20002
Tel. (202) 546-8890

* Not admitted in this jurisdiction

*Counsel for Amicus Curiae ACLJ*

1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

7
8
9
10
11
12
13
14

STATE OF CALIFORNIA, *et al.*,

     Plaintiffs,

v.

WILBUR L. ROSS, JR., *et al.*,

     Defendants.

_____

)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 3:18-cv-01865-RS

**[PROPOSED] ORDER**

15
16
17
18
19
20
21
22
23
24
25
26
27
28

1   The Court, having considered the AMERICAN CENTER FOR LAW AND JUSTICE'S

2   MOTION FOR LEAVE TO FILE MEMORANDUM OF LAW AS AMICUS CURIAE IN

3   SUPPORT OF DEFENDANTS' MOTION TO DISMISS, hereby GRANTS the motion. The

4   MEMORANDUM OF LAW OF AMICUS CURIAE THE AMERICAN CENTER FOR LAW AND

5   JUSTICE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS is accepted for filing.

6

7   SO ORDERED.

8

9   Dated _____

10

11

12                                   _____
                                     Richard Seeborg
13                                   United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28