1  Sue Ann Salmon Evans, State Bar No. 151562
   sevans@DWKesq.com
2  Keith A. Yeomans, State Bar No. 245600
   kyeomans@DWKesq.com
3  DANNIS WOLIVER KELLEY
   115 Pine Avenue, Suite 500
4  Long Beach, CA  90802
   Telephone: 562.366.8500
5  Facsimile: 562.366.8505

6  David R. Holmquist, State Bar No. 179872
   david.holmquist@lausd.net
7  LOS ANGELES UNIFIED SCHOOL DISTRICT
   OFFICE OF GENERAL COUNSEL
8  333 S. Beaudry Avenue, 24th Floor
   Los Angeles, CA 90017
9  Telephone: 213.241.6601
   Facsimile: 213.241.8444

10

11 Attorneys for Proposed Plaintiff-Intervenor
   Los Angeles Unified School District

12                UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14

15 STATE OF CALIFORNIA, et al.,            Case No. 3:18-cv-01865-RS

16              Plaintiffs,
                                           **PROPOSED PLAINTIFF-INTERVENOR**
   v.                                      **LOS ANGELES UNIFIED SCHOOL**
17                                         **DISTRICT'S NOTICE OF MOTION AND**
   WILBUR L. ROSS, JR., et al.,            **MOTION FOR LEAVE TO INTERVENE**
18
                Defendants.
19
                                           Date:   August 10, 2018 (Specially Set)
20                                         Time:   10:00 a.m.
                                           Judge: Honorable Richard Seeborg
21                                         Dept.: 3

22
                                           Complaint filed March 26, 2018
23                                         First Amended Complaint filed May 4, 2018

24                                         Trial date:  None set

25

26

27

28

*(left margin vertical text)* DANNIS WOLIVER KELLEY / 115 PINE AVENUE, SUITE 500 / LONG BEACH, CA  90802

1

TO THE PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on August 10, 2018 at 10:00 a.m. in Courtroom 3 of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, proposed Plaintiff-Intervenor Los Angeles Unified School District ("LAUSD" or "District") will and hereby does move this Court to permit it to intervene in this matter.

LAUSD brings this motion pursuant to Federal Rule of Civil Procedure 24, and seeks intervention as a matter of right or, in the alternative, permissive intervention. As of the time LAUSD prepared this motion, the City of Fremont had stipulated to LAUSD's entry to this case; none of the remaining parties expressly supported or opposed LAUSD's intervention.

District is entitled to intervention as a matter of right because its motion is timely; it has a significantly protectable interest in this action; the disposition of this action will almost certainly impair or impede its ability to protect its interest; and no existing parties will adequately represent its interests. In the alternative, LAUSD should be afforded leave to intervene as LAUSD's claims share common questions of law and fact and the existing parties will not be prejudiced by LAUSD's entry to this case at this early stage of the proceedings.

This motion is based on this notice, the attached memorandum of points and authorities, the proposed order and proposed complaint in intervention (attached hereto as Exhibit A) filed and served concurrently herewith, all papers and pleadings on file, and on such further oral and documentary evidence that may be offered at the motion hearing.

DATED: July 6, 2018

DANNIS WOLIVER KELLEY
SUE ANN SALMON EVANS
KEITH A. YEOMANS

By: _____
SUE ANN SALMON EVANS
Attorneys for Proposed Plaintiff-Intervenor
Los Angeles Unified School District

# **TABLE OF CONTENTS**

Page

TABLE OF CONTENTS ................................................................................................................ 3

TABLE OF AUTHORITIES ......................................................................................................... 4

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 6

I.      INTRODUCTION ............................................................................................................ 6

II.     BACKGROUND ............................................................................................................... 7

III.    LAUSD MAY INTERVENE AS A MATTER OF RIGHT .......................................... 8

        A.      LAUSD's Present Motion Is Timely ..................................................................... 9

        B.      LAUSD Has a Significantly Protectable Interest in This Suit .............................. 10

        C.      LAUSD's Interest May Be Affected in This Litigation ....................................... 12

        D.      LAUSD's Interest in Preserving Educational Funding Is Not Adequately
                Represented by the Existing Parties ....................................................................... 13

IV.     IN THE ALTERNATIVE, LAUSD SHOULD BE PERMITTED LEAVE TO
        INTERVENE ................................................................................................................... 14

V.      CONCLUSION ............................................................................................................... 15

Dannis Woliver Kelley
115 Pine Avenue, Suite 500
Long Beach, CA  90802

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DWK DMS 3275584v1

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Federal Cases**

4

*Arakaki v. Cayetano*,
    324 F.3d 1078 (9th Cir. 2003)................................................................ 6, 8, 10, 13

*Brown v. Board of Education*,
    347 U.S. 483 (1954) .......................................................................................... 11

*Brumfield v. Dodd*,
    749 F.3d 339 (5th Cir. 2014).............................................................................. 11

*Cabazon Band of Mission Indians v. Wilson*,
    124 F.3d 1050 (9th Cir. 1997)............................................................................. 8

*California ex rel. Lockyer v. United States*,
    450 F.3d 436 (9th Cir. 2006)............................................................................. 10

*Californians for Safe Dump Truck Transp. v. Mendonca*,
    152 F.3d 1184 (9th Cir.1998)............................................................................ 13

*Donnelly v. Glickman*,
    159 F.3d 405 (9th Cir. 1998)............................................................................. 15

*Edwards v. City of Houston*,
    78 F.3d 983 (5th Cir. 1996)................................................................................. 9

*In re Est. of Ferdinand E. Marcos Human Rights Litig.*,
    536 F.3d 980 (9th Cir. 2008)............................................................................. 11

*Fed'n for Am. Immigration Reform v. Klutznick*,
    486 F. Supp. 564 (D.D.C. 1980) .................................................................... 7, 12

*Michigan State AFL-CIO v. Miller*,
    103 F.3d 1240 (6th Cir. 1997)........................................................................... 12

*Sagebrush Rebellion, Inc. v. Watt*,
    713 F.2d 525 (9th Cir. 1983)............................................................................. 13

*SEC v. Navin*,
    166 F.R.D. 435 (N.D. Cal. 1995) ...................................................................... 12

*Smith v. Los Angeles Unified Sch. Dist.*,
    830 F.3d 843 (9th Cir. 2016)............................................................................... 9

*UMG Recordings, Inc. v. Bertelsmann AG*,
    222 F.R.D. 408 (N.D. Cal. 2004) ...................................................................... 14

DANNIS WOLIVER KELLEY
115 PINE AVENUE, SUITE 500
LONG BEACH, CA  90802

4

*United States v. Union Elec. Co.*,
   64 F.3d 1152 (8th Cir. 1995) ........................................................................ 9

*Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*,
   922 F.2d 92 (2d Cir. 1990) ........................................................................ 15

*WildEarth Guardians v. National Park Service*,
   604 F.3d 1192 (10th Cir. 2010) ................................................................ 12

**State Cases**

*Serrano v. Priest*,
   5 Cal.3d 584 (1971) .................................................................................. 11

**Constitutional Provisions**

U.S. Const., Article I, § 2 ............................................................................ 10

U.S. Const., Article I, § 2, cl. 3 .................................................................... 7

**Rules**

Fed. R. Civ. P. 24 ............................................................................ 2, 6, 8, 9, 15

Fed. R. Civ. P. 24(a)(2) ................................................................ 6, 8, 10, 12

Fed. R. Civ. P. 24(b)(1)(B) ................................................................ 6, 14

Fed. R. Civ. P. 24(b)(3) .................................................................... 6, 14

**Other Authorities**

7C Wright, Miller & Kane, § 1909 (1986) ................................................ 13

DANNIS WOLIVER KELLEY
115 PINE AVENUE, SUITE 500
LONG BEACH, CA 90802

DWK DMS 3275584v1

LAUSD'S MOTION FOR LEAVE TO INTERVENE   (18-cv-01865)

DANNIS WOLIVER KELLEY
115 PINE AVENUE, SUITE 500
LONG BEACH, CA 90802

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

LAUSD is the second largest school district in the nation, enrolling approximately 600,000 students in kindergarten through 12th grade, at over 1,300 schools and centers, and overseeing 187 independent public charter schools. LAUSD's boundaries are spread across 720 square miles and serve the City of Los Angeles along with all or part of 26 additional towns/cities.  Nearly 90% of the District's student population is comprised of minority students and a disproportionately high number of LAUSD's students are, or have family members who are, non-citizens.

LAUSD receives hundreds of millions of dollars in federal K-12 educational funds that are determined in whole or in part by data from the decennial census.  These federal education programs largely target and assist community schools with high percentages of students with disabilities or from low income families, i.e., children with the very highest need.  Any underrepresentation reflected in the decennial census would have a direct and immediate impact on LAUSD's federal funding levels and its ability to provide core educational services.

Intervention is governed by Federal Rule of Civil Procedure 24 and is to be liberally construed in favor of intervention.  *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003).  A non-party *must* be permitted to intervene in litigation where, upon timely motion, the non-party "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).  LAUSD is entitled to intervene as a matter of right in order to preserve its federal K-12 educational funding tied directly to the federal decennial census.

In the alternative, LAUSD's permissive intervention is appropriate.  A non-party *may* be permitted to intervene in litigation where, upon timely motion, the non-party "has a claim or defense that shares with the main action a common question of law or fact" and intervention will not "unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(1)(B) & (b)(3).  LAUSD seeks the same ultimate relief pursued by the existing Plaintiffs—

a judicial declaration that inclusion of the citizenship question in the decennial census is unconstitutional and in violation of the Administrative Procedures Act as well as an injunction prohibiting Defendants from including the citizenship question in the decennial census. Accordingly, the central legal and factual issues in this case are identical to LAUSD's proposed claims and will neither significantly expand nor delay the existing proceedings. LAUSD should be permitted to intervene.

## II.    BACKGROUND

On December 12, 2017, the U.S. Department of Justice ("DOJ") requested that the Census Bureau include a citizenship question within the U.S. decennial census. The Department of Commerce announced on March 26, 2018, that it would include the citizenship question in its final list of questions to be submitted to Congress. The same day, the State of California filed its original complaint challenging the inclusion of the citizenship question on the decennial census. See, *State of California v. Ross*, case no. 3:18-cv-01865 (N.D. Cal. Mar. 26, 2018). The constitutional apportionment of congressional seats is based upon the "whole Number of free Persons." U.S. Const., art. I, § 2, cl. 3. This includes both citizens and non-citizens. *Id*; *Fed'n for Am. Immigration Reform v. Klutznick*, 486 F. Supp. 564, 568 (D.D.C. 1980). California's claims allege that inclusion of the challenged citizenship question within the decennial census would depress response rates among non-citizens and family members of non-citizens who might reasonably fear their responses would impact their immigration status. Any underrepresentation resulting from the inclusion of the citizenship questions would disproportionately impact areas with higher immigrant populations. Federal funds keyed to decennial census data would also be impacted.

A series of related lawsuits followed California's lead. On April 3, 2018, the State of New York, along with sixteen other states and several municipalities, filed suit in the Southern District of New York. See, *State of New York v. U.S. Dept. of Commerce*, case no. 1:18-cv-01041 (S.D.N.Y. Apr. 3, 2018). Two weeks later, a group of individuals filed suit in the District of Maryland. See, *Kravitz v. U.S. Dept. of Commerce*, case no. 8:18-cv-02921 (D. Md. Apr. 11, 2018). The following week, the City of San Jose and an immigrants' rights organization filed suit

Dannis Woliver Kelley
115 Pine Avenue, Suite 500
Long Beach, CA  90802

DWK DMS 3275584v1

1   in the Northern District of California.  See, *City of San Jose v. Ross*, case no. 5:18-cv-02279

2   (N.D. Cal. Apr. 17, 2018).  Later in May, several immigrants' rights organizations filed another

3   suit in the District of Maryland.  See, *La Unión Del Pueblo Entero v. Ross*, case no. 8:18-cv-

4   01570 (D. Md. May 31, 2018.)  In early June, the ACLU filed suit in the Southern District of

5   New York.  See, *New York Immigration Coalition v. U.S. Dept. of Commerce*, case no. 1:18-cv-

6   05025 (S.D.N.Y. June 6, 2018).

7         On May 4, 2018, California filed a first amended complaint ("FAC") in the present

8   litigation, adding several California municipalities as additional plaintiffs.  In mid-June, the

9   LAUSD Board of Education authorized the District to intervene in the present litigation.  As the

10  second largest school district in the country serving over 600,000 students, LAUSD has a unique

11  educationally-focused interest that is not represented by any of the parties to any of the related

12  suits.  LAUSD now properly brings this motion to ensure its interests are advanced and protected.

13  ## III.   LAUSD MAY INTERVENE AS A MATTER OF RIGHT

14        Intervention is governed by rule 24 of the Federal Rules of Civil Procedure.  Intervention

15  may be mandatory or permissive.  A non-party *must* be permitted to intervene in litigation where,

16  upon timely motion, the non-party "claims an interest relating to the property or transaction that is

17  the subject of the action, and is so situated that disposing of the action may as a practical matter

18  impair or impede the movant's ability to protect its interest, unless existing parties adequately

19  represent that interest." Fed. R. Civ. P. 24(a)(2).  LAUSD is entitled to intervene as a matter of

20  right in order to preserve its federal K-12 educational funding tied to federal decennial census

21  data.  LAUSD's interests are unique, as no other party to this litigation or any of the related

22  lawsuits represents the interests of public school students.

23        Mandatory intervention under rule 24(a)(2) involves a four-part test:

24  (1)   A timely motion by the proposed intervenor;
    (2)   Intervenor has a "significantly protectible" interest relating to the existing lawsuit;
25  (3)   Disposition of the lawsuit may adversely affect intervenor's interest; and,
    (4)   The existing parties do not adequately represent intervenor's interests.
26

27  *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003).  The four-part test must be

28  "interpreted broadly in favor of intervention." *Cabazon Band of Mission Indians v. Wilson*, 124

Dannis Woliver Kelley
115 Pine Avenue, Suite 500
Long Beach, CA  90802

DWK DMS 3275584v1

F.3d 1050, 1061 (9th Cir. 1997).  Here, all four elements support LAUSD's mandatory intervention.

### A.     LAUSD's Present Motion Is Timely

Over the course of the last several months, numerous states, municipalities, organizations, and individuals have initiated or joined claims challenging the inclusion of the proposed citizenship question on the decennial census.  LAUSD's present motion to intervene is temporally consistent with all of the foregoing parties' challenges to the inclusion of the citizenship question on the decennial census.

As with the other requirements under Rule 24, the determination of proposed intervenor's timeliness must be construed broadly in favor of the party seeking intervention.  *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016) [permitting intervention 20 years after suit filed].  Courts generally consider three factors relevant to the issue of timeliness: (1) the stage of the proceedings; (2) any prejudice to the existing parties; and (3) the reason for any delay in seeking leave to intervene.  *Id.*  Mere delay or expansion of issues is not a sufficient basis to deny intervention as the proper focus is only on the "prejudice caused by the applicants' delay, not that prejudice which may result if intervention is allowed."  *Edwards v. City of Houston*, 78 F.3d 983, 1002 (5th Cir. 1996); accord, *United States v. Union Elec. Co.*, 64 F.3d 1152, 1159 (8th Cir. 1995).

Here, this case is still early in the pleading stage.  Defendants have filed a motion to dismiss set for hearing August 10th.

LAUSD's proposed complaint in intervention largely mirrors the allegations and claims presented in Plaintiffs' FAC.  It is only the underlying interests at stake which distinguish LAUSD's claims from the existing Plaintiffs.  Correspondingly, LAUSD's entry will not significantly expand the issues before this Court.  Given the nearly identical allegations in LAUSD's proposed complaint in intervention, LAUSD acknowledges that Defendants' pending motion to dismiss Plaintiffs' FAC is no less applicable to LAUSD's proposed complaint in intervention.  Correspondingly, LAUSD's entry to this case will neither expand the scope of the issues in this litigation nor delay these proceedings in any material respect.

Dannis Woliver Kelley
115 Pine Avenue, Suite 500
Long Beach, CA  90802

DWK DMS 3275584v1

As for the reason for LAUSD's delay, there is no delay to speak of as Plaintiff's FAC was only filed two months ago.  Still, it is noteworthy that LAUSD's 2017-18 school year ends June 8th and its fiscal year ends June 30th.  Correspondingly, the months of May and June are inordinately busy for all school districts as they close the books on 2017-18 and begin preparations for 2018-19.

Given the early stages of this case, the lack of any meaningful prejudice from LAUSD's entry to this case, and the lack any delay by LAUSD, LAUSD's motion to intervene must be regarded as timely.

**B.      LAUSD Has a Significantly Protectable Interest in This Suit**

The Constitution mandates that all persons, citizens and non-citizens, be included in the decennial census.  U.S. Const., art. I, § 2.  All of the suits challenging the citizenship question generally allege that inclusion of the challenged citizenship question in the decennial census will depress responses from non-citizens and relatives of non-citizens, which will, in turn, depress political representation and the allocation of federal resources keyed to the skewed census data. The present suit points, in part, to the potential impact on federal K-12 educational funding likely to result from depressed census responses—particularly in areas with a disproportionately high number of immigrants such as Los Angeles.  See, e.g., First Amended Complaint (Dckt. no. 12) at ¶ 42, p. 11.  Despite the direct impact to our public schools, none of the parties to this suit, or any of the related suits, represent the interests of school districts and/or the tudents/families they serve.

Although no definitive standard exists, the requirement for "significantly protectable interest is generally satisfied when 'the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue.'"  *Arakaki v. Cayetano, supra*, 324 F.3d at 1084, citing *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th Cir.1993).  The Ninth Circuit has rejected the notion that rule 24(a)(2) requires a specific legal or equitable interest.  Instead, "a party has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation."  *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006).

> The "interest" test is not a clear-cut or bright-line rule, because no specific legal or equitable interest need be established. Instead, the "interest" test directs courts to make a practical, threshold inquiry, and is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.

*In re Est. of Ferdinand E. Marcos Human Rights Litig.*, 536 F.3d 980, 984–85 (9th Cir. 2008), citing *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir.2002). Intervention is particularly warranted where, as here, the interest at stake is of public significance. See, *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014).

The public interest in education cannot be overstated. Public education "is perhaps the most important function of state and local governments." *Brown v. Board of Education*, 347 U.S. 483, 493 (1954). It "is the very foundation of good citizenship. Today it is a principal instrument in awakening the child to cultural values, in preparing him for later professional training, and in helping him to adjust normally to his environment. In these days, it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education." *Id.*

> We indulge in no hyperbole to assert that society has a compelling interest in affording children an opportunity to attend school. This was evidenced more than three centuries ago, when Massachusetts provided the first public school system in 1647. [Citation.] And today an education has become the *sine qua non* of useful existence.

*Serrano v. Priest*, 5 Cal.3d 584, 608 (1971).

As LAUSD's vast student body is comprised of a disproportionately high number of non-citizens or have family members that are non-citizens, LAUSD will likewise be disproportionally affected by Defendants' inclusion of the citizenship question and the resulting decennial undercount. Specifically, the District's federal education funding for the 2017-18 school year that was determined primarily or in part upon the decennial census data includes:

- Title I, Part A funds (approx. $328,000,000)
- Title II funds (approx. $27,065,075)
- Title IV, Part A funds (approx. $7,000,000)
- Child Care and Development Block Grant (approx. $5,086,650)[1]
- Children's Health Insurance Program (approx. $673,250)

---

[1] For the 2016-17 school year.

LAUSD'S MOTION FOR LEAVE TO INTERVENE   (18-cv-01865)

DANNIS WOLIVER KELLEY
115 PINE AVENUE, SUITE 500
LONG BEACH, CA  90802

1    In addition, LAUSD receives millions in federal aid to support special needs students

2    under the Individuals with Disabilities Education Act.  These funds are also indirectly tied to the

3    decennial census data.  Many of these federal programs, including Titles I, II, and IV, are driven

4    by census poverty data.  These programs target and assist schools with high percentages of low

5    income families including students with disabilities, i.e., children with the very highest need, to

6    help ensure that all children meet challenging state academic standards.  Underrepresentation

7    from the decennial census would have a direct and immediate impact on LAUSD's federal

8    funding levels and its obligation to provide core educational services.

9    **C.    LAUSD's Interest May Be Affected in This Litigation**

10    For purposes of Federal Rule of Civil Procedure 24(a)(2), it need only be shown that the

11    underlying lawsuit may, "as a practical matter impair or impede the movant's ability to protect its

12    interest."  *SEC v. Navin*, 166 F.R.D. 435, 440 (N.D. Cal. 1995).  As reflected in Plaintiffs' FAC,

13    "[a]t least four former Bureau directors share the view that inquiring about citizenship status on

14    the census 'would likely exacerbate privacy concerns and lead to inaccurate responses from  non-

15    citizens worried about a government records of their immigration status.'"  FAC ¶ 5, p. 3.  Local

16    families with one or more non-citizens are understandably frightened in the current political

17    climate.  The Census Bureau's own research acknowledges that inclusion of a citizenship

18    question will "inevitably jeopardize the overall accuracy of the population count."  *Fed'n for Am.*

19    *Immigration Reform v. Klutznick*, 486 F. Supp. 564, 568 (D.D.C. 1980).

20    For the purposes of LAUSD's intervention, LAUSD is not required to demonstrate that

21    inclusion of the citizenship question will ultimately lead to suppression of response rates.  The

22    required showing under rule 24(a)(2) is "minimal," as the "would-be intervenor must show only

23    that impairment of its substantial legal interest is *possible* if intervention is denied."  *Michigan*

24    *State AFL-CIO v. Miller*, 103 F.3d 1240, 1247 (6th Cir. 1997) (emphasis added); *WildEarth*

25    *Guardians v. National Park Service*, 604 F.3d 1192, 1199 (10th Cir. 2010).  While LAUSD

26    maintains that response rates from non-citizens and family members of noncitizens will be

27    depressed if the challenged citizenship question is included in the decennial census, there can be

28    no doubt that it is, at the very least, a realistic possibility.  Accordingly, LAUSD's interest in

DANNIS WOLIVER KELLEY
115 PINE AVENUE, SUITE 500
LONG BEACH, CA  90802

12

preserving federal education funding may be impaired by this suit.

### D.   LAUSD's Interest in Preserving Educational Funding Is Not Adequately Represented by the Existing Parties

The burden of showing inadequacy of representation is not a heavy one; a minimal showing is all that is required.  *Arakaki v. Cayetano, supra*, 324 F.3d 1078, 1086; accord, *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983).  "If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Arakaki v. Cayetano, supra*, 324 F.3d 1078, 1086.  "The most important factor in determining the adequacy of representation is how the interest compares with the interests of existing parties." *Id*, citing 7C Wright, Miller & Kane, § 1909, at 318 (1986).  Even when the existing parties share common general objections, a proposed intervenor's interests are not adequately represented when the proposed intervenor's interests are "more narrow and parochial than the interests of the public at large." *Californians for Safe Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir.1998).

Here, Plaintiffs and LAUSD generally seek the same, or substantially the same, final objective—to bar inclusion of the challenged citizenship question on the 2020 census.  But Plaintiffs' interests are quite general, seeking to preserve "the States's fair share of congressional seats and Electoral College electors" and to preserve "billions of dollars in federal funding over the next decade." FAC ¶ 6, pp. 3-4.  By contrast, LAUSD's interest is more narrowly focused and directly related to the potential impact of this litigation on the hundreds of millions of dollars of federal k-12 education funds received by LAUSD every year—funds which are keyed to the decennial census results.  LAUSD has a far better understanding of the educational funds at issue and how such funds will likely be impacted by the inclusion of the challenged citizenship question on the decennial census.  As a result, LAUSD's specific interests are not adequately represented in this litigation.

Additionally, there is the symbolic interest LAUSD has in demonstrating its commitment to preserving its schools as a safe and welcoming environment for its students/families, regardless of immigration status.  None of the existing parties fairly represent this interest.

Dannis Woliver Kelley
115 Pine Avenue, Suite 500
Long Beach, CA  90802

Plaintiffs' FAC was filed only two months' ago.  LAUSD brings this timely motion to intervene in order to preserve hundreds of millions of dollars in federal K-12 educational funds, a significantly protectable interest.  Inclusion of the challenged citizenship question is certain to have a negative impact on LAUSD's allocation of federal funds, the only question is the degree to which LAUSD is harmed.  As LAUSD's interests are more narrowly drawn than the existing Plaintiffs, intervention is warranted.

## IV.   IN THE ALTERNATIVE, LAUSD SHOULD BE PERMITTED LEAVE TO INTERVENE

A non-party *may* be permitted to intervene in litigation where, upon timely motion, the non-party "has a claim or defense that shares with the main action a common question of law or fact" and intervention will not "unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(1)(B) & (b)(3).  Unlike mandatory intervention, permissive intervention does not require any showing of any particular interest that is inadequately represented by the existing parties.  *UMG Recordings, Inc. v. Bertelsmann AG,* 222 F.R.D. 408, 412 (N.D. Cal. 2004).  All that is required is a common question of law or fact and a lack of undue prejudice to the existing parties.  *Id.*

LAUSD seeks the same ultimate relief pursued by the existing Plaintiffs—a judicial declaration that inclusion of the citizenship question in the decennial census is unconstitutional and in violation of the Administrative Procedures Act as well as an injunction prohibiting Defendants from including the citizenship question in the decennial census.  Accordingly, the central legal and factual issues in this case are identical to LAUSD's proposed claims.

LAUSD seeks leave to intervene to assert substantially identical claims only two months after Plaintiffs' FAC was filed.  The underlying suit is still early in the pleading stage.  And the overlapping legal and factual issues significantly reduces any additional burden associated with the inclusion of LAUSD as an additional party.  LAUSD recognizes that the Court's determination of Defendants' pending motion to dismiss will similarly impact LAUSD's claims in invention; correspondingly, it will not be necessary to rehash the parties' arguments re same.  The existing parties will not be prejudiced by LAUSD's entry to this case because LAUSD's

DANNIS WOLIVER KELLEY
115 PINE AVENUE, SUITE 500
LONG BEACH, CA  90802

1   claims will neither expand the scope of the issues in this litigation nor delay these proceedings in

2   any material respect.

3       Intervention promotes judicial economy by preventing a multiplicity of duplicitous

4   lawsuits. *Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co*., 922 F.2d

5   92, 97 (2d Cir. 1990).  Indeed, here, it would serve no purpose to compel LAUSD to file yet

6   another lawsuit challenging Defendants' citizenship question.

7       In light of the early stages of this case, the lack of any meaningful prejudice from

8   LAUSD's entry to this case, and the lack of any delay by LAUSD, LAUSD should be permitted

9   to intervene.

10  **V.    CONCLUSION**

11      The requirements of Federal Rules of Civil Procedure 24 are interpreted broadly in favor

12  of intervention. *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).  Here, the State's suit

13  is still young.  LAUSD's proposed claims will neither expand the issues before this Court nor

14  delay these proceedings.  Whether as a matter of right or with the Court's discretion, LAUSD

15  should be permitted to intervene.

16

17  DATED: July 6, 2018                    DANNIS WOLIVER KELLEY
                                           SUE ANN SALMON EVANS
18                                         KEITH A. YEOMANS

19
                                           By: _____
20                                         SUE ANN SALMON EVANS
                                           Attorneys for Proposed Plaintiff-Intervenor
21                                         Los Angeles Unified School District

22

23

24

25

26

27

28

Dannis Woliver Kelley
115 Pine Avenue, Suite 500
Long Beach, CA  90802

LAUSD'S MOTION FOR LEAVE TO INTERVENE   (18-cv-01865)

DWK DMS 3275584v1

# EXHIBIT "A"

1  Sue Ann Salmon Evans, State Bar No. 151562
   sevans@DWKesq.com
2  Keith A. Yeomans, State Bar No. 245600
   kyeomans@DWKesq.com
3  DANNIS WOLIVER KELLEY
   115 Pine Avenue, Suite 500
4  Long Beach, CA  90802
   Telephone: 562.366.8500
5  Facsimile: 562.366.8505

6  David R. Holmquist, State Bar No. 179872
   david.holmquist@lausd.net
7  LOS ANGELES UNIFIED SCHOOL DISTRICT
   OFFICE OF GENERAL COUNSEL
8  333 S. Beaudry Avenue, 24th Floor
   Los Angeles, CA 90017
9  Telephone: 213.241.6601
   Facsimile: 213.241.8444

10

11 Attorneys for Proposed Plaintiff-Intervenor
   Los Angeles Unified School District

12                    UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14

15 STATE OF CALIFORNIA, et al.,          Case No. 3:18-cv-01865-RS

16              Plaintiffs,
17 v.                                     **[PROPOSED] COMPLAINT IN
                                          INTERVENTION**
18 WILBUR L. ROSS, JR., et al.,
                                          **[Administrative Procedure Act Case –
19             Defendants.                Civ. Local Rule 3-4(a)(4)]**

20

21 LOS ANGELES UNIFIED SCHOOL
   DISTRICT,
22
              Proposed Plaintiff-Intervenor.
23

24

25

26

27

28

**INTRODUCTION**

1.     The United States Constitution requires that all persons in each state be counted every ten years. U.S. Const. art. I, § 2, cl. 3, and amend. XIV, § 2. The Constitution mandates the "actual Enumeration" of the population for the purpose of apportioning congressional representatives among the states. U.S. Const. art. I, § 2, cl. 3. For this foundational step in our country's democratic process, the Constitution recognizes no exception based on citizenship status. It is long settled that *all* persons residing in the United States—citizens and non-citizens alike—must be counted to fulfill the Constitution's "actual Enumeration" mandate. *Id.*; *Fed'n for Am. Immigration Reform v. Klutznick*, 486 F. Supp. 564, 576 (D.D.C. 1980).

2.     The U.S. Census Bureau (Bureau), a division of the U.S. Department of Commerce, will conduct the next census, also known as the "decennial census," in 2020. The census surveys the number of persons in each household and, in the process, gathers certain demographic information about those persons. But not since 1950 has the decennial census asked whether each respondent is a citizen of the United States. Consistent with the modern practice, when in March 2017, as required by statute, the Bureau submitted to Congress a report of the proposed subjects planned for the 2020 Census, none related to citizenship or immigration status.

3.     In a December 12, 2017 letter, late in the census planning process and months after the statutory deadline for reporting proposed subjects, the U.S. Department of Justice requested that the Bureau include a citizenship question on the 2020 Census. While the letter suggested that adding a citizenship question would assist the Department of Justice in enforcing Section 2 of the Voting Rights Act, it did not address whether or how a citizenship question would facilitate the Bureau's constitutional duty to capture the "actual Enumeration" of the U.S. population. Nor did the letter consider whether adding a citizenship question would serve the Voting Rights Act's purpose of ensuring fair representation for all communities, ignoring substantial evidence—and the Bureau's own past admissions—that fewer people would respond to the 2020 Census if it included a citizenship question.

4.     On March 26, 2018, the Department of Commerce, setting aside decades of practice, announced that the final list of census questions that it will submit to Congress will include a

Dannis Woliver Kelley
115 Pine Avenue, Suite 500
Long Beach, CA  90802

2

question asking the citizenship status of every person in every household in the United States. The Department of Commerce concedes that it "is not able to determine definitively how inclusion of a citizenship question on the decennial census will impact responsiveness" to the 2020 Census. *See* Ex. 1 to Plaintiffs' FAC, p. 7 [Letter of Wilbur Ross to Karen Dunn Kelley, dated Mar. 26, 2018].

5.      Including the citizenship question on the 2020 Census will directly impede the Bureau from procuring the "actual Enumeration" of the U.S. population. Numerous studies— including those conducted by the Bureau—point to the same conclusion: asking about citizenship will repress responses from non-citizens and their citizen relatives. At least four former Bureau directors share the view that inquiring about citizenship status on the census "would likely exacerbate privacy concerns and lead to inaccurate responses from non-citizens worried about a government record of their immigration status." Brief of Former Directors of the U.S. Census Bureau as Amici Curiae in Support of Appellees at 23-26, *Evenwel v. Abbott,* 136 S.Ct. 1120 (2016) (No. 14-940), 2015 WL 5675832.

6.      In particular, the State of California and its counties, cities, state and local agencies, and residents all stand to lose if the citizenship question is included on the 2020 Census. According to 2016 figures from the Bureau's American Community Survey (ACS), California has more foreign-born residents (over 10 million) and non-citizens (over 5 million) than any other state.[1] And a recent study from the University of Southern California's Center for the Study of Immigrant Integration found that California has the highest number of U.S.-born citizens who live with at least one undocumented family member.[2] Undercounting the sizeable

---

[1]      *Selected Characteristics of the Native and Foreign-Born Population – 2012-2016 American Community Survey 5-Year Estimates*, U.S. Census Bureau, https://factfinder.census.gov/faces/tableservices/jsf/pages/productview.xhtml?src=bkmk (last visited July 3, 2018); *Nativity and Citizenship Status in the United States—Universe: Total Population in the United States – 2012-2016 American Community Survey 5-Year Estimates*, U.S. Census Bureau, https://factfinder.census.gov/faces/tableservices/jsf/pages/productview.xhtml?pid=ACS_16_5YR_B05001&prodType=table (last visited July 3, 2018).

[2]      *Keeping Families Together*, Silva Mathema, University of Southern California's Center for the Study of Immigrant Integration and Center for American Progress (Mar. 16, 2017), https://cdn.americanprogress.org/content/uploads/2017/03/15112450/KeepFamiliesTogether-brief.pdf (last visited July 3, 2018).

1   number of Californian non-citizens and their citizen relatives will imperil the State's fair share

2   of congressional seats and Electoral College electors and will cost Plaintiffs and LAUSD

3   billions of dollars in federal funding over the next decade.

4       7.    Like the existing Plaintiffs, LAUSD seeks a judicial declaration that including the

5   citizenship question on the 2020 Census violates the Constitution's "actual Enumeration"

6   mandate and the Administrative Procedure Act's (APA) prohibition against "arbitrary and

7   capricious" agency action. Further, to avoid irreparable harm, LAUSD seeks an injunction

8   prohibiting the Bureau from including the citizenship question on the 2020 Census.

9   **JURISDICTION AND VENUE**

10       8.    This Court has jurisdiction under 28 U.S.C. § 1331 (action arising under the laws

11   of the United States), 28 U.S.C. § 1361 (action to compel officer or agency to perform duty

12   owed to plaintiffs), and 5 U.S.C. §§ 701-706 (APA). An actual controversy exists between the

13   parties within the meaning of 28 U.S.C. § 2201(a), and this Court may grant declaratory relief,

14   injunctive relief, and other relief against the Defendants pursuant to 28 U.S.C. §§ 2201-2202

15   and 5 U.S.C. §§ 705-706.

16       9.    Defendants' submission of the final census questions to Congress no later than

17   March 31, 2018, is a final agency action and is therefore judicially reviewable under the APA.

18   5 U.S.C. §§ 704, 706.

19   **INTRADISTRICT ASSIGNMENT**

20       10.    Under Civil Local Rules 3-5(b) and 3-2(c), LAUSD alleges that there is no basis for

21   assignment of this action to any particular location or division of this Court.

22   **PARTIES**

23       11.    LAUSD is a public entity duly existing under and by virtue of the laws of the State

24   of California and operating as a public school district providing educational services in the

25   County of Los Angeles

26       12.    Defendant Wilbur L. Ross is the Secretary of the Department of Commerce and is

27   sued in his official capacity. Secretary Ross is responsible for fulfilling the Department of

28   Commerce's duties under the Constitution, the APA, and the Census Act.

DANNIS WOLIVER KELLEY
115 PINE AVENUE, SUITE 500
LONG BEACH, CA  90802

DWK DMS 3275585v1

13.     Defendant Department of Commerce is a federal agency. The Department of Commerce, led by Secretary Ross, oversees the Bureau, which is tasked with executing the 2020 Census.

14.     Defendant Dr. Ron Jarmin is responsible for performing the non-exclusive functions and duties of the Director of the U.S. Census Bureau and is sued in his official capacity. Dr. Jarmin's duties include ensuring that the Bureau executes the 2020 Census.

15.     Defendant U.S. Census Bureau is an agency within, and under the jurisdiction of, the Department of Commerce. The Census Bureau is the agency responsible for planning and administering the 2020 Census.

### LEGAL BACKGROUND

16.     The Constitution provides legal authority for the census, referred to as "Enumeration," in article I, section 2, clause 3, which states in relevant part, "Representatives . . . shall be apportioned among the several States which may be included within this Union, according to their respective Numbers . . . The actual Enumeration shall be made within three Years after the first Meeting of the Congress of the United States, and within every subsequent Term of ten Years, in such Manner as they shall by Law direct." The Fourteenth Amendment to the Constitution makes clear that the count must include "the whole number of persons in each state."

17.     Congress has delegated the duty of taking the census to the Secretary of Commerce. Under 13 U.S.C. § 141(a), "[t]he Secretary shall, in the year 1980 and every 10 years thereafter, take a decennial census of population as of the first day of April of such year." The Secretary has authority to conduct the census "in such form and content as he may determine . . . ." *Id.* Likewise, the Bureau Director "is necessarily invested with discretion in matters of form and procedure when these are not specifically provided for by law . . . ." *U.S. ex rel. City of Atlanta, Ga. v. Steuart*, 47 F.2d 979, 982 (D.C. Cir. 1931).

18.     Defendants' discretion in taking the census is not unfettered, and in particular, is subject to congressional oversight. Three years before the census, the Secretary must submit to Congress a report proposing the subjects to be included in the census. 13 U.S.C. § 141(f)(1).

DANNIS WOLIVER KELLEY
115 PINE AVENUE, SUITE 500
LONG BEACH, CA  90802

DWK DMS 3275585v1

Dannis Woliver Kelley
115 Pine Avenue, Suite 500
Long Beach, CA 90802

Two years before the census, the Secretary must submit to Congress the specific questions to be included in the census. 13 U.S.C. § 141(f)(2). The Secretary may only later modify the subjects or questions if he submits a report to Congress finding that "new circumstances exist which necessitate" the modification. 13 U.S.C. § 141(f)(3).

19.     Defendants' discretion in taking the census is also subject to the APA. Under the APA, Defendants must ensure that any agency action is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right, power, privilege or immunity," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706.

20.     Congress and the states use census data for many purposes, including for allocating federal funding and for state legislative districting. *City of Los Angeles v. U.S. Dept. of Commerce*, 307 F.3d 859, 864 (9th Cir. 2002); *Wisconsin v. City of New York*, 517 U.S. 1, 5-6 (1996). But the only constitutional purpose of the census is to apportion congressional representatives based on the "actual Enumeration" of the population of each state.

21.     To fulfill this constitutional purpose, as the Bureau itself has recognized, the 2020 Census will succeed only if it achieves its aim "to count everyone once, only once, and in the right place."[3]

## FACTUAL AND PROCEDURAL BACKGROUND

22.     Under the direction of the Secretary of Commerce and the Bureau Director, the Bureau conducts the constitutionally required census every ten years by counting all U.S. residents in the place where they live. Besides using the results of the decennial census for the constitutional purpose of determining the number of seats for each state in the House of Representatives, the federal government relies on census data to determine how to distribute billions of dollars of funding each year, including funding for Medicaid, Medicare Part B, the

---

[3]     *Why We Conduct the Decennial Census*, United States Census Bureau, https://www.census.gov/programs-surveys/decennial-census/about/why.html (last visited July 3, 2018).

1    Supplemental Nutrition Assistance Program (SNAP), the State Children's Health Insurance

2    Program (S-CHIP), and the Highway Planning and Construction Program.

3         23.    In addition to the decennial census, every year the Bureau conducts the ACS. The

4    ACS contains a more expansive set of questions than the decennial census. Unlike the decennial

5    census, the ACS is not required by the Constitution. And while the decennial Census requires an

6    actual enumeration of all U.S. residents, the ACS surveys only a sample of the population.

7    Compared to the decennial census, the ACS gathers more detailed information about U.S.

8    residents.

9         24.    The decennial census has not included a question on citizenship since the

10   1950 Census. Since that time, the question has appeared only on the ACS.

11        25.    On March 28, 2017, Secretary Ross timely submitted a report containing the

12   subjects proposed to be included in the 2020 Census. The subjects, which were unchanged from

13   the 2010 Census, did not include citizenship or immigration status.

14        26.    Nearly nine months after the subjects for the 2020 Census had been identified, on

15   December 12, 2017, the U.S. Department of Justice sent a letter to the Bureau requesting the

16   inclusion of a citizenship question on the 2020 Census. The Department of Justice's stated

17   rationale for adding a citizenship question was to assist the Department of Justice in enforcing

18   Section 2 of the Voting Rights Act. The letter failed to address the likelihood that a citizenship

19   question would decrease the accuracy of the Census by deterring responses from non-citizens

20   and their relatives and that this consequence would undermine the Voting Rights Act's purpose

21   of ensuring fair representation for all communities.

22        27.    On March 26, 2018, setting aside decades of practice, Secretary Ross and the

23   Department of Commerce announced that the final list of census questions that it will submit

24   to Congress will include a question on citizenship status. Specifically, the question will ask,

25   for every member of every household, whether that person is a citizen of the United States.

26        28.    Secretary Ross explained that, to address the Department of Justice's request, he had

27   determined that the best option was to add the ACS citizenship question to the decennial census.

28   Secretary Ross speculated that the citizenship question may not cause an undercount because

DANNIS WOLIVER KELLEY
115 PINE AVENUE, SUITE 500
LONG BEACH, CA  90802

7

1  "there is no information available to determine the number of people who would in fact not

2  respond due to a citizenship question being added, and no one has identified any mechanism for

3  making such a determination." Ex. 1 to Plaintiffs' FAC, p. 5. Secretary Ross concluded that "the

4  need for accurate citizenship data" was worth the risk of an undercount. *Id.*

5      29.    Notwithstanding the rationale stated in this letter, the Bureau is well aware that

6  adding the citizenship question will directly cause an undercount in the 2020 Census. Its own

7  2017 study revealed "an unprecedented ground swell in confidentiality and data sharing

8  concerns, particularly among immigrants or those who live with immigrants" and that these

9  concerns "may present a barrier to participation in the 2020 Census."[4] This apprehension about

10  participating in the census is unsurprising in the current political climate. The studies'

11  respondents "express[ed] new concerns about topics like the 'Muslim ban,' discomfort

12  'registering' other household members by reporting their demographic characteristics, the

13  dissolution of the 'DACA' (Deferred Action for Childhood Arrival) program, repeated

14  references to Immigration and Customs Enforcement (ICE), etc."[5] These types of concerns are

15  not new to the Bureau. Since at least 1980, the Bureau has recognized that, because of

16  immigrants' fear of how information disclosed on the Census may be used against them, "any

17  effort to ascertain citizenship will inevitably jeopardize the overall accuracy of the population

18  count." *Fed'n for Am. Immigration Reform*, 486 F. Supp. at 568.

19      30.    The Bureau is currently conducting its "2018 Census Test" in Providence County,

20  Rhode Island. The 2018 Census Test is a dress rehearsal for the 2020 Census. As the Bureau's

21  website states, "Throughout the decade, the Census Bureau has conducted extensive research

22  and testing to inform census design. The 2018 Census Test is the culmination of that research,

23

24      [4] *See* Mikelyn Meyers, Center for Survey Management, U.S. Census Bureau, Presentation
   on Respondent Confidentiality Concerns and Possible Effects on Response Rates and Data
25  Quality for the 2020 Census, presented at National Advisory Committee on Racial, Ethnic, and
   Other Populations Fall Meeting (Nov. 2, 2017),
26  https://www2.census.gov/cac/nac/meetings/2017-11/Meyers-NAC-Confidentiality-
   Presentation.pdf (last visited July 3, 2018).
27      [5] *See* Ex. 2, Memorandum from Center for Survey Measurement on Respondent
   Confidentiality Concerns to Associate Directorate for Research and Methodology, U.S. Census
28  Bureau (Sept. 20, 2017), https://www2.census.gov/cac/nac/meetings/2017-11/Memo-Regarding-
   Respondent-Confidentiality-Concerns.pdf (last visited Mar. 26, 2018).

DANNIS WOLIVER KELLEY
115 PINE AVENUE, SUITE 500
LONG BEACH, CA 90802

DWK DMS 3275585v1

providing a rich environment to test all major components of the 2020 Census. The primary

objective of the test is to confirm key technologies, data collection methods, outreach and

promotional strategies, and management and response processes that will be deployed in

support of the 2020 Census."[6] No citizenship question or similar question was included in the

2018 Census Test. Having failed to adequately test the question before including it in the 2020

Census, the Bureau will be unable to take sufficient measures to avoid or mitigate the resulting

undercount of non-citizens and their citizen relatives if the citizenship question is included in

the 2020 Census.

31.    The Bureau plans to finalize the 2020 Census paper questionnaires for print in

May 2019. Ensuring that the 2020 Census is not compromised by the inclusion of the

citizenship question will become more difficult with each passing day, as more of the Bureau's

resources are dedicated to including the question on the census.

32.    The undercount of Californians in the 2020 decennial census resulting from the

citizenship question will cause significant harm to the State of California, its counties, cities,

and other state and local agencies, including LAUSD and its students/families.  Before the

citizenship question was added, California was predicted to retain its current number of seats in

the House of Representatives and, consequently, the Electoral College, but only by a very slim

margin.  Because California has a proportionately large population of non-citizens and relatives

of noncitizens compared to other states, the citizenship question will now likely cause California

to lose seats for the first time in its history.[7]  The undercount that will result from the citizenship

question will also cause each of the Plaintiffs to lose federal funding. Plaintiffs receive billions

DANNIS WOLIVER KELLEY
115 PINE AVENUE, SUITE 500
LONG BEACH, CA  90802

---

[6]    2018 Census Test—About this Test, U.S. Census Bureau, https://www.census.gov/programs-surveys/decennial-census/2018-census-test/about.html (last visited July 3, 2018).

[7]    Election Data Services, *Some Change in Apportionment Allocations with New 2017 Census Estimates; But Greater Change Likely by 2020*, Dec. 26, 2017, https://www.electiondataservices.com/wp-content/uploads/2017/12/NR_Appor17c2wTablesMapsC1.pdf (last visited July 3, 2018).

of dollars in funding from the sixteen large federal assistance programs that distribute funds on the basis of decennial census-derived statistics.[8]

33.    For example, the U.S. Census Bureau estimate of population for City of Los Angeles, last updated as of July 1, 2016, is listed at 3,976,322. The City of Los Angeles has one of the largest populations of immigrants in the country. According to the 2012-2016 American Community Survey data from the U.S. Census Bureau, more than one-third (37.8%) of residents in the City of Los Angeles, are foreign born, which is approximately 1.5 million residents. Los Angeles City residents receive the benefits of federal and state funds, allocated based upon population numbers using data from the decennial U.S. Census, for a variety of crucial programs to promote public health, safety, and welfare for residents of the City of Los Angeles.

34.    LAUSD is the second largest school district in the nation, enrolling approximately 600,000 students in kindergarten through 12th grade, at over 1300 schools and centers, and oversees 187 independent public charter schools. LAUSD's boundaries are spread across 720 square miles and serve the City of Los Angeles along with all or part of 26 additional towns/cities within the County of Los Angeles.  Nearly 90% of the District's student population is comprised of minority students and a disproportionately high number of LAUSD's students are, or have family members who are, non-citizens.

35.    LAUSD receives hundreds of millions of dollars in federal K-12 educational funds that are determined in whole or in part by data from the decennial census.  These federal education programs largely target and assist community schools with high percentages of students with disabilities or from low income families, i.e., children with the very highest need.  LAUSD's 2017-18 school year funds tied to decennial census data includes:

- Title I, Part A funds (approx. $328,000,000)
- Title II funds (approx. $27,065,075)
- Title IV, Part A funds (approx. $7,000,000)
- Child Care and Development Block Grant (approx. $5,086,650)[9]
- Children's Health Insurance Program (approx. $673,250)

---

[8]    Reamer, The George Washington Institute of Public Policy, *Counting for Dollars 2020 – California*, Aug. 18, 2017, https://gwipp.gwu.edu/sites/gwipp.gwu.edu/files/downloads/California%2008-18-17.pdf (last visited July 3, 2018).

[9]    For the 2016-17 school year.

DANNIS WOLIVER KELLEY
115 PINE AVENUE, SUITE 500
LONG BEACH, CA  90802

36.     Any underrepresentation reflected in the decennial census would have a direct and immediate impact on LAUSD's federal funding levels and its ability to provide core educational services.

### FIRST CAUSE OF ACTION

**(Violation of Constitution's "Actual Enumeration" Mandate; U.S. Const. art. I, § 2, cl. 3)**

37.     LAUSD realleges and incorporates herein by reference each and every allegation and paragraph set forth previously.

38.     The Constitution requires the "actual Enumeration" of all people in each state every ten years for the sole purpose of apportioning representatives among the states.  U.S. Const. art. I, § 2, cl. 3, and amend. XIV, § 2.

39.     By including the citizenship question on the 2020 Census, Defendants are in violation of the "actual Enumeration" clause of the Constitution. Because the question will diminish the response rates of non-citizens and their citizen relatives, California, which has the largest immigrant population in the country will be disproportionately affected by the census undercount. Inclusion of the question thus directly interferes with Defendants' fulfillment of their constitutional responsibility, as delegated by Congress, to conduct an "actual Enumeration" of the U.S. population.

40.     This violation harms Plaintiffs and their residents, given that the State is entitled under the Constitution to a proportionate share of congressional representatives based on its total population. The violation will also harm Plaintiffs' interests, including LAUSD's interest, in receiving federal funds allocated to states, counties, cities, and other state and local agencies on the basis of the population data collected during the 2020 Census.

41.     Defendants' violation has caused and will continue to cause ongoing, irreparable harm to Plaintiffs and their residents, including LAUSD and its students/families.

42.     An actual controversy exists between Plaintiffs, including LAUSD, and Defendants regarding whether Defendants' inclusion of a citizenship question on the 2020 Census violates the "actual Enumeration" clause of the U.S. Constitution.

DANNIS WOLIVER KELLEY
115 PINE AVENUE, SUITE 500
LONG BEACH, CA  90802

**SECOND CAUSE OF ACTION**

**(Violation Of APA; 5 U.S.C. § 706)**

43.     LAUSD realleges and incorporates herein by reference each and every allegation and paragraph set forth previously.

44.     The APA requires courts to "hold unlawful and set aside" agency action that is, among other things, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right, power, privilege or immunity," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706.

45.     Defendants' inclusion of the citizenship question on the 2020 Census is all of the above. Because the question will diminish the response rates of non-citizens and their citizen relatives, LAUSD, which has one of the largest student bodies of any school district in the country, will be disproportionately affected by the census undercount.  Inclusion of the citizenship question thus directly interferes with Defendants' fulfillment of their constitutional responsibility, as delegated by Congress, to conduct an "actual Enumeration" of the U.S. population, as well as Secretary Ross' statutory duty to "take a decennial census of population" under 13 U.S.C. § 141(a). A citizenship question, moreover, would not serve the purpose articulated by the U.S. Department of Commerce, because an undercount of non-citizens and their citizen relatives will decrease the accuracy of census data available to prove voter dilution under Section 2 of the Voting Rights Act. Finally, Defendants failed to follow their own internal agency policies and guidelines, including under the Information Quality Act, in reaching their decision to add the citizenship question.

46.     Defendants' decision to add a citizenship question to the 2020 Census thus violates the APA's prohibition against "arbitrary and capricious" agency action.

47.     These violations harm Plaintiffs and their residents, given that the State is entitled under the Constitution to a proportionate share of congressional representatives based on its total population. The violations will also harm Plaintiffs' interests, including LAUSD's interest, in receiving federal funds allocated to states, counties, cities, and other state and local agencies on the basis of the population data collected during the 2020 Census.

DANNIS WOLIVER KELLEY
115 PINE AVENUE, SUITE 500
LONG BEACH, CA  90802

DWK DMS 3275585v1

48.     Defendants' violation has caused and will continue to cause ongoing, irreparable harm to Plaintiffs and their residents, including LAUSD and its students/families.

49.     An actual controversy exists between Plaintiffs, including LAUSD, and Defendants regarding whether Defendants' inclusion of a citizenship question on the 2020 Census violates the APA.

### PRAYER FOR RELIEF

WHEREFORE, LAUSD, respectfully requests that this Court:

1.     Issue a declaratory judgment, under 28 U.S.C. §§ 2201 and 2202, that including the citizenship question on the 2020 Census violates Article I, Section 2, Clause 3 of the United States Constitution and the APA;

2.     Issue a preliminary injunction prohibiting all Defendants and all those acting in concert with them from including a citizenship question on the 2020 Census and from taking any irreversible steps to include a citizenship question on the 2020 Census;

3.     Issue a permanent injunction prohibiting all Defendants and all those acting in concert with them from including the citizenship question on the 2020 Census;

4.     Award LAUSD costs, expenses, and reasonable attorney fees; and

5.     Award such other relief as the Court deems just and proper.


DATED: July 6, 2018                     DANNIS WOLIVER KELLEY
                                        SUE ANN SALMON EVANS
                                        KEITH A. YEOMANS


                                        By: _____
                                        SUE ANN SALMON EVANS
                                        Attorneys for Proposed Plaintiff-Intervenor
                                        Los Angeles Unified School District

DANNIS WOLIVER KELLEY
115 PINE AVENUE, SUITE 500
LONG BEACH, CA  90802

1   Sue Ann Salmon Evans, State Bar No. 151562
    sevans@DWKesq.com
2   Keith A. Yeomans, State Bar No. 245600
    kyeomans@DWKesq.com
3   DANNIS WOLIVER KELLEY
    115 Pine Avenue, Suite 500
4   Long Beach, CA  90802
    Telephone: 562.366.8500
5   Facsimile: 562.366.8505

6   David R. Holmquist, State Bar No. 179872
    david.holmquist@lausd.net
7   LOS ANGELES UNIFIED SCHOOL DISTRICT
    OFFICE OF GENERAL COUNSEL
8   333 S. Beaudry Avenue, 24th Floor
    Los Angeles, CA 90017
9   Telephone: 213.241.6601
    Facsimile: 213.241.8444

10

11  Attorneys for Proposed Plaintiff-Intervenor
    Los Angeles Unified School District

12                  UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14

15  STATE OF CALIFORNIA, et al.,          Case No. 3:18-cv-01865-RS

16              Plaintiffs,
                                          **[PROPOSED] ORDER GRANTING LOS**
17  v.                                    **ANGELES UNIFIED SCHOOL DISTRICT'S**
                                          **MOTION FOR LEAVE TO INTERVENE**
    WILBUR L. ROSS, JR., et al.,
18
                Defendants.
19

20                                        Complaint filed March 26, 2018
                                          First Amended Complaint filed May 4, 2018
21
                                          Trial date:  None set
22

23

24

25

26

27

28

_DANNIS WOLIVER KELLEY_
_115 PINE AVENUE, SUITE 500_
_LONG BEACH, CA  90802_

On August 10, 2018, Los Angeles Unified School District's motion for leave to intervene came before this Court.  After reviewing the briefs, supporting documents, exhibits, and the records in the Court's file, and after considering the arguments of counsel for the parties, the Court rules and determines as follows:

Los Angeles Unified School District's motion for leave to intervene is GRANTED; and,

Los Angeles Unified School District shall file its complaint in intervention within two court days.

**IT IS SO ORDERED.**

DATED:_____          _____

United States District Court Judge

DANNIS WOLIVER KELLEY
115 PINE AVENUE, SUITE 500
LONG BEACH, CA  90802

DWK DMS 3274846v1