Sue Ann Salmon Evans, State Bar No. 151562
sevans@DWKesq.com
Keith A. Yeomans, State Bar No. 245600
kyeomans@DWKesq.com
DANNIS WOLIVER KELLEY
115 Pine Avenue, Suite 500
Long Beach, CA 90802
Telephone: 562.366.8500
Facsimile: 562.366.8505

David R. Holmquist, State Bar No. 179872
david.holmquist@lausd.net
LOS ANGELES UNIFIED SCHOOL DISTRICT
OFFICE OF GENERAL COUNSEL
333 S. Beaudry Avenue, 24th Floor
Los Angeles, CA 90017
Telephone: 213.241.6601
Facsimile: 213.241.8444

Attorneys for Plaintiff-Intervenor
Los Angeles Unified School District

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| STATE OF CALIFORNIA, et al.,<br><br>    Plaintiffs,<br>v.<br>WILBUR L. ROSS, JR., et al.,<br><br>    Defendants. | Case No. 3:18-cv-01865-RS<br><br>**LOS ANGELES UNIFIED SCHOOL DISTRICT'S NOTICE OF JOINDER IN, AND SUPPLEMENT TO, PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**<br><br>Judge: Hon. Richard Seeborg<br>Courtroom: 3<br><br>Complaint filed March 26, 2018<br>First Amended Complaint filed May 4, 2018<br><br>Trial date: January 7, 2019 |

TO THE COURT, PARTIES, AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that plaintiff-intervenor Los Angeles Unified School District ("LAUSD" or "District") respectfully joins in the proposed findings of fact and conclusions of law submitted by plaintiffs' State of California, County of Los Angeles, City of Los Angeles,

City of Fremont, City of Long Beach, City of Oakland, and City of Stockton's (collectively, "Plaintiffs") filed on December 28, 2018.

LAUSD's claims in this litigation are substantially identical to Plaintiffs' claims. In the interest of judicial economy and to avoid redundancy and undue burden, LAUSD joins in Plaintiffs' proposed findings of fact and conclusions of law. As set forth below, LAUSD sets forth several supplemental findings of fact and conclusions of law relating to LAUSD's injuries and standing.

DATED: December 28, 2018

DANNIS WOLIVER KELLEY
SUE ANN SALMON EVANS
KEITH A. YEOMANS

By: */s/ Keith A. Yeomans*
SUE ANN SALMON EVANS
KEITH A. YEOMANS
Attorneys for Plaintiff-Intervenor
Los Angeles Unified School District

# SUPPLEMENTAL PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW

## I.   Injuries to LAUSD

The evidence at trial will establish that adding a citizenship question to the 2020 decennial census will cause two distinct harms to Los Angeles Unified School District ("LAUSD"). Adding a citizenship question will cause a decline in self-reporting leading to a differential undercount that will cause LAUSD to lose federal funding it would otherwise be entitled to. Also, adding a citizenship question will cause a decline in census data quality, which will injure LAUSD inasmuch as LAUSD relies upon census data for its decennial redistricting.

### A.   Loss of Federal Funding

As established in Plaintiffs' proposed findings of fact and conclusions of law, the evidence at trial will demonstrate the likely undercount of noncitizen households and Hispanic households. Several federal educational funding programs allocate funds based upon decennial population data. Because of LAUSD's disproportionately large non-citizen and Hispanic populations, the differential undercount resulting from the addition of the citizenship question will cause a disproportionate reduction in LAUSD's federal education funding entitlements.

1. LAUSD is the public school district encompassing the City of Los Angeles and several surrounding communities and is the largest school district within the state of California. Undisputed Fact no. 8.

2. LAUSD is the second largest school district in the country. Trial Testimony of P. Escudero.

3. LAUSD's student enrollment for the 2017-18 school year was 513,592. Trial testimony of P. Escudero; PTX-854.

4. LAUSD's percentage of economically disadvantaged students for the 2017-18 school year was 82%, which is above the national average. Trial testimony of P. Escudero; PTX-853.

5. LAUSD's percentage of Hispanic students for the 2017-18 school year was 73%, which is above both the state and national averages. Trial testimony of P. Escudero; PTX-851.

//

6. LAUSD's boundaries encompass a non-citizen population of 19.6%, which is above both the state (13.0%) and national (6.9%) averages. Trial testimony of A. Reamer; PTX-838.

7. The federal government uses Decennial Census data to allocate hundreds of billions of dollars in public funding each year, including to states and local governments. Undisputed Fact no. 52.

8. Approximately 132 programs used Census Bureau data to distribute hundreds of billions of dollars in funds during fiscal year 2015. Undisputed Fact no. 53.

9. Among the programs that use Census Bureau data are Title I educational grant funds run by the U.S. Department of Education, which uses Census Bureau data as part of its allocation formula under 20 U.S.C. § 6333(c). Undisputed Fact no. 57.

10. Title I provides federal financial assistance to local educational agencies with high numbers or high percentages of children from low-income families. Local educational agencies typically include school districts, charter schools, county offices of education, and similar educational entities that operate locally and not directly by the state. Trial testimony of K. Ryback and A. Reamer.

11. Title I funds are allocated through a series of federal grants based on the number of 'qualifying children' within an LEA. Qualifying children include economically disadvantaged children between 5 and 17 years old. Economic disadvantage is determined primarily on census poverty estimates, foster youth receiving government aid, and the cost of education in each state. Trial testimony of K. Ryback and A. Reamer.

12. Title I funds are allocated to local educational agencies through a series of four federal grants—basic grants, concentration grants, targeted grants, and educational finance incentive grants. 20 U.S.C. §§ 6333, 6334, 6335, & 6337; Trial testimony of K. Ryback and A. Reamer.

13. For each of the four types of Title I grant funds, a local educational agency's entitlement is based on the number of qualifying children within a local educational agency.

//

14. 20 U.S.C. §§ 6333 subds. (a)(1)(A) & (c), 6334 subd. (a)(1)(A), 6335 subds. (a)(1)(A) & (c), & 6337, subd. (b)(1)(A); Trial testimony of K. Ryback and A. Reamer.

15. For purposes of Title I, the number of qualifying children within a local educational agency is calculated using data from the most recent decennial census. 20 U.S.C. § 6333(c); Trial testimony of K. Ryback and A. Reamer.

16. LAUSD has more Title I qualifying children and correspondingly receives a greater allocation of Title I funds than any other school district in California. Trial testimony of K. Ryback and A. Reamer; PTX-845; PTX-847.

17. In the 2017-18 school year, LAUSD received $333,498,040 in Title I funds. In the 2016-17 school year, LAUSD received $329,413,803 in Title I funds. In the 2015-16 school year, LAUSD received $299,618,648 in Title I funds. Trial testimony of K. Ryback; PTX-845; PTX-847.

18. The addition of a citizenship question on the 2020 decennial census will cause some measurable decline in Title I funding to California. Trial testimony of S. Gurrea, B. Fraga, & A. Reamer.

19. Given the disproportionately high percentage of Hispanics and non-citizens within LAUSD's student and general populations, the addition of a citizenship question on the 2020 decennial census will cause some measureable loss in Title I funding to LAUSD. Trial testimony of S. Gurrea, B. Fraga, A. Reamer, P. Escudero, & K. Ryback; PTX-838; PTX-845, PTX-847, PTX-851, PTX-853.

20. In the context of economic loss, the loss of a single dollar constitutes an injury in fact. *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017); *Animal Welfare Inst. v. Kreps*, 561 F.2d 1002, 1008 (D.C. Cir. 1977).

21. Standing for all plaintiffs is satisfied so long as any single plaintiff establishes standing. *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017).

//

//

**B.     LAUSD's Injury Resulting from Decline in Census Data Quality**

As established in Plaintiffs' Proposed Findings of Fact and Conclusions of Law, the evidence at trial will demonstrate that the addition of the citizenship question to the 2020 decennial census will decrease the census data quality, both in terms of overall enumeration accuracy and as to population characteristics. LAUSD relies upon the accuracy of census population data for its decennial redistricting. Any decline in census data quality will injure LAUSD by rendering LAUSD's redistricting efforts more difficult, less accurate, and less responsive to local communities of interest.

22.     States, counties, cities, and local public entities also use Decennial Census data to draw congressional, state, and local legislative districts. Undisputed Fact no. 51.

23.     After every decennial census, LAUSD and the City of Los Angeles are required to review and, if necessary, redraw the boundaries for LAUSD's seven Board Districts in order to comply with federal and state law. LA City Charter, art. VIII, § 802.

24.     A joint LAUSD and City of Los Angeles redistricting commission uses census citizen voting age population with race and ethnicity data in order to prepare a proposed redistricting plan for consideration by the City Council. LA City Charter, art. VIII, § 802; Trial Testimony of J. Crain; PTX-855; PTX-856; PTX-857; PTX-858.

25.     The Census Bureau admits that addition of a citizenship question to the 2020 decennial census will result in a decline in census data quality. Trial testimony of J. Abowd and L. Handley.

26.     LAUSD depends upon the quality of census citizen voting age population with race and ethnicity data to evaluate and comply with federal and state voting rights laws and to identify and maintain local communities of interest. Trial Testimony of J. Crain; PTX-855; PTX-856; PTX-857; PTX-858.

27.     Any decline in census data quality will impair LAUSD's efforts to accurately redraw district boundaries while preserving local communities of interest. Trial Testimony of J. Crain.

//

28. Where a defendant has a duty to provide accurate information, failure to so creates an injury-in-fact sufficient to confer standing. See, e.g., *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449-51 (1989) (plaintiff had standing to sue under the Federal Advisory Committee Act for failure to make publicly available reports and minutes of American Bar Association meetings relating to prospective judicial nominees); see also *FEC v. Akins*, 524 U.S. 11, 20-21 (1998) (plaintiff voters had standing to sue the Federal Election Commission on the ground that the statute in question gave plaintiffs a right to the information being withheld by the FEC); see also *Ctr. for Food Safety v. Price*, No. 17-cv-3833 (VSB), 2018 WL 4356730, at *5 (S.D.N.Y. Sept. 12, 2018) (informational injury satisfies the injury-in-fact requirement of standing where a statutory provision has explicitly created a right to information).

29. An injury sufficient to create standing is created not only by a total deprivation of information to which plaintiffs have a statutory right, but also by the deprivation of accurate or truthful information. See *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982) (holding that because the Fair Housing Act created a statutory right to truthful information concerning the availability of housing, "testers" who were misinformed had standing to sue without demonstrating any further injury).

30. Defendants' decision to add a citizenship question, and the resulting impairment of data quality, harms Plaintiffs' interests in accurate information and is sufficient to establish injury-in-fact. *Havens Realty*, 455 U.S. at 373-74; see also *FEC*, 524 U.S. at 20-21; *Pub. Citizen*, 491 U.S. at 449-51; Ctr. for Food Safety, 2018 WL 4356730, at *5.

DATED: December 28, 2018

DANNIS WOLIVER KELLEY
SUE ANN SALMON EVANS
KEITH A. YEOMANS

By: /s/ Keith A. Yeomans
SUE ANN SALMON EVANS
KEITH A. YEOMANS
Attorneys for Plaintiff-Intervenor
Los Angeles Unified School District