1  XAVIER BECERRA
   Attorney General of California
2  MARK R. BECKINGTON
   ANTHONY R. HAKL
3  Supervising Deputy Attorneys General
   GABRIELLE D. BOUTIN, SBN 267308
4  ANNA T. FERRARI, SBN 261579
   TODD GRABARSKY, SBN 286999
5  R. MATTHEW WISE, SBN 238485
   NOREEN P. SKELLY, SBN 186135
6  Deputy Attorneys General
     1300 I Street, Suite 125
7    P.O. Box 944255
     Sacramento, CA 94244-2550
8    Telephone: (916) 210-6053
     Fax: (916) 324-8835
9    E-mail: Gabrielle.Boutin@doj.ca.gov
   *Attorneys for Plaintiff State of California, by and*
10 *through Attorney General Xavier Becerra*

11            IN THE UNITED STATES DISTRICT COURT

12           FOR THE NORTHERN DISTRICT OF CALIFORNIA

13

14

15 | **S STATE OF CALIFORNIA, by and** | 3:18-cv-01865
16 | **through Attorney General Xavier Becerra,** |

17 |                               Plaintiff, | **PLAINTIFFS' PRE-TRIAL PROPOSED**
18 |                  **v.** | **CONCLUSIONS OF LAW**

19 |  | Dept:        3
20 | **WILBUR L. ROSS, JR., in his official** | Judge:       The Honorable Richard G.
   | **capacity as Secretary of the U.S.** |             Seeborg
21 | **Department of Commerce; U.S.** | Trial Date:  January 7, 2019
   | **DEPARTMENT OF COMMERCE; RON** | Action Filed: March 26, 2018
22 | **JARMIN, in his official capacity as Acting** |
   | **Director of the U.S. Census Bureau; U.S.** |
23 | **CENSUS BUREAU; DOES 1-100,** |

24

25 |                               Defendants. |

26

27

28

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| PLAINTIFFS' PRE-TRIAL PROPOSED CONCLUSIONS OF LAW | | 1 |

I. The Obligation to Conduct a Decennial Census ........................................ 1

II. Plaintiffs Have Standing to Bring Their APA and Enumeration Clause Claims .................................................................................................... 2

    A. The Court May Consider Extra-Record Evidence to Evaluate Standing ...................................................................................... 2

    B. Plaintiffs Have Suffered, and Will Imminently Suffer, Injuries-in-Fact ............................................................................................. 3

        1. Expenditure of Funds to Mitigate the Substantial Risk of Harm .................................................................................... 4

        2. Federal Funding Injury .................................................... 4

        3. Harm to Demographic Data Accuracy and Quality ...................... 5

        4. Loss of Political Representation .......................................... 7

    C. Plaintiffs' Injuries Are Traceable and Redressable ............................... 7

III. Defendants Decision to Add a Citizenship Question to the 2020 Census Violates the Enumeration Clause ............................................................. 8

IV. Defendants Decision to Add a Citizenship Question to the 2020 Census Violates the APA .................................................................................. 11

    A. The Scope of Judicial Review .......................................................... 11

        1. Review on the whole Administrative Record is to be probing and thorough ................................................................... 11

        2. The Court may consider extra-record evidence that serves as background to explain or clarify scientific or technical subjects requiring specialized knowledge. ................................. 12

        3. The Court may consider extra-record evidence to evaluate whether the agency failed to consider all relevant factors ........... 13

        4. The Court may consider extra-record evidence relevant to Plaintiffs' claims that the Secretary's decision was based on pretext or prejudgment. ................................................ 14

    B. The Decision to Add the Citizenship Question Violates the APA Because the Justification for the Decision Was Pretextual ..................... 14

        1. Based on the AR Alone, Defendants' Decision to Add a Citizenship Question was Pretextual ....................................... 15

        2. Extra-Record Evidence Confirms that Defendants' Decision to Add a Citizenship Question was Pretextual ............................. 15

    C. The Decision to Add the Citizenship Question Violates the APA Because It Was Arbitrary and Capricious ......................................... 16

    D. Based on the AR Alone, Defendants' Decision was Arbitrary and Capricious Because It Failed to Consider an Important Aspect of the Problem ................................................................................ 16

# TABLE OF CONTENTS
(continued)

Page

1. Defendants failed to consider whether the citizenship question would result in an ultimate undercount ........................ 16

2. Defendants failed to consider key legal obligations .................... 16

E. Extra-Record Evidence Confirms That Defendants' Decision was Arbitrary and Capricious Because It Failed to Consider an Important Aspect of the Problem ............................................................ 18

1. Defendants failed to adequately consider the need to pre-test the citizenship question ................................................................ 19

2. Secretary Ross failed to consider the effect of the Census Bureau's confidentiality obligations and disclosure avoidance practices ........................................................................ 19

3. Defendants failed to consider injuries that may result on a local level from an inaccurate census count and inaccurate characteristic data ........................................................................ 20

4. Defendants failed to consider governing burden to change a census question, agency practices for conferring with requesting agencies ........................................................................ 20

F. Based on the AR Alone, Defendants' Decision was Arbitrary and Capricious Because It Ran Counter to the Evidence ................................ 22

1. The Decision Was Counter to the Evidence that Administrative Data Alone Would Yield More Accurate, Usable, and Complete Citizenship Data Than Adding a Citizenship Question to the Census ............................................... 22

2. The Decision Was Counter to the Evidence Because the Decision Memo Was Rife with Flawed Assertions Not Based on Any Evidence or Counter to the Evidence in the Record ........................................................................................ 24

3. The Decision Was Counter to the Evidence That Existing ACS Data Is Sufficient for Section 2 VRA Enforcement ............. 25

G. Based on the AR Alone, Defendants' Decision was Contrary to Law ........................................................................................................ 26

H. Extra-Record Evidence Confirms That Defendants' Decision was Contrary to Law ................................................................................. 27

V. Remedies ............................................................................................................ 28

A. Enumeration Clause Claim .......................................................................... 28

B. APA Claim ................................................................................................... 30

ii

# TABLE OF AUTHORITIES

**Page**

**CASES**

*All. For the Wild Rockies v. U.S. Forest Serv.*
907 F.3d 1105 (9th Cir. 2018)...........................................................................8, 30

*Am. Bioscience, Inc. v. Thompson*
269 F.3d 1077 (D.C. Cir. 2001) ................................................................................30

*Am. Littoral Soc'y v. U.S. Envtl. Prot. Agency Region*
199 F. Supp. 2d 217 (D. N.J. 2002) ...........................................................................2

*Am. Wild Horse Pres. Campaign v. Perdue*
873 F.3d 914 (D.C. Cir. 2017) ................................................................................21

*Am. Wildlands v. Kempthorne*
530 F.3d 991 (D.C. Cir. 2008) ................................................................................13

*Animal Defense Council v. Hodel*
840 F.2d 1432 (9th Cir. 1988)................................................................................12

*Asarco, Inc. v. United States E.P.A.*
616 F.2d 1153 (9th Cir. 1980)...........................................................................12, 14

*Associated General Contractors of California, Inc. v. Coalition for Economic Equity*
950 F.2d 1401 (9th Cir. 1991)................................................................................2

*Barnett v. City of Chicago*
141 F.3d 699 (7th Cir. 1998)................................................................................26

*Barnum Timber Co. v. EPA*
633 F.3d 894 (9th Cir. 2011).............................................................................7, 31

*Bennett v. Spear*
520 U.S. 154, 167-68 (1997)...........................................................................2, 7, 8

*Beno v. Shalala*
30 F.3d 1057 (9th Cir. 1994).............................................................................23, 24

*Burlington Truck Lines, Inc. v. United States*
371 U.S. 156 (1962).........................................................................................14, 16

*Camp v. Pitts*
411 U.S. 138 (1973)................................................................................................31

**TABLE OF AUTHORITIES**
(continued)

Page

*Carey v. Klutznick*
    508 F. Supp. 420 (S.D.N.Y. 1980) ........................................................................12

*Carey v. Klutznick*
    637 F.2d 834 (2d Cir. 1980) ...................................................................................4

*Carey v. Population Servs. Int'l*
    431 U.S. 678 (1977) ...............................................................................................2

*Carpenters Indus. Council v. Zinke*
    854 F.3d 1 (D.C. Cir. 2017) ...................................................................................3

*Central United Life, Inc. v. Burwell*
    128 F. Supp. 3d 321, 330 (D.D.C. 2015), *aff'd*, 827 F.3d 70 (D.C. Cir. 2016) ......32

*Chemical Mfrs. Ass'n v. EPA*
    28 F.3d 1259 (D.C. Cir. 1994) .............................................................................31

*Chrysler Corp. v. Brown*
    441 U.S. 281 (1979) .............................................................................................30

*Citizens to Pres. Overton Park v. Volpe*
    401 U.S. 402 (1971) ........................................................................................11, 13

*City of Detroit v. Franklin*
    4 F.3d 1367 (6th Cir. 1993) ...................................................................................5

*City of Los Angeles v. U.S. Dept. of Commerce*
    307 F.3d 859 (9th Cir. 2002) .............................................................................9, 12

*City of New York v. U.S. Dep't of Commerce*
    822 F. Supp. 906 (E.D.N.Y. 1993) .......................................................................12

*City of Philadelphia v. Klutznick*
    503 F. Supp. 663 (E.D. Pa. 1980) ..........................................................................4

*City of Willacoochee, Ga. v. Baldrige*
    556 F. Supp. 551 (S.D. Ga. 1983) ..........................................................................5

*Clapper v. Amnesty Int'l USA*
    568 U.S. 398 (2013) ...............................................................................................3

*Clean Air Council v. Pruitt*
    862 F.3d 1 (D.C. Cir. 2017) .................................................................................31

iv

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Crown Cork & Seal Co. v. NLRB*
   36 F.3d 1130 (D.C. Cir. 1994) ...............................................................................31

*Ctr. for Biological Diversity v. Zinke*
   900 F.3d 1053 (9th Cir. 2018).................................................................................21

*Ctr. for Food Safety v. Price*
   No. 17-cv-3833 (VSB), 2018 WL 4356730 (S.D.N.Y. Sept. 12, 2018) ....................5

*Cuomo v. Baldrige*
   674 F. Supp. 1089 (S.D.N.Y. 1987)........................................................................12

*Czyzewski v. Jevic Holding Corp.*
   137 S. Ct. 973 (2017) ................................................................................................3

*Dep't of Commerce v. U.S. House of Representatives*
   525 U.S. 316 (1999)........................................................................................3, 7, 12

*Encino Motorcars, LLC v. Navarro*
   136 S. Ct. 2117 (2016).............................................................................................26

*Evenwel v. Abbott*
   136 S. Ct. 1120 (2016)...............................................................................................1

*FCC v. Fox Television Stations, Inc.*
   556 U.S. 502 (2009).................................................................................................11

*FEC v. Akins*
   524 U.S. 11 (1998)................................................................................................5, 7

*Fed'n for Am. Immigration Reform v. Klutznick*
   486 F. Supp. 564 (D.D.C. 1980) ..........................................................................1, 8

*Franklin v. Massachusetts*
   505 U.S. 788 (1992).................................................................................................33

*Harmon v. Thornburgh*
   878 F.2d 484 (D.C. Cir. 1989) ...............................................................................33

*Havens Realty Corp. v. Coleman*
   455 U.S. 363 (1982).............................................................................................6, 7

*Home Box Office, Inc. v. F.C.C.*
   567 F.2d 9 (D.C. Cir. 1977) ...................................................................................15

Plaintiffs' Pre-Trial Proposed Conclusions of Law (3:18-cv-01865)

## TABLE OF AUTHORITIES
### (continued)

Page

*Idaho Farm Bureau Fed'n v. Babbitt*
58 F.3d 1392 (9th Cir. 1995)......................................................................................30

*In re Zappos.com, Inc.*
888 F.3d 1020, 1026 n.6 (9th Cir. 2018)........................................................................8

*INS v. Yueh-Shaio Yang*
519 U.S. 26 (1996) ......................................................................................................13

*Int'l Union, United Mine Workers of Am. v. Fed. Mine Safety & Health Admin.*
920 F.2d 960 (D.C. Cir. 1990) ...................................................................................31

*Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin.*
626 F.3d 84 (D.C. Cir. 2010) .....................................................................................23

*Kuang v. U.S. Dep't of Defense*
No. 18-cv-3698-JST, 2018 WL 6025611 (N.D. Cal. Nov. 16, 2018).......................26

*Lands Council v. Powell*
395 F.3d 1019 (9th Cir. 2005).......................................................................12, 18, 19

*League of Women Voters v. Newby*
838 F.3d 1 (D.C. Cir. 2016) .................................................................................18, 32

*Leonard v. Clark*
12 F.3d 885 (9th Cir. 1993)...........................................................................................2

*Lujan v. Defs. of Wildlife*
504 U.S. 555 (1992) ......................................................................................................2

*LULAC v. Perry*
548 U.S. 399 (2006) ....................................................................................................26

*McDonnell Douglas Corp. v. U.S. Dep't of the Air Force*
375 F.3d 1182 (D.C. Cir. 2004) .................................................................................22

*Mendia v. Garcia*
768 F.3d 1009 (9th Cir. 2014)...................................................................................7, 8

*Monsanto v. Geertson Seed Farms*
561 U.S. 139 (2010).........................................................................................3, 29, 32

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*
463 U.S. 29, 31, 43-44 (1983).......................................................................13, 16, 23

1

## TABLE OF AUTHORITIES
### (continued)

2

<u>Page</u>

3

*NAACP v. Trump*

4
315 F. Supp. 3d 457 (D.D.C. 2018) ...................................................................34

5
*Nat'l Mining Ass'n v. Jackson*
856 F. Supp. 2d 150 (D.D.C. 2012) ...................................................................12

6

7
*Nat'l Wildlife Fed'n v. Espy*
45 F.3d 1337 (9th Cir. 1995)..............................................................................32

8
*Nat'l Wildlife Fed'n v.U.S. Army Corp of Engineers*
384 F.3d 1163 (9th Cir. 2004)............................................................................26

9

10
*National Audubon Soc. v. U.S. Forest Service*
46 F.3d 1437 (9th Cir. 1993)..............................................................................13

11

12
*Negron v. City of Miami Beach*
113 F.3d 1563 (11th Cir. 1997)..........................................................................26

13
*New England Coal. on Nuclear Pollution v. Nuclear Regulatory Comm'n*
727 F.2d 1127 (D.C. Cir. 1984) .........................................................................25

14

15
*NRDC v. EPA*
489 F.3d 1250 (D.C. Cir. 2007) .........................................................................31

16

17
*NRDC v. Nat'l Highway Traffic Safety Admin.*
894 F.3d 95, 115 (2d. Cir. 2018)........................................................................31

18
*Planned Parenthood of N.Y. City, Inc. v. U.S. Dep't of Health & Human Servs.*
No. 18- cv-5680 (NRB), 2018 WL 4168977, at *24 (S.D.N.Y. Aug. 30, 2018)....................32

19

20
*Pub. Citizen, Inc. v. Mineta*
340 F.3d 39 (2d Cir. 2003)..................................................................................23

21

22
*Pub. Citizen v. U.S. Dep't of Justice*
491 U.S. 440 (1989)........................................................................................5, 7

23
*Ramos v. Nielsen*
No. 18-cv-1554, 2018 WL 4778285 (N.D. Cal. Oct. 3, 2018) ..................................24

24

25
*Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*
499 F.3d 1108 (9th Cir. 2007)...............................................................13, 14, 15, 18

26

27
*Reyes v. City of Farmers Branch*
586 F.3d 1019 (5th Cir. 2009).............................................................................26

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Romero v. City of Pomona*
665 F. Supp. 853 (C.D. Cal. 1987) .......................................................26

4

5

*San Luis & Delta-Mendota Water Auth. v. Locke*
776 F.3d 971 (9th Cir. 2014)................................................................12

6

7

*Southwest Center for Biological Diversity v. U.S. Forest Service*
100 F.3d 1443 (9th Cir. 1996)..............................................................14

8

*Spokeo, Inc. v. Robins*
136 S. Ct. 1540 (2016) ..........................................................................2

9

10

*State of Tex. v. Mosbacher*
783 F. Supp. 308, 313-14 (S.D. Tex. 1992) ...........................................5

11

*Susan B. Anthony List v. Driehaus*
134 S. Ct. 2334 (2014) ..........................................................................3

12

13

*Texas v. United States*
809 F.3d 134, 187-88 (5th Cir. 2015) ..................................................34

14

15

*Town of Chester v. Laroe Estates, Inc.*
137 S. Ct. 1645 (2017) ..........................................................................2

16

17

*Tummino v. Torti*
603 F. Supp. 2d 519 (E.D.N.Y. 2009) ................................................14

18

*U.S. ex rel. City of Atlanta, Ga. v. Steuart*
47 F.2d 979 (D.C. Cir. 1931) ................................................................9

19

20

*Utah v. Evans*
536 U.S. 452 (2002)...........................................................................6, 9

21

22

*Wisconsin v. City of New York*
517 U.S. 1 (1996)..................................................................... *passim*

23

*Wong Yang Sung v. McGrath*
339 U.S. 33 (1950)..............................................................................11

24

25

26

27

28

## TABLE OF AUTHORITIES
### (continued)

**Page**

STATUTES

United States Code
Title 5, § 706 .................................................................................................11, 30, 34
Title 5, § 706(2)(A) .......................................................................................26, 30, 33
Title 13, § 4 ...............................................................................................................1
Title 13, § 6(c) ...........................................................................................14, 18, 27
Title 13, § 141(a) ......................................................................................................9
Title 13, § 141(c) ......................................................................................................6
Title 13, § 141(f) ........................................................................................14, 17, 31
Title 13, § 141(f)(1) ......................................................................9, 16, 17, 18
Title 13, § 141(f)(2) ..................................................................................................9
Title 13, § 141(f)(3)........................................................................................ *passim*
Title 28, § 2201 ...........................................................................................28, 30, 34
Title 28, § 2202 ......................................................................................................28

CONSTITUTIONAL PROVISIONS

United States Constitution
Amendment XIV, § 2 ................................................................................................8
Article I, § 2, cl. 3 ............................................................................................ *passim*

OTHER AUTHORITIES

H.R. CONF. REP. No. 94-1719, at 10 (1976), *reprinted in* 1976 U.S.C.C.A.N.
  5476 ......................................................................................................................18

Pub. L. No. 105-119, § 209(a)(5), 111 Stat. 2440, 2481 (1997) ......................................1

Pub. L. No. 105-119, § 209(a)(6), 111 Stat..........................................................1, 6

Pub. L. No. 105-119, § 209(a)(8), 111 Stat..........................................................3, 4

### PLAINTIFFS' PRE-TRIAL PROPOSED CONCLUSIONS OF LAW

In anticipation of the trial of this matter, Plaintiffs State of California, County of Los Angeles, City of Los Angeles, City of Fremont, City of Long Beach, City of Oakland, and City of Stockton respectfully submit the following Pre-trial Proposed Conclusions of Law, as required by the Court's orders.  Following trial, and also in accordance with the Court's orders, Plaintiffs intend to submit Post-Trial Proposed Conclusions of Law, which will be revised and updated based on the evidence admitted and arguments presented at trial.

## I.   THE OBLIGATION TO CONDUCT A DECENNIAL CENSUS

1. The Constitution requires an "actual Enumeration" of the population every ten years to count "the whole number of persons in each State." U.S. Const. art. I, § 2, cl. 3; id. amend. XIV § 2.

2. All residents must be counted, regardless of citizenship status. *See Fed'n for Am. Immigration Reform v. Klutznick* ("*FAIR*"), 486 F. Supp. 564, 576 (D.D.C. 1980) (three-judge court).

3. The "decennial enumeration of the population is one of the most critical constitutional functions our Federal Government performs." Pub. L. No. 105-119, § 209(a)(5), 111 Stat. 2440, 2481 (1997).

4. The enumeration affects the apportionment of Representatives to Congress among the States, the allocation of electors to the Electoral College, and the division of congressional, state, and local electoral districts. *See* U.S. Const. art. I, § 2, cl. 3; *Evenwel v. Abbott*, 136 S. Ct. 1120, 1127-29 (2016).

5. Congress has assigned its duty to conduct the enumeration to the Secretary of Commerce and Census Bureau. 13 U.S.C. § 4.

6. Their obligation is to obtain a total-population count that is "as accurate as possible, consistent with the Constitution" and the law. Pub. L. No. 105-119, § 209(a)(6), 111 Stat. at 2481; *see Wisconsin v. City of New York*, 517 U.S. 1, 20 (1996) (decisions must bear "a reasonable relationship to the accomplishment of an actual enumeration of the population").

## II.   PLAINTIFFS HAVE STANDING TO BRING THEIR APA AND ENUMERATION CLAUSE CLAIMS

7. To establish standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

8. Where, as here, a plaintiff seeks declaratory and prospective relief only, not money damages, its claims do not require individualized proof.  *Associated General Contractors of California, Inc. v. Coalition for Economic Equity*, 950 F.2d 1401, 1408 (9th Cir. 1991).

9. The standing inquiry is satisfied so long as a single plaintiff establishes standing.  *Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir. 1993) (citing *Carey v. Population Servs. Int'l,* 431 U.S. 678, 682 (1977)); *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645 (2017).

10. The Plaintiffs and Plaintiff-in-Intervention in this case (collectively, "Plaintiffs") all have standing because they have suffered several different types of injuries-in-fact that are fairly traceable to Defendants' decision to add a citizenship question to the census, and these injuries will be redressed if Defendants' decision is enjoined.

### A.   The Court May Consider Extra-Record Evidence to Evaluate Standing

11. Defendants concede that the Court can consider evidence outside the administrative record to evaluate standing in this case.

12. Courts adjudicating APA challenges can and do consider extra-record evidence for standing purposes. *See, e.g., Bennett v. Spear*, 520 U.S. 154, 167-68 (1997) (because "each element of Article III standing 'must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation,'" a plaintiff "must ultimately support any contested facts with evidence adduced at trial") (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)); *see also Am. Littoral Soc'y v. U.S. Envtl. Prot. Agency Region*, 199 F. Supp. 2d 217, 228 & n.3 (D. N.J. 2002) (considering plaintiffs' extra-record evidence in support of standing in an APA case because "[it goes] to the issue of the Court's jurisdiction").

2

**B.**     **Plaintiffs Have Suffered, and Will Imminently Suffer, Injuries-in-Fact**

13. Allegations of a "future injury" qualify "if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)).

14. Injury-in-fact exists where there is a "substantial risk" that harm will occur, which prompts plaintiffs to reasonably incur costs to mitigate or avoid that harm.  *Clapper*, 568 U.S. 395, 414 n.5 (citing *Monsanto v. Geertson Seed Farms*, 561 U.S. 139 (2010).)

15. "For standing purposes, a loss of even a small amount of money is ordinarily an injury." *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017); *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017) ("A dollar of economic harm is still an injury-in-fact for standing purposes.").

16. The possibility that Defendants may take undefined future steps (some of which are hypothetical, not planned) to try to mitigate harms caused by the addition of a citizenship question does not undermine the showing of injury-in-fact below. *See Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 331-32 (1999) (concluding that plaintiffs established injury-in-fact based on expected effects of the use of sampling in the 2000 census because "it is certainly not necessary for this Court to wait until the census has been conducted to consider the issue presented here, because such a pause would result in extreme – possibly irremediable – hardship"); *see also* Pub. L. No. 105-119, § 209(a)(8), 111 Stat. at 2481 ("Congress finds that . . . the decennial enumeration of the population is a complex and vast undertaking, and if such enumeration is conducted in a manner that does not comply with the requirements of the Constitution or laws of the United States, it would be impracticable for the States to obtain, and the courts of the United States to provide, meaningful relief after such enumeration has been conducted.").

17. The evidence establishes that Plaintiffs will be injured in numerous different and independent ways from the addition of a citizenship question to the census, including through: (1) expenditure of funds for community outreach; (2) loss of federal funding; (3) harm to demographic data accuracy and quality; and (4) loss of political representation.

3

### 1.    Expenditure of Funds to Mitigate the Substantial Risk of Harm

18. Plaintiffs' evidence shows that Plaintiffs have and will continue to expend funds to counteract the decline in self-response rates and attempt to mitigate a differential undercount of Plaintiffs' residents resulting from the citizenship question.  *See* PFOF § V(B)(1).

19. The evidence shows that there is a substantial risk that such an undercount will occur.

20. As explained in Plaintiffs' Pretrial Findings of Fact ("PFOF"), Plaintiffs, including the State of California, have proven that the citizenship question will cause them to be differentially undercounted because of their large share of non-citizens, immigrants and Latino residents.  *See* PFOF §V(A)(1), (2).

21. The legislative history of California's fiscal year 2018-2019 state budget and follow-up government reports show that the State appropriated and the Plaintiffs are spending additional funds to counteract the impact of the citizenship question.  *See* PFOF § V(B)(1).

22. Although the exact amount of the increase due to the citizenship question is uncertain, it is clear that at least some of the increase between the Governor's initial budget and the enacted budget is due to the citizenship question.  *Id.*

23. Defendants argue that an increased appropriation of $50 million is not "reasonable" to mitigate the harm from an undercount.  But even if that were the case, which it is not, it would not change the fact that *some* amount of the State's additional spending was a reasonable attempt at mitigation sufficient to confer standing.

24. These expenditures constitute a direct injury to the budgets and resources of the State that is sufficient to establish injury-in-fact for standing purposes.

### 2.    Federal Funding Injury

25. Plaintiffs have also established injury-in-fact based on the harmful effect the citizenship question will have on federal funds that they receive.

26. A decrease in federal funds flowing from a disproportionate undercount is an injury-in-fact for the purposes of standing.  *Carey v. Klutznick*, 637 F.2d 834, 838 (2d Cir. 1980); *City of Philadelphia v. Klutznick*, 503 F. Supp. 663, 672 (E.D. Pa. 1980) (injury-in-fact existed for standing purposes even if "none of the named plaintiffs personally receives a dollar of state or

4

federal aid, [because] all enjoy the benefits yielded when the City is enabled to improve quality of life through the receipt of this money"); *State of Tex. v. Mosbacher*, 783 F. Supp. 308, 313-14 (S.D. Tex. 1992) (even though the "Census Bureau and the Department of Commerce are not in charge of distribution of federal funds," their "actions significantly affect the distribution of funds"); *see also City of Detroit v. Franklin*, 4 F.3d 1367, 1375 (6th Cir. 1993) (finding standing where plaintiffs claimed that "the census undercount will result in a loss of federal funds" to their city); *City of Willacoochee, Ga. v. Baldrige*, 556 F. Supp. 551, 554 (S.D. Ga. 1983) (same).

27. Dr. Reamer identified nearly two dozen financial assistance programs with funding formulas that allocate federal funds geographically in a manner dependent in part or in whole on decennial census results. *See* PFOF § V(B)(2).

28. According to Dr. Reamer, even a very small citizenship-question-induced disparate undercount of non-citizen households will cause California to lose funding under those programs. *See id.*

29. This differential undercount will also injure California's local governments by preventing them from receiving their proportionate share of funding that flows through the State of California.  *See id.*

### 3.    Harm to Demographic Data Accuracy and Quality

30. Plaintiffs have also proved injury-in-fact because adding a citizenship question will harm the accuracy of the demographic data gathered by the decennial census.

31. Where a defendant has a duty to provide accurate information, failure to so provide creates an injury-in-fact sufficient to confer standing. *See, e.g.*, *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449-51 (1989) (plaintiff had standing to sue under the Federal Advisory Committee Act for failure to make publicly available reports and minutes of American Bar Association meetings relating to prospective judicial nominees); *see also FEC v. Akins*, 524 U.S. 11, 20-21 (1998) (plaintiff voters had standing to sue the Federal Election Commission on the ground that the statute in question gave plaintiffs a right to the information being withheld by the FEC); *see also Ctr. for Food Safety v. Price*, No. 17-cv-3833 (VSB), 2018 WL 4356730, at *5

(S.D.N.Y. Sept. 12, 2018) (informational injury satisfies the injury-in-fact requirement of standing where a statutory provision has explicitly created a right to information).

32. An injury sufficient to create standing is created not only by a total deprivation of information to which plaintiffs have a statutory right, but also by the deprivation of accurate or truthful information. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982) (holding that because the Fair Housing Act created a statutory right to truthful information concerning the availability of housing, "testers" who were misinformed had standing to sue without demonstrating any further injury).

33. Here, Defendants are constitutionally required to provide accurate information, and Plaintiffs have a statutory right to the provision of those results. *See Utah v. Evans*, 536 U.S. 452, 478 (2002) (explaining Framers' "strong constitutional interest in accuracy"); *Wisconsin v. City of N.Y.*, 517 U.S. 1, 20 (1996) (the conduct of the census must bear a "reasonable relationship to the accomplishment of an actual enumeration of the population, keeping in mind the constitutional purpose of the census," namely, obtaining an accurate count of the population in each state); 13 U.S.C. § 141(c); *see also* Pub. L. No. 105-119, § 209(a)(6), 111 Stat. at 2481 ("Congress finds that . . . [i]t is essential that the decennial enumeration of the population be as accurate as possible, consistent with the Constitution and laws of the United States." ).

34. As Dr. Abowd has testified, obtaining household date through NRFU or imputation degrades the data accuracy on the local level. *See* PFOF § V(B)(3).

35. Plaintiffs' local government witnesses confirm that they do, in fact, use decennial census data for planning and allocation of resources, and for drawing election districts conforming to the federal and California Voting Rights Acts. *See id.*

36. The citizenship question will cause plaintiffs to use demographic data that is inaccurate and therefore harmful to their ability to plan, allocate resources equitably, and comply with the law. *See id.*

37. Defendants' decision to add a citizenship question, and the resulting impairment of data quality, harms Plaintiffs' interests in accurate information and is sufficient to establish injury-in-

6

1   fact. *Havens Realty*, 455 U.S. at 373-74; *see also FEC*, 524 U.S. at 20-21; *Pub. Citizen*, 491 U.S.

2   at 449-51.

3               **4.     Loss of Political Representation**

4        38. Finally, the addition of the citizenship question injures the State of California's right to

5   proportional representation in the House of Representatives and, by extension, the electoral

6   college.

7        39. A plaintiff's expected loss of a representative in Congress due to census procedures

8   satisfies the injury-in-fact requirement. *Dep't of Commerce v. U.S. House of Representatives*,

9   525 U.S. 316, 331-32 (1999).

10       40. Based on Dr. Barreto's survey results and Dr. Fraga's calculations, California is at

11  substantial risk of losing at least on congressional seat. *See* PFOF § V(B)(4).

12       41. Defendants' decision to add a citizenship question therefore injures California's interest in

13  proportional political representation.

14          **C.     Plaintiffs' Injuries Are Traceable and Redressable**

15       42. Establishing causation requires that the plaintiff demonstrate that his injury is "fairly

16  traceable to the challenged action of the defendant, and not the result of the independent action of

17  some third party not before the court." *Mendia v. Garcia*, 768 F.3d 1009, 1012 (9th Cir. 2014)

18  (citing *Bennett v. Spear*, 520 U.S. 154, 167 (1997)).

19       43. "Causation may be found even if there are multiple links in the chain connecting the

20  defendant's unlawful conduct to the plaintiff's injury, and there's no requirement that the

21  defendant's conduct comprise the last link in the chain." *Id.* at 1012 (citing *Bennett v. Spear*, 520

22  U.S. 154, 167 (1997)).

23       44. The key question is whether the "government's unlawful conduct is at least a substantial

24  factor motivating the third parties' actions." *Id.* at 1013 (internal citations and quotations

25  omitted). "So long as the plaintiff can make that showing without relying on speculation or

26  guesswork about the third parties' motivations, she has adequately alleged Article III causation."

27  *Id.* (internal citations and quotations omitted); *see also Barnum Timber Co. v. EPA*, 633 F.3d 894,

28  898-99 (9th Cir. 2011) (causation established by expert opinion about "market reaction" to

government conduct); *cf. In re Zappos.com, Inc.*, 888 F.3d 1020, 1026 n.6 (9th Cir. 2018) (injury related to data breach fairly traceable to retailer, even though third party hackers stole data).

45. Plaintiffs have established that there will be a drop in self-response to the 2020 Census that is fairly traceable specifically to the addition of the citizenship question. *See* PFOF V(A)(1).

46. The fact that non-responders have a legal duty to respond to the census does not alter this because, in any event, the addition of the citizenship question is a "substantial factor" contributing to the non-response. *Mendia*, 768 F.3d at 1013. Plaintiffs will be injured by the citizenship question's "coercive effect upon the action" of others. *Bennett v. Spear*, 520 U.S. 154, 169 (1997). It does not require speculation or guesswork to follow the chain of causation here; the Bureau and its top officials have concretely affirmed the predictable impact of a citizenship question. The alleged harms Plaintiffs will suffer inevitably follow from the disproportionate undercount of particular demographic groups that the Secretary's unlawful decision on the citizenship question makes certainly imminent. These alleged harms are fairly traceable to that decision.

47. The inclusion of a citizenship question in the 2020 Census questionnaire will directly cause some people not to respond at all to the 2020 Census. The Secretary's decision to add a citizenship question to the 2020 Census will be redressed by removing the question.

### III. DEFENDANTS DECISION TO ADD A CITIZENSHIP QUESTION TO THE 2020 CENSUS VIOLATES THE ENUMERATION CLAUSE

48. The United States Constitution requires that all persons in each state be counted every ten years. U.S. Const. art. I, § 2, cl. 3, and amend. XIV, § 2.

49. The Constitution mandates the "actual Enumeration" of the population for the purpose of apportioning congressional representatives among the states. U.S. Const. art. I, § 2, cl. 3.

50. For this foundational step in our country's democratic process, the Constitution recognizes no exception based on citizenship status. It is long settled that *all* persons residing in the United States—citizens and non-citizens alike—must be counted to fulfill the Constitution's "actual Enumeration" mandate. *Id.*; *Fed'n for Am. Immigration Reform v. Klutznick*, 486 F. Supp. 564, 576 (D.D.C. 1980).

51. Congress has delegated the duty of taking the census to the Secretary of Commerce. Under 13 U.S.C. § 141(a), "[t]he Secretary shall, in the year 1980 and every 10 years thereafter, take a decennial census of population as of the first day of April of such year." The Secretary has authority to conduct the census "in such form and content as he may determine . . . ." *Id.* Likewise, the Bureau Director "is necessarily invested with discretion in matters of form and procedure when these are not specifically provided for by law . . . ." *U.S. ex rel. City of Atlanta, Ga. v. Steuart*, 47 F.2d 979, 982 (D.C. Cir. 1931).

52. Defendants' discretion in taking the census is not unfettered, and in particular, is subject to congressional oversight. Three years before the census, the Secretary must submit to Congress a report proposing the subjects to be included in the census. 13 U.S.C. § 141(f)(1). Two years before the census, the Secretary must submit to Congress the specific questions to be included in the census. 13 U.S.C. § 141(f)(2). The Secretary may only later modify the subjects or questions if he submits a report to Congress and "new circumstances exist which necessitate" the modification. 13 U.S.C. § 141(f)(3).

53. Congress and the states use census data for many purposes, including for allocating federal funding and the planning and fund allocations of local governments. *City of Los Angeles v. U.S. Dept. of Commerce*, 307 F.3d 859, 864 (9th Cir. 2002); *Wisconsin v. City of New York*, 517 U.S. 1, 5-6 (1996); *see also* PFOF § V(B)(2). But the only constitutional purpose of the census is to apportion congressional representatives based on the "actual Enumeration" of the population of each state. U.S. Const. art. I, § 2, cl. 3, and amend. XIV, § 2.

54. The Census Bureau is not constitutionally required to perform an absolutely accurate count of the population. *Wisconsin v. City of New York*, 517 U.S. 1, 6 (1996).

55. Nevertheless, there is still a "strong constitutional interest in accuracy" of the census. *Utah v. Evans*, 536 U.S. 452, 478 (2002).

56. The most important type of accuracy and that which most directly implicates the constitutional purpose of the census is distributive accuracy, as opposed to numerical accuracy. *Wisconsin v. City of New York*, 517 U.S. at 20. Numerical accuracy refers to the accuracy of the

1    overall count, whereas distributive accuracy refers to the accuracy of the proportions in which

2    residents are counted in their proper locations.  *See id.* at 11 n.6.

3        57. In order to promote distributive accuracy, the Secretary's actions must bear "a reasonable

4    relationship to the accomplishment of an actual enumeration of the population, keeping in mind

5    the constitutional purpose of the census," which is to determine the apportionment of the

6    Representatives among the States."  *Wisconsin v. City of New York*, 517 U.S. 1, 20 (1996).

7        58. The evidence here shows that the Secretary's decision to add a citizenship question was

8    unreasonable in light of that constitutional purpose.

9        59. Plaintiffs' evidence shows that the citizenship question significantly impairs the

10   distributive accuracy of the census because it will uniquely impact specific demographic groups.

11   Specifically, the citizenship question will cause an undercount of immigrants and Latinos and, by

12   extension, localities where many such residents live.

13       60. There are several factors at play that make the citizenship question "unreasonable" in light

14   of this effect on the constitutional requirement of distributive accuracy.

15       61. First, the citizenship question has created an unreasonable risk that California will lose a

16   seat in the House of Representatives.  Dr. Barreto's survey results and Dr. Fraga's calculations

17   show that the state is at risk of losing one to three congressional seats, and that it is the only state

18   with such a high risk under a range of undercount scenarios.  *See* PFOF § V(A)(1), (2).

19       62. Second, there is no countervailing legitimate government interest to justify the citizenship

20   question.  The evidence shows that ACS data is sufficient for Voting Rights Act enforcement (see

21   PFOF § IV(B), (C)), there is no justification for impairing the census' distributive accuracy.

22       63. Third, the citizenship question will cause other harms that flow from distributive

23   inaccuracy, including disproportionate federal funding and less equitable local government

24   planning and funding allocations.  *See* PFOF § V(B)(2), (3).

25       64. Fourth, the citizenship question will cause additional harms, including the degradation of

26   characteristic data quality also relied on by local governments.  *See* PFOF § V(B)(3).

27       65. The finding that the addition of the citizenship question is unconstitutional here does not

28   automatically render all demographic questions on the census unconstitutional.  There is no

10

1   evidence that any other demographic question causes *distributive* inaccuracy by causing only

2   certain unevenly distributed subpopulations not to respond.

3   66. Relatedly, there is no evidence regarding whether the citizenship question affected

4   distributive accuracy of the previous censes in which it was included.  What is relevant and

5   sufficient here, is its unique diminution of distributive accuracy for the 2020 Census.

6   67. Thus, the addition of the citizenship question cannot be said to bear a "reasonable

7   relationship to the accomplishment of an actual enumeration of the population."  *Wisconsin v.*

8   *City of New York*, 517 U.S. 1, 20 (1996).  That addition therefore violates the "actual

9   Enumeration" clause of the Constitution.

10   **IV.    DEFENDANTS DECISION TO ADD A CITIZENSHIP QUESTION TO THE 2020 CENSUS**

11          **VIOLATES THE APA**

12          **A.    The Scope of Judicial Review**

13                 **1.    Review on the whole Administrative Record is to be probing and**
                          **thorough**

14   68. The APA requires this Court to conduct "plenary review of the Secretary's decision, . . . to

15   be based on the full administrative record that was before the Secretary at the time he made his

16   decision." *Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 420 (1971); *see also* 5 U.S.C. §

17   706.

18   69. The Supreme Court has made clear that this Court's review is to be "thorough, probing,

19   [and] in-depth." *Overton Park*, 401 U.S. at 415; *see id.* at 416 ("searching and careful" review).

20   70. Rigorous judicial review under the APA was intended to maintain the balance of power

21   between the branches of government: "[I]t would be a disservice to our form of government and

22   to the administrative process itself if the courts should fail, so far as the terms of the [APA]

23   warrant, to give effect to its remedial purposes." *Wong Yang Sung v. McGrath*, 339 U.S. 33, 41

24   (1950); *see also FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 537 (2009) (Kennedy, J.,

25   concurring in the judgment) (in enacting the APA, "Congress confined agencies' discretion and

26   subjected their decisions to judicial review").

27

28

11

71. The parties agree that, for the APA claim, the Court may consider at least the designated Administrative Record.[1]  *See* PTX-1-16.

### 2. The Court may consider extra-record evidence that serves as background to explain or clarify scientific or technical subjects requiring specialized knowledge.

72. As is standard in Administrative Procedure Act cases, this Court may consider extra-record evidence as background to explain or clarify scientific or technical subjects requiring specialized knowledge.

73. This Court may consider evidence outside of the administrative record where such evidence "is necessary to explain technical terms or complex subject matter involved" in the agency decision at issue. *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005); *Animal Defense Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988).  Such evidence may also be necessary to ensure that the court can properly understand the agency's reasoning and decision-making when that reasoning and decision-making involved, for example, scientific tests, complex calculations, or other specialized processes. *See, e.g.*, *Asarco, Inc. v. United States E.P.A.*, 616 F.2d 1153, 1160-61 (9th Cir. 1980) (testimony of copper plant manager to explain operation of smelter); *see also San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014) (extra-record evidence permissible in APA case to explain "technical terms or complex subject matter"); *Nat'l Mining Ass'n v. Jackson*, 856 F. Supp. 2d 150, 157 (D.D.C. 2012) (extra-record evidence will be considered "if it is needed to assist a court's review").

74. Such explanatory expert evidence is commonplace in census-related disputes, which often involve technical issues, such as statistical techniques and calculations; survey methodology and design; demography; and the Census Bureau's established testing and other procedures. *See, e.g.*, *Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 331 (1999); *City of Los Angeles v. U.S. Dept. of Commerce*, 307 F.3d 859, 864 (9th Cir. 2002); *City of New York v. U.S. Dep't of Commerce*, 822 F. Supp. 906, 917 (E.D.N.Y. 1993); *Cuomo v. Baldrige*, 674 F. Supp. 1089, 1093-1103 (S.D.N.Y. 1987); *Carey v. Klutznick*, 508 F. Supp. 420, 422 (S.D.N.Y. 1980).

---

[1] Plaintiffs reserve the right to argue at trial and in their post-trial proposed conclusions of law that additional materials should be considered by the Court as being included in the administrative record.

75. Here, for example, Plaintiffs and Defendants proffered expert testimony to help the Court understand the Census Bureau's testing procedures. Both parties also proffered expert testimony addressing the Census Bureau's efforts to enumerate hard-to-count populations, NRFU operations, and imputation procedures, including the general methodology and factors that may bias or skew the imputation model.  In addition, Plaintiffs proffered expert testimony regarding the use of Census Bureau data in Voting Rights Act enforcement.

### 3. The Court may consider extra-record evidence to evaluate whether the agency failed to consider all relevant factors

76. This Court may consider extra-record evidence to evaluate whether the agency failed to consider all relevant factors, ignored an important aspect of the problem, or deviated from established agency practices. *See Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*, 499 F.3d 1108, 1117 (9th Cir. 2007).

77. An agency's decision is arbitrary and capricious under the APA if, among other things, the agency failed to consider all "relevant factors," *Overton Park*, 401 U.S. at 416; ignored "an important aspect of the problem," *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 31, 43-44 (1983); or made "an irrational departure from [settled] policy," *INS v. Yueh-Shaio Yang*, 519 U.S. 26, 32 (1996).

78. To apply these standards, a court must as a threshold matter understand what is "relevant," "important," or "settled policy" in the field where the challenged agency decision was made.  In many cases, the administrative record will provide the relevant benchmarks.  But evidence outside the "bare record" may be required to determine "the applicable standard" to apply in evaluating the completeness of the agency's reasoning and in determining whether the agency ignored critical factors or information.  *Overton Park*, 401 U.S. at 420 (emphasis added); *see also National Audubon Soc. v. U.S. Forest Service,* 46 F.3d 1437, 1447 (9th Cir. 1993); *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008).

79. "It will often be impossible, especially when highly technical matters are involved, for the court to determine whether the agency took into consideration all relevant factors unless it looks outside the record to determine what matters the agency should have considered but did not."

13

1    The court cannot adequately discharge its duty to engage in a "substantial inquiry" if it is required

2    to take the agency's word that it considered all relevant matters.  *Asarco*, 616 F.2d at 1160.

3        80. In this case, as described below, the decision-making process lacked adequate

4    consideration of several relevant factors.  For example, Plaintiffs argue that Secretary Ross failed

5    to consider a number of critical factors, including whether the citizenship question would result in

6    an ultimate undercount; his statutory obligations under 13 U.S.C. §§ 6(c) & 141(f); the need to

7    conduct pre-testing; the effect of the Bureau's confidentiality obligations and disclosure

8    avoidance practices on the fitness of citizenship data for DOJ's stated purposes; the nature and

9    quality of injuries that may result from an inaccurate census count and characteristic data; the

10   relevant standards applicable to a decision to change a census question; and agency practices for

11   conferring with requesting agencies.

12               **4.    The Court may consider extra-record evidence relevant to Plaintiffs'
                         claims that the Secretary's decision was based on pretext or
13                       prejudgment.**

14       81. This Court may also consider extra-record evidence that is relevant to Plaintiffs' claims

15   that the Secretary's decision to add a citizenship question was based on pretext, in light of

16   Plaintiffs' showing of agency bad faith.  *See Ranchers Cattlemen*, 499 F.3d 1108, 1117 (9th Cir.

17   2007); *Southwest Center for Biological Diversity v. U.S. Forest Service*, 100 F.3d 1443 (9th Cir.

18   1996).

19       82. The Court's consideration of such evidence is "necessary to meaningful judicial review"

20   of Plaintiffs' claims. *Tummino v. Torti*, 603 F. Supp. 2d 519, 543 (E.D.N.Y. 2009).

21       83. Where, as in this case, such evidence is uncovered, the agency's actual decision-making

22   "cannot be fully understood" without considering that extra-record evidence.  *Id.* at 544.

23       84. That is particularly the case here, where the record itself shows the decisionmaker's

24   express caution about what it would include.   PTX-96, 362.

25           **B.    The Decision to Add the Citizenship Question Violates the APA Because
                     the Justification for the Decision Was Pretextual**
26

27       85. The APA requires an agency decision-maker to "disclose the basis of its" decision,

28   *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962), where the agency

14

decisionmaker fails to disclose the substance of relevant information that has been presented to it, the court "must treat the agency's justifications as a fictional account of the actual decisionmaking process and must perforce find its actions arbitrary." *See Home Box Office, Inc. v. F.C.C.*, 567 F.2d 9, 54-55 (D.C. Cir. 1977).

### 1. Based on the AR Alone, Defendants' Decision to Add a Citizenship Question was Pretextual

86. As explained in this Court's finding of fact, the evidence shows that Secretary Ross did not add the citizenship question with the purpose of promoting Voting Rights Act enforcement. The evidence strongly suggests that he was motivated by the partisan purpose of facilitating the exclusion of non-citizens from the population count for congressional apportionment. *See* PFOF § 3(J).

87. Based on this finding, the Court concludes that Secretary Ross's purported rationale for adding the citizenship question to the 2020 Census was pretext, and that Secretary Ross failed to disclose the actual basis of his decision, in violation of the APA.

### 2. Extra-Record Evidence Confirms that Defendants' Decision to Add a Citizenship Question was Pretextual

88. It is proper to consider extra-record evidence in the pretext analysis here, particular in light of Defendants': (1) statement in the administrative record that they would have to be careful about what the record included (PTX-96, 362) and (2) insufficient efforts to compile and produce the administrative record. *See Ranchers Cattlemen*, 499 F.3d 1108, 1117 (9th Cir. 2007); PFOF III.

89. Additional evidence offered by Plaintiffs confirms that Secretary Ross's did not decide to add the citizenship question to the Census for the purpose of Section 2 Voting Rights Act enforcement. *See* PFOF § IV(C).

90. This additional evidence confirms that the decision was based on pretext and in violation of the APA.

**C. The Decision to Add the Citizenship Question Violates the APA Because It Was Arbitrary and Capricious**

91. Agency action should be set aside as arbitrary and capricious if the agency (1) fails to disclose and explain the basis of its decision, (2) offers "an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise," or (3) fails to "consider an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962).

**D. Based on the AR Alone, Defendants' Decision was Arbitrary and Capricious Because It Failed to Consider an Important Aspect of the Problem**

**1. Defendants failed to consider whether the citizenship question would result in an ultimate undercount**

92. Although the administrative record shows that the Defendants considered the initial drop in self-response due to the citizenship question, as well as the potential costs of NRFU as a result of that drop, they do not appear to have analyzed whether the non-response would ultimately lead to an undercount or affect congressional apportionment. *See e.g.* PTX 22, 24, 25, 26, 101, 133, 148.

93. An undercount is clearly an "important aspect of the potential problem" of adding the citizenship question. *See State Farm*, 463 U.S. at 43. The final count is used to allocate hundreds of billions of dollars in public funding each year and to allocate congressional seats. U.S. Const. art. I, § 2, cl. 3; Joint Pretrial Statement and [Proposed]Order, Exhibit A ("Undisputed Facts"), ECF No. 119, ¶ 67.

**2. Defendants failed to consider key legal obligations**

94. The decision is arbitrary and capricious under the administrative record because the Secretary Ross failed to consider his statutory obligations under section 141(f)(1) & (3).

95. Title 13, section 141(f)(1) requires the Secretary to submit, "not later than 3 years before the appropriate census date, a report containing the Secretary's determination of the subjects

16

1  proposed to be included, and the types of information to be compiled, in such census."  13 U.S.C.

2  §141(f)(1).

3  96. Title 13, section 141(f)(3) provides:

4

5  With respect to each decennial and mid-decade census conducted
   under subsection (a) or (d) of this section, the Secretary shall submit

6  to the committees of Congress having legislative jurisdiction over
   the census— …

7

8  after submission of a report under paragraph (1) or (2) of this
   subsection and before the appropriate census date, if the Secretary

9  finds new circumstances exist which necessitate that the subjects,
   types of information, or questions contained in reports so submitted

10  be modified, a report containing the Secretary's determination of the
    subjects, types of information, or questions as proposed to be

11  modified

12  13 U.S.C. § 141(f)(3).

13  97. Citizenship was not among the census subjects that Secretary Ross reported to Congress

14  in March of 2017 pursuant to section 141(f)(1).  PTX 264 at 5-15.

15  98. The March 26 Decision Memo does not address any of the requirements in 13 U.S.C.

16  § 141(f)(1) or (f)(3), or whether the Secretary had met those requirements.

17  99. The Decision Memo does not state that "new circumstances exist which necessitate" the

18  adding of the citizenship question to the census subjects.  PTX-26.

19  100. The administrative record contains only bare mention of the Secretary's obligations

20  under 13 U.S.C. § 141(f)(1) or (f)(3).  *Id.*  The only mention appears in the email between

21  Secretary Ross, Mr. Neuman, and Mr. Comstock, in which Ross expresses frustration regarding

22  the Census Bureau's stance on adding new questions, and Mr. Neumann assures Ross there was

23  to be another opportunity to report new questions in the following year.  PTX-88.

24  101. Mr. Newman's advice was clearly contrary to section 141(f), which distinguishes

25  between the "subjects" and "questions," and provides additional requirements if questions are

26  added that were not among the reported subjects.  13 U.S.C. § 141(f).

27

28

17

102. Thus, according to the administrative record, Defendants failed to consider the Secretary's legal obligations under 13 U.S.C. § 141(f)(1) and (3).

103. The decision is also arbitrary and capricious because Secretary Ross failed to consider his statutory obligations under 13 U.S.C. §§ 6(c).

104. Section 6(c) requires the Secretary to perform census-related duties by using information from other government agencies "instead of conducting direct inquiries." 13 U.S.C. § 6(c). The Secretary "*shall*" adhere to these terms "[t]o the maximum extent possible and consistent with the kind, timeliness, quality and scope of the statistics required." *Id.* (emphasis added).

105. Subdivision (c) of section 6 serves "the dual interests of economizing and reducing respondent burden." H.R. CONF. REP. No. 94-1719, at 10 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5476, 5478.

106. The Decision Memo does not address Secretary Ross's legal obligation under section 6(c). PTX-26.

107. No other evidence in the record indicates that Defendants considered Secretary Ross's legal obligation under section 6(c) during their decision-making process. *See* PFOF § III(I).

108. Defendants' complete failure to address these binding statutory mandates renders the decision arbitrary and capricious. *League of Women Voters v. Newby*, 838 F.3d 1, 10-12 (D.C. Cir. 2016) (disregard for statutory criterion renders agency decision arbitrary under the APA).

**E.  Extra-Record Evidence Confirms That Defendants' Decision was Arbitrary and Capricious Because It Failed to Consider an Important Aspect of the Problem**

109. It is appropriate here to consider extra record evidence in order to assess what factors were "important" to the decision and to explain technical terms and complex subject matter related to the census. *See Ranchers Cattlemen*, 499 F.3d at 1117; *Lands Council v. Powell*, 395 F.3d at 1030 (9th Cir. 2005).

18

1. **Defendants failed to adequately consider the need to pre-test the citizenship question**

110. Extra-record evidence also shows that Defendants failed to consider their obligation under the Census Bureau's Statistical Quality Standards to pre-test the citizenship question.

111. The Decision Memo states that the citizenship question is "well tested" because it has been on the ACS since 2005. PTX-26 at 2.

112. Under Statistical Quality Standard A2, a question from another survey is exempt from pre-testing only if the question "performed adequately in another survey," or if a waiver was obtained through a specified internal process. *See* PFOF § IV(A).

113. Defendants did not consider whether the question was "performing adequately" for the purposes of Statistical Quality Standard A2, and in fact, evidence indicated that it was performing inadequately. *Id.*

114. Defendants did not consider whether a waiver was necessary to add the citizenship question, in light of the fact that the citizenship question was performing inadequately. *Id.*

115. The decision to add the citizenship question is arbitrary and capricious due to Defendants' failure to adequately consider the need to pre-test the citizenship question

2. **Secretary Ross failed to consider the effect of the Census Bureau's confidentiality obligations and disclosure avoidance practices**

116. The decision to add the citizenship question was also arbitrary and capricious because Defendants failed to consider the effect that the Census Bureau's disclosure avoidance processes would have on the data reported to DOJ for Section 2 enforcement. *See* PFOF § IV(B).

117. According to the December 12 Letter from Arthur Gary of DOJ ("December 12 Letter"), one of the key stated reasons that decennial census data on citizenship would be preferable to ACS data is because whereas the ACS data has certain margins of error, "[b]y contrast, decennial census data is a full count of the population." PTX-32 at 3.

118. However, after disclosure avoidance techniques are used, some margin of error will exist for the citizenship data derived from the census. *See* PFOF IV(B). The Census Bureau does not

19

1    know how that margin of error will compare to the margin of error for citizenship data from the

2    ACS.  *Id.*

3        119. There is nothing in the AR that shows that Secretary Ross considered this issue and its

4    impact on whether census-derived data would actually be superior to ACS-derived data.  *Id.*

5              **3.    Defendants failed to consider injuries that may result on a local level
                    from an inaccurate census count and inaccurate characteristic data**

6

7        120. According to Dr. Abowd, enumerating residents through NRFU and imputation damages

8    the data "quality" and makes the count and characteristic data inaccurate at "low levels" of

9    geography.  *See* PFOF § V(B)(3).

10       121. This low-level data is used by local governments in their planning, services, and funding.

11   *Id.*

12       122. It is undisputed that adding the citizenship question to the census will cause a significant

13   drop in self-response rates, and cause many more people to have to be enumerated through NRFU

14   and imputation.  *See* PFOF V(A), (1)(2).

15       123. This will damage the data quality at a local level, thereby disrupting the local

16   government Plaintiffs' ability to plan, serve, and fund their communities according to their actual

17   population numbers and characteristics.  *See* PFOF § V(B)(3).  .

18       124. Despite this consequence that Dr. Abowd acknowledges, there is no evidence in the

19   administrative record showing that Defendants analyzed or considered the extent or nature of the

20   degradation of data quality that will result from the non-response.  *See* PFOF III(D)(5).

21       125. The decision to add the citizenship question was also arbitrary and capricious because

22   Defendants failed to consider the effect of degraded data quality at the local level.

23             **4.    Defendants failed to consider governing burden to change a census
                    question, agency practices for conferring with requesting agencies**

24

25       126. Defendants' decision failed to consider important aspects of the problem because the

26   Secretary applied an incorrect (and insurmountable) standard for determining when new questions

27   would unreasonably harm the census count or data quality.

28

127. The Secretary's decision does not meet the applicable legal standard for adding new questions to the census. Defendants bear the burden to demonstrate the need for the question, and to confirm that the change will not cause harm. *See* PFOF IV(A).

128. Dr. Habermann has testified that "[i]t is the responsibility of the government to ensure that the intrusion and burden are carefully considered and fully justified. When a question is proposed for any census or survey instrument, including the decennial census, federal statistical agencies proceed from the premise that there is a burden of proof on the requestors of the question to demonstrate the need for the question and to demonstrate that the proposed question will not harm the survey instrument nor damage the credibility of the statistical system with the public." PTX 821 ¶ 18.

129. But the Secretary's decision makes clear that Defendants made no affirmative finding whatsoever that the citizenship demand would *not* harm the decennial census; instead, the Secretary based his decision on the purported *absence* of evidence of harm. *See* PTX-26 at 1, 4-5

130. The Administrative Record is replete with evidence demonstrating that adding the citizenship question to the census would "increase response burden" and "harm the quality of the census count." *See e.g.* PTX-22 at 1, 5. But even setting aside such evidence, the Secretary's reliance on the purported absence of evidence effectively inverts the relevant burden of proof and introduces unacceptable – and unlawful – risk to the census. *See Ctr. for Biological Diversity v. Zinke*, 900 F.3d 1053, 1075 (9th Cir. 2018) (agency action was arbitrary and capricious where agency failed to consider scientific evidence "solely because of 'uncertainty'").

131. In light of the irreparable impact of adding a citizenship question for the next decade, Secretary Ross's failure to consider and apply the appropriate standard is arbitrary and capricious. *Am. Wild Horse Pres. Campaign v. Perdue*, 873 F.3d 914, 932 (D.C. Cir. 2017) (agencies must "adequately analyze . . . the consequences" of their actions).

**F.   Based on the AR Alone, Defendants' Decision was Arbitrary and Capricious Because It Ran Counter to the Evidence**

**1.   The Decision Was Counter to the Evidence that Administrative Data Alone Would Yield More Accurate, Usable, and Complete Citizenship Data Than Adding a Citizenship Question to the Census**

132. Defendants' decision is counter to the evidence because adding a citizenship question to the census will not provide more accurate citizenship data than are currently available.

133. Defendants' decision is predicated on the notion that a citizenship question will result in the "most complete and accurate" citizenship data for DOJ.  PTX 26 at AR 1317; *see also id.* at AR 1313 ("prioritiz[ing] the goal of obtaining *complete and accurate data*") (emphasis in original); *id.* at AR 1316 ("it was imperative" to choose an option to "provide a greater level of accuracy").  But when viewed in light of this stated goal, Defendants' decision to add a citizenship question to the 2020 census plainly runs counter to the evidence.

134. The evidence in the Administrative Record establishes that the addition of the citizenship question will result in *less* accurate and *less* complete citizenship data.

135. Defendants do not dispute, and the Administrative Record establishes, that survey data regarding citizenship is inaccurate.  Non-citizens respond to inquiries into their citizenship status by responding that they are citizens approximately 30% of the time.  PTX-22 at 7; PTX-25 at 4.

136. Every scientific analysis in the record confirms that the addition of the citizenship question will result in lower quality citizenship data. *See, e.g.*, PTX-25 at 5 ("Alternative D would result in poorer quality citizenship data than Alternative C."); PTX-22 at 1-2 (explaining that adding the citizenship question would result in "substantially less accurate citizenship status data than are available from administrative sources").

137. Moreover, as detailed above, the addition of the citizenship question will reduce self-response rates, which will further reduce data quality by driving more households into NRFU procedures that compromise that accuracy of the ultimate data produced.  *See* PFOF § V(B)(3).

138. The uncontroverted empirical evidence belies Secretary Ross's contention that collection of citizenship data through the census will enhance the accuracy of the data collected. Courts will "not defer to the agency's conclusory or unsupported suppositions." *McDonnell Douglas Corp. v.*

22

1  *U.S. Dep't of the Air Force*, 375 F.3d 1182, 1187 (D.C. Cir. 2004); *see also Int'l Union, United*

2  *Mine Workers of Am. v. Mine Safety & Health Admin.,* 626 F.3d 84, 94 (D.C. Cir. 2010)

3  (explaining that an agency has an "obligation to explain its reasoning for rejecting" expert

4  evidence contrary to its decision).

5      139. Secretary Ross's statement is unsupported by *any* evidence in the record; asserting that

6  the citizenship question will improve the accuracy of the data collected does not make it so.

7  Rather, as the Administrative Record makes clear, the use of the census to collect citizenship data

8  compromises the accuracy of the data collected by the census.

9      140. In addition, Secretary Ross contends that Option D (the option of adding a citizenship

10  question in combination with using administrative records, referred to in the Census Bureau

11  memoranda as "Alternative D") "would maximize the Census Bureau's ability to match the

12  decennial census responses with administrative records," PTX-26 at 4, so as to allow for "more

13  complete" citizenship data. But this assertion is likewise contrary to the evidence in the

14  Administrative Record.

15      141. The Administrative Record reflects that because adding a citizenship question would

16  drive down the self-response rate and put more households into NRFU operations, Option D

17  actually would reduce the Census Bureau's ability to match survey responses with administrative

18  records.  PTX-25 at 4 (explaining that since "NRFU PII is lower quality than the self-response

19  data," the citizenship question will increase "the number of persons who cannot be linked to the

20  administrative data"). There is no evidence in the record to the contrary.

21      142. The Secretary's stated desire for accuracy cannot be squared with a decision that moves

22  the census in precisely the opposite direction. *See State Farm*, 463 U.S. at 43 (decision is

23  arbitrary when it is "so implausible that it could not be ascribed to a difference in view or the

24  product of agency expertise").

25      143. Where, as here, the decision-maker has adopted a "plainly inferior" course of action, that

26  decision is arbitrary and capricious.  *Pub. Citizen, Inc. v. Mineta*, 340 F.3d 39, 56 (2d Cir. 2003);

27  *see also Beno v. Shalala*, 30 F.3d 1057, 1073-74 (9th Cir. 1994).

28

**2.      The Decision Was Counter to the Evidence Because the Decision Memo Was Rife with Flawed Assertions Not Based on Any Evidence or Counter to the Evidence in the Record**

144. The decision was also counter to the evidence, because it was replete with flawed assertions that are either not based on any evidence or contrary to the evidence in the administrative record.

145. The Decision Memorandum repeatedly claimed that there was no evidence that the citizenship question would cause a drop in self-response, and that "no one has identified any mechanism for doing so." PTX-26 at 5. This assertion is counter to the evidence in the administrative record.

146. The Census Bureau performed a scientific analysis leading them to estimate that 5.1% of households with at least one non-citizen would not respond to the census due to the citizenship question. *See* PFOF III(D). The Bureau repeatedly communicated that estimate to Secretary Ross. *Id.*

147. The Secretary's description otherwise is simply an unsupported pronouncement that cannot substitute for record evidence. *See Ramos v. Nielsen*, No. 18-cv-1554, 2018 WL 4778285, at *9-15 (N.D. Cal. Oct. 3, 2018) (finding likelihood of success on merits of APA arbitrary-and-capricious claim regarding termination of Temporary Protected Status for certain countries where DHS Secretary's unsupported pronouncement of changed country conditions is contradicted by extensive record evidence to the contrary).

148. Thus, Secretary Ross's assertions in the Decision Memorandum were clearly counter to the evidence on the non-response.

149. The Decision Memorandum was also counter to the evidence in its assertion that asking the citizenship question of all people, "may eliminate the need for the Census Bureau to have to impute an answer for millions of people." PTX-26 at 5. However, the Census Bureau had estimated that with a citizenship question on the census, it will have to impute the citizenship data of 13.8 million people. PTX 24 at 2. Nothing in the administrative record supports a contrary conclusion.

1    150. The Defendants' decision is arbitrary and capricious because these key statements in the

2    Decision Memo were counter to evidence.

3    **3.    The Decision Was Counter to the Evidence That Existing ACS Data
         Is Sufficient for Section 2 VRA Enforcement**

4

5    151. Defendants' decision is counter to the evidence showing that adding a citizenship

6    question to the census is not necessary to enable DOJ to enforce Section 2 of the Voting Rights

7    Act.

8    152. The Secretary's decision memo determines that adding a citizenship question is

9    "necessary" to provide the data DOJ requires to enforce Section 2 of the VRA. PTX-26 at 1,8.

10   153. The administrative record contains no evidence that census-derived block-level CVAP

11   data are necessary to enforce Section 2 of the VRA.  *See* AR; *see e.g.* PFOF § III(B), (C).

12   154. The administrative record, including the December 12 Letter, contains no evidence that

13   any Section 2 cases have failed or not been filed because of a lack of block-level CVAP data.  *See*

14   AR; *see also* PFOF § III(B).

15   155. The December 2017 DOJ letter does not state that such data is "necessary" to enforce the

16   VRA; rather it studiously avoids using the word "necessary" to describe the request for the data.

17   PTX-32.

18   156. The Administrative Record contains extensive evidence that the Secretary ignored from

19   voting rights experts and others demonstrating that census-derived block-level CVAP data are not

20   necessary to enforce the VRA. *See e.g.* PTX-1 at AR 799, 1122; PTX-3 at AR 3605-06

21   157. The Administrative Record also establishes that citizenship data produced in response to

22   a citizenship question on the census will be incomplete and inaccurate, particularly as to the data

23   for immigrant and Hispanic populations.  See PFOF § III(3)(D).

24   158. Agency action should be set aside as arbitrary when "the reason which the [agency] gave

25   for its action . . . makes no sense." *New England Coal. on Nuclear Pollution v. Nuclear*

26   *Regulatory Comm'n*, 727 F.2d 1127, 1130-31 (D.C. Cir. 1984).

27   159. In addition, the Secretary's decision memo gives no explanation for how the DOJ letter

28   justified the ultimate decision, except to state that DOJ requested a citizenship question. Failure to

25

conduct any analysis of how the DOJ letter supports the Secretary's decision also renders that decision invalid under the APA. *Kuang v. U.S. Dep't of Defense*, No. 18-cv-3698-JST, 2018 WL 6025611, at *31 (N.D. Cal. Nov. 16, 2018) ("DoD has simply provided no explanation for how the 2017 Study's findings support its policy choice, and 'where the agency has failed to provide even that minimal level of analysis, its action is arbitrary and capricious.'") (quoting *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016)).

160. Nor were Defendants entitled simply to rely uncritically on the DOJ letter to support their decision, without any independent assessment of its merits. Defendants may not simply hide behind the Department of Justice's stated rationale.  *See Delaware Dep't of Natural Resources and Environmental Control v. E.P.A.*, 785 F.3d 1, 16 ("EPA seeks to excuse its inadequate responses by passing the entire issue off onto a different agency.  Administrative law does not permit such a dodge.").  This is especially so where the Administrative Record establishes that Defendants themselves solicited the request from DOJ.  *See* PFOF § III(A).

161. The cases cited in the DOJ letter – which provide the only support in the Administrative Record for the VRA justification – do not themselves support the contention that existing citizenship data were inadequate or caused plaintiffs to fail in their prosecution of previous Section 2 actions.  *See also* PTX-32; *LULAC v. Perry*, 548 U.S. 399, 423-42 (2006); *Reyes v. City of Farmers Branch*, 586 F.3d 1019, 1021-25 (5th Cir. 2009); *Barnett v. City of Chicago*, 141 F.3d 699, 702-04 (7th Cir. 1998); *Negron v. City of Miami Beach*, 113 F.3d 1563 (11th Cir. 1997) *Romero v. City of Pomona*, 665 F. Supp. 853, 857 n.2 (C.D. Cal. 1987).

162. In sum, the decision to add the citizenship question is arbitrary and capricious because it was counter to the evidence that the question is not necessary for Section 2 Voting Rights Act enforcement.

### G.    Based on the AR Alone, Defendants' Decision was Contrary to Law

163. An agency decision violates the APA when it is contrary to law.  5 U.S.C. § 706(2)(A); *Nat'l Wildlife Fed'n v.U.S. Army Corp of Engineers*, 384 F.3d 1163, 1163 (9th Cir. 2004).

164. Based on the administrative record alone, the decision to add the citizenship question violates the APA as contrary to law.

165. Title 13 section 6(c) mandates that the Secretary must use administrative records rather than a survey question "[t]o the maximum extent possible and consistent with the kind, timeliness, quality and scope of the statistics required."  13 U.S.C. § 6(c).

166. The "kind" of data here would be the same regardless of whether it is gathered by administrative records or a census question – in both cases, the relevant data is simply block level data on citizens versus non-citizens.

The Census Bureau advised Secretary Ross that regardless of whether administrative data or a citizenship question were used, there was no difference in timing on when the citizenship data would be available.  PTX-133 at AR 9822.   There is no evidence in the administrative record indicating that it would take longer to provide citizenship data using administrative records than a citizenship question.

167. The Census Bureau repeatedly advised Secretary Ross that the quality of the citizenship data would be higher from administrative records than a citizenship question, due to non-citizens' propensity to report as citizens.  *See* PFOF § III(C), (D).

168. The scope of the data would be the same, regardless of source, because data would be obtained for the entire country.

169. Thus, the use of administrative records alone was superior to a census citizenship question under every criterion set forth in Section 6(c), with no evidence in the record to the contrary.

170. Secretary Ross was therefore legally required to obtain citizenship data through administrative records rather than a citizenship question on the census.  His decision to do otherwise violates the APA as contrary to law.

**H.  Extra-Record Evidence Confirms That Defendants' Decision was Contrary to Law**

171. The addition of the citizenship question is contrary to law because it violates 13 U.S.C. § 141(f)(3).

172. Section 141(f)(3) imposes substantive limitations on the Secretary's ability to modify the census.  Any other reading would render the "new circumstances" clause superfluous and

undermine the purpose of the statute.  Otherwise, Defendants could overhaul the census questionnaire the day before the census begins even if there were no new circumstances justifying this change.

173. Secretary Ross was required to, and failed to, submit a report to Congress explaining that "new circumstances exist which necessitate" the addition of the citizenship question.  13 U.S.C. § 141(f)(3);  PFOF § IV(C).

174. The Secretary cannot remedy this failure because there are no new circumstances that exist that "necessitate" the addition of the citizenship question.  The DOJ concedes that the question is not "necessary" for Voting Rights Act enforcement and Secretary Ross has identified no other reason for adding the question.  PTX-26, 32; Gore Dep. at 300.

175. The decision to add the citizenship question is therefore contrary to section 141(f)(3).

## V.   REMEDIES

### A.   Enumeration Clause Claim

176. The Constitution requires the "actual Enumeration" of all people in each state every ten years for the sole purpose of apportioning representatives among the states. U.S. Const. art. I, § 2, cl. 3, and amend. XIV, § 2.

177. Defendants violated the Enumeration Clause for the reasons explained above.

178. Defendants' violation of the Enumeration Clause harms Plaintiffs and their residents, because they have been forced to expend, and will continue to expend, funds to mitigate an undercount of their residents; will suffer a decrease in federal funding; will suffer harm to their ability to accurately plan, allocate resources, and comply with the law as a consequence of the degradation of census data quality; and will lose political representation.

179. Defendants' violation has caused and will continue to cause ongoing, irreparable harm to Plaintiffs and their residents.

180. Accordingly, Plaintiffs are entitled to a declaratory judgment, under 28 U.S.C. §§ 2201 and 2202, that including the citizenship question on the 2020 Census violates Article I, Section 2, Clause 3 of the United States Constitution.

181. Plaintiffs also seek to permanently enjoin Defendants from placing the citizenship question on the 2020 Census questionnaire. A plaintiff seeking a permanent injunction must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156-57 (2010).

182. Plaintiffs have proven that the Secretary's decision violates the Enumeration Clause of the Constitution and, thus, that any attempt to institute a citizenship question on the 2020 Census now would be unlawful.

183. Any efforts by Defendants to continue pursuing the citizenship question would risk inflicting further irreparable harm on Plaintiffs because the Secretary's decision to add the citizenship question has inflamed fears among populations who are particularly sensitive to such a question, particularly in the current political climate. *See* PFOF § V(A).

184. Allowing Defendants to continue perpetuating these harms in a futile pursuit to remedy the defects identified by this Court will severely injure Plaintiffs and their residents and members.

185. And these harms cannot be compensated with monetary damages or otherwise redressed absent injunctive relief. *See Planned Parenthood*, 2018 WL 4168977, at *24.

186. Finally, the balance of the hardships and the public interest weigh heavily in favor of an injunction. Defendants will suffer little, if any, hardship from having to comply with the law or to forgo futile attempts to reinstate a citizenship question, particularly when no such question has appeared on the decennial census for nearly seventy years. By contrast, Plaintiffs and the public will suffer widespread and irreparable harm absent an injunction.

187. Accordingly, Plaintiffs are entitled to the issuance of a permanent injunction prohibiting all Defendants and all those acting in concert with them from including the citizenship question on the 2020 Census.

### B.     APA Claim

188. The APA requires courts to "hold unlawful and set aside" agency action that is, among other things, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right, power, privilege or immunity," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706.

189. Defendants violated the APA for the reasons explained above.

190. These violations harm Plaintiffs and their residents, because they have been forced, and will continue to expend funds to mitigate an undercount of their residents; will suffer a decrease in federal funding; will suffer harm to the ability to accurately plan, allocate, resources, and comply with the law as a consequence of the degradation of census data quality; and will lose political representation.

191. Defendants' violations have caused and will continue to cause ongoing, irreparable harm to Plaintiffs and their residents.

192. Accordingly, Plaintiffs are entitled to a declaratory judgment, under 28 U.S.C. §§ 2201 and 2202, that including the citizenship question on the 2020 Census violates the APA.

193. The APA mandates that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

194. "[O]rdinarily, when a regulation is not promulgated in accordance with the APA, the regulation is invalid" and must be vacated. *All. For the Wild Rockies v. U.S. Forest Serv.*, 907 F.3d 1105, 1121 (9th Cir. 2018) (citing *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995); *see also Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1084 (D.C. Cir. 2001) (successful APA challenger "is entitled to relief under that statute, which normally will be a vacatur of the agency's [decision]").

195. Vacatur properly reflects the sound principle that an agency action that violates the APA cannot be afforded the force and effect of law and is, therefore, void. *Chrysler Corp. v. Brown*, 441 U.S. 281, 313 (1979).

196. Vacatur is an appropriate remedy under the APA both when an agency acts contrary to law, *see*, *e.g.*, *NRDC v. EPA*, 489 F.3d 1250, 1261 (D.C. Cir. 2007) (vacating rule that "conflicts with the plain meaning" of statute), and when an agency action is arbitrary and capricious, *see*, *e.g.*, *Camp v. Pitts*, 411 U.S. 138, 143 (1973) ("If [the agency's] finding is not sustainable on the administrative record made, the [agency's] decision must be vacated . . . .").

197. Although courts may remand to the agency after invalidating an improper determination, courts have also not hesitated to vacate agency actions without remand when they are taken in violation of statutory or procedural requirements.  *See, e.g.*, *NRDC v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 115 (2d. Cir. 2018)*; Clean Air Council v. Pruitt*, 862 F.3d 1, 14 (D.C. Cir. 2017).

198. Such a disposition reflects the fact that statutory or procedural violations can be so fundamental as to render the agency's basic choice—and not merely its particular articulation of that choice—"substantively fatal." *Int'l Union, United Mine Workers of Am. v. Fed. Mine Safety & Health Admin.*, 920 F.2d 960, 967 (D.C. Cir. 1990); *see also Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015) (vacatur warranted when "such fundamental flaws in the agency's decision make it unlikely that the same rule would be adopted on remand").

199. Plaintiffs have proven statutory and procedural violations that warrant vacatur without remand. In particular, because Defendants violated their notification deadlines to Congress under 13 U.S.C. § 141(f), failing to give Congress the time it determined it would need to review Defendants' decisions; and because the circumstances for addressing that statutory violation cannot be met; Defendants cannot at this point add a citizenship question to the 2020 census and remand of the issue for further administrative proceedings would serve no purpose.

200. Remand is also unnecessary because the Secretary's stated rationale for the citizenship question is arbitrary and capricious, because the Secretary has never suggested an alternative basis for his decision. *See Crown Cork & Seal Co. v. NLRB*, 36 F.3d 1130, 1142-43 (D.C. Cir. 1994) (remand unnecessary when NLRB "suggested no alternative bases for upholding" its determination); *Chemical Mfrs. Ass'n v. EPA*, 28 F.3d 1259, 1268 (D.C. Cir. 1994) ("No remand for further administrative proceedings is warranted because the EPA did not suggest in the

31

1    rulemaking under review that there is any alternative basis in the record" for its decision.).

2        201. Finally, Plaintiffs also seek to permanently enjoin Defendants from including the

3    citizenship question on the 2020 Census.  A plaintiff seeking a permanent injunction must show:

4    "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary

5    damages, are inadequate to compensate for that injury; (3) that, considering the balance of

6    hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the

7    public interest would not be disserved by a permanent injunction." *Monsanto Co. v. Geertson*

8    *Seed Farms*, 561 U.S. 139, 156-57 (2010).

9        202. The decision to grant injunctive relief under the APA is "controlled by principles

10   of equity." *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1343 (9th Cir. 1995) (citations omitted);

11   *see, e.g.*, *Planned Parenthood of N.Y. City, Inc. v. U.S. Dep't of Health & Human Servs.*, No. 18-

12   cv-5680 (NRB), 2018 WL 4168977, at *24 (S.D.N.Y. Aug. 30, 2018) (applying equitable factors

13   for permanent injunction in APA challenge to agency decision).  All of these factors counsel in

14   favor of an injunction here.

15       203. An injunction prohibiting an agency from taking an action is appropriate where the

16   court has found that action to be contrary to law under the APA. *See Planned Parenthood*, 2018

17   WL 4168977, at *24.

18       204. Under such circumstances, an injunction properly prohibits "the perpetuation of

19   unlawful agency action," *League of Women Voters*, 838 F.3d at 12 (preliminary injunction), and

20   ensures that the agency complies with the law going forward, *see Central United Life, Inc. v.*

21   *Burwell*, 128 F. Supp. 3d 321, 330 (D.D.C. 2015), *aff'd*, 827 F.3d 70 (D.C. Cir. 2016) ("Forcing

22   federal agencies to comply with the law is undoubtedly in the public interest.").

23       205. Plaintiffs have proven that the Secretary's decision is contrary to law in multiple ways,

24   and that any attempt to institute a citizenship question on the 2020 Census now would also be

25   unlawful.

26       206. An injunction may also be appropriate when an agency decision is arbitrary and

27   capricious if the agency cannot plausibly remedy the defect and plaintiffs will suffer irreparable

28   injury from the agency's futile remedial efforts.

207. An injunction is advisable here because there is insufficient time remaining to conduct further testing or analysis before Defendants must print the 2020 census questionnaire in June 2019.

208. At the same time, any efforts by Defendants to continue pursuing the citizenship question would risk inflicting further irreparable harm on Plaintiffs because the Secretary's decision to add the citizenship question has inflamed fears among populations who are particularly sensitive to such a question, particularly in the current political climate. *See* PFOF § V(A).

209. Allowing Defendants to continue perpetuating these harms in a futile pursuit to remedy the defects identified by this Court will severely injure Plaintiffs and their residents.

210. And these harms cannot be compensated with monetary damages or otherwise redressed absent injunctive relief. *See Planned Parenthood*, 2018 WL 4168977, at *24.

211. The balance of the hardships and the public interest also weigh heavily in favor of an injunction. Defendants will suffer little, if any, hardship from having to comply with the law or to forgo futile attempts to reinstate a citizenship question, particularly when no such question has appeared on the decennial census for nearly seventy years. By contrast, Plaintiffs and the public will suffer widespread and irreparable harm absent an injunction.

212. The fair and orderly administration of the census is one of the Secretary of Commerce's most important duties, and it is critically important that the public have confidence in the integrity of the process underlying this mainstay of our democracy. *Franklin v. Massachusetts*, 505 U.S. 788, 818 (1992) (Stevens, J., concurring in part and concurring in the judgment)).

213. An injunction prohibiting the addition of a citizenship question on the 2020 census will provide the public with the certainty and confidence that is necessary to protect the integrity of the 2020 Census.

214. Nationwide relief is the usual course in an APA action because "when a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated – not that their application to the individual petitioners is proscribed." *Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989); *see* 5 U.S.C. § 706(2)(A).

215. An order vacating the Secretary's decision under the APA thus inherently has nationwide application, without implicating concerns about the power of courts to issue nationwide injunctive relief. *See NAACP v. Trump*, 315 F. Supp. 3d 457, 474 n.3 (D.D.C. 2018) (order setting aside agency decision under APA did not implicate any concerns about nationwide injunctions).

216. In any event, even an injunction preventing defendants from instituting a citizenship question would not implicate the concerns raised by other nationwide injunctions. There is only a single form of the census questionnaire that is sent to every household nationwide.

217. Defendants' uniform, nationwide treatment of the census questionnaire necessarily means that any injunctive relief here must also apply nationwide. *Cf. Texas v. United States*, 809 F.3d 134, 187-88 (5th Cir. 2015) (affirming nationwide injunction for uniform immigration rules).

218. Accordingly, Plaintiffs are entitled to a declaratory judgment, under 28 U.S.C. §§ 2201 and 2202, that Defendants' decision to add a citizenship question to the census is not in accordance with law, beyond statutory authority, and is arbitrary and capricious, in violation of the APA, 5 U.S.C. § 706.

219. Plaintiffs are also entitled to a declaratory judgment, under 28 U.S.C. §§ 2201 and 2202, that Defendants have not met and cannot meet their requirements under § 141 and § 6 of the Census Act, and that the decision to add a citizenship question violates the APA for this reason as well. 5 U.S.C. § 706.

220. Finally, Plaintiffs are entitled to the issuance of a permanent injunction prohibiting all Defendants and all those acting in concert with them from including the citizenship question on the 2020 Census.

| | | |
|---|---|---|
| 1 | Dated:  December 28, 2018 | Respectfully Submitted, |
| 2 | | XAVIER BECERRA |
| | | Attorney General of California |
| 3 | | MARK R. BECKINGTON |
| | | ANTHONY R. HAKL |
| 4 | | Supervising Deputy Attorneys General |
| | | ANNA T. FERRARI |
| 5 | | TODD GRABARSKY |
| | | R. MATTHEW WISE |
| 6 | | NOREEN P. SKELLY |
| | | Deputy Attorneys General |
| 7 | | |
| 8 | | */s/  Gabrielle D. Boutin* |
| | | GABRIELLE D. BOUTIN |
| 9 | | Deputy Attorney General |
| | | *Attorneys for Plaintiff State of California, by and* |
| 10 | | *through Attorney General Xavier Becerra* |
| 11 | | |
| | Dated:  December 28, 2018 | */s/ Charles L. Coleman* |
| 12 | | CHARLES L. COLEMAN III, SBN 65496 |
| 13 | | DAVID I. HOLTZMAN |
| | | HOLLAND & KNIGHT LLP |
| 14 | | 50 California Street, 28th Floor |
| | | San Francisco, CA 94111 |
| 15 | | Telephone: (415) 743-6970 |
| | | Fax: (415) 743-6910 |
| 16 | | Email: charles.coleman@hklaw.com |
| | | *Attorneys for Plaintiff County of Los Angeles* |
| 17 | | |
| 18 | Dated:  December 28, 2018 | MIKE FEUER |
| | | City Attorney for the City of Los Angeles |
| 19 | | |
| | | */s/ Valerie Flores* |
| 20 | | VALERIE FLORES, SBN 138572 |
| | | Managing Senior Assistant City Attorney |
| 21 | | 200 North Main Street, 7th Floor, MS 140 |
| | | Los Angeles, CA  90012 |
| 22 | | Telephone: (213) 978-8130 |
| | | Fax: (213) 978-8222 |
| 23 | | Email: Valerie.Flores@lacity.org |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

1    Dated:  December 28, 2018              HARVEY LEVINE
                                           City Attorney for the City of Fremont
2
                                           /s/ Harvey Levine _____
3                                          SBN 61880
                                           3300 Capitol Ave.
4                                          Fremont, CA 94538
                                           Telephone: (510) 284-4030
5                                          Fax: (510) 284-4031
                                           Email: hlevine@fremont.gov
6

7    Dated:  December 28, 2018              CHARLES PARKIN
                                           City Attorney for the City of Long Beach
8
                                           /s/ Michael J. Mais _____
9                                          MICHAEL K. MAIS, SBN 90444
                                           Assistant City Attorney
10                                         333 W. Ocean Blvd., 11th Floor
                                           Long Beach CA, 90802
11                                         Telephone: (562) 570-2200
                                           Fax: (562) 436-1579
12                                         Email: Michael.Mais@longbeach.gov

13
     Dated:  December 28, 2018              BARBARA J. PARKER
14                                         City Attorney for the City of Oakland

15                                         /s/ Erin Bernstein _____
                                           MARIA BEE
16                                         Chief Assistant City Attorney
                                           ERIN BERNSTEIN, SBN 231539
17                                         Supervising Deputy City Attorney
                                           MALIA MCPHERSON
18                                         Deputy City Attorney
                                           City Hall, 6th Floor
19                                         1 Frank Ogawa Plaza
                                           Oakland, California 94612
20                                         Telephone: (510) 238-3601
                                           Fax: (510) 238-6500
21                                         Email: ebernstein@oaklandcityattorney.org

22
     Dated:  December 28, 2018              JOHN LUEBBERKE
23                                         City Attorney for the City of Stockton

24                                         /s/ John Luebberke _____
                                           SBN 164893
25                                         425 N. El Dorado Street, 2nd Floor
                                           Stockton, CA 95202
26                                         Telephone: (209) 937-8333
                                           Fax: (209) 937-8898
27                                         Email: John.Luebberke@stocktonca.gov

28

36

1

2

## **<u>FILER'S ATTESTATION</u>**

3

Pursuant to Civil Local Rule 5-1(i)(3), regarding signatures, I hereby attest that

4

concurrence in the filing of this document has been obtained from all signatories above.

5

Dated: December 28, 2018                    */s/ Gabrielle D. Boutin*
                                                     GABRIELLE D. BOUTIN

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

SA2018100904
Conclusions of Law.docx

24

25

26

27

28

# CERTIFICATE OF SERVICE

Case Name:  **State of California, et al. v.**          No.    **3:18-cv-01865**
            **Wilbur L. Ross, et al.**

I hereby certify that on <u>December 28, 2018</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**PLAINTIFFS' PRE-TRIAL PROPOSED CONCLUSIONS OF LAW**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>December 28, 2018</u>, at Sacramento, California.

|                     |                        |
|:-------------------:|:----------------------:|
| Eileen A. Ennis     | */s/ Eileen A. Ennis*  |
| Declarant           | Signature              |

SA2018100904