1  XAVIER BECERRA
   Attorney General of California
2  ANTHONY R. HAKL
   Supervising Deputy Attorney General
3  GABRIELLE D. BOUTIN, SBN 267308
   ANNA T. FERRARI, SBN 261579
4  TODD GRABARSKY, SBN 286999
   R. MATTHEW WISE, SBN 238485
5  NOREEN P. SKELLY, SBN 186135
   Deputy Attorneys General
6    1300 I Street, Suite 125
     P.O. Box 944255
7    Sacramento, CA 94244-2550
     Telephone:  (916) 210-6053
8    Fax:  (916) 324-8835
     E-mail:  Gabrielle.Boutin@doj.ca.gov
9  *Attorneys for State of California, by and through*
   *Attorney General Xavier Becerra*

10

11              IN THE UNITED STATES DISTRICT COURT

12            FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                   SAN FRANCISCO DIVISION

14

15

16 | **STATE OF CALIFORNIA, by and through** | 3:18-cv-01865
17 | **Attorney General Xavier Becerra;** |
   | **COUNTY OF LOS ANGELES; CITY OF** |
18 | **LOS ANGELES; CITY OF FREMONT;** |
   | **CITY OF LONG BEACH; CITY OF** | **NOTICE OF FILING DESIGNATIONS**
19 | **OAKLAND; CITY OF STOCKTON,** | **OF DEFENDANTS' WRITTEN**
   |                                  | **DISCOVERY RESPONSES**
20 |                        Plaintiff, |

21 |                 **v.** |

22 |                                  | Dept:        3
   | **WILBUR L. ROSS, JR., in his official** | Judge:       The Honorable Richard G.
23 | **capacity as Secretary of the U.S.** |              Seeborg
   | **Department of Commerce; U.S.** | Trial Date:  January 7, 2019
24 | **DEPARTMENT OF COMMERCE; RON** | Action Filed: March 26, 2018
   | **JARMIN, in his official capacity as Acting** |
25 | **Director of the U.S. Census Bureau; U.S.** |
   | **CENSUS BUREAU; DOES 1-100,** |
26 |                                  |
   |                       Defendants. |
27

28

Plaintiffs hereby submit the designations of the following written sets of defendants' written discovery responses:

- Defendants U.S. Department of Commerce and Wilbur Ross' Objections and Responses to Plaintiffs' First Set of Requests for Expedited Production of Documents and First Set of Interrogatories, served in *New York Immigration Coalition, et al. v. Ross, et al.*, U.S. District Court for the Southern District of New York, Case No. 1:18-cv-5025,[1] marked in this action as PTX-223 and attached hereto as **Exhibit A**.

- Defendant U.S. Census Bureau's Objections and Responses to Plaintiffs' Requests for Admission, served in *State of New York, et al. v. Ross, et al.*, U.S. District Court for the Southern District of New York, Case No. 18-cv-2921, marked in this action as PTX-234 and attached hereto as **Exhibit B**.

- Defendant U.S. Department of Commerce's Objections and Responses to Plaintiffs' Requests for Admission, served in *New York Immigration Coalition, et al. v. Ross, et al.*, U.S. District Court for the Southern District of New York, Case No. 1:18-cv-5025, marked in this action as PTX-235 and attached hereto as **Exhibit C**.

- Defendants U.S. Department of Commerce and Wilbur Ross' Objections and Responses to Plaintiffs' Third Set of Interrogatories, served in *New York Immigration Coalition, et al. v. Ross, et al.*, U.S. District Court for the Southern District of New York, Case No. 1:18-cv-5025, marked in this action as PTX-236 and attached hereto as **Exhibit D**.

- Defendants U.S. Department of Commerce and Wilbur Ross' Supplemental Responses to Plaintiffs' First Set of Interrogatories, served in *New York Immigration Coalition, et al. v. Ross, et al.*, U.S. District Court for the Southern District of New York, Case No. 1:18-cv-5025, marked in this action as PTX-238 and attached hereto as **Exhibit E**.

- Defendants U.S. Department of Commerce and Wilbur Ross' Second Supplemental Responses to Plaintiffs' First Set of Interrogatories, served in *New York Immigration*

---

[1] Plaintiffs submit these discovery responses in accordance with the discovery coordination procedures set forth in the parties' Joint Report on Coordination of Discovery filed on August 9, 2018 (ECF No. 70).

1

1    *Coalition, et al. v. Ross, et al.*, U.S. District Court for the Southern District of New York,

2    Case No. 1:18-cv-5025, marked in this action as PTX-239 and attached hereto as **Exhibit F**.

3        • Defendants U.S. Department of Commerce and Wilbur Ross' Objections and

4    Responses to Plaintiffs' Second Set of Interrogatories, served in *State of New York, et al. v.*

5    *Ross, et al.*, U.S. District Court for the Southern District of New York, Case No. 18-cv-2921,

6    marked in this action as PTX-240 and attached hereto as **Exhibit G**.

7

8        Plaintiffs note that the above-named discovery responses have been designated in their

9    entireties as trial exhibits and reserve the right to supplement, modify, or withdraw any

10   designations of individual responses.

11

12   Dated:  January 2, 2018                        Respectfully submitted,

13                                                  XAVIER BECERRA
                                                    Attorney General of California
14                                                  ANTHONY R. HAKL
                                                    Supervising Deputy Attorney General
15                                                  GABRIELLE D. BOUTIN
                                                    ANNA T. FERRARI
16                                                  TODD GRABARSKY
                                                    NOREEN P. SKELLY
17                                                  R. MATTHEW WISE
                                                    Deputy Attorneys General
18

19
                                                    */s/  Gabrielle D. Boutin*
20                                                  GABRIELLE D. BOUTIN
                                                    Deputy Attorney General
21                                                  *Attorneys for Plaintiff State of California, by and*
                                                    *through Attorney General Xavier Becerra*
22

23

24

25

26

27

28

2

1    Dated:  January 2, 2018              /s/ Charles L. Coleman _____
2                                          CHARLES L. COLEMAN III, SBN 65496
                                           DAVID I. HOLTZMAN
3                                          HOLLAND & KNIGHT LLP
                                           50 California Street, 28th Floor
4                                          San Francisco, CA 94111
                                           Telephone: (415) 743-6970
5                                          Fax: (415) 743-6910
                                           Email: charles.coleman@hklaw.com
6                                          Attorneys for Plaintiff County of Los Angeles

7

8    Dated:  January 2, 2018              MIKE FEUER
                                           City Attorney for the City of Los Angeles
9
                                           /s/ Valerie Flores _____
10                                         VALERIE FLORES, SBN 138572
                                           Managing Senior Assistant City Attorney
11                                         200 North Main Street, 7th Floor, MS 140
                                           Los Angeles, CA  90012
12                                         Telephone: (213) 978-8130
                                           Fax: (213) 978-8222
13                                         Email: Valerie.Flores@lacity.org

14

15

16   Dated:  January 2, 2018              HARVEY LEVINE
                                           City Attorney for the City of Fremont

17                                         /s/ Harvey Levine _____
                                           SBN 61880
18                                         3300 Capitol Ave.
                                           Fremont, CA 94538
19                                         Telephone: (510) 284-4030
                                           Fax: (510) 284-4031
20                                         Email: hlevine@fremont.gov

21

22

23   Dated:  January 2, 2018              CHARLES PARKIN
                                           City Attorney for the City of Long Beach

24                                         /s/ Michael J. Mais _____
                                           MICHAEL K. MAIS, SBN 90444
25                                         Assistant City Attorney
                                           333 W. Ocean Blvd., 11th Floor
26                                         Long Beach CA, 90802
                                           Telephone: (562) 570-2200
27                                         Fax: (562) 436-1579
                                           Email: Michael.Mais@longbeach.gov

28

3

1

2   Dated:  January 2, 2018

3

4

5

6

7

8

9

10

11   Dated:  January 2, 2018

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BARBARA J. PARKER
City Attorney for the City of Oakland

*/s/ Erin Bernstein* _____
MARIA BEE
Special Counsel
ERIN BERNSTEIN, SBN 231539
Supervising Deputy City Attorney
MALIA MCPHERSON
Attorney
City Hall, 6th Floor
1 Frank Ogawa Plaza
Oakland, California 94612
Telephone: (510) 238-3601
Fax: (510) 238-6500
Email: ebernstein@oaklandcityattorney.org

JOHN LUEBBERKE
City Attorney for the City of Stockton

*/s/ John Luebberke* _____
SBN 164893
425 N. El Dorado Street, 2nd Floor
Stockton, CA 95202
Telephone: (209) 937-8333
Fax: (209) 937-8898
Email: John.Luebberke@stocktonca.gov

4

# EXHIBIT A

EXHIBIT  5
WIT:
DATE:
KLJ

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**



**EXHIBIT**
**PTX-223**

| | |
|---|---|
| NEW YORK IMMIGRATION COALITION, *et al.*, | |
| Plaintiffs, | |
| v. | No. 1:18-cv-5025 (JMF) |
| UNITED STATES DEPARTMENT OF COMMERCE, *et al.*, | |
| Defendants. | |

**DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR EXPEDITED PRODUCTION OF DOCUMENTS AND FIRST SET OF INTERROGATORIES TO DEFENDANTS UNITED STATES DEPARTMENT OF COMMERCE AND WILBUR ROSS**

Pursuant to Federal Rules of Civil Procedure 26, 33, and 34, Defendants United States Department of Commerce and Wilbur Ross submit these initial objections and responses to Plaintiffs' First Set of Requests for Expedited Production of Documents and First Set of Interrogatories to Defendants United States Department of Commerce and Wilbur Ross.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.     Defendants object to Instructions 4, 5, and 6 to the extent they imply any obligation outside of the scope of Federal Rules of Civil Procedure 26(b)(5) or 34 and the corresponding Local Civil Rules, and on the ground that they are unduly burdensome. In particular, Defendants will not "identify each PERSON or organization having knowledge of the factual basis, if any, upon which the objection, privilege, or other ground is asserted," because such a request has no basis in Rules 26(b)(5) or 34. Concerning privileged material, Defendants reserve the right to create a categorical privilege log as contemplated by Local Civil Rule 26.2(c) and the associated Committee Note. Additionally, documents created by or communications sent to or from litigation counsel (including

agency counsel responsible for this litigation after commencement of this matter) will not be logged, as information contained therein is not relevant to the claims and defenses in this litigation.

2. Defendants object to Instruction 7 as imposing obligations outside the scope of Federal Rule of Civil Procedure 34 and for being unduly burdensome insofar as it purports to require a document-by-document recounting without regard to the date on which the document was created, the date on which it was lost, discarded, destroyed, or otherwise disposed of, or whether litigation involving the substance of the document was reasonably foreseeable at that time it was lost, discarded, destroyed or otherwise disposed of.

3. Defendants object to the definition of "COMMUNICATION" and "COMMUNICATIONS" insofar as they exceed the definition of "communication" provided in Local Civil Rule 26.3(c)(1). Defendants' production of documents will be limited to the definition of "communication" provided in Local Civil Rule 26.3(c)(1). Defendants also object to this definition as beyond the scope of Rule 34 to the extent it purports to require Defendants to create records of "oral contact, such as face-to-face meetings, video conferences, or telephonic conversations." Oral communications are not documents or things within the scope of Federal Rule of Civil Procedure 34 and, accordingly, Defendants will not be producing such information.

4. Defendants object to the definition of "IDENTIFY" in reference to "a person" as unduly burdensome and going beyond the requirements of Federal Rule of Civil Procedure 34 and Local Civil Rule 26.3(c)(3). Defendants object to the definition of "IDENTIFY" in reference to "a document" as unduly burdensome and going beyond the requirements of Federal Rule of Civil Procedure 34 and Local Civil Rule 26.3(c)(4). Defendants object to the definition of "IDENTIFY" in reference to "an event, occurrence, act, transaction or conversation" as unduly burdensome and going beyond the requirements of Federal Rule of Civil Procedure 34.

2

5.     Defendants object to the definition of "PERSON OR PERSONS" insofar as it exceeds the definition of "person" provided in Local Civil Rule 26.3(c)(6). Defendants will limit their search and production to the definition of "person" provided in Local Civil Rule 26.3(c)(6).

6.     Defendants object to the definition of "OTHER GOVERNMENT AGENCIES" on the basis that it is overbroad, unduly burdensome, and outside the scope of discovery, insofar as it would expand the scope of discovery to the entire federal government.

7.     Defendants object to the definition of "TRUMP ADMINISTRATION" as overbroad. Defendants will interpret "TRUMP ADMINISTRATION" to mean President Trump in his official capacity as President, as well as any other current or former employee of the Executive Office of the President acting in his or her official capacity.

8.     Defendants object to the definition of "TRUMP CAMPAIGN" as overly broad and ambiguous. It is beyond Defendants' capacity to determine, for any given person, whether that person sought the election or reelection of President Trump.

## OBJECTION TO ALL REQUESTS FOR PRODUCTION

1.     Defendants object to Plaintiffs' discovery requests to the extent they seek documents that are publicly available, already produced to Plaintiffs in the administrative record, or are readily accessible to Plaintiffs or otherwise would be less burdensome for Plaintiffs to obtain than Defendants. *See* Fed. R. Civ. P. 26(b)(2)(C). Defendants will not reproduce documents already produced in the administrative record.

2.     Defendants object to Plaintiffs' requests to the extent that they seek (a) attorney work product; (b) communications protected by the attorney-client privilege; (c) information protected by the deliberative process privilege, the joint defense privilege, common interest privilege, or law enforcement privilege; (d) material the disclosure of which would violate legitimate privacy

3

interests and expectations of persons not party to this litigation; (e) information protected by any

form of executive privilege; or (f) any other applicable privilege or protection.

3.        Defendants specifically decline to produce privileged information.  A privilege log

will be provided in the course of Defendants' rolling productions.  Defendants further object to any

requirement that they produce a privilege log for privileged material not otherwise properly within

the scope of discovery and/or as to which no privilege log would be required pursuant to Federal

Rule of Civil Procedure 26(b)(5).

4.        Each and every response contained herein is subject to the above objections, which

apply to each and every response, regardless of whether a specific objection is interposed in a

specific response.  The making of a specific objection in response to a particular request is not

intended to constitute a waiver of any other objection not specifically referenced in the particular

response.

5.        Defendants specifically reserve the right to make further objections as necessary to

the extent additional issues arise regarding the meaning of and/or information sought by discovery.

## OBJECTIONS TO SPECIFIC REQUESTS FOR PRODUCTION

**Request for Production No. 1.**  All COMMUNICATIONS, including drafts and DOCUMENTS
reflecting COMMUNICATIONS, regarding or relating to the inclusion of a CITIZENSHIP
QUESTION on the DECENNIAL CENSUS, including but not limited to COMMUNICATIONS
with or about the CENSUS BUREAU, OTHER GOVERNMENT AGENCIES, the TRUMP
ADMINISTRATION, the TRUMP CAMPAIGN, NIELSEN, Kris Kobach, Steve Bannon,
Stephen Miller, Andrew Bremberg, Steve King, Steven Camarota, Hermann Habermann, and Robert
Groves.

**Objections:**  Defendants object to this request as seeking, on its face, "drafts" that are subject to

the deliberative-process privilege and other communications subject to the deliberative-process

privilege, the attorney-client privilege, and/or the attorney work-product doctrine.

Defendants further object to this request on the ground that it is overbroad because it is

unlimited as to time.  Given that "DECENNIAL CENSUS" is defined to include every decennial

4

census dating back to the ratification of the Constitution, this request, as written, sweeps in decades- or centuries-old documents from long before the events at issue in this case without regard to their relevancy to Plaintiffs' claims, which concern a decision made in 2018. The burden of obtaining and producing all such documents disproportionately outweighs any possible need for the requested documents. Defendants will interpret this request to be limited to documents created after January 20, 2017.

Defendants further object to this request to the extent it seeks documents irrelevant to Plaintiffs' claims. Specifically, Defendants object that this request sweeps in press office activities irrelevant to Plaintiffs' claims.

Defendants further object to this request because it seeks documents that have already been produced to Plaintiffs as part of the administrative record and in response to the Court's July 3, 2018 order and are otherwise publicly available. Defendants will not reproduce documents already produced.

**Response:** Subject to the above objections, Defendants refer Plaintiffs to the complete administrative record, filed on June 8, 2018, *see* ECF No. 173, *New York v. U.S. Dep't of Commerce*, No. 18-cv-2921 (JMF), the supplement to the administrative record, filed on June 21, 2018, *see* ECF No. 189, and the supplemental materials filed pursuant to the Court's July 3, 2018 order in *New York v. U.S. Dep't of Commerce*, No. 18-cv-2921 (JMF). For example, Defendants refer Plaintiffs to previously produced documents Bates numbered 003694, 002634–002641, and 001198–001209. Defendants aver that they have no other responsive nonprivileged documents in their possession, custody, or control beyond what they have already produced.

**Request for Production No. 2.** All DOCUMENTS, including drafts, regarding, relating, or concerning the inclusion of a CITIZENSHIP QUESTION on the DECENNIAL CENSUS, including but not limited to: (a) DOCUMENTS, analysis or data considered by (or reflecting information considered by) COMMERCE in proposing, evaluating, or analyzing the citizenship

5

question, (b) DOCUMENTS, analysis or data considered by (or reflecting information considered by) by ROSS in proposing, evaluating, or analyzing the citizenship question, or (c) DOCUMENTS, analysis or data generated by or relied upon by COMMERCE, the CENSUS BUREAU, or the TRUMP ADMINISTRATION in preparing ROSS' March 26, 2018 memorandum.

**Objections:**  Defendants object to this request as seeking, on its face, "drafts" that are subject to the deliberative-process privilege and other communications subject to the deliberative-process privilege, the attorney-client privilege, and/or the work-product doctrine.

Defendants further object to this request on the ground that it is overbroad and not proportional to the needs of the case because it is unlimited as to time.  Given that "DECENNIAL CENSUS" is defined to include every decennial census dating back to the ratification of the Constitution, this request, as written, sweeps in decades- or centuries-old documents from long before the events at issue in this case without regard to their relevancy to Plaintiffs' claims, which concern a decision made in 2018.  The burden of obtaining and producing all such documents disproportionately outweighs any possible need for the requested documents.

Defendants further object to this request on the ground that it is beyond Defendants' capacity to know what the TRUMP ADMINISTRATION, a non-party, relied on.

Defendants further object to this request on the ground that it purports to seek "data or analysis" that do not constitute "DOCUMENTS."  Defendants will construe this request as seeking only "documents" as defined by Federal Rule of Civil Procedure 34(a)(1).

Defendants further object to this request to the extent it seeks documents irrelevant to Plaintiffs' claims.  Specifically, Defendants object that this request sweeps in press office activities irrelevant to Plaintiffs' claims.

Defendants further object to this request because it seeks documents that have already been produced to Plaintiffs as part of the administrative record and in response to the Court's July 3, 2018 order and are otherwise publicly available.  Defendants will not reproduce documents already produced.

6

**Response:**  Subject to the above objections, Defendants refer Plaintiffs to the complete

administrative record, filed on June 8, 2018, *see* ECF No. 173, *New York v. U.S. Dep't of Commerce*, No.

18-cv-2921 (JMF), the supplement to the administrative record, filed on June 21, 2018, *see* ECF No.

189, and the supplemental materials filed pursuant to the Court's July 3, 2018 order in *New York v.*

*U.S. Dep't of Commerce*, No. 18-cv-2921 (JMF).  Defendants aver that they have no other responsive

nonprivileged documents in their possession, custody, or control beyond what they have already

produced.

**Request for Production No. 3.**  All DOCUMENTS, including drafts, regarding, relating, or
concerning the inclusion of a CITIZENSHIP QUESTION on the DECENNIAL CENSUS,
including but not limited to: DOCUMENTS, data or analysis generated by or relied upon by the
CENSUS BUREAU, COMMERCE, or the TRUMP ADMINISTRATION in preparing for
Congressional testimony by ROSS, any COMMERCE, CENSUS BUREAU, or OTHER
GOVERNMENT AGENCY employee related to the inclusion of a citizenship question on the
DECENNIAL CENSUS.

**Objections:**  Defendants object to this request as seeking, on its face, "drafts" that are subject to

the deliberative-process privilege and other communications subject to the deliberative-process

privilege, the attorney-client privilege, and/or the work-product doctrine.

Defendants further object to this request on the ground that it is overbroad and not

proportional to the needs of the case because it is unlimited as to time.  Given that "DECENNIAL

CENSUS" is defined to include every decennial census dating back to the ratification of the

Constitution, this request, as written, sweeps in decades- or centuries-old documents from long

before the events at issue in this case without regard to their relevancy to Plaintiffs' claims, which

concern a decision made in 2018.  The burden of obtaining and producing all such documents

disproportionately outweighs any possible need for the requested documents.

Defendants further object to this request on the ground that it is beyond Defendants'

capacity to know what the TRUMP ADMINISTRATION, a non-party, relied on.

7

Defendants further object to this request on the ground that information related to preparation for testimony of an OTHER GOVERNMENT AGENCY employee would not be within the custody or control of Defendants and is irrelevant to Plaintiffs' claims.

Defendants further object to this request on the ground that it purports to seek "data or analysis" that do not constitute "DOCUMENTS." Defendants will construe this request as seeking only "documents" as defined by Federal Rule of Civil Procedure 34(a)(1).

Defendants further object to this request because it seeks documents that have already been produced to Plaintiffs as part of the administrative record and in response to the Court's July 3, 2018 order and are otherwise publicly available. Defendants will not reproduce documents already produced.

**Response**: Subject to the above objections, Defendants will make rolling productions of responsive, non-privileged documents where the burden of searching, collecting, and producing such documents is not disproportionate to the needs of the case, beginning August 13, 2018 with anticipated substantial completion within a reasonable amount of time.

**Request for Production No. 4.** All DOCUMENTS, including drafts, regarding, relating, or concerning the sufficiency of available data for federal enforcement of the Voting Rights Act, 52 U.S.C. § 10101.

**Objections**: Defendants object to this request on the ground that it is overbroad and not proportional to the needs of the case in that it seeks information about Voting Rights Act enforcement data other than citizenship, even though Plaintiffs' claims concern only the citizenship question.

Defendants further object to this request as seeking, on its face, "drafts" that are subject to the deliberative-process privilege and other communications subject to the deliberative-process privilege, the attorney-client privilege, and/or the work-product doctrine.

8

Defendants further object to this request on the ground that it is overbroad and not proportional to the needs of the case because it is unlimited as to time. This request, as written, sweeps in decades-old documents from long before the events at issue in this case without regard to their relevancy to Plaintiffs' claims, which concern a decision made in 2018. The burden of obtaining and producing all such documents disproportionately outweighs any possible need for the requested documents.

Defendants further object to this request because it seeks documents that have already been produced to Plaintiffs as part of the administrative record and in response to the Court's July 3, 2018 order and are otherwise publicly available. Defendants will not reproduce documents already produced.

**Response**: Subject to the above objections, Defendants will make rolling productions of responsive, non-privileged documents where the burden of searching, collecting, and producing such documents is not disproportionate to the needs of the case, beginning August 13, 2018 with anticipated substantial completion within a reasonable amount of time.

**Request for Production No. 5**. All DOCUMENTS, including drafts, discussing, regarding or relating to the sufficiency of administrative data necessary for the CENSUS BUREAU to create the citizenship data that DOJ requested in its December 2017 memo.

**Objections:** Defendants object to this request on the ground that it is vague and does not provide an adequate description upon which to base a reasonable inquiry. The request for information about the "sufficiency" of data "necessary" to supply citizenship data is both unclear in its scope and confusing in its phrasing.

Defendants further object to this request as seeking, on its face, "drafts" that are subject to the deliberative-process privilege and other communications subject to the deliberative-process privilege, the attorney-client privilege, and/or the work-product doctrine.

9

Defendants further object to this request because it seeks documents that have already been produced to Plaintiffs as part of the administrative record and in response to the Court's July 3, 2018 order and are otherwise publicly available. Defendants will not reproduce documents already produced.

**Response:** Subject to the above objections, Defendants refer Plaintiffs to the complete administrative record, filed on June 8, 2018, *see* ECF No. 173, *New York v. U.S. Dep't of Commerce*, No. 18-cv-2921 (JMF), the supplement to the administrative record, filed on June 21, 2018, *see* ECF No. 189, and the supplemental materials filed pursuant to the Court's July 3, 2018 order in *New York v. U.S. Dep't of Commerce*, No. 18-cv-2921 (JMF). For example, Defendants refer Plaintiffs to previously produced documents Bates numbered 008219–008221, 008222-008226, 003240–003247, and 009356–009358.

Subject to the above objections, Defendants will make rolling productions of responsive, non-privileged documents where the burden of searching, collecting, and producing such documents is not disproportionate to the needs of the case, beginning August 13, 2018 with anticipated substantial completion within a reasonable amount of time.

**Request for Production No. 6.** All DOCUMENTS regarding or relating to changes or edits made by COMMERCE, the TRUMP ADMINISTRATION or OTHER GOVERNMENT AGENCIES to CENSUS BUREAU Quarterly Program Management Reviews since January 2017 regarding or relating to the inclusion of CITIZENSHIP QUESTION on the DECENNIAL CENSUS.

**Objections:** Defendants object to this request as seeking, on its face, pre-decisional materials subject to the deliberative-process privilege and other communications subject to the deliberative-process privilege, the attorney-client privilege, and/or the work-product doctrine.

Defendants further object to this request on the ground that it seeks documents that are publicly available and thus equally accessible to Plaintiffs. Defendants will not reproduce documents that are publicly available.

10

**Response:** Subject to and without waiving the above objections, Defendants refer Plaintiffs to the publicly available final version of these documents, available at https://www.census.gov/programs-surveys/decennial-census/2020-census/planning-management/program-briefings.html.

**Request for Production No. 7.** All COMMUNICATIONS and DOCUMENTS, including drafts, generated by, prepared by, relied upon by, referenced, or otherwise produced by COMMERCE, the CENSUS BUREAU, or the TRUMP ADMINISTRATION in conjunction with the documents found in the Administrative Record at 1277-1285, 1286-1297, 1298-1303, 1304-1307, 1308-1312, and 1313-1320.

**Objections:** Defendants object to this request as seeking, on its face, "drafts" that are subject to the deliberative-process privilege and other communications subject to the deliberative-process privilege, the attorney-client privilege, and/or the work-product doctrine. Defendants have already produced the nonprivileged final versions of these documents.

Defendants further object to this request on the ground that the term "in conjunction with" is vague and ambiguous. Defendants will construe this request as seeking documents explicitly referenced in the documents Bates numbered 001277–001285, 001286–001297, 001298–001303, 001304–001307, 001308–001312, and 001313–001320.

**Response:** Subject to the above objections, Defendants refer Plaintiffs to the complete administrative record, filed on June 8, 2018, *see* ECF No. 173, *New York v. U.S. Dep't of Commerce*, No. 18-cv-2921 (JMF), the supplement to the administrative record, filed on June 21, 2018, *see* ECF No. 189, and the supplemental materials filed pursuant to the Court's July 3, 2018 order in *New York v. U.S. Dep't of Commerce*, No. 18-cv-2921 (JMF). Defendants aver that they have no other responsive nonprivileged documents in their possession, custody, or control beyond what they have already produced.

**Request for Production No. 8.** All DOCUMENTS AND COMMUNICATIONS concerning the decision whether to include a Citizenship Question on the 2020 DECENNIAL CENSUS before

11

December 12, 2017, including but not limited to, those related to whether to include citizenship as a subject in the March 2017 Report to Congress.

**Objections:** Defendants object to this request on the basis that the terms "COMMERCE" is vague and ambiguous. Defendants will construe the term "COMMERCE" as meaning the component of the United States Department of Commerce likely to have responsive documents: the headquarters offices of the Department. Searches within other components of the Department—a large federal agency that includes, for example, the National Oceanic and Atmospheric Administration—are not likely to yield responsive information and would incur undue and disproportionate burden on Defendants.

Defendants further object to the request because, on its face, the request seeks documents likely covered by the deliberative-process privilege, the attorney-client privilege, and the work-product privilege.

Defendants further object to this request because there is no date limitation. The request seeks documents that Secretary Ross did not consider and that predate the Trump Administration. These documents are irrelevant to Plaintiffs' claims. Defendants will interpret this request to be limited to documents created after January 20, 2018.

Defendants further object to this request because any responsive documents, subject to the above objections, have already been produced to Plaintiffs in the administrative record and are otherwise publicly available. Defendants will not reproduce documents already produced in the administrative record.

**Response:** Subject to the above objections, Defendants refer Plaintiffs to previously produced documents Bates numbered 002630 and 003685-003686. Defendants aver that they have no other responsive nonprivileged documents in their possession, custody, or control beyond what they have already produced.

12

**Request for Production No. 9.**  All DOCUMENTS and COMMUNICATIONS that Defendants plan to introduce into evidence at trial.

**Objections:**  Defendants object to this request on the ground that it is premature at this stage of the case, while discovery is still ongoing.

**Response:**  Subject to and without waiving the above objection, Defendants refer Plaintiffs to the complete administrative record upon which the Secretary of Commerce based his decision to reinstate a question concerning citizenship on the 2020 Decennial Census, filed on June 8, 2018, *see* ECF No. 173, *New York v. U.S. Dep't of Commerce*, No. 18-cv-2921 (JMF), and the supplement to the administrative record, filed on June 21, 2018, *see* ECF No. 189, *New York v. U.S. Dep't of Commerce*, No. 18-cv-2921 (JMF).

## OBJECTIONS AND RESPONSES TO INTERROGATORIES

**Interrogatory No. 1.**  With regard to the document found in the Administrative Record at 1321, please IDENTIFY:
    a. the "senior Administration officials" who "previously raised" reinstating the citizenship question;
    b. the "various discussions with other government officials about reinstating a citizenship question to the Census";
    c. the consultations Secretary and his staff participated in when they "consulted with Federal governmental components";
    d. the date on which the "senior Administration officials" who "previously raised" reinstating the citizenship question first raised this subject; and
    e. all PERSONS with whom the "senior Administration officials had previously raised" reinstating the citizenship question.

**Objections:**  Defendants object to this interrogatory because it has five discrete subparts.  This interrogatory therefore constitutes five interrogatories for purposes of the limit of 25 interrogatories.  *See* Fed. R. Civ. P. 33(a)(1).

    Defendants further object to subparts b., c., and d. of this interrogatory insofar as they exceed the scope of information a party may seek at this stage of the litigation pursuant to Local Civil Rule 33.3(a).  Consistent with this Local Civil Rule 33.3(a), Defendants construe subparts b.

13

and c. as requesting only the identities of individuals, and Defendants object to subpart d. as requesting information outside the scope of Local Civil Rule 33.3(a).

Defendants further object to this interrogatory to the extent that it seeks (a) communications or information protected by the attorney-client privilege or (b) communications or information protected by the deliberative process privilege.

Defendants further object to this interrogatory as vague and overbroad to the extent it seeks information about meetings or conversations with government officials and other persons whose identities are immaterial to the claims in this litigation, and because the burden of responding is disproportionate to the needs of this case. Specifically, Defendants object to subpart e. as overbroad and vague, as it sweeps in private conversations with any individual, without scope, that "senior Administration officials had previously raised" reinstating the citizenship question.

Defendants further object to the interrogatory to the extent that it purports to require the identification of the date, location, participants, and subject of any meetings involving the Executive Office of the President. *See Cheney v. U.S. District Court*, 542 U.S. 367, 388 (2004).

**Response:**

Subject to and without waiving these objections, Defendants state that the following individuals are responsive to this interrogatory:

1.a. Defendants have not to date been able to identify individuals responsive to subpart a. Defendants' investigation is continuing, and Defendants will supplement this response as appropriate.

1.b. Subject to and without waiving the above objections: Mary Blanche Hanky, James McHenry, Gene Hamilton, John Gore, Danielle Cutrona, Jefferson Sessions, Kris Kobach, Steve Bannon, and Wilbur Ross.

14

1.c. Subject to and without waiving the above objections: Mary Blanche Hanky, James McHenry, Gene Hamilton, John Gore, Danielle Cutrona, Jefferson Sessions, Kris Kobach, Steve Bannon, and Wilbur Ross.

Defendants reserve the right to supplement this response with any additional relevant, responsive, non-privileged information that is within its possession, custody, or control and capable of being ascertained with reasonable diligence.

**Interrogatory No. 2.**  Please IDENTIFY all persons involved in drafting, commenting on, or approving ROSS' March 26, 2018 memorandum.

**Objections:**  Defendants object to this interrogatory to the extent that it seeks (a) communications or information protected by the attorney-client privilege or (b) communications or information protected by the deliberative process privilege.

Defendants further object to this interrogatory as vague and ambiguous with respect to the term "approving," as the Secretary alone approved the decision and memorandum.  Defendants further object to this interrogatory as vague and ambiguous with respect to the term "commenting on."

**Response:**

Subject to and without waiving these objections, Defendants state that the following individuals are responsive to this interrogatory: John Abowd, Earl Comstock, Peter Davidson, Jessica Freitas, Ron Jarmin, Christa Jones, Karen Dunn Kelley, Enrique Lamas, James Uthmeier, Victoria Velkoff, Michael Walsh, and Attorneys at the Department of Justice.

Defendants reserve the right to supplement this response with any additional relevant, responsive, non-privileged information that is within its possession, custody, or control and capable of being ascertained with reasonable diligence.

15

**Interrogatory No. 3.**  With respect to any Congressional testimony by ROSS or any COMMERCE, CENSUS BUREAU, or OTHER GOVERNMENT AGENCY concerning the inclusion of a question concerning citizenship on the DECENNIAL CENSUS, please IDENTIFY all persons involved in the preparation for such testimony.

**Objections:**  Defendants object to this interrogatory to the extent that it seeks (a) communications or information protected by the attorney-client privilege or (b) communications or information protected by the deliberative process privilege.

Defendants further object to this request as overbroad and beyond the scope of discovery to the extent it seeks information on testifying officials from other government agencies not party to this lawsuit.

Defendants further object to this interrogatory as seeking information that is not relevant to any party's claim or defense.  Preparations of the Secretary or any other official for congressional testimony have no bearing on Plaintiff's challenge to the reinstatement of the citizenship question.

**Response:**

Subject to and without waiving these objections, Defendants state that the following individuals are responsive to this interrogatory (all individuals employed by Department of Commerce unless otherwise indicated): Michael Phelps, Rachael Wilde, Traci Blyden, Rod Turk, Erin Cavanaugh, Joselyn Bingham, Barry Robinson, Melissa Creech, Beverly Hyson, Peter Davidson, Michelle McClelland, Kim Taylor, Alicia Price, Jonathan Baker, Lauren Didiuk, Nick Kornegay, Brian DiGiacomo, Michael Cannon, Beth Grossman, Beth Van Hanswyk, Jennifer Lucas, Hillary Davidson, Joe Bartels, Earl Comstock Sahra Park-Su, Michael Walsh, David Langdon, Henry Young, Jocelyn Burston, Graham Davidson, Anne Teague, Michael Platt, Kasey O'Conner, Lawson Kluttz, Ross Branson, Jacque Mason, Keven Valentin, Jenilee Keefe Singer, Burton Reist, Christa Jones, Jeffrey Weinberg (OMB), Rody Damis (OMB), and Rachel Snyderman (OMB).

16

Defendants reserve the right to supplement this response with any additional relevant, responsive, non-privileged information that is within its possession, custody, or control and capable of being ascertained with reasonable diligence.

As to Interrogatories, see Verification page *infra*.

As to objections:

Dated: August 13, 2018

CHAD A. READLER
Acting Assistant Attorney General

BRETT A. SHUMATE
Deputy Assistant Attorney General

JOHN R. GRIFFITHS
Director, Federal Programs Branch

CARLOTTA P. WELLS
Assistant Director, Federal Programs Branch

*/s/    Kate Bailey*
KATE BAILEY
GARRETT COYLE
STEPHEN EHRLICH
CAROL FEDERIGHI
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel.:  (202) 514-9239
Email:  kate.bailey@usdoj.gov

*Counsel for Defendants*

17

## <u>CERTIFICATION OF MICHAEL A. CANNON</u>

I certify under penalty of perjury that the foregoing response to Plaintiffs' interrogatories are true and correct to the best of my knowledge, information, belief, understanding, and recollection, with the understanding that the Department of Commerce is continuing to research its responses to the Plaintiffs' interrogatories and reserves the right to supplement its response.

Dated: 8/13/18

Michael A. Cannon

# EXHIBIT B



EXHIBIT
PTX-234

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| STATE OF NEW YORK, *et. al*,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT<br>OF COMMERCE, *et. al*,<br><br>Defendant. | Civil Action No. 18-cv-2921-JMF<br><br>Hon. Jesse M. Furman |

### DEFENDANT'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' REQUESTS FOR ADMISSION TO DEFENDANT UNITED STATES CENSUS BUREAU

Pursuant to Federal Rules of Civil Procedure 26 and 36 and the Local Rules of this Court Defendant the United State Census Bureau ("Defendant"), by and through counsel, provides the following objections and responses to Plaintiffs' requests for admissions.

### OBJECTIONS WHICH APPLY TO ALL REQUESTS FOR ADMISSION

1.      Separate and apart from the specific objections set forth below, Defendant objects to any discovery taking place in this case to the extent such discovery is brought pursuant to claims purportedly under the Administrative Procedure Act, as resolution of any such claims should be based upon the administrative record in this case.

2.      Each and every response contained herein is subject to the above objection, which applies to each and every response, regardless of whether a specific objection is interposed in a specific response. The making of a specific objection in response to a particular request is not intended to constitute a waiver of any other objection not specifically referenced in the particular response.

### OBJECTIONS TO DEFINITIONS

1.      Defendant objects to the inclusion of definitions for any term not relied on in these

1

Requests for Admission.  Any requirement that Defendant respond to such definitions in the abstract is not proportional to the needs of the case and the burden of such a response outweighs its likely benefit, which is none.  Defendant does not hereby waive any future objection to the definition of such terms, or waive the right to use Defendant's own definition of such terms.

## OBJECTION TO INSTRUCTIONS

1.      Defendant objects to instructions number 2, 5, and 7 to the extent they seeks to impose requirements beyond those required by Federal Rules of Civil Procedure 26 and 36.

## OBJECTIONS AND RESPONSES TO PLAINTIFFS' REQUESTS FOR ADMISSION

1.      At the time of Secretary Ross' March 26, 2018 decision, the Census Bureau did not recommend the addition of a citizenship question to the decennial census questionnaire.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

2.      At the time of Secretary Ross' March 26, 2018 decision, the chief scientist of the Census Bureau did not recommend the addition of a citizenship question to the decennial census questionnaire.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

3.      At the time of Secretary Ross' March 26, 2018 decision, Dr. John Abowd did not recommend the addition of a citizenship question to the decennial census questionnaire.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

4.      The Census Bureau has never recommended the addition of a citizenship question to the

2

decennial census questionnaire.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "recommended" is vague and ambiguous.

**RESPONSE:**  Deny.  Citizenship-related questions have been asked to some or all of the population in nearly every census since 1820, including on the long-form questionnaire from 1970–2000, which is a "decennial census questionnaire".  Furthermore, the American Community Survey ("ACS") has asked a citizenship question since 2005 and is a survey within the Decennial Census Program in the Census Bureau.

5.      The chief scientist of the Census Bureau has never recommended the addition of a citizenship question to the decennial census questionnaire.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "recommended" is vague and ambiguous.

**RESPONSE:**  Deny.  Citizenship-related questions have been asked to some or all of the population in nearly every census since 1820, including on the long-form questionnaire from 1970–2000, which is a "decennial census questionnaire".  Furthermore, the ACS has asked a citizenship question since 2005 and is a survey within the Decennial Census Program in the Census Bureau.

6.      Dr. John Abowd has never recommended the addition of a citizenship question to the decennial census questionnaire.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

7.      On January 19, 2018, Dr. John M. Abowd sent a memorandum to Secretary Ross on the "Technical Review of the Department of Justice Request to Add Citizenship Question to the 2020 Census" (hereinafter "January 19 Memo").

3

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

8.    The January 19 Memo concluded that the addition of a citizenship question to the decennial census would be very costly.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "very costly" is undefined, vague, and ambiguous.

**RESPONSE:** Admit insofar as the term "very costly" is used in the same manner as the January 19 Memo.  Specifically, the January 19 Memo states that "the addition of a question on citizenship could increase the cost of the 2020 Census by at least $27.5 million."  AR 1282.

9.    The January 19 Memo concluded that the addition of a citizenship question to the decennial census would increase defense burden.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "defense burden" is undefined, vague, and ambiguous.

**RESPONSE:**  Deny on the grounds that "defense burden" has no meaning in Census Bureau terminology, and further aver that the January 19 Memo states: "It is therefore a reasonable inference that a question on citizenship would lead to some decline in overall self-response because it would make the 2020 Census modestly more burdensome in the direct sense, and potentially much more burdensome in the indirect sense that it would lead to a larger decline in self-response for noncitizen households." AR 1281.

10.    The January 19 Memo concluded that the addition of a citizenship question to the decennial census harm the quality of the census count.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

4

**RESPONSE:** Admit insofar as the January 19 Memo notes that adding a citizenship question to the census "is very costly, harms the quality of the census count, and would use substantially less accurate citizenship status data than are available from administrative sources." AR 1277. The January 19 Memo further explains that a potential decrease in self-response rate "degrade[s] data quality because data obtained from [Nonresponse Followup operations] have greater erroneous enumeration and whole-person imputation rates." AR 1281.

11.     The January 19 Memo concluded that the addition of a citizenship question would result in substantially less accurate citizenship data than are available from administrative sources.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

12.     At the time of Secretary Ross' March 26, 2018 decision, no one within the Census Bureau had conducted any studies or analyses that contradict the findings from the January 19 Memo summarized in RFAs 8, 9, 10, or 11 regarding adding a citizenship question to the decennial census.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Deny to the extent RFAs 8, 9, 10, and 11 misstate the findings of the January 19 Memo. Defendant further avers that an earlier version of the January 19 Memo's analysis already existed (AR 5496) at the time of Secretary Ross' March 26, 2018 decision, which did not contradict the findings from the January 19 Memo.

13.     In the January 19 Memo, the Census Bureau developed a cautious estimate that 5.1% of households with at least one noncitizen would not self-respond to the 2020 census questionnaire because of the citizenship question.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and

instructions.

**RESPONSE:**  Deny.  The Census Bureau developed a cautious estimate that an additional 5.1% of households with at least one noncitizen may not self-respond to the 2020 census questionnaire if a citizenship question were included.  Defendant further avers that, in the absence of a randomized controlled trial, this estimate was based on a natural experiment that could not definitively assign causation to the citizenship question itself.

14.     The analysis in the January 19 Memo that developed the estimate that 5.1% households with at least one noncitizen would not self-respond to the 2020 census questionnaire was done by comparing 2010 ACS data, that was not adjusted or weighted, to 2010 decennial census data.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions. Defendant further objects because "adjusted" is undefined, vague, and ambiguous.

**RESPONSE:**  Admit insofar as the January 19 Memo that developed the estimate that an additional 5.1% of households with at least one noncitizen may not self-respond to the 2020 census questionnaire was done by comparing 2010 ACS data, that was not weighted, to 2010 decennial census data.

15.     In the January 19 Memo, the Census Bureau concluded that the addition of a citizenship question on the 2020 Census would increase the cost of the 2020 Census by at least $27.5 million.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Deny.  The January 19 Memo found that "the addition of a question on citizenship *could* increase the cost of the 2020 Census by at least $27.5 million."  AR 1282 (emphasis added).

16.     In the January 19 Memo, the Census Bureau concluded that adding a citizenship question to the 2020 Census would lead to major potential quality and cost disruptions.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

6

**RESPONSE:**  Deny.  The January 19 Memo found that a citizenship question on the 2020 Census *could* lead to major potential quality and cost disruptions.  AR 1282 (emphasis added).

17.    At the time of Secretary Ross' March 26, 2018 decision, no one within the Census Bureau had conducted any studies or analyses that contradict the findings from the January 19 Memo summarized in Requests for Admissions 13, 14, 15, or 16 regarding adding a citizenship question to the decennial census.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Deny to the extent RFAs 13, 14, 15, and 16 misstate the findings of the January 19 Memo.  Defendant further avers that an earlier version of the January 19 Memo's analysis already existed (AR 5496) at the time of Secretary Ross' March 26, 2018 decision, which did not contradict the findings from the January 19 Memo.

18.    In preparing the January 19 memo, the Census Bureau performed other analyses that support the conclusion that the addition of a citizenship question would have an adverse impact on self-response.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**   Deny.  The Census Bureau performed other analyses that supported its conclusion that the potential impacts of adding a citizenship question (under Alternative B) would likely not occur if administrative records were used for citizenship data (under Alternative C).

19.    On March 1, 2018, Dr. Abowd sent a memorandum to Secretary Ross regarding a "Preliminary analysis of Alternative D (Combined Alternatives B and C)" ("March 1 Memo").

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

7

**RESPONSE:** Admit.

20.    The March 1 Memo provided a preliminary analysis of including a citizenship question on the decennial census to supplement administrative data regarding citizenship from the Social Security Administration, Internal Revenue Service, U.S. Citizenship and Immigration Services, and the State Department ("Alternative D").

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

21.    The Census Bureau concluded that Alternative D would result in poorer quality citizenship data than using administrative data regarding citizenship without including a citizenship question on the 2020 decennial census.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

22.    The Census Bureau concluded that Alternative D would have all the negative cost and quality implications of adding a citizenship question on the decennial census, as discussed in the January 19 Memo.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

23.    No one within the Census Bureau has conducted any studies or analyses that contradict the findings from the March 1 Memo summarized in Requests for Admission 21 or 22 regarding adding a citizenship to the decennial census.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and

8

instructions.

**RESPONSE:**   Admit insofar as the Census Bureau has not conducted any other studies or analyses similar to the March 1 Memo.

24.   The August 6, 2018 memo "Understanding the Quality of Alternative Citizenship Data Sources for the 2020 Census" issued by the Census Bureau revised the January 19 Memo and developed a cautious estimate that an additional 5.8% of households with at least one noncitizen would not self-respond to the 2020 Census because of the addition of the citizenship question.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions. Defendant also objects because the August 6, 2018 document referenced in this RFA was a working paper, not a "memo".

**RESPONSE:**   Deny.  The Census Bureau developed a cautious estimate that an additional 5.8% of households with at least one noncitizen or one person of unknown citizenship status may not self-respond to the 2020 census questionnaire if a citizenship question were included.  Defendant further avers that, in the absence of a randomized controlled trial, this estimate was based on a natural experiment that could not definitively assign causation to the citizenship question itself.

25.   The analysis reflected in the August 6, 2018 memo referenced in Request for Admission 24 was done by comparing 2010 decennial data and 2016 ASC [ACS] data that was adjusted or weighted.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant also objects because the August 6, 2018 document referenced in this RFA was a working paper, not a "memo".  Defendant further objects because "adjusted" is undefined, vague, and ambiguous.

**RESPONSE:**   Admit insofar as the 2010 decennial data and 2016 ACS data was weighted.

26.   Based on the application of the 5.8% increase in non-response, the Census Bureau concluded in the August 6, 2018 memo that the addition of a citizenship question on the 2020 Census

9

would increase the cost of the 2020 Census by at least $91.2 million.

**OBJECTION:** Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Deny.  The 5.8 percentage points related to a potential decline in self-response rate of households with at least one noncitizen or one person of unknown citizenship status, not "non-response".  Also deny because the Census Bureau concluded in the August 6, 2018 working paper that a citizenship question on the 2020 Census *could* increase the cost of the 2020 Census by at least $91.2 million.   Defendant further avers that, in the absence of a randomized controlled trial, this estimate was based on a natural experiment that could not definitively assign causation to the citizenship question itself.

27.     The Census Bureau conducted several additional analysis reflected in the August 6, 2018 which estimate potential differential in self-response rates between citizen households and non-citizen households ranging up to 11.9%.

**OBJECTION:** Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Deny. The August 6, 2018 working paper utilizes potential declines in self-response rates of households with at least one noncitizen or one person of unknown citizenship status of 5.1 and 5.8 percentage points to develop its cost and quality estimates.

28.     The Census Bureau follows an established process when adding to or changing content on the decennial census or the ACS.

**OBJECTION:** Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "established" and "changing" are vague and ambiguous.

**RESPONSE:** Admit in part and deny in part.   Admit insofar as there is an established process for adding or altering existing content on the ACS, and for altering existing content on the decennial census.

10

Deny insofar as there is no established process for adding content on the decennial census short-form questionnaire.

29. The Census Bureau follows the established process when adding or changing content on the decennial census to ensure the data fulfill legal and regulatory requirements established by Congress.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "established" and "changing" are vague and ambiguous.

**RESPONSE:**  Deny.  While there is an established process for altering existing content on the decennial census short-form questionnaire, no such process exists for adding content on the decennial census short-form questionnaire.

30. The established process to add questions to the decennial census is set forth in AR 9867.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "established" is vague and ambiguous.

**RESPONSE:**  Deny.  AR 9867 summarized the process for adding content to the ACS and provided a possible option for adapting that process to the decennial short-form context.  While there is an established process for adding or altering existing content on the ACS, and for altering existing content on the decennial census, no such process exists for adding content on the decennial census short-form questionnaire.

31. The established process to add content to the decennial census is set forth in AR 3890-3891.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "established" is vague and ambiguous.

**RESPONSE:**  Deny.  AR 3890-91 summarized the process for adding content to the ACS and provided a possible option for adapting that process to the decennial short-form context.  While there is an established process for adding or altering existing content on the ACS, and for altering existing content on the decennial census, no such process exists for adding content on the decennial census short-form

11

questionnaire.

32. The established process for considering requests for new questions to the decennial census is set forth in AR 3560.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "established" is vague and ambiguous.

**RESPONSE:**  Deny.  AR 3560 summarized the process for adding content to the ACS and provided a possible option for adapting that process to the decennial short-form context.  While there is an established process for adding or altering existing content on the ACS, and for altering existing content on the decennial census, no such process exists for adding content on the decennial census short-form questionnaire.

33. The established process for making content changes to the decennial census is set forth in the response to Question 31 at AR 2303-2304.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "established" and "content changes" are vague and ambiguous.

**RESPONSE:**  Deny.  AR 2303-04 summarized the process for adding content to the ACS and provided a possible option for adapting that process to the decennial short-form context.  Question 31 at AR 2303-2304 does not set forth the established process for altering existing content on the decennial census short-form questionnaire.

34. The response to Question 31 prepared at AR 2303-2304 was provided to the Earl Comstock on or about February 2, 2018.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

12

35. Following the time that the response to Question 31 reflected at AR 2303-2304 was sent to Mr. Comstock, the answer to Question 31 was revised.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

36. Mr. Comstock participated in the revisions to the answer to Question 31.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**   After a reasonable inquiry, Defendant lacks knowledge or information sufficient to truthfully admit or deny, and on this basis, denies.

37. The revised version of the response to Question 31 is found at AR 1296.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

38. The response to Question 31 found at AR 1296 does not reflect the established process to add content to the decennial census.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "established" is vague and ambiguous.

**RESPONSE:**   Deny.  While there is an established process for adding or altering existing content on the ACS, and for altering existing content on the decennial census, no such process exists for adding content on the decennial census short-form questionnaire.

39. It is a priority for the Census Bureau when adding or changing content on the decennial census or the ACS to produce high-quality data.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and

13

instructions.  Defendant further objects because "changing" is vague and ambiguous.

**RESPONSE:**  Admit.

40. One step in the established process to add or change a question to the decennial census is for federal agencies to evaluate their data needs and propose additions or changes to current questions.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "established" and "change" are vague and ambiguous.

**RESPONSE:**  Deny.  While there is an established process for adding or altering existing content on the ACS, and for altering existing content on the decennial census, no such process exists for adding content on the decennial census short-form questionnaire.

41. In order for a federal agency's request to be included on the decennial census, proposals must demonstrate a clear statutory or regulatory need for data at small geographies or for small populations.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Deny.  There is no official process or policy regarding specific requirements for proposals related to the decennial census short-form questionnaire.

42. One step in the established process to add or change a question on the decennial census or the ACS is to test the wording of the new question.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "established" and "change" are vague and ambiguous.

**RESPONSE:**  Deny.  While there is an established process for adding or altering existing content on the ACS, and for altering existing content on the decennial census, no such process exists for adding content on the decennial census short-form questionnaire.  In the established process for adding or altering existing questions on the ACS, or altering existing questions on the decennial census, the wording of new questions does not need to be tested when a specific question was previously used on another

14

survey, which is accepted practice within the survey field and allows the Census Bureau and client agencies to save resources.

43. One step in the established process to change the content of the census is to conduct extensive cognitive and field testing to ensure the question results in proper data, with integrity that meets the Census Bureau's high standards.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "established" and "change" are vague and ambiguous.

**RESPONSE:**   Deny.  While there is an established process for adding or altering existing content on the ACS, and for altering existing content on the decennial census, no such process exists for adding content on the decennial census short-form questionnaire.

44. The established process for adding a question to the decennial census or the ACS includes several opportunities for public comment.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "established" is vague and ambiguous.

**RESPONSE:**   Deny.  While there is an established process for adding or altering existing content on the ACS, and for altering existing content on the decennial census, no such process exists for adding content on the decennial census short-form questionnaire.  The regulatory process that governs the content of both the ACS and the decennial census includes opportunities for public comment.

45. Prior to Secretary Ross' March 26, 2018 decision, the Census Bureau has not conducted a test for the 2020 decennial census that includes the citizenship question.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "test" is vague and ambiguous.

**RESPONSE:**   Admit insofar as there was no specific test regarding a citizenship question in the context of the 2020 Census questionnaire prior to March 26, 2018.  Defendant further notes that the citizenship

15

question itself did not require testing, as the wording of new questions does not need to be tested when a specific question was previously used on another survey.

46. The Census Bureau has not conducted any field testing for the 2020 decennial census questionnaire that includes the citizenship question.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "field testing" is vague and ambiguous.

**RESPONSE:**  Admit.

47. The Census Bureau has not conducted any cognitive testing for the 2020 decennial census questionnaire that includes the citizenship question.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit insofar as the Census Bureau has not conducted cognitive testing for the full 2020 decennial census questionnaire that includes the citizenship question.  Defendant notes that the citizenship question itself did not require cognitive testing, as the wording of new questions does not need to be tested when a specific question was previously used on another survey.

48. There has been no cognitive testing of the citizenship question without a preceding question concerning nativity.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "nativity" is vague and ambiguous.

**RESPONSE:**  Admit.  Defendant notes that the citizenship question itself did not require cognitive testing, as the wording of new questions does not need to be tested when a specific question was previously used on another survey.

49. There are no plans to conduct cognitive testing on the inclusion of the citizenship question on the decennial census before the 2020 Census forms are released.

PTX-234 16 of 63

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**   Admit.  Defendant notes that the citizenship question itself did not require cognitive testing, as the wording of new questions does not need to be tested when a specific question was previously used on another survey.

50. There are no plans to conduct field testing on the inclusion on the citizenship question on the decennial census before the 2020 Census forms are released.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "field testing" is vague and ambiguous.

**RESPONSE:**  Admit insofar as the Census Bureau has only considered additional testing for operational purposes, but will not be conducting any further content testing.

51. There are no plans to test Non-Response Followup (NRFU) procedures for a decennial census questionnaire that includes a citizenship question before the 2020 Census forms are released.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit insofar as Non-Response Followup (NRFU) procedures were already successfully tested as part of the 2018 End-to-End Test.

52. In or around May 2018, Census Bureau personnel drafted a proposal for a Randomized Controlled Trial ("RCT") to analyze the potential effects of a citizenship question to the Decennial Census.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit.

53. The proposed RCT discussed in Request for Admission 52 was developed by the Census Bureau's

17

Center for Survey Measurement ("CSM").

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Deny.  The RCT discussed in RFA 52 was proposed by the American Community Survey Office, which is part of the Decennial Programs Directorate.

54. The proposed RCT discussed in Request for Admission 52 was developed with input from the American Community Survey Office.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

55. The proposed RCT discussed in Request for Admission 52 was considered for implementation in November 2018 and early 2019.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit insofar as the proposed RCT was considered for implementation in November 2018 *or* early 2019.  Defendant otherwise denies this RFA.

56. The proposed RCT discussed in Request for Admission 52 was not conducted.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

57. Karen Dunn Kelley participated in the decision not to conduct the proposed RCT discussed in Request for Admission 52.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

18

**RESPONSE:**   Admit in part and deny in part.   Admit that Karen Dunn Kelly was consulted and affirmed the Census Bureau leadership's decision not to conduct the proposed RCT.  Deny that Karen Dunn Kelly participated in the Census Bureau leadership's initial decision declining to conduct the proposed RCT.

58. There are no plans for CSM or any other part of the Census Bureau to conduct an RCT to study the addition of a citizenship question to the 2020 Decennial Census.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**   Deny. The Census Bureau is exploring all research options to undertake the most effective census possible.

59. In the view of the Census Bureau, the 2020 census questionnaire with the citizenship question has not been adequately tested.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**   Admit in part, deny in part.   Admit insofar as the 2020 census questionnaire with a citizenship question has not been adequately tested.  Deny insofar as the citizenship question itself has been extensively tested in the context of the ACS.

60. In the view of the staff of the Center for Survey Measurement, the 2020 census questionnaire with the citizenship question has not been adequately tested.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**    Admit insofar as the 2020 census questionnaire with a citizenship question has not been adequately tested in the view of the staff of the Center for Survey Measurement.  Deny insofar as the citizenship question itself has been extensively tested in the context of the ACS in the view of the

19

staff of the Center for Survey Measurement.

61. The Current Population Survey ("CPS") includes approximately 60,000 housing units in the sample, which meets the Census Bureau's national and State reliability criteria.

**OBJECTION:** Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

62. The CPS has a longitudinal design for surveying housing units.

**OBJECTION:** Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

63. The CPS sample housing units are included in the survey for a total of eight months: four consecutive months in the survey, followed by eight months out of the survey, followed by four additional months in survey.

**OBJECTION:** Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

64. The CPS collects information on citizenship status during a household's initial interview.

**OBJECTION:** Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

65. The CPS introduces a new panel of housing units, one-eighth of the total sample, every month.

**OBJECTION:** Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

66. The CPS allows any survey respondent to change his or her household's status during the time in sample: a person who leaves the household can be deleted from the roster and a person who moves into the household can be added to the roster.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit.

67. The Census Bureau has found that in the past several decennial censuses, there has been a differential net undercount for Hispanics.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit insofar as there was in a net undercount for Hispanics in the 2010 and 2000 Censuses.

68. The Census Bureau's studies indicate that there is a higher item non-response rate for the citizenship question among Hispanics and non-Hispanic blacks, as compared to other populations.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit insofar as the Census Bureau documented a higher item non-response rate on the 2000 Census and the ACS.  AR 1277; COM_DIS00009833.

69. The citizenship question is a sensitive question for Hispanics.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "sensitive question" is vague and ambiguous.

**RESPONSE:**  Admit insofar as the citizenship question on the ACS has higher breakoff rates and higher item nonresponse rates for Hispanics than for non-Hispanic whites.

70. The citizenship question is a sensitive question for households with at least one non-citizen.

21

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant objects because "sensitive question" is vague and ambiguous.

**RESPONSE:**   Admit insofar as the citizenship question on the ACS has higher breakoff rates and higher item nonresponse rates for noncitizens than for citizens.

71. The Census Bureau has conducted no field testing to confirm that NRFU procedures will be sufficient to cure an increase in the non-response rate resulting from the addition of a citizenship question.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "non-response rate" is vague and ambiguous.

**RESPONSE:**  Deny.  There is no evidence of "an increase in the non-response rate resulting from the addition of a citizenship question."  The Census Bureau has conducted extensive NRFU testing, including a successful 2018 End-to-End Test, and any decline in the *self-response rate* due to the citizenship question is within the budget, planning, and operational design of NRFU and other statistical methods used to mitigate any decrease in the initial self-response rate.

72. The Census Bureau is unable to confirm that NRFU procedures will be sufficient to cure an increase in the non-response rate resulting from the addition of a citizenship question.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "non-response rate" is vague and ambiguous.

**RESPONSE:**  Deny.  There is no evidence of an "an increase in the non-response rate resulting from the addition of a citizenship question."  The Census Bureau fully contemplates a successful 2020 NRFU operation and a successful 2020 Census, and any decline in the *self-response rate* due to the citizenship question is within the budget, planning, and operational design of NRFU and other statistical methods used to mitigate any decrease in the initial self-response rate.

73. The January 19 Memo concluded that many noncitizen households would require six or more

22

NRFU visits.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Deny.  The January 19 Memo noted that the Census Bureau "expect[ed] that many more of these noncitizen households would receive six NRFU visits."  AR 1282.

74. If the NRFU procedures are not sufficient to cure the increased non-response rate resulting from the addition of a citizenship question, this will lead to an increased undercount.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "non-response rate" is vague and ambiguous.

**RESPONSE:**  Deny.  There is no evidence of "an increase in the non-response rate resulting from the addition of a citizenship question."  Any decline in the *self-response rate* due to the citizenship question is within the budget, planning, and operational design of NRFU and other statistical methods used to mitigate any decrease in the initial self-response rate.

75. Because there is a higher non-response rate for the citizenship question among Hispanic and non-Hispanic blacks, if the NRFU procedures are unable to cure the increased non- response rate, there will be an increased differential undercount among Hispanics and non- Hispanic blacks.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "non-response rate" is vague and ambiguous.

**RESPONSE:**  Deny.  There is no evidence of an increase in the "non-response rate" resulting from the addition of a citizenship question.  Any decline in the *self-response rate* due to the citizenship question is within the budget, planning, and operational design of NRFU and other statistical methods used to mitigate any decrease in the initial self-response rate.

76. The Census Bureau will hire only U.S. citizens as enumerators for the 2020 decennial census.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and

PTX-234 23 of 63

instructions.

**RESPONSE:**  Deny.  The Census Bureau will hire non-U.S. citizens as permitted by federal law.

77. The Census Bureau hired non-citizens as enumerators for the 2010 decennial Census.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

78. The Census Bureau is unaware of plans any plans by the Department of Homeland Security to suspend immigration enforcement activities during the 2020 Census.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit insofar as any plans by the Department of Homeland Security to suspend immigration enforcement activities during the 2020 Census have not been finalized.

79. A decrease in self-response rates in the 2020 Decennial Census will lead to more NRFU and will lead to more proxy enumerations.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit in part, deny in part.  Admit insofar as the January 19 memo (AR 1277) states that, in NRFU, "data are much more likely to be collected from a proxy", but deny that declines in self-response rates *will* lead to more proxy enumerations.

80. When a household fails to respond to the census questionnaire following in-person visits by an enumerator, the household becomes proxy-eligible.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit insofar as the current operational plan specifies that a household may become

24

proxy-eligible if manually indicated by the field supervisor after the second visit and only automatically becomes proxy-eligible after three unsuccessful, in-person visits.

81. Proxies do not always provided complete and accurate information for the census enumeration.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.   Defendant further objects because "complete" and "accurate" are undefined, vague, and ambiguous.

**RESPONSE:**   Deny.   The Census Bureau is not aware of any credible empirical evidence suggesting that proxies in the census provide a greater net undercount or differential net undercount in comparison to self-response or in-person interviews.

82. Increased proxy response will increase both whole household and within household omissions in the 2020 Decennial Census.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**   Deny.   The Census Bureau is not aware of any credible empirical evidence suggesting that proxies in the census provide a greater net undercount or differential net undercount in comparison to self-response or in-person interviews.

83. Secretary Ross's statement, in his March 26, 2018 Decisional Memorandum, that "neither the Census Bureau nor the concerned stakeholders could document that the response rate would in fact decline materially," is incorrect.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**   Deny.   As used in the March 26, 2018 Decisional Memorandum, "materially" references the potential decline in self-response rates, estimates of the magnitude of that decline, and the cost and quality implications of such estimates.   All Census Bureau estimates regarding a potential decline in self-

25

response rate are within the budget, planning, and operational design of NRFU and other statistical methods used to mitigate any decrease in self-response rate.

84. Secretary Ross's statement, in his March 26, 2018 Decisional Memorandum, that "neither the Census Bureau nor the concerned stakeholders could document that the response rate would in fact decline materially," is inconsistent with the Census Bureau's finding that adding a citizenship question to the 2020 Census would lead to a 5.1% decrease in self-response rates among households with at least one non-citizen.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**   Deny.  As used in the March 26, 2018 Decisional Memorandum, "materially" references the potential decline in self-response rates, estimates of the magnitude of that decline, and the cost and quality implications of such estimates.  All Census Bureau estimates regarding a potential decline in self-response rate are within the budget, planning, and operational design of NRFU and other statistical methods used to mitigate any decrease in self-response rate.

85. Secretary Ross's statement, in his March 26, 2018 Decisional Memorandum, that it was difficult to estimate increased costs resulting from NRFU increases due to "the Census Bureau and the Department's inability to determine what impact there will be on decennial survey responses," is incorrect.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**   Deny.  Like other aspects of decennial cost estimation, there is a wide range of values associated with the Census Bureau's cost estimates regarding a citizenship question.  However, all Census Bureau estimates regarding a potential decline in self-response rate are within the budget, planning, and operational design of NRFU and other statistical methods used to mitigate any decrease in the initial self-

response rate.

86. Secretary Ross's statement, in his March 26, 2018 Decisional Memorandum, that it was difficult to estimate increased costs resulting from non-response follow-up increases due to "the Census Bureau and the Department's inability to determine what impact there will be on decennial survey responses," is inconsistent the Census Bureau's finding that adding a citizenship question to the 2020 Census would lead to a 5.1% decrease in self-response rates and an increase in costs of at least $27 million.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Deny. Like other aspects of decennial cost estimation, there is a wide range of values associated with the Census Bureau's cost estimates regarding a citizenship question.  However, all Census Bureau estimates regarding a potential decline in self-response rate are within the budget, planning, and operational design of NRFU and other statistical methods used to mitigate any decrease in self-response rate.  Defendant further denies because the Census Bureau found neither that a citizenship question on the 2020 Census *would* lead to an additional 5.1% decrease in self-response rate in households containing at least one noncitizen, nor that there *would* be $27 million in NRFU costs.  The Census Bureau merely set forth empirical evidence (derived from a natural experiment) that the self-response rate could potentially decline for identifiable subpopulations.

87. Secretary Ross's statement, in his March 26, 2018 Decisional Memorandum, that it was difficult to estimate increased costs resulting from non-response follow-up increases due to "the Census Bureau and the Department's inability to determine what impact there will be on decennial survey responses" is inconsistent the Census Bureau's subsequent finding that adding a citizenship question to the 2020 Census would lead to a 5.8% decrease in self-response rates and an increase in costs of at least $91.2 million.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and

27

instructions.

**RESPONSE:**   Deny.  Like other aspects of decennial cost estimation, there is a wide range of values associated with the Census Bureau's cost estimates regarding a citizenship question.  However, all Census Bureau estimates regarding a potential decline in self-response rate are within the budget, planning, and operational design of NRFU and other statistical methods used to mitigate any decrease in self-response rate.  Defendant further denies because the Census Bureau found neither that a citizenship question on the 2020 Census *would* lead to an additional 5.8% decrease in self-response rate in households with at least one noncitizen or one person of unknown citizenship status, nor that there *would* be $91.2 million in NRFU costs.  The Census Bureau merely set forth empirical evidence (derived from a natural experiment) that the self-response rate could potentially decline for identifiable subpopulations.

88. Secretary Ross' statement, in his March 26, 2017 Decisional Memorandum, that the difference in "nonresponses to the [ACS] citizenship question" for non-Hispanic whites and Hispanics were "comparable" to the difference in "nonresponse rates for other questions," such as marriage, educational attainment, monthly gas costs, weeks worked in the past 12 months, wage/salary income, and yearly property insurance is incorrect.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects on the grounds that Plaintiffs have selectively quoted from a longer statement.

**RESPONSE:**   Secretary Ross's March 26, 2017 Decisional Memorandum states:

> The Census Bureau determined that, for 2013-2016 ACS surveys, nonresponses to the citizenship question for non-Hispanic whites ranged from 6.0 to 6.3 percent, for non-Hispanic blacks ranged from 12.0 to 12.6 percent, and for Hispanics ranged from 11.6 to 12.3 percent. However, these rates were comparable to nonresponse rates for other questions on the 2013 and 2016 ACS. Census Bureau estimates showed similar nonresponse rate ranges occurred for questions on the ACS asking the number times the respondent was married, 4.7 to 6.9 percent; educational attainment, 5.6 to 8.5 percent; monthly gas costs, 9.6 to 9.9 percent; weeks worked in the past 12 months, 6.9 to 10.6 percent; wages/salary income, 8.1 to 13.4 percent; and yearly property

28

insurance, 23.9 to 25.6 percent.

After a reasonable inquiry, Defendant lacks knowledge or information sufficient to truthfully admit or deny, and on this basis, denies.  The Census Bureau has not conducted testing on whether the difference in item "nonresponses to the [ACS] citizenship question" for non-Hispanic whites and Hispanics were "comparable" or "similar" to the difference in item "nonresponse rates for other questions."

89.   The difference in nonresponse rates for Hispanics and non-Hispanic whites for the ACS citizenship question is larger than the difference for nonresponse rates for Hispanics and non-Hispanics for the marriage question.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "nonresponse rates" and "the marriage question" are vague and ambiguous.  Defendant also objects because this RFA is vague as to time.

**RESPONSE:**   Deny that the difference in nonresponse rates for Hispanics and non-Hispanic whites for the ACS citizenship question is larger than the difference for nonresponse rates for Hispanics and non-Hispanics insofar as "the marriage question" on the ACS refers to "marital status".

90. The difference in nonresponse rates for Hispanics and non-Hispanic whites for the ACS citizenship question is larger than the difference for nonresponse rates for Hispanics and non-Hispanics for the educational attainment question.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.   Defendant further objects because "nonresponse rates" is vague and ambiguous.  Defendant also objects because this RFA is vague as to time.

**RESPONSE:**   After a reasonable inquiry, Defendant lacks knowledge or information sufficient to truthfully admit or deny, and on this basis, denies.  There has been no tabulation of item nonresponse rates by the Census Bureau race or ethnicity for ACS questions regarding educational attainment.

91. The difference in nonresponse rates for Hispanics and non-Hispanic whites for the ACS

29

citizenship question is larger than the difference for nonresponse rates for Hispanics and non-Hispanics for the monthly gas cost question.

**OBJECTION:** Defendant incorporates by reference the above objections to the definitions and instructions. Defendant further objects because "nonresponse rates" is vague and ambiguous. Defendant also objects because this RFA is vague as to time.

**RESPONSE:** After a reasonable inquiry, Defendant lacks knowledge or information sufficient to truthfully admit or deny, and on this basis, denies. There has been no tabulation of item nonresponse rates by by the Census Bureau race or ethnicity for ACS questions regarding monthly gas costs.

92. The difference in nonresponse rates for Hispanics and non-Hispanic whites for the ACS citizenship question is larger than the difference for nonresponse rates for Hispanics and non-Hispanics for the weeks worked in the past 12 months question.

**OBJECTION:** Defendant incorporates by reference the above objections to the definitions and instructions. Defendant further objects because "nonresponse rates" is vague and ambiguous. Defendant also objects because this RFA is vague as to time.

**RESPONSE:** After a reasonable inquiry, Defendant lacks knowledge or information sufficient to truthfully admit or deny, and on this basis, denies. There has been no tabulation of item nonresponse rates by the Census Bureau by race or ethnicity for ACS questions regarding weeks worked in the past 12 months.

93. The difference in nonresponse rates for Hispanics and non-Hispanic whites for the ACS citizenship question is larger than the difference for nonresponse rates for Hispanics and non-Hispanics for the wage/salary income question.

**OBJECTION:** Defendant incorporates by reference the above objections to the definitions and instructions. Defendant further objects because "nonresponse rates" and "the wage/salary income question" are vague and ambiguous. Defendant also objects because this RFA is vague as to time.

30

**RESPONSE:** Deny that the difference in nonresponse rates for Hispanics and non-Hispanic whites for the ACS citizenship question is larger than the difference for nonresponse rates for Hispanics and non-Hispanics for the wage/salary income question insofar as "earnings" on the ACS is an aggregate of the wage and salary income questions.

94. The difference in nonresponse rates for Hispanics and non-Hispanic whites for the ACS citizenship question is larger than the difference for nonresponse rates for Hispanics and non-Hispanics for the yearly property insurance question.

**OBJECTION:** Defendant incorporates by reference the above objections to the definitions and instructions. Defendant further objects because "nonresponse rates" is vague and ambiguous. Defendant also objects because this RFA is vague as to time.

**RESPONSE:** After a reasonable inquiry, Defendant lacks knowledge or information sufficient to truthfully admit or deny, and on this basis, denies. There has been no tabulation of item nonresponse rates by the Census Bureau by race or ethnicity for ACS questions regarding yearly property insurance.

95. Secretary Ross' statement, in his March 26, 2017 Decisional Memorandum, that "the Census Bureau's analysis did not provide definitive, empirical support" that "adding a citizenship question could reduce response rates," is incorrect.

**OBJECTION:** Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Deny. The Census Bureau set forth empirical evidence (derived from a natural experiment) that the self-response rate could potentially decline for identifiable subpopulations. Such evidence is probative of whether "adding a citizenship question could reduce response rates," but it is not "definitive, empirical support" for that proposition.

96. In analyzing the impact of the addition of a citizenship question, the Census Bureau found empirical evidence that a citizenship question could reduce response rates.

31

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admitted insofar as the Census Bureau set forth empirical evidence (derived from a natural experiment) that the self-response rate could potentially decline for identifiable subpopulations.

97. The Census Bureau provided empirical support to Secretary Ross that adding a citizenship question could reduce response rates.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admitted insofar as the Census Bureau set forth empirical evidence (derived from a natural experiment) that the self-response rate could potentially decline for identifiable subpopulations.

98. In analyzing the impact of the addition of a citizenship question, the Census Bureau did not find any analysis concluding adding a citizenship question would not impact response rates.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

99. Secretary Ross' statement, in his March 26, 2017 Decisional Memorandum, that "for the approximately 70 percent of non-citizens who already answer this question accurately on the ACS, the question is no additional imposition," is incorrect.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Deny.  The Census Bureau does not use the term "additional imposition" and is therefore not aware of any credible empirical evidence relating to the "additional imposition" of a census citizenship question on non-citizen households that correctly answer such a question on the ACS.

100. The Census Bureau has conducted analyses that conclude the addition of a citizenship

question imposes a burden on non-citizens.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit insofar as the January 19 Memo stated: "It is therefore a reasonable inference that a question on citizenship would lead to some decline in overall self-response because it would make the 2020 Census modestly more burdensome in the direct sense, and potentially much more burdensome in the indirect sense that it would lead to a larger decline in self-response for noncitizen households."  AR 1281.

101.      The Census Bureau has conducted analyses that conclude the addition of a citizenship question imposes a burden on Latinos.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**   Deny.   The Census Bureau set forth empirical evidence (derived from a natural experiment) that the self-response rate could potentially decline for identifiable subpopulations.  This evidence does not relate directly to the "burden" of a citizenship question on Latinos.

102.      The Census Bureau has found the difference in "nonresponses to the [ACS] citizenship question" for non-Hispanic whites and Hispanics were "comparable" to the difference in "nonresponse rates for other questions," such as marriage, educational attainment, monthly gas costs, weeks worked in the past 12 months, wage/salary income, and yearly property insurance is incorrect.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects on the grounds that Plaintiffs have selectively quoted from a longer statement.

**RESPONSE:**   After a reasonable inquiry, Defendant lacks knowledge or information sufficient to truthfully admit or deny, and on this basis, denies.  The Census Bureau has not conducted testing on

33

whether the difference in item "nonresponses to the [ACS] citizenship question" for non-Hispanic whites and Hispanics were "comparable" or "similar" to the difference in item "nonresponse rates for other questions."

103.     The Census Bureau has not yet developed a disclosure avoidance methodology for any use of the data collected from the citizenship question on the 2020 Decennial Census.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit insofar as a disclosure avoidance methodology for use of the data collected from the citizenship question on the 2020 Decennial Census has not yet been finalized.  Defendant avers that disclosure avoidance methodologies are currently in development.

104.     The Census Bureau has not yet determined what data products it intends to produce containing the data collected from the citizenship question on the 2020 Decennial Census.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit in part, deny in part.  Admit insofar as the Census Bureau has not yet determined what data products it intends to produce containing the data collected from the citizenship question on the 2020 Decennial Census.  Deny insofar as the suite of potential products has been determined.

105.     There will be quality disruptions to the data from the 2020 Decennial Census as an impact of adding the citizenship question.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit insofar as the self-response rate could potentially decline for identifiable subpopulations due to the citizenship question, which would lead to "quality disruptions to the data from the 2020 Decennial Census".

34

106.     At the time of Secretary Ross' March 26, 2018 decision, the Census Bureau did not recommend that adding a citizenship question to the decennial census questionnaire was necessary to provide complete and accurate data in response to the U.S. Department of Justice's request for block-level CVAP data.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

107.     The Census Bureau has never recommended that adding a citizenship question to the decennial census questionnaire was necessary to provide complete and accurate data in response to the U.S. Department of Justice's request for block-level CVAP data.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "recommended" is vague and ambiguous.

**RESPONSE:** Admit.

108.     At the time of Secretary Ross' March 26, 2018 decision, the chief scientist of the Census Bureau did not recommend that adding a citizenship question to the decennial census questionnaire was necessary to provide complete and accurate data in response to the U.S. Department of Justice's request for block-level CVAP data.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

109.     The chief scientist of the Census Bureau has never recommended that adding a citizenship question to the decennial census questionnaire was necessary to provide complete and accurate data in response to the U.S. Department of Justice's request for block-level CVAP data.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and

35

instructions.

**RESPONSE:** Admit.

110.     Dr. John Abowd never recommended that adding a citizenship question to the census questionnaire was necessary to provide complete and accurate data in response to the U.S. Department of Justice's request for block-level CVAP data.

**OBJECTION:** Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

111.     It is the judgment of the Census Bureau that including a citizenship question on the decennial census would not result in more accurate enumeration data.

**OBJECTION:** Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

112.     It is the judgment of the Census Bureau that including a citizenship question on the decennial census would not result in more accurate enumeration data for purposes of redistricting.

**OBJECTION:** Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**   After a reasonable inquiry, Defendant lacks knowledge or information sufficient to truthfully admit or deny, and on this basis, denies. The Census Bureau does not use enumeration data for the purposes of redistricting and therefore lacks knowledge as to the accuracy of any data used for that purpose.

113.     It is the judgment of the Census Bureau that the best way to provide block-level CVAP data to DOJ would be through utilizing a linked file of administrative data and survey data the Census Bureau already possesses.

36

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit in part, deny in part.  Deny insofar as the Census Bureau does not "already possess" a linked file of administrative data that would be the best way to provide block-level CVAP data.  Admit insofar as the Census Bureau believes that once acquired, administrative data would be the best way to provide block-level CVAP data.

114.    It is the judgment of the Census Bureau that utilizing a linked file of administrative data and survey data the Census Bureau already possesses would result in higher quality block-level CVAP data than including a citizenship question on the decennial census questionnaire.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit in part, deny in part.  Deny insofar as the "survey data" the Census Bureau already possesses would not result in higher quality block-level CVAP data.  Admit insofar as it is the judgment of the Census Bureau that utilizing a linked file of administrative data would result in higher quality block-level CVAP data than including a citizenship question on the decennial census questionnaire.

115.    It is the judgment of the Census Bureau that utilizing a linked file of administrative data and survey data the Census Bureau already possesses would produce block- level CVAP data at lower cost than including a citizenship question on the decennial census questionnaire.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit in part, deny in part.  Deny insofar as the "survey data" the Census Bureau already possesses would not be used to tabulate block-level CVAP data.  Admit insofar as it is the judgment of the Census Bureau that utilizing a linked file of administrative data would produce block- level CVAP data at lower cost than including a citizenship question on the decennial census questionnaire.

37

116.     Since 1965, the Census Bureau has never produced CVAP data as part of the Public Law 171-94 data file.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

117.     Since 1965, the Census Bureau has never produced CVAP data in the same data file as total population data for purposes of redistricting.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

118.     Since at least 1965, the Census Bureau, for redistricting purposes, has published total population data from the decennial census and CVAP data in two different data sets.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

119.     Prior to the 2010 Census, the Census Bureau has produced CVAP data from responses to the Census "long form" questionnaire.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

120.     CVAP data produced by the Census Bureau based on the census long form questionnaire was a different data set than the redistricting data set containing total population data derived from the short form questionnaire.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and

instructions.

**RESPONSE:** Admit.

121.     CVAP data produced by the Census Bureau based on the census long form questionnaire was not included in the Public Law 94-171 Data File.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

122.     The Census Bureau can produce CVAP data based on 5-year ACS estimates encompassing the time period in which a decennial census occurs.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

123.     The Census Bureau can produce CVAP data based on 5-year ACS estimates in which the midpoint year is the same year in which a decennial census occurs.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

124.     CVAP data based on responses to the Census long form was a statistical estimate based on a survey sample.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

125.     CVAP data based on responses to the Census long form had a margin of error.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and

39

instructions.  Defendant further objects because "margin of error" is vague and ambiguous.

**RESPONSE:**  Admit.

126.    CVAP data based on responses to the Census long form had a margin of error that increased as the geographic area decreased.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "margin of error" is vague and ambiguous.

**RESPONSE:**  Deny.  Defendant avers that the margin of error changed based on the population in a particular area, not as a result of the geographic area.

127.    CVAP data based on responses to the Census long form was not a hard count.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "hard count" is vague and ambiguous.

**RESPONSE:**  Admit insofar as CVAP data based on responses to the Census long form were based on estimates from a survey sample.

128.    Total population data based on responses to the decennial questionnaire has a margin of error.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.   Defendant further objects because "[t]otal population data" is not solely "based on responses to the decennial questionnaire."   Defendant also objects because "margin of error" is vague and ambiguous.

**RESPONSE:**  Deny because "[t]otal population data" is not solely "based on responses to the decennial questionnaire."

129.    Total population data at the census block level based on responses to the decennial questionnaire has a margin of error.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and

instructions.  Defendant further objects because "[t]otal population data" is not solely "based on responses to the decennial questionnaire."  Defendant also objects because "margin of error" is vague and ambiguous.

**RESPONSE:**  Deny because "[t]otal population data" is not solely "based on responses to the decennial questionnaire."

130.       Data in the Public Law 94-171 data file has margins of error.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant also objects because "margin of error" is vague and ambiguous.

**RESPONSE:**  Deny because the Public Law 94-171 data file does not have sampling margins of error.

131.       Data at the census block level in the Public Law 94-171 data file has margins of error.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant also objects because "margins of error" is vague and ambiguous.

**RESPONSE:**  Deny because the Public Law 94-171 data file does not have sampling margins of error.

132.       Total population data based on responses to the decennial questionnaire has a margin of error that increases as the geographic area decreases.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "[t]otal population data" is not solely "based on responses to the decennial questionnaire."  Defendant also objects because "margin of error" is vague and ambiguous.

**RESPONSE:**  Deny because "[t]otal population data" is not solely "based on responses to the decennial questionnaire."

133.       Total population data at the census block level based on responses to the decennial questionnaire has a margin of error that increases as the geographic area decreases.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and

41

instructions.   Defendant further objects because "[t]otal population data" is not solely "based on responses to the decennial questionnaire."   Defendant also objects because "margin of error" is vague and ambiguous.

**RESPONSE:**  Deny because "[t]otal population data" is not solely "based on responses to the decennial questionnaire."

134.      Data in the Public Law 94-171 data file has margins of error that increase as the geographic area decreases.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant also objects because "margins of error" is vague and ambiguous.

**RESPONSE:** Deny.

135.      Data at the census block level in the Public Law 94-171 data file has margins of error that increase as the geographic area decreases.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant also objects because "margins of error" is vague and ambiguous.

**RESPONSE:** Deny.

136.      The Census Bureau is not aware of any case in which the United States was unable to succeed on a Voting Rights Act claim because of the fact that 5-year ACS citizenship data has a margin of error that increases as the geographic area decreases.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant also objects because "margin of error" is vague and ambiguous.

**RESPONSE:**  Admit insofar as the Census Bureau is not responsible for enforcing the Voting Rights Act and thus is not aware of any Voting Rights Act cases in which CVAP data based on the ACS either was or was not sufficient.

137.      The Census Bureau is not aware of any case in which a plaintiff was unable to succeed

PTX-234 42 of 63

on a Voting Rights Act claim because of the fact that 5-year ACS citizenship data has a margin of error that increases as the geographic area decreases.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**   Admit insofar as the Census Bureau is not responsible for enforcing the Voting Rights Act and thus is not aware of any Voting Rights Act cases in which CVAP data based on the ACS either was or was not sufficient.

138.   The Census Bureau is barred from disclosing individual responses to decennial census questionnaires.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant also objects to the extent this RFA calls for a legal conclusion.

**RESPONSE:**   Admit.  Defendant further avers that the Census Bureau cannot disclose any information whereby the data furnished by any particular establishment or individual can be identified.

139.   The Census Bureau is barred from disclosing individual responses to a citizenship question on the decennial census questionnaire.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant also objects to the extent this RFA calls for a legal conclusion.

**RESPONSE:**   Admit.  Defendant further avers that the Census Bureau cannot disclose any information whereby the data furnished by any particular establishment or individual can be identified.

140.   With respect to citizenship information, the Census Bureau can only disclose aggregate information covering a geographical area.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant also objects to the extent this RFA calls for a legal conclusion.

**RESPONSE:**   Deny.  The Census Bureau does not disclose citizenship information that has not gone

43

through an approved disclosure avoidance process.

141.    The Census Bureau is barred from disclosing individual responses to a citizenship question on the Census questionnaire to the United States Department of Justice.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant also objects to the extent this RFA calls for a legal conclusion.

**RESPONSE:**  Admit.  Defendant further avers that the Census Bureau cannot disclose any information whereby the data furnished by any particular establishment or individual can be identified.

142.    To avoid disclosure of an individual's response to the citizenship question on the census questionnaire, the Census Bureau intends to use techniques such as household swapping and synthetic data noise infusion.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant also objects because "household swapping" and "synthetic data noise infusion" are undefined, vague, and ambiguous.

**RESPONSE:**  Deny that the Census Bureau intends to use household swapping on the 2020 Decennial.  As to synthetic data noise infusion, after a reasonable inquiry, Defendant lacks knowledge or information sufficient to truthfully admit or deny, and on this basis, denies.

143.    The term "household swapping," as used by the Census Bureau, refers to the practice whereby the Census Bureau takes two households of the same size located in different census blocks, and then exchanges the characteristics associated with those two households before the Bureau makes its data available to the public.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Defendant refuses to answer due to the confidentiality protections of Title 13.  Defendant avers that the public information about household swapping can be found online.

44

144.      The term "synthetic noise infusion," as used by the Census Bureau, refers to the practice whereby the Census Bureau replaces some sensitive information about a census respondent, and with different information based on sample data from a statistical model.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "synthetic noise infusion" is not a term used by the Census Bureau.

**RESPONSE:** Deny insofar as this RFA does not accurately describe all the ways in which "noise infusion" may be accomplished.

145.      CVAP data produced by the Census Bureau based on responses to the 2020 Census questionnaire will have error margins associated with it.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant also objects because "error margins" is vague and ambiguous.

**RESPONSE:** After a reasonable inquiry, Defendant lacks knowledge or information sufficient to truthfully admit or deny, and on this basis, denies.

146.      Block-level CVAP data based on responses to the 2020 Census questionnaire that are produced at the block level by the Census Bureau will have margins of error associated with it.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant also objects because "margins of error" is vague and ambiguous.

**RESPONSE:** After a reasonable inquiry, Defendant lacks knowledge or information sufficient to truthfully admit or deny, and on this basis, denies.

147.      CVAP data based on responses to the 2020 Census questionnaire by the Census Bureau will have margins of error that increase as the geographic area decreases.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant also objects because "margins of error" is vague and ambiguous.

45

**RESPONSE:** After a reasonable inquiry, Defendant lacks knowledge or information sufficient to truthfully admit or deny, and on this basis, denies.

148.      As of December 12, 2017, the Census Bureau did not know whether the margins of error associated with the block-level CVAP data based on the 2020 Census would be larger than the margins of error associated with the CVAP block level data based on the ACS currently used by DOJ.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "margins of error" is vague and ambiguous.  Defendant also objects because the Census Bureau does not produce "CVAP block level data based on the ACS."

**RESPONSE:**  Deny because the Census Bureau does not produce "CVAP block level data based on the ACS."

149.      At present, the Census Bureau does not know whether the margins of error associated with the block-level CVAP data based on the 2020 Census will be larger than the margins of error associated with the CVAP block level data based on the ACS currently used by DOJ.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "margins of error" is vague and ambiguous.  Defendant also objects because the Census Bureau does not produce "CVAP block level data based on the ACS."

**RESPONSE:**  Deny because the Census Bureau does not produce "CVAP block level data based on the ACS."

150.      As of December 12, 2017, Dr. John Abowd, the chief scientist of the Census Bureau, did not know whether the margins of error associated with the block-level CVAP data based on the 2020 Census would be larger than the margins of error associated with the CVAP block level data based on the ACS currently used by DOJ.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "margins of error" is vague and ambiguous.  Defendant

46

also objects because the Census Bureau does not produce "CVAP block level data based on the ACS."

**RESPONSE:**  Deny because the Census Bureau does not produce "CVAP block level data based on the ACS."

151.       At present, the chief scientist of the Census Bureau does not know whether the margins of error associated with the block-level CVAP data based on the 2020 Census will be larger than the margins of error associated with the CVAP block level data based on the ACS currently used by DOJ.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "margins of error" is vague and ambiguous.  Defendant also objects because the Census Bureau does not produce "CVAP block level data based on the ACS."

**RESPONSE:**  Deny because the Census Bureau does not produce "CVAP block level data based on the ACS."

152.       As of March 26, 2018, the Census Bureau did not know the precise disclosure avoidance procedures that will be used in conjunction with the production of block-level CVAP data after the 2020 census.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit.

153.       At present, the Census Bureau does not know the precise disclosure avoidance procedures that will be used in conjunction with the production of block-level CVAP data after the 2020 census.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit.

154.       As of March 26, 2018, Dr. John Abowd, the chief scientist of the Census Bureau, did not

47

know the precise disclosure avoidance procedures that will be used in conjunction with the production of block-level CVAP data after the 2020 census.

**OBJECTION:** Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

155.    At present, Dr. John Abowd, the chief scientist of the Census Bureau, does not know the precise disclosure avoidance procedures that will be used in conjunction with the production of block-level CVAP data after the 2020 census.

**OBJECTION:** Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

156.    CVAP data based on the census long form produced by the Census Bureau was not produced at the census block level.

**OBJECTION:** Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

157.    CVAP data based on the census long form produced by the Census Bureau was produced at the census tract level.

**OBJECTION:** Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

158.    Prior to December 12, 2017, the Census Bureau had not received a request from the U.S. Department of Justice to include a citizenship question on the decennial census questionnaire.

**OBJECTION:** Defendant incorporates by reference the above objections to the definitions and

48

instructions.

**RESPONSE:** Admit.

159.     Prior to December 12, 2017, the Census Bureau had not been told by the U.S. Department of Justice that CVAP data based on ACS estimates was inadequate for purposes of Voting Rights Act enforcement.

**OBJECTION:** Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

160.     Prior to December 12, 2017, the Census Bureau had not been told by the U.S. Department of Justice that CVAP data based on 5-year ACS estimates was inadequate for purposes of Voting Rights Act enforcement.

**OBJECTION:** Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

161.     The Census Bureau was never told by the U.S. Department of Justice that CVAP data based on 5-year ACS estimates was inadequate for purposes of Voting Rights Act enforcement.

**OBJECTION:** Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.  Defendant further avers that the U.S. Department of Justice's December 12, 2017 letter stated that CVAP data based on 5-year ACS estimates "does not yield the ideal data" for Voting Rights Act enforcement.

162.     Prior to March 26, 2018, the Census Bureau was not aware of any Voting Rights Act case brought by the U.S. Department of Justice that failed due to reliance on CVAP data based on the ACS.

**OBJECTION:** Defendant incorporates by reference the above objections to the definitions and

49

instructions.

**RESPONSE:** Admit insofar as the Census Bureau is not responsible for enforcing the Voting Rights Act and thus is not aware of any Voting Rights Act cases in which CVAP data based on the ACS either was or was not sufficient.

163.     The Census Bureau is not aware of any Voting Rights Act case brought by the U.S. Department of Justice that failed due to reliance on CVAP data based on the ACS.

**OBJECTION:** Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit insofar as the Census Bureau is not responsible for enforcing the Voting Rights Act and thus is not aware of any Voting Rights Act cases in which CVAP data based on the ACS either was or was not sufficient.

164.     Prior to March 26, 2018, the Census Bureau was not aware of any Voting Rights Act case that failed due to reliance on CVAP data based on the ACS.

**OBJECTION:** Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit insofar as the Census Bureau is not responsible for enforcing the Voting Rights Act and thus is not aware of any Voting Rights Act cases in which CVAP data based on the ACS either was or was not sufficient.

165.     The Census Bureau is not aware of any Voting Rights Act case that failed due to reliance on CVAP data based on the ACS.

**OBJECTION:** Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit insofar as the Census Bureau is not responsible for enforcing the Voting Rights Act and thus is not aware of any Voting Rights Act cases in which CVAP data based on the ACS either

50

was or was not sufficient.

166.     Prior to March 26, 2018, the Census Bureau was not aware of any Voting Rights Act case brought by the U.S. Department of Justice that failed due to reliance on CVAP data based on 5-year ACS estimates.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**   Admit insofar as the Census Bureau is not responsible for enforcing the Voting Rights Act and thus is not aware of any Voting Rights Act cases in which CVAP data based on the ACS either was or was not sufficient.

167.     The Census Bureau is not aware of any Voting Rights Act case brought by the U.S. Department of Justice that failed due to reliance on CVAP data based on 5-year ACS estimates.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**   Admit insofar as the Census Bureau is not responsible for enforcing the Voting Rights Act and thus is not aware of any Voting Rights Act cases in which CVAP data based on the ACS either was or was not sufficient.

168.     Prior to March 26, 2018, the Census Bureau was not aware of any Voting Rights Act case that failed due to reliance on CVAP data based on 5-year ACS estimates.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**   Admit insofar as the Census Bureau is not responsible for enforcing the Voting Rights Act and thus is not aware of any Voting Rights Act cases in which CVAP data based on the ACS either was or was not sufficient.

169.     The Census Bureau is not aware of any Voting Rights Act case that failed due to reliance

51

on CVAP data based on 5-year ACS estimates.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit insofar as the Census Bureau is not responsible for enforcing the Voting Rights Act and thus is not aware of any Voting Rights Act cases in which CVAP data based on the ACS either was or was not sufficient.

170.     Prior to March 26, 2018, the Census Bureau did not have an opportunity to consult with technical staff in the Department of Justice regarding a citizenship question on the census.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "opportunity" is vague and ambiguous.

**RESPONSE:**  Admit insofar as the Census Bureau did not consult with technical staff in the Department of Justice regarding a citizenship question on the census.

171.     Prior to March 26, 2018, the Census Bureau did not have an opportunity to consult with technical staff in the Department of Justice regarding DOJ's purported need to obtain block-level CVAP data.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "opportunity" is vague and ambiguous.

**RESPONSE:**  Admit insofar as the Census Bureau did not consult with technical staff in the Department of Justice regarding a citizenship question on the census.

172.     Prior to March 26, 2018, the Census Bureau did not consult with Sarah Brinegar regarding a citizenship question on the census.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit.

173.      Sarah Brinegar is a geographer and social science analyst employed by the Voting Section of the U.S. Department of Justice Civil Rights Division.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant objects because this RFA is vague as to time.

**RESPONSE:**  Admit that Sarah Brinegar is currently employed by the Voting Section of the U.S. Department of Justice Civil Rights Division as a social science analyst.

174.      Prior to March 26, 2018, the Census Bureau did not consult with Toby Moore regarding a citizenship question on the census.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit.

175.      Toby Moore is a social science analyst employed by the Voting Section of the U.S. Department of Justice Civil Rights Division.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant objects because this RFA is vague as to time.

**RESPONSE:**  Admit that Toby Moore is currently employed by the Voting Section of the U.S. Department of Justice Civil Rights Division as a social science analyst.

176.      Prior to March 26, 2018, the Census Bureau did not consult with Ben Overholt regarding a citizenship question on the census.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit.

177.      Ben Overholt is a statistician employed by the Voting Section of the U.S. Department of Justice Civil Rights Division.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant objects because this RFA is vague as to time.

**RESPONSE:**   Admit that Ben Overholt is currently employed by the Voting Section of the U.S. Department of Justice Civil Rights Division as a statistician.

178.       Prior to March 26, 2018, the Census Bureau did not consult with T. Christian Herren, Jr. regarding a citizenship question on the census.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

179.       T. Christian Herren, Jr. is the Chief of the Voting Section of the U.S. Department of Justice Civil Rights Division.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant objects because this RFA is vague as to time.

**RESPONSE:** Admit that Chris Herren is currently employed by the U.S. Department of Justice Civil Rights Division as Chief of the Voting Section.

180.       The plaintiffs in the *Benavidez v. Irving Independent School Dist., Tex.*, 690 F. Supp. 2d 451 (N.D. Tex. 2010), Section 2 Voting Rights Act litigation relied on CVAP data based on 1-year ACS estimates.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**   After a reasonable inquiry, Defendant lacks knowledge or information sufficient to truthfully admit or deny, and on this basis, denies.  The Census Bureau is not responsible for enforcing the Voting Rights Act and thus is not aware of how CVAP data based on the ACS has been used in particular Voting Rights Act cases.

54

181.      The plaintiffs in the *Benavidez v. Irving Independent School Dist.*, Tex., 690 F. Supp. 2d 451 (N.D. Tex. 2010), Section 2 Voting Rights Act litigation did not rely on CVAP data based on 5-year ACS estimates.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**   After a reasonable inquiry, Defendant lacks knowledge or information sufficient to truthfully admit or deny, and on this basis, denies.  The Census Bureau is not responsible for enforcing the Voting Rights Act and thus is not aware of how CVAP data based on the ACS has been used in particular Voting Rights Act cases.

182.      The Census Bureau is not aware of a single case under Section 2 Voting Rights Act brought by the U.S. Department of Justice since Donald Trump's inauguration as president.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**   Admit insofar as the Census Bureau is not responsible for enforcing the Voting Rights Act and thus is not aware of the details of particular past or present Voting Rights Act cases brought by the U.S. Department of Justice.

183.      The Census Bureau is not aware any current plans by the U.S. Department of Justice to bring litigation under Section 2 Voting Rights Act.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**   Admit insofar as the Census Bureau is not responsible for enforcing the Voting Rights Act and thus is not aware of the details of particular past or future Voting Rights Act cases brought by the U.S. Department of Justice.

184.      On December 22, 2017, Ron Jarmin wrote an email to Arthur Gary stating that the "best

55

way" to provide block-level CVAP data for purposes of VRA enforcement is not to add a citizenship question to the census, but instead to use a linked file of administrative and survey data that the Census Bureau already possesses.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Deny insofar as this RFA misstates the December 22, 2017 email from Ron Jarmin.  That email states, in relevant part: "I directed staff to review all possible ways to address the needs expressed in the [DOJ] letter.  They have now briefed me and their findings suggest that the best way to provide PL94 block-level data with citizen voting population by race and ethnicity would be through utilizing a linked file of administrative and survey date the Census Bureau already possesses.  This would result in higher quality data produced at lower cost."  AR 5489.

185.	On December 22, 2017, Ron Jarmin wrote an email to Arthur Gary stating that using a linked file of administrative and survey data that the Census Bureau already possesses would result in higher quality CVAP data than adding a citizenship question to the citizenship questionnaire.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Deny insofar as this RFA misstates the December 22, 2017 email from Ron Jarmin.  That email states, in relevant part: "I directed staff to review all possible ways to address the needs expressed in the [DOJ] letter.  They have now briefed me and their findings suggest that the best way to provide PL94 block-level data with citizen voting population by race and ethnicity would be through utilizing a linked file of administrative and survey date the Census Bureau already possesses.  This would result in higher quality data produced at lower cost."  AR 5489.

186.	On December 22, 2017, Ron Jarmin wrote an email to Arthur Gary stating that using a linked file of administrative and survey data that the Census Bureau already possesses would result in

higher quality block-level CVAP data than adding a citizenship question to the census questionnaire.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Deny insofar as this RFA misstates the December 22, 2017 email from Ron Jarmin.  That email states, in relevant part: "I directed staff to review all possible ways to address the needs expressed in the [DOJ] letter.  They have now briefed me and their findings suggest that the best way to provide PL94 block-level data with citizen voting population by race and ethnicity would be through utilizing a linked file of administrative and survey date the Census Bureau already possesses.  This would result in higher quality data produced at lower cost."  AR 5489.

187.    On December 22, 2017, Ron Jarmin wrote an email to Arthur Gary stating that using a linked file of administrative and survey data that the Census Bureau already possesses would produce CVAP data at a lower cost than adding a citizenship question to the census questionnaire.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Deny insofar as this RFA misstates the December 22, 2017 email from Ron Jarmin.  That email states, in relevant part: "I directed staff to review all possible ways to address the needs expressed in the [DOJ] letter.  They have now briefed me and their findings suggest that the best way to provide PL94 block-level data with citizen voting population by race and ethnicity would be through utilizing a linked file of administrative and survey date the Census Bureau already possesses.  This would result in higher quality data produced at lower cost."  AR 5489.

188.    On December 22, 2017, Ron Jarmin wrote an email to Arthur Gary stating that using a linked file of administrative and survey data that the Census Bureau already possesses would produce block-level CVAP data at a lower cost than adding a citizenship question to the census questionnaire.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and

57

instructions.

**RESPONSE:**  Deny insofar as this RFA misstates the December 22, 2017 email from Ron Jarmin.  That email states, in relevant part: "I directed staff to review all possible ways to address the needs expressed in the [DOJ] letter.  They have now briefed me and their findings suggest that the best way to provide PL94 block-level data with citizen voting population by race and ethnicity would be through utilizing a linked file of administrative and survey date the Census Bureau already possesses.  This would result in higher quality data produced at lower cost."  AR 5489.

189.      On December 22, 2017, Ron Jarmin wrote an email to Arthur Gary requesting a meeting of Census Bureau and Department of Justice technical experts.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit.

190.      On December 22, 2017, Ron Jarmin wrote an email to Arthur Gary requesting a meeting of Census Bureau and Department of Justice technical experts to discuss the Census Bureau's proposal to generate block-level CVAP data using a linked file of administrative and survey data that the Census Bureau already possesses.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit.

191.      On December 22, 2017, Ron Jarmin wrote an email to Arthur Gary requesting a meeting of Census Bureau and Department of Justice technical experts to discuss the Census Bureau's proposal to generate block-level CVAP data using a linked file of administrative and survey data that the Census Bureau already possesses.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and

58

instructions.

**RESPONSE:** Admit.

192.     Ron Jarmin received an email from Arthur Gary offering times to meet to discuss the citizenship question, including on January 19, 2018.

**OBJECTION:** Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

193.     Ron Jarmin wrote an email to Arthur Gary agreeing to meet to discuss the citizenship question on January 19, 2018.

**OBJECTION:** Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

194.     Ron Jarmin received an email from Arthur Gary, dated January 16, 2018, stating that Department of Justice staff would be unable to meet on January 19, 2018.

**OBJECTION:** Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

195.     A meeting of Census Bureau and Department of Justice technical experts to discuss a citizenship question did not occur prior to March 26, 2018.

**OBJECTION:** Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

196.     A meeting of Census Bureau and Department of Justice technical experts to discuss the Census Bureau's proposal to generate block-level CVAP data using a linked file of administrative and

survey data that the Census Bureau already possesses did not occur prior to March 26, 2018.

**OBJECTION:** Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

197.	Between December 12, 2017 and March 26, 2018, the Census Bureau did not have a conversation with the Department of Justice regarding a citizenship question on the decennial census questionnaire.

**OBJECTION:** Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "conversation" is vague and ambiguous.

**RESPONSE:** Deny.  The Census Bureau received a request from the U.S. Department of Justice to reinstate a citizenship question on the 2020 census on December 12, 2017, and Art Gary and Ron Jarmin conversed via email as documented at AR 5489.

198.	Between December 12, 2017 and March 26, 2018, the Census Bureau did not have a conversation with the Department of Justice regarding alternative sources of block-level CVAP data other than a citizenship question on the decennial census questionnaire.

**OBJECTION:** Defendant incorporates by reference the above objections to the definitions and instructions.  Defendant further objects because "conversation" is vague and ambiguous.

**RESPONSE:** Deny.  The Census Bureau received a request from the U.S. Department of Justice to reinstate a citizenship question on the 2020 census on December 12, 2017, and Art Gary and Ron Jarmin conversed via email as documented at AR 5489.

199.	Between December 12, 2017 and March 26, 2018, the Department of Justice communicated that it did not want to meet with the Census Bureau to discuss the Department of Justice's request to add a citizenship question to the decennial census questionnaire.

**OBJECTION:** Defendant incorporates by reference the above objections to the definitions and

60

instructions.

**RESPONSE:** Admit.

200.    Between December 12, 2017 and March 26, 2018, the Department of Justice communicated that it did not want to meet with the Census Bureau to discuss alternative sources of block-level CVAP data other than a citizenship question on the decennial census questionnaire.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

201.    The Census Bureau is not aware of any instance, other than the request to add the citizenship question to the decennial census questionnaire, in which the Department of Justice has requested data from the Census Bureau and then declined to meet to discuss that request.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit insofar as the Department of Justice requested data from the Census Bureau in many instances throughout the years in addition to the December 12, 2017 request for reinstating a citizenship question, and, after a reasonable inquiry, the Census Bureau lacks knowledge regarding the Department of Justice's acceptance or declination of meetings related to such requests.

202.    The Census Bureau is not aware of any instance, other than the request to add the citizenship question to the decennial census questionnaire, in which a federal agency has requested data from the Census Bureau and then declined to meet to discuss that request.

**OBJECTION:**   Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**   Admit insofar as federal agencies have requested data from the Census Bureau in many instances throughout the years in addition to the December 12, 2017 request for reinstating a citizenship

61

==question, and, after a reasonable inquiry, the Census Bureau lacks knowledge regarding any federal==
==agency's acceptance or declination of meetings related to such requests.==

203.     Since March 26, 2018, at least one conversation has taken place between technical staff at the Census Bureau and the U.S. Department of Justice regarding block-level CVAP data.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit in part and deny in part.  Admit insofar as at least one conversation has taken place between technical staff at the Census Bureau and the U.S. Department of Justice.  Deny insofar as the topic was not block-level CVAP data.

204.     Since March 26, 2018, at least one conversation has taken place between technical staff at the Census Bureau and the U.S. Department of Justice regarding the citizenship question on the decennial census questionnaire.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit in part and deny in part.  Admit insofar as at least one conversation has taken place between technical staff at the Census Bureau and the U.S. Department of Justice.  Deny insofar as the topic was not the citizenship question on the decennial census questionnaire.

205.     Secretary Ross's March 26, 2018 Decisional Memorandum contains misleading statements.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and instructions.

**RESPONSE:**  Deny.

206.     Secretary Ross's March 26, 2018 Decisional Memorandum contains false statements.

**OBJECTION:**  Defendant incorporates by reference the above objections to the definitions and

62

instructions.

**RESPONSE:** Deny.


Dated: October 23, 2018                          Respectfully submitted,

                                                 JOSEPH H. HUNT
                                                 Assistant Attorney General

                                                 BRETT A. SHUMATE
                                                 Deputy Assistant Attorney General

                                                 JOHN R. GRIFFITHS
                                                 Director, Federal Programs Branch

                                                 JOSHUA E. GARDNER
                                                 CARLOTTA P. WELLS
                                                 Assistant Director, Federal Programs Branch

                                                  _/s/ Stephen Ehrlich_
                                                 STEPHEN EHRLICH
                                                 Trial Attorney
                                                 United States Department of Justice
                                                 Civil Division, Federal Programs Branch
                                                 Email:  stephen.ehrlich@usdoj.gov

                                                 *Counsel for Defendants*

# EXHIBIT C

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEW YORK IMMIGRATION COALITION, *et. al*,<br><br>            Plaintiff,<br><br>                  v.<br><br>UNITED STATES DEPARTMENT OF COMMERCE, *et. al*,<br><br>            Defendant. | Civil Action No. 1:18-cv-05025-JMF Hon. Jesse M. Furman |

## DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFFS' REQUESTS FOR ADMISSION TO DEFENDANT UNITED STATES DEPARTMENT OF COMMERCE

Pursuant to Federal Rules of Civil Procedure 26 and 36 and the Local Rules of this Court Defendant the United State Department of Commerce ("Defendant"), by and through counsel, provides the following objections and responses to Plaintiffs' requests for admissions.

### OBJECTIONS WHICH APPLY TO ALL REQUESTS FOR ADMISSION

1.        Separate and apart from the specific objections set forth below, Defendants object to any discovery taking place in this case to the extent such discovery is brought pursuant to claims purportedly under the Administrative Procedure Act, as resolution of any such claims should be based upon the administrative record in this case.

2.        Each and every response contained herein is subject to the above objection, which applies to each and every response, regardless of whether a specific objection is interposed in a specific response.  The making of a specific objection in response to a particular request is not intended to constitute a waiver of any other objection not specifically referenced in the particular response.



**Page 1 of 63**

## OBJECTIONS TO DEFINITIONS

1.      Defendant object to the inclusion of definitions for any term not relied on in these Requests for Admission.  Any requirement that Defendant respond to such definitions in the abstract is not proportional to the needs of the case and the burden of such a response outweighs its likely benefit, which is none.  Defendant does not hereby waive any future objection to the definition of such terms, or waive the right to employment of Defendant's own definition of such terms.

## OBJECTION TO INSTRUCTIONS

1.      Defendants object to instructions number 2, 5 and 7 to the extent they seeks to impose requirements beyond those required by Federal Rules of Civil Procedure.

## OBJECTIONS AND RESPONSES TO PLAINTIFFS' REQUESTS FOR ADMISSION

1.      On June 16, 2015, when announcing his candidacy for president, Donald Trump stated: "When Mexico sends its people they're not sending their best . . . . They're bringing drugs. They're bringing crime. They're rapists . . . . It's coming from more than Mexico. It's coming from all over South and Latin America."

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request, which seeks to have the Defendants confirm an alleged statement by then-candidate Donald J. Trump, is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.  Defendants further object on the grounds that Plaintiffs have selectively quoted portions of a lengthy statement.

**RESPONSE:**  After reasonable inquiry, Defendants lack sufficient information to truthfully admit or deny the request because it seeks information regarding a statement purportedly made by a private party not within the control of the United States at the time the statement is said to have been made.  To the extent a response is required, the text of the statement speaks for itself.

2.      On August 5, 2015, Donald Trump stated: "The Mexican government . . . send the bad ones over because they don't want to pay for them. They don't want to take care of them."

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions. Defendants object that this request, which seeks to have the Defendants confirm an alleged statement by then-candidate Donald J. Trump, is irrelevant to any claim or defense and not proportionate to the needs of the case. This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles. Defendants further object on the grounds that Plaintiffs have selectively quoted portions of a lengthy statement.

**RESPONSE:** After reasonable inquiry, Defendants lack sufficient information to truthfully admit or deny the request because it seeks information regarding a statement purportedly made by a private party not within the control of the United States at the time the statement is said to have been made. To the extent a response is required, the text of the statement speaks for itself.

3.      On August 21, 2015, Donald Trump tweeted "How crazy - 7.5% of all births in U.S. are to illegal immigrants, over 300,000 babies per year. This must stop. Unaffordable and not right!"

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions. Defendants object that this request, which seeks to have the Defendants confirm an alleged statement by then-candidate Donald J. Trump, is irrelevant to any claim or defense and not proportionate to the needs of the case. This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:** After reasonable inquiry, Defendants lack sufficient information to truthfully admit or deny the request because it seeks information regarding a statement purportedly made by a private

party not within the control of the United States at the time the statement is said to have been made. To the extent a response is required, the text of the statement speaks for itself.

4.      In December 2015, during an interview with TIME magazine, Donald Trump stated "I happen to believe that various countries force their bad people into the United States, because they say why should we take care of these monsters, let the United States take care of them."

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions. Defendants object that this request, which seeks to have the Defendants confirm an alleged statement by then-candidate Donald J. Trump, is irrelevant to any claim or defense and not proportionate to the needs of the case. This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:** After reasonable inquiry, Defendants lack sufficient information to truthfully admit or deny the request because it seeks information regarding a statement purportedly made by a private party not within the control of the United States at the time the statement is said to have been made. To the extent a response is required, the text of the statement speaks for itself.

5.      In December 2015, Donald Trump called for "a total and complete shutdown of Muslims entering the United States."

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions. Defendants object that this request, which seeks to have the Defendants confirm an alleged statement by then-candidate Donald J. Trump, is irrelevant to any claim or defense and not proportionate to the needs of the case. This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles. Defendants further object on the grounds that Plaintiffs have selectively quoted portions of then-candidate Trump's statement.

**RESPONSE:** After reasonable inquiry, Defendants lack sufficient information to truthfully admit or deny the request because it seeks information regarding a statement purportedly made by a private party not within the control of the United States at the time the statement is said to have been made. To the extent a response is required, the text of the statement speaks for itself.

6.      During his 2016 presidential campaign, Donald Trump referred to children of immigrants as "anchor babies."

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request, which seeks to have the Defendants confirm an alleged statement by then-candidate Donald J. Trump, is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:** After reasonable inquiry, Defendants lack sufficient information to truthfully admit or deny the request because it seeks information regarding a statement purportedly made by a private party not within the control of the United States at the time the statement is said to have been made. To the extent a response is required, the text of the statement speaks for itself.

7.      During his 2016 presidential campaign, Donald Trump stated that he would seek an end to "birthright citizenship."

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request, which seeks to have the Defendants confirm an alleged statement by then-candidate Donald J. Trump, is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:** After reasonable inquiry, Defendants lack sufficient information to truthfully admit or deny the request because it seeks information regarding a statement purportedly made by a private party not within the control of the United States at the time the statement is said to have been made. To the extent a response is required, the text of the statement speaks for itself.

8.    On March 22, 2016, Donald Trump described Muslim immigrants by saying "there's no assimilation. They're not assimilating . . . . They want to go by sharia law. They want sharia law. They don't want the laws that we have. They want sharia law."

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request, which seeks to have the Defendants confirm an alleged statement by then-candidate Donald J. Trump, is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:** After reasonable inquiry, Defendants lack sufficient information to truthfully admit or deny the request because it seeks information regarding a statement purportedly made by a private party not within the control of the United States at the time the statement is said to have been made. To the extent a response is required, the text of the statement speaks for itself.

9.    On May 25, 2016, Donald Trump Tweeted that "The protestors in New Mexico were thugs who were flying the Mexican Flag."

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request, which seeks to have the Defendants confirm an alleged statement by then-candidate Donald J. Trump, is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his

decision violates equal protection principles.

**RESPONSE:** After reasonable inquiry, Defendants lack sufficient information to truthfully admit or deny the request because it seeks information regarding a statement purportedly made by a private party not within the control of the United States at the time the statement is said to have been made. To the extent a response is required, the text of the statement speaks for itself.

10.     On June 4, 2016, Donald Trump Tweeted that "Many of the thugs that attacked peaceful Trump supporters in San Jose were illegals."

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request, which seeks to have the Defendants confirm an alleged statement by then-candidate Donald J. Trump, is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:** After reasonable inquiry, Defendants lack sufficient information to truthfully admit or deny the request because it seeks information regarding a statement purportedly made by a private party not within the control of the United States at the time the statement is said to have been made. To the extent a response is required, the text of the statement speaks for itself.

11.     In August 2016, Donald Trump stated: "most illegal immigrants are lower skilled workers with less education . . . these illegal workers draw much more out from the system than they can ever possibly pay back. And they're hurting a lot of our people that cannot get jobs under any circumstances."

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request, which seeks to have the Defendants confirm an alleged statement by then-candidate Donald J. Trump, is irrelevant to any claim or defense and not

proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.  Defendants further object that Plaintiffs have failed to identify a specific date for the alleged statement, and further have selectively quoted portions of an alleged statement.

**RESPONSE:**  After reasonable inquiry, Defendants lack sufficient information to truthfully admit or deny the request because it seeks information regarding a statement purportedly made by a private party not within the control of the United States at the time the statement is said to have been made.  To the extent a response is required, the text of the statement speaks for itself.

12.      In August 2016, Donald Trump stated: "We will immediately terminate President Obama's two illegal executive amnesties in which he defied federal law and the Constitution to give amnesty to approximately five million illegal immigrants, five million. . . . [N]o one will be immune or exempt from enforcement. . . . Anyone who has entered the United States illegally is subject to deportation."

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request, which seeks to have the Defendants confirm an alleged statement by then-candidate Donald J. Trump, is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.  Defendants further object that Plaintiffs have failed to identify a specific date for the alleged statement, and further have selectively quoted different portions of an alleged statement.

**RESPONSE:**  After reasonable inquiry, Defendants lack sufficient information to truthfully admit or deny the request because it seeks information regarding a statement purportedly made by a private party not within the control of the United States at the time the statement is said to have been made.

To the extent a response is required, the text of the statement speaks for itself.

13.    On September 1, 2016, Donald Trump stated: "According to federal data, there are at least two million—two million, think of it—criminal aliens now inside of our country— two million people criminal aliens. We will begin moving them out day one. As soon as I take office. Day one . . . Day one, my first hour in office, those people are gone."

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request, which seeks to have the Defendants confirm an alleged statement by then-candidate Donald J. Trump, is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.  Defendants further object on the grounds that Plaintiffs have selectively quoted certain sentences of a lengthy statement.

**RESPONSE:** After reasonable inquiry, Defendants lack sufficient information to truthfully admit or deny the request because it seeks information regarding a statement purportedly made by a private party not within the control of the United States at the time the statement is said to have been made. To the extent a response is required, the text of the statement speaks for itself.

14.    In October 2016, Donald Trump stated: We have some bad hombres here and we're going to get them out."

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request, which seeks to have the Defendants confirm an alleged statement by then-candidate Donald J. Trump, is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:** After reasonable inquiry, Defendants lack sufficient information to truthfully admit or deny the request because it seeks information regarding a statement purportedly made by a private party not within the control of the United States at the time the statement is said to have been made. To the extent a response is required, the text of the statement speaks for itself.

15.     In December 2016, during an interview with TIME magazine, Donald Trump stated, in reference to an article about a supposed recent crime wave on Long Island: "They come from Central America. They're tougher than any people you've ever met. They're killing and raping everybody out there. They're illegal. And they are finished."

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request, which seeks to have the Defendants confirm an alleged statement by President Trump, as reported by a magazine, is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:** Admit to the extent that a December 2016 TIME Magazine article reports the following:

> He returns a few minute later with that morning's copy of *Newsday*, the Long Island tabloid.  The front-page headline reads, "EXTREMELY VIOLENT" GANG FACTION, with an article about a surge of local crime by foreign-born assailants.  His point, it seems, is that the world is zero-sum, full of the irredeemable killers that Obama's idealism fails to see.  The details are more compelling than any big picture. "They come from Central America.  They're tougher than any people you've ever met," Trump says.  "They're killing and raping everybody out there.  They're illegal.  And they are finished."

After reasonable inquiry, Defendants lack knowledge or information sufficient to truthfully admit or deny whether President Trump actually stated the statements attributed to him by TIME magazine.

16.     On January 26, Donald Trump said, referring to immigrants: "We are going to get the bad ones out . . . The criminals and the drug deals, and gangs and gang members and cartel leaders. The

day is over when they can stay in our country and wreak havoc."

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions. Defendants object that this request, which seeks to have the Defendants confirm an alleged statement by President Trump as reported by news outlets, is irrelevant to any claim or defense and not proportionate to the needs of the case. This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:** Admit to the extent that media outlets have reported that in late January 2017, President Trump was reported to state "We are going to get the bad ones out – the criminals and the drug dealers and gangs and gang members," Mr. Trump said. "The day is over when they can stay in our country and wreak havoc. We are going to get them out, and we are going to get them out fast." After a reasonable inquiry, Defendants lack knowledge or information sufficient to truthfully admit or deny whether President Trump actually made the quoted statement, and on this basis, deny.

17.    On January 27, 2017, Donald Trump signed an executive order blocking persons from Iran, Iraq, Libya, Somalia, Sudan, Syria, and Yemen from entering the United States.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions. Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case. This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:** Admit to the extent that on January 27, 2017, President Trump signed an Executive Order entitled, "Executive Order Protecting the Nation from Foreign Terrorist Entry into the United States," which, among other things, directed the Secretary of Homeland Security, in consultation with the Secretary of State and the Director of National Intelligence, to "immediately conduct a review to determine the information needed from any country to adjudicate any visa, admission, or other benefit

under the INA (adjudications) in order to determine that the individual seeking the benefit is who the individual claims to be and is not a security or public-safety threat."  Defendants further admit that the Executive Order concluded that "the immigrant and nonimmigrant entry into the United States of aliens from counties referred to in section 217(a)(12) of the INA, 8 U.S.C. 1187(a)(12), would be detrimental to the interests of the United States" and therefore the entry into the United States, as immigrants and nonimmigrants, "of such persons for 90 days from the date of this order," would be suspended, subject to a case-by-case determination by the Secretaries of State and Homeland Security. Defendants otherwise deny Plaintiffs' request for admission number 17.

18.    On January 27, 2017, Donald Trump referred to Mexican immigrants as "tough hombres."

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:** Admit to the extent that news media reported that in January 2017, President Trump allegedly stated to Mexican President Enrique Pena Nieto:  "You have some pretty tough hombres in Mexico that you may need help with, and we are willing to help you with that big-league."  After a reasonable inquiry, Defendants lack knowledge or information sufficient to truthfully admit or deny whether President Trump actually made this statement as reported, and on this basis, deny.

19.    In February 2017, Donald Trump said: "What has been allowed to come into our country, when you see gang violence that you've read about like never before, and all of the things — much of that is people that are here illegally . . . They're rough and they're tough . . . So we're getting them out."

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:** After a reasonable inquiry, Defendants lack knowledge or information sufficient to truthfully admit or deny RFA No. 19, and on this basis, deny.

20.    On March 27, 2017, Jeff Sessions, referring to Latino immigrants, stated: "the American people are justifiably angry . . . assaults, burglaries, drug crimes, rapes, crimes against children and murders. Countless Americans would be alive today ☐ and countless loved ones would not be grieving today . . . The President has rightly said that this disregard for the law must end. . . ."

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.  Defendants further object to the extent that plaintiffs have selectively quoted partial statements from a lengthy statement.

**RESPONSE:** Admit to the extent that in March 27, 2017 remarks given by Attorney General Jefferson Sessions concerning sanctuary jurisdictions, he stated, among other things, that:

> The American people are justifiably angry.  They know that when their cities and states refuse to help enforce immigration laws, our nation is less safe.  Failure to deport aliens who are convicted for criminal offenses puts whole communities at risk – especially immigrant communities in the very sanctuary jurisdictions that seek to protect the perpetrators.

> DUIs, assaults, burglaries, drug crimes, gang crimes, rapes, crimes against children and murders.  Countless Americans would be alive today – and countless loved ones would not be grieving today – if the policies of these sanctuary jurisdictions were ended.

Not only do these policies endanger the lives of every American; just last May, the Department of Justice Inspector General found that these polices also violate federal law.

The President has rightfully said that this disregard for the law must end.  In his executive order, he stated that it is the policy of the executive branch to ensure that states and cities comply with all federal laws, including our immigration laws.

Defendants otherwise deny Plaintiffs' request for admission number 20.

21.      On June 13, 2017, Acting ICE Director Thomas Homan testified "every immigrant in the country without papers . . . should be uncomfortable. You should look over your shoulder. And you need to be worried. . . . No population is off the table. . . ."

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.  Defendants further object to the extent that plaintiffs have selectively quoted partial statements from a lengthy statement.

**RESPONSE:**  Admit that, on June 13, 2017, then-Acting ICE Director Thomas Homan testified during a congressional hearing, in response to a specific question concerning a particular case regarding an individual who had been ordered to be removed, as follows:

This is a country of laws. We need to stand by the laws. The country I grew up in…if you're violating the law, you should be uncomfortable. He should be looking over his shoulder if he's in this country in violation of law and has been ordered removed. He should be worried that he's going to be arrested. There should be no population of persons that are in this country illegally – violated the law – then had a decision from a judge, to feel comfortable that he doesn't have to worry about someone arresting him. The IRS isn't going to audit everybody, but we all know it's a possibility. The highway patrol can't arrest everybody for speeding, but we speed, we know it's a possibility, we can stop. It should be no different with immigration enforcement. We're a law enforcement agency that enforces the law, and we shouldn't play favorites.

22.      On June 21, 2017, Donald Trump said, referring to Central American immigrants:

"These are true animals. We are moving them out of the country by the thousands."

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:** Defendants admit that the media has reported that, on June 21, 2017, President Trump stated at a rally in Cedar Rapids, Iowa, that "You have a gang called MS-13.  They don't like to shoot people.  They like to cut people.  They do things that nobody can believe.  These are true animals.  We are moving them out of the country by the thousands, by the thousands.  We're getting them out, MS-13."  After a reasonable inquiry, Defendants lack knowledge or information sufficient to truthfully admit or deny whether President Trump made this statement as reported and, on this basis, deny.

23.    On June 28, 2017, Donald Trump said: "They are bad people. And we've gotten many of them out already. . . We're actually liberating towns, if you can believe that we have to do that in the United States of America. But we're doing it, and we're doing it fast."

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.  Defendants further object to the extent that Plaintiffs are selectively quoting portions of a lengthy statement.

**RESPONSE:** Defendants admit that on June 28, 2017, President Trump stated, among other things, the following:

> MS-13 is a prime target.  They are bad people.  And we've gotten many of them out already.  You know, we're pretty much at the 50 percent mark.  We're getting them out as fast as we can get them out, and we're freeing up towns.  We're actually liberating towns, if you can believe that we have to do that in the United States of America.  But we're doing it, and we're doing it fast.

24.     On July 28, 2017, Stephen Miller said: "a message of tolerance toward illegal immigration is the number-one boon to smugglers and traffickers. And we've seen the results of that over the last eight years in terms of massive human rights violations associated with the Central American migrant surge . . . that permissive approach, we've seen the results, and the results have been deadly and horrific. . . We also need to get expedited removal for illegal immigrants from Central America."

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions. Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case. This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles. Defendants further object to the extent that Plaintiffs appear to be selectively quoting portions of a lengthier statement.

**RESPONSE:** After a reasonable inquiry, Defendants lack knowledge or information sufficient to truthfully admit or deny RFA No. 24, and on this basis, deny.

25.     On August 22, 2017, Acting ICE Director Thomas Homan stated: "The message is clear: If you're in the United States illegally, if you happen to get by the Border Patrol, someone is looking for you. And that message is clear."

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions. Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case. This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles. Defendants further object to the extent that Plaintiffs appear to be selectively quoting portions of a lengthy statement.

**RESPONSE:** Defendants admit that news organizations have reported that on August 22, 2017,

Acting ICE Director Thomas Homan stated, among other things, the following:

> I think the message being sent on interior enforcement – which wasn't part of the last administration, not to the extent it is now – interior enforcement is sending that clear message that if you are lucky enough to get by the Border Patrol, in the last administration you're home free unless you commit yet another crime and get arrested and get put in jail, and get convicted of that crime.  Now the message is clear:  If you're in the United States illegally, if you happen to get by the Border Patrol, someone is looking for you.  And that message is clear and I think it has a direct impact on the decreases in apprehensions.

After a reasonable inquiry, Defendants lack knowledge or information sufficient to truthfully admit or deny whether Acting ICE Director Thomas Homan actually made the statements attributable to him by news organizations.

26.     On September 5, 2017, the Department of Homeland Security announced the rescission of the Deferred Action for Childhood Arrivals program.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:**  Admit.

27.     On September 5, 2017, Donald Trump tweeted: "No longer will we incentivize illegal immigration. LAW AND ORDER! #MAGA."

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:**  Admit that on September 5, 2017, Donald Trump's Twitter feed stated:  "No longer

will we incentivize illegal immigration.  LAW AND ORDER!  #MAGA."

28.      On September 5, 2017, Donald Trump tweeted: "Make no mistake, we are going to put the interest of AMERICAN CITIZENS FIRST!"

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:** Admit that on September 5, 2017, Donald Trump's Twitter feed stated:  "Make no mistake, we are going to put the interest of AMERICAN CITIZENS first!  The forgotten men & women will no longer be forgotten."

29.      On October 9, 2017, Wilbur Ross said: "President Trump's tighter border controls have already reduced greatly the influx of illegal aliens, but he needs legislation to finish the task. I support his request to secure our borders, swiftly return illegal entrants, stop visa fraud and overstays, sanctuary cities, asylum abuse and chain immigration, as well as exploitative employment of illegal aliens. This will take money for more ICE officers, more federal prosecutors and more physical barriers. That will be money well spent!"

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:** Admit.

30.      On November 6, 2017, the Department of Homeland Security announced that it

would not be renewing the Temporary Protected Status designation for immigrants from Nicaragua.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions. Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case. This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:** Admit to the extent that on November 6, 2017, the Acting Secretary of Homeland Security Elaine Duke announced her decision to terminate the Temporary Protected Status designation for Nicaragua with a delayed effective date of 12 months to allow for an orderly transition before the designation terminates on January 5, 2019.

31.    On November 20, 2017, the Department of Homeland Security announced that it would not be renewing the Temporary Protected Status designation for immigrants from Haiti.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions. Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case. This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:** Admit to the extent that on November 20, 2017, the Acting Secretary of Homeland Security Elaine Duke announced her decision to terminate the Temporary Protected Status designation for Haiti with a delayed effective date of 18 months to allow for an orderly transition before the designation terminates on July 22, 2019.

32.    On January 8, 2018, the Department of Homeland Security announced that it would not be renewing the Temporary Protected Status designation for immigrants from El Salvador.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and

instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:**  Admit to the extent that on January 8, 2018, Department of Homeland Security Kirstjen M. Nielsen announced her determination that termination of the Temporary Protected Status designation for El Salvador was required pursuant to the Immigration and Nationality Act, and that to allow for an orderly transition, the termination would be delayed for 18 months.

33.     On January 11, 2018, Donald Trump questioned why immigrants were being admitted from El Salvador, Haiti, and Africa, asking "why are we having all these people from shithole countries come here," and stating his preference for immigrants "from places like Norway."

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:**  Defendants admit to the extent that various news sources have reported that President Trump made statements in a private meeting similar to those identified in request for admission number 33.  After a reasonable inquiry, Defendants lack knowledge or information sufficient to truthfully admit or deny whether President Trump actually made these statements as reported, and on this basis, deny.

34.    On February 22, 2018, Donald Trump stated that diversity visa lottery winners "turn out to be horrendous . . . . They're not giving us their best people."

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.  Defendants further object to the extent that Plaintiffs have quoted selectively from a much lengthier statement.

**RESPONSE:**  Defendants admit that on February 22, 2018, President Trump stated, among other things, the following:

> To secure our country, we are calling on Congress to build a great border wall to stop dangerous drugs and criminals from pouring into our country.  And now they're willing to give us the wall.  But they don't want to give us any of the laws to keep these people out.  So we're going to get the wall.  But they don't want to give us all of the other, chain migration, lottery, think of a lottery.  You have a country, they put names in, you think they're giving us good people?  Not too many of you people are going to be lottery.  So we pick out people.  Then they turn out to be horrendous.  And we don't understand why.  They're not giving us their best people, folks.  They're not giving us – use your heads.

35.    On April 5, 2018, Donald Trump stated: "we cannot let people enter our country… through chain migration….This is what the Democrats are doing to you. And they like it because they think they're going to vote Democratic…. A lot of them aren't going to be voting. A lot of times it doesn't matter, because in places, like California, the same person votes many times. You probably heard about that. They always s like to say. 'Oh, that's a conspiracy theory.' Not a conspiracy theory, folks. Millions and millions of people."

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of

Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.  Defendants further object to the extent that Plaintiffs have quoted selectively from a much lengthier statement.

**RESPONSE:**  Defendants admit that on April 5, 2018, President Trump stated, among other things, the following:

> So we're toughening up at the border.  We'll be, I think, in great shape over the — I think over the next 12 months we'll have a lot of things happening.  But we cannot let people enter our country.  We have no idea who they are, what they do, where they came from.  We have no idea what their records are. . . .

> And chain migration — think of that.  So you come in, and now you can bring your family, and then you can bring your mother and your father. . . .

> So this guy, because he's here, now can get the mother and the father and the grandmother and the cousins and the brothers and the sisters and the aunts and the uncles.  This is what the Democrats are doing to you.  And they like it because they think they're going to vote Democrat. . . .

> But they are doing it for that reason, because they're not going to be voting with us for the most part.  A lot of them aren't going to be voting.  A lot of times it doesn't matter, because in many places, like California, the same person votes many times.  (Laughter.)  You probably heard about that.  They always like to say, "Oh, that's a conspiracy theory."  Not a conspiracy theory, folks.  Millions and millions of people.

36.    On April 26, 2018, the Department of Homeland Security announced that it would not be renewing the Temporary Protected Status designation for immigrants from Nepal.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:**  Admit to the extent that on April 26, 2018, Department of Homeland Security Secretary Kirstjen M. Nielsen announced her determination that termination of the Temporary Protected Status designation was required pursuant to statute and that termination would be delayed

for 12 months to allow for an orderly transition.

37.      On April 28, 2018, Donald Trump stated: "If a person puts their foot over the line, we have to take them into our country. We have to register them…. And you know, one of the reasons they do it is because the Democrats actually feel and they are probably right, that all of these people that are pouring across are going to vote for Democrats, they're not going to vote for Republicans, they're going to vote no matter what we do, they're going to vote."

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.  Defendants further object to the extent that Plaintiffs have quoted selectively from a much lengthier statement.

**RESPONSE:** Defendants admit that on April 28, 2018, President Trump stated during a speech, among other things:

> If a person puts their foot over the line, we have to take them into our country.  We have to register them.  We have to ask them a couple of questions.  Lawyers are telling them what to say – how unsafe they are, and once they say that, we have to let them go to come back to court in like a year.  Only one problem, they don't come back, okay, that's the end.

> Welcome to the United States.  This is the law, and we have at the border the greatest people, the Board Patrol, the ICE agents.  These are great people.  These are great people.  And the laws are so corrupt – they are so corrupt.  And you know, one of the reasons they do it is because the Democrats actually feel and they are probably right, that all of these people that are pouring across are going to vote for Democrats, they're not going to vote for Republicans, they're going to vote not matter what we do, they're going to vote.

38.      On May 4, 2018, the Department of Homeland Security announced that it would not be renewing the Temporary Protected Status designation for immigrants from Honduras.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and

instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:** Admit to the extent that on May 4, 2018, Department of Homeland Security Secretary Kirstjen M. Nielsen announced her determination that termination of the Temporary Protected Status designation was required pursuant to the Immigration and Nationality Act, and that the effective date of the termination would be delayed for 18 months to allow for an orderly transition.

39. On May 7, 2018, Jeff Sessions announced a "zero tolerance" policy for immigrants, including separating children from parents who cross the border unlawfully.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:** Admit that on April 6, 2018, Attorney General Jeff Sessions notified all U.S. Attorney's Offices along the Southwest Border of a new "zero-tolerance policy" for offenses under 8 U.S.C. § 1325(a), which prohibits both attempted illegal entry and illegal entry into the United States by an alien.  Defendants also admit that on May 7, 2018, Attorney General Sessions gave a speech regarding that policy.  Defendants aver that the text of that speech speaks for itself.

40. On May 16, 2018, Donald Trump stated: "We have people coming into the country, or trying to come in — we're stopping a lot of them. . . You wouldn't believe how bad these people are. These aren't people, these are animals, and we're taking them out of the country at a level and at a rate that's never happened before."

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions. Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case. This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles. Defendants further object to the extent that Plaintiffs have quoted selectively from a much lengthier statement.

**RESPONSE:** Admit to the extent that, on May 16, 2018, President Trump stated, among other things, the following:

> We have people coming into the country, or trying to come in – and we're stopping a lot of them – but we're taking people out of the country. You wouldn't believe how bad these people are. These aren't people. These are animals. And we're taking them out of the country at a level and at a rate that's never happened before. And because of the weak laws, they come in fast, we get them, we release them, we get them again, we bring them out. It's crazy.

41.     On May 22, 2018, Betsy DeVos testified that public schools can choose to call ICE to report potentially undocumented students.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions. Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case. This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles. Defendants further object to the extent that Plaintiffs have quoted selectively from a much lengthier statement.

**RESPONSE:** Admit to the extent that on May 22, 2018, Secretary of Education Betsy DeVos testified before the House Education and Workforce Committee and stated that whether to contact U.S. Immigration and Custom Enforcement if schools suspect their students are undocumented is a decision that should be left to individual schools.

42.     On or about January 31, 2017, the Trump Administration drafted an Executive Order

which, among other things, directed the Census Bureau, to include "questions to determine U.S. citizenship and immigration status" on the 2020 Decennial Census.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:**  Admit to the extent that news outlets have reported that in early 2017, a draft executive order proposed including a citizenship question, but further state that these news outlets further reported that "[i]t is not clear which questionnaire is being referred to," and that the authenticity of the draft executive order was not confirmed by the White House.  *See* "White House proposal to ask immigration status in Census could have chilling effect, experts say," Washington Post (Feb. 1, 2017). After a reasonable inquiry, Defendants lack information or knowledge sufficient to truthfully admit or deny this request for admission, and on this basis, deny.

43.     A background memo to the draft Executive Order stated that its purpose was to "fulfill several campaign promises by aligning immigration policies with the national interest."

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:**  After a reasonable inquiry, Defendants lack information or knowledge sufficient to truthfully admit or deny this request for admission, and on this basis, deny.

44.     The background memo further stated that the provisions in the draft Executive Order

were intended to address "the flow of illegal entries and visa overstays" and the "unlawful employment of aliens."

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:**  After a reasonable inquiry, Defendants lack information or knowledge sufficient to truthfully admit or deny this request for admission, and on this basis, deny.

45.    Neither the draft Executive Order nor the background memo made any mention of any aspect of the Voting Rights Act.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:**  After a reasonable inquiry, Defendants lack information or knowledge sufficient to truthfully admit or deny this request for admission, and on this basis, deny.

46.    Neither the draft Executive order nor the background memo suggested in any other way that the Trump Administration's desire to add a citizenship question to the 2020 Census was motivated in any way by any aspect of the Voting Rights Act.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of

Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:**  After a reasonable inquiry, Defendants lack information or knowledge sufficient to truthfully admit or deny this request for admission, and on this basis, deny.

47.     Defendant Ross was aware of the draft Executive Order prior to the end of February 2017.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

 **RESPONSE:**  Deny.

48.     Defendant Ross was aware, prior to the end of February 2017, of the desire of the Trump Administration to add a citizenship question to the 2020 Census.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:**  Deny.

49.     Defendant Ross understood by the spring of 2017 that "other senior Administration officials" referenced in his Supplemental Memorandum of June 21, 2018 wanted the 2020 Census to include a citizenship question.

**RESPONSE:**  Admit to the extent that soon after Secretary Ross took office, other senior

Administration officials raised the issue of the reinstatement of a citizenship question.  Defendants otherwise deny this request for admission.

50.     Defendant Ross knew by the spring of 2017 that President Trump wanted the 2020 Census to include a citizenship question.

**RESPONSE:**  Deny.

51.     Defendant Ross knew by the spring of 2017 that Steven Bannon wanted the 2020 Census to include a citizenship question.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:**  Defendants admit to the extent that Steven Bannon called Secretary Ross in the Spring of 2017 to ask Secretary Ross if he would be willing to speak to then-Kansas Secretary of State Kris Kobach about Secretary Kobach's ideas about a possible citizenship question on the decennial census.  Defendants otherwise deny this request for admission.

52.     Defendant Ross knew by the spring of 2017 that Stephen Miller wanted the 2020 Census to include a citizenship question.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:**  Deny.

53.     Defendant Ross knew by the spring of 2017 that Kris Kobach wanted the 2020 Census to include a citizenship question.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:**  Admit.

54.     In March 2017, Defendant Ross asked Earl Comstock a question about whether noncitizens were included in the census.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:**  After a reasonable inquiry, Defendants lack knowledge or information sufficient to truthfully admit or deny whether Secretary Ross asked Earl Comstock a question whether non citizens were included in the census.

55.     On March 10, 2017, Mr. Comstock sent Defendant Ross an email in response to Defendant Ross' question. The response included an article entitled "The Pitfalls of Counting Illegal Immigrants."

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit to the extent that Earl Comstock sent Secretary Ross a Wall Street Journal article entitled, "The Pitfalls of Counting Illegal Immigrants."  Defendants lack knowledge or information sufficient to truthfully admit or deny whether Secretary Ross asked Earl Comstock a question whether noncitizens were included in the census.

56.     On April 5, 2017 Defendant Ross discussed the addition of a citizenship question on the 2020 Census with Steven Bannon.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:**  Defendants admit to the extent that Steven Bannon called Secretary Ross in the Spring of 2017 to ask Secretary Ross if he would be willing to speak to then-Kansas Secretary of State Kris Kobach about Secretary Kobach's ideas about a possible citizenship question on the decennial census.  Defendants otherwise deny this request for admission.

57.     During his conversation with Mr. Bannon on April 5, 2017, Mr. Bannon advised Defendant Ross that he wanted a citizenship question included on the 2020 Census.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:**  Deny.

58.     Before the end of February 2017, Defendant Ross concluded that the 2020 Census should include a citizenship question.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of

Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:** Admit to the extent that Secretary Ross came to believe at some point during the Spring of 2017 that the inclusion of a citizenship question on the 2020 decennial census could be warranted, but further state that Secretary Ross did not reach a final conclusion on the issue until March 2018. Defendants otherwise deny this request for admission.

59. Before the end of March 2017, Defendant Ross concluded that the 2020 Census should include a citizenship question.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions. Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case. This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:** Admit to the extent that Secretary Ross came to believe at some point during the Spring of 2017 that the inclusion of a citizenship question on the 2020 decennial census could be warranted, but further state that Secretary Ross did not reach a final conclusion on the issue until March 2018. Defendants otherwise deny this request for admission.

60. Before the end of April 2017, Defendant Ross concluded that the 2020 Census should include a citizenship question.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions. Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case. This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:** Admit to the extent that Secretary Ross came to believe at some point during the Spring of 2017 that the inclusion of a citizenship question on the 2020 decennial census could be warranted, but further state that Secretary Ross did not reach a final conclusion on the issue until March 2018.  Defendants otherwise deny this request for admission.

61.     Before the end of April 2017 Defendant Ross requested others in the Commerce Department to do what was necessary to include a citizenship question in the 2020 Census.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit to the extent that before the end of April 2017, Secretary Ross asked others in the Commerce Department to look into the possibility of reinstating a citizenship question on the 2020 decennial census, but deny that Secretary Ross requested that others in the Commerce Department "do what was necessary to include a citizenship question in the 2020 Census."

62.     On May 2, 2017 Defendant Ross emailed Earl Comstock, the Director of Policy at Commerce, stating that he was "mystified why nothing have [sic] been done in response to my months old request that we include the citizenship question [on the 2020 Census]."

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

63.     On May 2, 2017 Mr. Comstock responded to Defendant Ross promising "on the citizenship question we will get that in place."

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit that on May 2, 2017, Mr. Comstock responded to an email from Secretary Ross in which he stated, among other things, that "[o]n the citizenship question we will get that in place."

64.    Mr. Comstock further advised Defendant Ross on May 2, 2017 that he had been advised it would be necessary to "work with Justice to get them to request that citizenship be added back to a census question…."

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

65.    Prior to May 2017 the Department of Justice had not been approached by anyone in Commerce to request the addition of the citizenship question to the 2020 Census.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:** Admit.

66.    Prior to May 2017 the Department of Justice had not requested that the citizenship question be added to the 2020 Census.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:** Admit.

67.    On May 4, 2017, Mr. Comstock contacted the Department of Justice.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and

instructions.

**RESPONSE:** Admit.

68.     On May 4, 2017, Mr. Comstock contacted the Department of Justice for the purpose of adding a citizenship question to the 2020 Census.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit in part, deny in part.  Admit to the extent that on May 4, 2017, Mr. Comstock contacted the Department of Justice, and further state that the purpose of the contact was to determine whether the Department of Justice would be interested in more specific citizenship data and whether that interest rose to the level of requesting the reinstatement of a citizenship question on the 2020 decennial census.  Deny that Mr. Comstock contacted the Department of Justice "for the purpose of adding a citizenship question to the 2020 Census."

69.     When Mr. Comstock contacted the Department of Justice on May 4, 2017 for the purpose of adding a citizenship question to the 2020 Census, Mr. Comstock was not seeking to promote more effective enforcement of the Voting Rights Act.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:** Deny.

70.     After May 2, 2017, Mr. Comstock conversed with James McHenry at the Department of Justice for the purpose of adding a citizenship question to the 2020 Census.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit in part, deny in part.  Admit to the extent that after May 2, 2017, Mr. Comstock conversed with James McHenry at the Department of Justice, and further stated that the purpose of

the conversation was to determine whether the Department of Justice would be interested in more specific citizenship data and whether that interest rose to the level of requesting the reinstatement of a citizenship question on the 2020 decennial census. Deny to the extent that Mr. Comstock did not converse with Mr. McHenry "for the purpose of adding a citizenship question to the 2020 Census."

71.     James McHenry has no responsibility for enforcement of the Voting Rights Act.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit that James McHenry has no responsibility for enforcement of the Voting Rights Act, and further aver that at the time Mr. Comstock spoke to Mr. McHenry, Mr. Comstock did not know whether Mr. McHenry had any responsibility for the enforcement of the Voting Rights Act.

72.     At the time Mr. Comstock contacted James McHenry for the purpose of adding a citizenship question to the 2020 Census, Mr. Comstock was not seeking to promote more effective enforcement of the Voting Rights Act.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:**  Deny.

73.     After May 2, 2017, Mr. Comstock contacted the Department of Homeland Security for the purpose of adding a citizenship question to the 2020 Census.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit in part, deny in part.  Admit that after May 2, 2017, Mr. McHenry directed Mr. Comstock to the Department of Homeland Security, and further state that the purpose of the contact was that Mr. Comstock was under the belief that Mr. McHenry directed him to the Department of Homeland Security because the Department of Homeland Security may have a need or use for

citizenship data, including possible enforcement of the Voting Rights Act.  Denied that Mr. Comstock contacted the Department of Homeland Security "for the purpose of adding a citizenship question to the 2020 Census."

74.     The Department of Homeland Security has no responsibility for enforcement of the Voting Rights Act.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

75.     At the time Mr. Comstock contacted the Department of Homeland Security for the purpose of adding a citizenship question to the 2020 Census, Mr. Comstock was not seeking to promote more effective enforcement of the Voting Rights Act.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit in part, deny in part.  Admit that Mr. Comstock contacted the Department of Homeland Security, and further state that the purpose of the contact was that Mr. Comstock was under the belief that Mr. McHenry directed him to the Department of Homeland Security because the Department of Homeland Security may have a need or use for citizenship data, including possible enforcement of the Voting Rights Act.  Denied that Mr. Comstock contacted the Department of Homeland Security "for the purpose of adding a citizenship question to the 2020 Census."

76.     After May 2, 2017, Mr. Comstock contacted Eugene (Gene) Hamilton for the purpose of adding a citizenship question to the 2020 Census.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit in part, deny in part.  Admit that after May 2, 2017, Mr. Comstock contacted

Mr. Hamilton and further state that the purpose of the contact was that Mr. Comstock was under the belief that Mr. McHenry directed him to the Department of Homeland Security because the Department of Homeland Security may have a need or use for citizenship data, including possible enforcement of the Voting Rights Act.  Deny to the extent that Mr. Comstock contacted Mr. Hamilton "for the purpose of adding a citizenship question to the 2020 Census."

77.     Eugene (Gene) Hamilton has no responsibility for enforcement of the Voting Rights Act.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit to the extent that at the time Mr. Hamilton worked at the Department of Homeland Security he had no responsibility for enforcement of the Voting Rights Act.  Deny to the extent that Defendants were aware whether Mr. Hamilton's responsibilities included enforcement of the Voting Rights Act, and Defendants otherwise deny this request for admission.

78.     At the time Mr. Comstock contacted Eugene (Gene) Hamilton for the purpose of adding a citizenship question to the 2020 Census, Mr. Comstock was not seeking to promote more effective enforcement of the Voting Rights Act.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit in part, deny in part.  Admit that Mr. Comstock contacted Mr. Hamilton, and further state that the purpose of the contact was that Mr. Comstock was under the belief that Mr. McHenry directed him to the Department of Homeland Security because the Department of Homeland Security may have a need or use for citizenship data, including possible enforcement of the Voting Rights Act.  Deny that Mr. Comstock contacted Mr. Hamilton "for the purpose of adding a citizenship question to the 2020 Census."

79.     Since Donald Trump's election, Eugene (Gene) Hamilton was in contact with Kris Kobach regarding immigration policy.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:**  After a reasonable inquiry, Defendants lack knowledge or information sufficient to truthfully admit or deny this request for admission, and on this basis, denies.

80.     During the spring of 2017, and prior to any request from the Department of Justice to add the citizenship question to the 2020 Census, Defendant Ross had a telephone conversation with Kris Kobach concerning his desire to have a citizenship question added to the 2020 Census.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:**  Admit.

81.     On July 14, 2017, Mr. Kobach emailed Defendant Ross.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:** Admit.

82.    On July 14, 2017, Mr. Kobach wrote to Defendant Ross to remind Defendant Ross of their prior telephone discussion "a few months ago" and further stated that the absence of such a question, in his view, "leads to the problem that aliens who do not actually 'reside' in the United States are still counted for congressional apportionment."

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions. Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case. This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:** Admit.

83.    On July 21, 2017, Mr. Kobach emailed Wendy Teramoto, Defendant Ross' Chief of Staff, attaching his email to Mr. Ross stating that he had spoken to Defendant Ross about the addition of citizenship question to the 2020 Census "at the direction of Steve Bannon . . . ."

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions. Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case. This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:** Admit.

84.    On July 25, 2017, Defendant Ross had a further telephone conversation with Mr. Kobach concerning the addition of the citizenship question to the 2020 Census.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions. Defendants object that this request is irrelevant to any claim or defense and not

PTX-235

proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:**  Admit.

85.     During the course of their discussion, Defendant Ross and Mr. Kobach discussed the potential effect of adding the citizenship question on apportionment based on residence of non-citizens.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:**  After a reasonable inquiry, Defendants lack knowledge or information sufficient to truthfully admit or deny this request for admission, and on this basis, denies.

86.     On August 7, 2017, Defendant Ross attended a dinner with Donald Trump.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:**  Deny.

87.     In August 2017, Defendant Ross discussed adding a citizenship question to the decennial census with Donald Trump.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and

instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:**  Deny.

88.    In August 2017, Defendant Ross discussed adding a citizenship question to the decennial census with Jeff Sessions.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.  Defendants further object to the extent this request for admission calls for the disclosure of information that is subject to the deliberative process privilege.

**RESPONSE:**   Deny.

89.    In August 2017, Defendant Ross inquired whether Jeff Sessions would support, and if so, request, inclusion of a citizenship question on the 2020 Census.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.  Defendants further object to the extent this request for admission calls for the disclosure of information that is subject to the deliberative process privilege.

**RESPONSE:**  Deny.

90.    In August 2017, Defendant Ross discussed adding a citizenship question to the

decennial census with members of the Trump Administration.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:**   Deny.  Defendants further aver that Steven Bannon called Secretary Ross in the Spring of 2017 to ask Secretary Ross if he would be willing to speak to then-Kansas Secretary of State Kris Kobach about Secretary Kobach's ideas about a possible citizenship question on the decennial census.

91.       On August 8, 2017, Defendant Ross emailed Mr. Comstock asking "where is DOJ in their analysis" of whether to request the addition of a citizenship question to the 2020 Census.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit.

92.       Defendant Ross' email of August 8, 2017 further advised Mr. Comstock that '[i]f they [the Department of Justice] still have not come to a conclusion please let me know your contact person and I will call the AG."

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit.

93.       Mr. Comstock responded to Defendant Ross on August 8, 2017 stating that he would get back to him with the requested information.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

94.    The Department of Justice had not agreed to request the addition of the citizenship question to the 2020 Census prior to August 8, 2017.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

95.    From May through September 2017, Mr. Comstock attempted to identify someone outside the Census Bureau who would make a request for the addition of a citizenship question to the 2020 Census.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit to the extent that Mr. Comstock contacted Ms. Hankey, Mr. McHenry, and Mr. Hamilton to ascertain whether their agencies may have a need or use for citizenship data, including possibly for VRA enforcement, and whether based on that need or use, their agencies would consider requesting the inclusion of a citizenship question on the 2020 decennial census.  Defendants otherwise deny this request for admission.

96.    On September 8, 2017, Mr. Comstock reported on his efforts to identify someone who would request the addition of the citizenship question to the 2020 Census. He advised that, as of that date, he had not been successful.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit to the extent that Mr. Comstock prepared a memorandum, dated September 8, 2017, in which he identified discussions he had with Mary Blanche Hankey, James McHenry, and Gene Hamilton, concerning whether the Department of Justice and the Department of Homeland Security

would have any need or use for block level citizenship data for purposes of enforcement of the Voting Rights Act, and therefore had interest in requesting that the Census Bureau reinstate a citizenship question on the 2020 decennial census. Defendants further admit that Mr. Comstock reported in his September 8, 2017 memorandum that the individuals with whom he spoke at the Department of Justice and the Department of Homeland Security had not expressed an interest in requesting the inclusion of a citizenship question at that time.

97. On or about September 13, 2017, Defendant Ross and Jeff Sessions spoke about addition of a citizenship question to the 2020 Census.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit to the extent that on September 18, 2017, Secretary Ross and Attorney General Jeff Sessions had a conversation concerning a citizenship question on the 2020 decennial census. Defendants otherwise deny this request for admission.

98. On or about September 13, 2017, Defendant Ross inquired whether Jeff Sessions would support, and if so, request, inclusion of a citizenship question on the 2020 Census.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions. Defendants further object to the extent this request for admission calls for the disclosure of information that is subject to the deliberative process privilege and, accordingly, Defendants will not provide a substantive response to this request for admission.

**RESPONSE:** Admitted in part, denied in part. Admit to the extent that on September 18, 2017, Secretary Ross and Attorney General Sessions had a conversation concerning a citizenship question on the 2020 decennial census. Defendants deny that this conversation occurred on September 13, 2017. Any additional detail concerning this conversation is subject to the deliberative process privilege and, accordingly, Defendants will not provide such detail.

99.     On or about September 13, 2017, Defendant Ross inquired whether Jeff Sessions would support, and if so, request, inclusion of a citizenship question on the 2020 Census as consistent with and useful for enforcement of the Voting Rights Act.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions. Defendants further object to the extent this request for admission calls for the disclosure of information that is subject to the deliberative process privilege and, accordingly, Defendants will not provide a substantive response to this request for admission.

**RESPONSE:** Admitted in part, denied in part. Admit to the extent that on September 18, 2017, Secretary Ross and Attorney General Sessions had a conversation concerning a citizenship question on the 2020 decennial census. Defendants deny that this conversation occurred on September 13, 2017. Any additional detail concerning this conversation is subject to the deliberative process privilege and, accordingly, Defendants will not provide such detail.

100.     Prior to the discussion between Jeff Sessions and Defendant Ross on September 13, 2017, the Department of Justice had not agreed to request the addition of the citizenship question to the 2020 Census.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions. Defendants further object to the extent this request for admission calls for the disclosure of information that is subject to the deliberative process privilege and, accordingly, Defendants will not provide a substantive response to this request for admission.

**RESPONSE:** Because this request for admission seeks information protected from disclosure by the deliberative process privilege, Defendants will not provide a substantive response to this request.

101.     Prior to the discussion between Jeff Sessions and Defendant Ross on September 13, 2017, the Department of Justice had not requested the addition of a citizenship question to promote enforcement of the Voting Rights Act.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit in part, deny in part.  Admit that a conversation between Attorney General Sessions and Secretary Ross occurred on September 18, 2018, but deny that the conversation took place on September 13, 2018.  Defendants further deny that the Department of Justice had not requested the addition of a citizenship question to promote enforcement of the Voting Rights Act before September 13, 2017, because the Department of Justice had requested the addition of a citizenship question on the American Community Survey for purposes of Voting Rights Act enforcement.

102.    In November 26, 2017, Defendant Ross was present at Mar-a-Lago.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:**  After a reasonable inquiry, Defendants lack knowledge or information sufficient to truthfully admit or deny whether Secretary Ross was present at Mar-a-Lago on November 26, 2017.

103.    On or about November 26, 2017, Defendant Ross conversed with President Trump.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:**  Admit.

104.   During the conversation on or about November 26 between Defendant Ross and President Trump, one of the topics discussed between Defendant Ross and Mr. Trump was the addition of a citizenship question to the 2020 Census.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:**  Deny.

105.   On November 27, 2017 Defendant Ross emailed Peter Davidson, General Counsel of the Department of Commerce, stating that "Census is about to begin translating the questions into multiple language and has let the printing contract. We are out of time. Please set up a call for me tomorrow with whoever is the responsible person at Justice. We must get this resolved."

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit.

106.   Mr. Davidson responded to Defendant Ross on November 28, 2017 stating that he would brief him the following morning.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit.

107.   In sworn testimony before the House of Representatives on March 20, 2018, in response to a question as to whether President Trump or other White House officials had directed

PTX-235                                    **Page 48 of 63**

Defendant Ross to add the citizenship question to the decennial census, Defendant Ross testified

that the Department of Commerce was responding "solely" to the Department of Justice's request.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and

instructions.  Defendants object that this request is irrelevant to any claim or defense and not

proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of

Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his

decision violates equal protection principles.

**RESPONSE:**  Admit that the following exchange occurred during a March 20, 2018 hearing:

> "Do you disavow this [Trump Campaign Committee] email, has the president or
> anyone else in the White House directed you to add this question or similar to the
> 2020 Census?"

Secretary Ross answered,

> "I'm not familiar with the email, I'm not part of the Republican campaign committee,
> so I've not seen it, I've heard about it this morning. We are responding solely to the
> Department of Justice's request, not to any campaign request, not to any other political
> party request.

> 108.    In sworn testimony before the House of Representatives on March 22, 2018,

Defendant Ross testified that the Department of Justice initiated the request for the inclusion of the

citizenship question on the decennial census.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and

instructions.  Defendants object that this request is irrelevant to any claim or defense and not

proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of

Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his

decision violates equal protection principles.

**RESPONSE:**  Admit that during a March 20, 2018 House of Representatives Committee meeting, the

following exchange took place between Representative Chu and Secretary Ross:

> So these inaccuracies make it hard and difficult for our government to administer
> important federal safety net programs, such as WIC, SNAP, and TANF. Can you tell

me whether the Department of Commerce plans to include the citizenship question in the 2020 Census?

Secretary Ross responded:

Department of Justice, as you know, initiated the request for inclusion of the citizenship question. We have been talking on the phone and received written correspondence from quite a lot of parties on both sides of that question. There are many, many sub-questions about accuracy, about suppression of responses that we are taking into account. We have not made a final decision as yet, because it is a very important and very complicated question.

We will make a decision by March 31st, which is the date on which we are required to report to the Congress the final questions for the 2020 decennial census.

109.    In sworn testimony before the Senate on May 10, 2018, Defendant Ross testified that the Department of Justice was the agency that made the request of the Department of Commerce to add the citizenship question to the decennial census.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:**    Admit that during a May 10, 2018 hearing before a Committee of the House of Representatives, the following exchange took place:

Representative Sheehan:  "My understanding was the End to End Test that's already underway in Rhode Island does not include this [citizenship] question, so it would not give us the ability to understand the impact of the question being included on the short form is that correct?"

Secretary Ross:  "That is correct. It is not being used in Providence and the reason is those forms were printed long ago, before we had received the – made the decision to add the question. And in some cases the preparations [for the End-to-End test] were made before we even got the request from the Department of Justice."

110.    Prior to December 11, 2017, neither the Department of Justice nor any other government agency had requested that a citizenship question be added to the 2020 Census.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:**  Admit.

111.    On December 12, 2017 the Department of Justice sent a letter to Dr. Ron Jarmin, Acting Director of the Census Bureau, requesting the addition of the citizenship question.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit in part, deny in part.  Admit to the extent that the Department of Justice sent a letter to Dr. Ron Jarmin, dated December 12, 2017, and further admit that the letter requested that "the Census Bureau reinstate on the 2020 Census questionnaire a question regarding citizenship, formally included in the so-called 'long-form' census."  Deny to the extent that the Department of Justice did not request "the addition" of a citizenship question to the 2020 decennial census and further state that the Department of Justice requested the "reinstatement" of a citizenship question to the 2020 decennial census.

112.    Prior to December 2017 neither Dr. Jarmin nor others in the Census Bureau had been advised of Defendant Ross' desire to include a citizenship question on the 2020 Census.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:** Admit.

113. Prior to December 2017, neither Dr. Jarmin nor others in the Census Bureau were requested to provide their views on the effect of adding a citizenship question to the 2020 Census.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions. Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case. This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:** Admit.

114. Commencing in mid-December, Census Bureau experts analyzed the effect of adding a citizenship question to the 2020 Census in terms of both its utility to the goals stated in the Department of Justice request and other impact on the conduct of the 2020 Census and the reliability of the data obtained.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

115. At no time did officials from the Census Bureau meet with officials from the Department of Justice to discuss the Department of Justice's request to add a citizenship question to the decennial census.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit in part, deny in part. Admit that "[a]t no time did officials from the Census Bureau meet with officials from the Department of Justice to discuss the request contained in the Department of Justice's December 12, 2017 letter to the Census Bureau to "reinstate on the 2020

Census questionnaire a question regarding citizenship, formally included in the so-called 'long-form' census."  Deny to the extent that the Department of Justice did not request "the addition" of a citizenship question to the 2020 decennial census and further state that the Department of Justice requested the "reinstatement" of a citizenship question to the 2020 decennial census.

116.    In sworn testimony before the Senate on May 10, 2018, Defendant Ross testified that the Department of Commerce had "spent a lot of time talking with Justice about the request" and that the Department of Commerce "truly believed" that the Department of Justice thought that they needed to add the citizenship question on the decennial census.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:**  Admit that in giving background to his statement that President Donald J. Trump's reelection campaign did not initiate the request to reinstate a citizenship question on the 2020 decennial census, Secretary Ross stated that the formal decisionmaking process was initiated by the Department of Justice's request and explained:

> We obviously have no interaction with the campaign committees that have for a brief moment tried to use this in their literature.  I believe they have stopped doing that, and that is a good thing because that just politicized the whole thing.  We spent a lot of time talking to Justice about the request and we truly believe that they think that they need it.

117.    At no time in all of their analysis of the effect of the proposed addition of a citizenship question to the 2020 Census have any of the Census Bureau officials recommended the addition of the question, either to achieve the goals stated in the Department of Justice request or to pursue other objectives of the decennial census.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and

instructions.

**RESPONSE:**  Admit.

118.   On January 19, 2018, following a month of detailed analysis, Karen Dunn Kelley, the Deputy Secretary of the Commerce Department, Ron S. Jarmin, the Acting Director of the Census Bureau, and Enrique Lamas, the Acting Deputy Director of the Census Bureau sent Defendant Ross the analysis of the Census Bureau staff which recommended that the request of the Justice Department be satisfied either by maintaining the status quo where no citizenship question would be added ("Alternative A") or by using administrative data from other agencies to augment the data provided by the Census, again with no citizenship question added to the decennial census ("Alternative C").

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  This request has no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

**RESPONSE:**  Admit.

119.   The January 19, 2018 memorandum of the Census Bureau developed a cautious estimate that an additional 5.1% of households with at least one noncitizen would not self- respond to the citizenship question, and that households with all citizens would be unaffected by the change.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit to the extent that in the January 19, 2018 memorandum, the Census Bureau "developed a cautious estimate of the data quality consequences of adding the citizenship question," and "assume[d] that citizens are unaffected by the change and that an additional 5.1% of households with at least one noncitizen go into [non-response followup] because they do not self-respond."

120.    The January 19, 2018 memorandum of the Census Bureau stated that the addition of a citizenship question on the 2020 Census would increase the cost of the 2020 Census by at least $27.5 million.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:**  Deny.  The January 19, 2018 memorandum of the Census Bureau stated that "the addition of a question on citizenship *could* increase the cost of the 2020 Census by at least $27.5 million." (Emphasis added).

121.    The January 19, 2018 memorandum of the Census Bureau stated that adding a citizenship question to the 2020 Census would lead to major potential quality and cost disruptions.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit.

122.    The January 19, 2018 memorandum of the Census Bureau stated that there is a higher item non-response rate for the citizenship question among Hispanics and non-Hispanic blacks, as compared to other populations.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit to the extent that the Census Bureau concluded in its January 19, 2018 memorandum that, in the period from 2013 to 2016, item non-response rates for the citizenship question on the American Community Survey mail-in questionnaires and Internet Self-Response instruments were higher among Hispanics and non-Hispanic blacks, as compared to other populations.

123.    The January 19, 2018 memorandum of the Census Bureau to Defendant Ross stated that of the three alternatives, "Alternative C best meets DoJ's stated goals, is comparatively far less

costly than Alternative B [which would add the citizenship question], does not increase response burden [on the 2020 Census], and does not harm the quality of the census count."

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit to the extent that the January 19, 2018 memorandum of the Census Bureau to Secretary Ross stated that of the three alternatives, "Alternative C best meets DoJ's stated *uses*, is comparatively far less costly than Alternative B, does not increase response burden, and does not harm the quality of the census count." (Emphasis added).  Deny to the extent that the January 19, 2018 Census Bureau memorandum did not discuss "DoJ's stated goals."

124.    The January 19, 2018 memorandum of the Census Bureau further advised Defendant Ross that "Alternative B [adding the citizenship question] is very costly, harms the quality of the census count, and would use substantially less accurate citizenship status data than are available from administrative sources."

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit.

125.    The January 19, 2018 memorandum of the Census Bureau provided Defendant Ross with nine single-spaced pages of analysis supporting each of these conclusions and their recommendation against adding a citizenship question to the 2020 Census.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit to the extent that the January 19, 2018 memorandum of the Census Bureau was single-spaced and contained analysis.  Deny that the analysis spanned nine pages or that the analysis "supported each of these conclusions and their recommendation against adding a citizenship question

to the 2020 Census."

126.    No official of the Census Bureau has ever advised Defendant Ross that any of the analyses in the January 19, 2018 memorandum were incorrect or invalid.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit.

127.    Following his review of the Census Bureau memorandum of January 19, 2018, Defendant Ross caused his subordinates to pose a series of questions to the Census Bureau staff concerning their analysis.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit in part, deny in part.  Admit that a series of questions collected from Secretary Ross and various members of his Senior Staff were submitted to the Census Bureau staff concerning their analysis after their January 19, 2018 memorandum to Secretary Ross, but deny that Secretary Ross "caused his subordinates" to pose these questions.

128.    The Census Bureau provided answers to Defendant Ross' question in various drafts in February and early March 2018.

**OBJECTION:**  Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:**  Admit in part, deny in part.  Admit to the extent that some of the questions posed were answered by the Census Bureau.  Deny to the extent that the Census Bureau did not answer all of the questions posed or all parts of certain questions that were posed.

129.    In none of those answers did the Census Bureau withdraw their conclusion that the stated goals of the Department of Justice could best be met by using administrative data in conjunction

with the standard census questions which would not include a citizenship question.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit in part, deny in part. Admit to the extent that, in responding to the questions posed by the Commerce Department, where the Census Bureau provided responses, it did not withdraw their conclusion that the stated uses of the Department of Justice could best be met by using administrative data in conjunction with not including a citizenship question on the 2020 decennial census. Deny to the extent that the Census Bureau did not offer conclusions about "the stated goals of the Department of Justice."

130. In none of those answers did the Census Bureau withdraw their conclusion that adding a citizenship question would result in data that would be less beneficial to the stated goals of the Department of Justice, increase the cost of the 2020 Census, lead to a greater non-response rate, and jeopardize a complete census count.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit in part, deny in part. Admit to the extent that, in responding to the questions posed by the Commerce Department, the Census Bureau did not withdraw the conclusion from its January 19, 2018 memorandum that adding a citizenship question would result in data that would be less beneficial to the stated uses of the Department of Justice, increase the cost of the 2020 Census, and lead to greater initial non-response rates. Denied to the extent that none of the questions posed provided an opportunity to "withdraw their conclusion" and further deny to the extent that the Census Bureau did not offer conclusions about "the stated goals of the Department of Justice." Further deny to the extent that the Census Bureau did not reach conclusions about an overall greater non-response rate or that a complete census count would be in jeopardy if a citizenship question were included on the 2020 decennial census.

131.    On or about January 26, 2018, Defendant Ross received a letter from the six prior Directors of the Census Bureau urging him not to add a citizenship question to the 2020 Census because it had not been sufficiently and properly tested and might well harm the Census as a whole.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

132.    In mid-February Defendant Ross met with the Census Bureau staff and discussed their analyses and recommendations on the issue of the citizenship question.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

133.    At the meeting in mid-February, the Census Bureau did not withdraw their recommendation in favor of using administrative data and against adding a citizenship question.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

134.    On March 1, 2018 Deputy Secretary Kelley, Director Jarmin, and Assistant Director Lamas sent Defendant Ross an analysis comparing the relative merit of adding a citizenship question and using those results in combination with administrative data ("Alternative D") as opposed to using just administrative data without the addition of a citizenship question ("Alternative C").

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit, and further aver that Karen Dunn Kelley is the Under Secretary of Commerce for Economic Affairs, performing the nonexclusive duties of the Deputy Secretary of Commerce, Dr.

Ron Jarmin is performing the non-exclusive functions and duties of the Director of the U.S. Census Bureau, and Dr. Enrique Lamas is performing the non-exclusive duties and functions of the Deputy Director and Chief Operating Officer of the U.S. Census Bureau.

135.    The March 1, 2018 memorandum of the Census Bureau concluded that "inclusion of a citizenship question on the 2020 Census questionnaire is very likely to reduce the self- response rate, pushing more households into Nonresponse Followup (NRFU). Not only will this likely lead to more incorrect enumerations, but it is also expected to increase the number of persons who cannot be linked to the administrative data because NRFU PII is lower quality than the self-response data."

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit.

136.    The March 1, 2018 memorandum of the Census Bureau concluded that "Alternative D [including the addition of the citizenship question] would result in poorer quality citizenship data than Alternative C [which would not add the citizenship question]. It [Alternative D] would still have all the negative cost and quality implications of Alternative B outlined in the draft January 19, 2018 memo to the Department of Commerce."

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit in part, deny in part.  Admit that the March 1, 2018 memorandum of the Census Bureau concluded that "Alternative D would result in poorer quality citizenship data than Alternative C.  It would still have all the negative cost and quality implications of Alternative B outlined in the draft January 19, 2018 memo to the Department of Commerce."  Deny that Alternative D only involved the inclusion of a citizenship question on the 2020 decennial census.  Instead, Alternative D involved both asking the citizenship question if every household on the 2020 Census and link reliable administrative

data on citizenship status (a combination of the original Alternatives B and C).

137. Defendant Ross reviewed the analyses and recommendations of the Census Bureau, which were supported by 18 pages of analysis and answers to Defendant Ross' prior questions.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit in part, deny in part. Admit that Secretary Ross reviewed the analysis and recommendations contained in the Census Bureau's March 1, 2018 memorandum and the responses to the Commerce Department's questions. Deny to the extent that certain of the questions were not posed by Secretary Ross, and further deny that the Census Bureau's recommendations were "supported" by its analysis.

138. Defendant Ross directed members of the Commerce Department staff to draft a memorandum justifying the addition of the citizenship question.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit to the extent Secretary Ross worked with his senior staff to draft his decision memorandum explaining why he decided to exercise his legal authority to reinstate a citizenship question on the Decennial Census. Defendants otherwise deny this request for admission.

139. In March 2018 the Commerce Department staff drafted a 4 page memorandum without consulting the Census Bureau officials, concluding that the Secretary would order the addition of a citizenship question to the 2020 Census.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:** Deny.

140. Defendant Ross stated in his March 26, 2018 Decisional Memorandum, that "neither

the Census Bureau nor the concerned stakeholders could document that the response rate would in fact decline materially," despite the Census Bureau's finding that adding a citizenship question to the 2020 Census would lead to a 5.1% decrease in self-response rates.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit in part, deny in part. Admit that in his March 26, 2018 memorandum Secretary Ross stated that "neither the Census Bureau nor the concerned stakeholders could document that the response rate would in fact decline materially." Deny that the Census Bureau found that "adding a citizenship question to the 2020 Census would lead to a 5.1% decrease in self-response rates" and further state that the Census Bureau concluded that adding a citizenship question to the 2020 Census could lead to a 5.1% decrease in self-response rates.

141. Defendant Ross stated in his March 26, 2018 Decisional Memorandum that it was "difficult to assess" "non-response follow-up increases resulting from inclusion of the citizenship question would lead to increased costs," despite the Census Bureau's estimate that the decrease in self-response rates caused by adding a citizenship question to the 2020 Census would lead an increase in costs of at least $27.5 million.

**OBJECTION:** Defendants incorporate by reference the above objections to the definitions and instructions.

**RESPONSE:** Admit in part, deny in part. Admit that Secretary Ross stated in his March 26, 2018 memorandum that it was difficult to assess the Census Bureau's consideration of whether non-response follow-up ("NRFU") increases resulting from inclusion of the citizenship question would lead to increased costs because the Census Bureau's estimate of an additional ½ percent increase in NRFU operations "falls well within the margin of error that the Department, with the support of the Census Bureau, provided to Congress in the revised Lifecycle Cost Estimate ("LCE") this past fall." Deny that

the Census Bureau's estimate that the decrease in self-response rates caused by adding a citizenship question to the 2020 Census "would lead" to an increase in cost of at least $27.5 million.  Rather, the Census Bureau stated in its January 19, 2018 memorandum that "the addition of a question on citizenship *could* increase the cost of the 2020 Census by at least $27.5 million."

Dated: October 23, 2018                    Respectfully submitted,

                                           JOSEPH H. HUNT
                                           Assistant Attorney General

                                           BRETT A. SHUMATE
                                           Deputy Assistant Attorney General

                                           JOHN R. GRIFFITHS
                                           Director, Federal Programs Branch

                                           CARLOTTA P. WELLS
                                           Assistant Director, Federal Programs Branch

                                           */s/ Stephen Ehrlich*
                                           KATE BAILEY
                                           GARRETT COYLE
                                           STEPHEN EHRLICH
                                           CAROL FEDERIGHI
                                           Trial Attorneys
                                           United States Department of Justice
                                           Civil Division, Federal Programs Branch
                                           1100 L Street, N.W.
                                           Washington, DC  20005
                                           Tel.:  (202) 305-9803
                                           Email:  stephen.ehrlich@usdoj.gov

                                           *Counsel for Defendants*

PTX-235

# EXHIBIT D

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **NEW YORK IMMIGRATION COALITION**, *et. al*, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES DEPARTMENT OF COMMERCE**, *et. al*, <br><br> Defendant. | Civil Action No. 1:18-cv-05025-JMF <br><br> Hon. Jesse M. Furman |

## DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFFS' THIRD SET OF INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure 26 and 33 and the Local Rules of this Court Defendants, the United States Department of Commerce and Wilbur Ross, Secretary of Commerce, in his official capacity, by and through their attorneys of record, provide the following objections and response to Plaintiffs' third set of interrogatories.

## OBJECTIONS WHICH APPLY TO ALL REQUESTS FOR ADMISSION

1.      Separate and apart from the specific objections set forth below, Defendants object to any discovery taking place in this case to the extent such discovery is brought pursuant to claims purportedly under the Administrative Procedure Act, as resolution of any such claims should be based upon the administrative record in this case.

2.      Each and every response contained herein is subject to the above objection, which applies to each and every response, regardless of whether a specific objection is interposed in a specific response.  The making of a specific objection in response to a particular request is not intended to constitute a waiver of any other objection not specifically referenced in the particular response.

1

**EXHIBIT**

**PTX-236**

## OBJECTIONS TO DEFINITIONS

1.       Defendant object to the inclusion of definitions for any term not relied on in these interrogatories.  Any requirement that Defendant respond to such definitions in the abstract is not proportional to the needs of the case and the burden of such a response outweighs its likely benefit, which is none.  Defendant does not hereby waive any future objection to the definition of such terms, or waive the right to employment of Defendant's own definition of such terms.

## OBJECTION TO INSTRUCTIONS

1.       Defendants object to instructions number 1, 3, 4, 5 to the extent they seek to impose requirements beyond those required by Federal Rules of Civil Procedure.

2.       Defendants object to instruction number 3 to the extent it requires Defendants to "identify each PERSON or organization having knowledge of the factual basis, if any, upon which the objection, privilege, or other ground is asserted," as such an instruction exceeds the requirements of Federal Rule of Civil Procedure 33 and constitutes a discrete subpart.

3.       Defendants object to instruction numbers 1, 4 and 5, to the extent they seek the production of documents, which goes beyond the scope of the requirements of Federal Rule of Civil Procedure 33.  Defendants will not produce documents in response to Plaintiffs' third set of interrogatories.  Defendants further object to instructions 4 and 5 to the extent they seeks information in a privilege log that exceeds the requirements of Federal Rule of Civil Procedure 26(b)(5).

## DEFENDANTS' RESPONSES TO PLAINTIFFS' INTERROGATORIES

### INTERROGATORY NO. 5

With regard to draft and final response to Question 31 in the "Questions on the Jan 19 Draft Census Memo on the DoJ Citizenship Reinstatement Request" found at AR 2303-2304 and AR 196, please IDENTIFY:

   a.  all persons who worked on any draft of the response;

   b.  all persons outside the CENSUS BUREAU who worked on any draft of the response;

2

      c.  the date on which each person outside the CENSUS BUREAU who worked on the response first worked on the response; and

      d.  the person or persons responsible for removing discussion of the "well-established process" when adding or changing content of the DECENNIAL CENSUS.

**OBJECTIONS:**  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants further object that this request is irrelevant to any claim or defense and not proportionate to the needs of the case.  Defendants further object to Plaintiffs' interrogatory number five on the grounds that it constitutes four discrete subparts.  Accordingly, Defendants will treat this interrogatory as four discrete interrogatories.

**RESPONSE:**

    a.   Ron Jarmin, Enrique Lamas, Burton Reist, Christa Jones, Michael Walsh, and Sahra Park-Su.

    b.   Michael Walsh and Sahra Park-Su.

    c.   On or about February 23, 2018.

    d.   Once Census and the Department of Commerce started to confer on the question and realized that there was no process for adding such a question to the 2020 Decennial because it had not been done in recent memory, the individuals identified in response to part "a" of this interrogatory collectively approved the final language.

## INTERROGATORY NO. 6

      For each Request for Admission, to the extent that your responses is anything other than unqualified admissions, for each such response please identify with specificity all facts upon which you base your denial or qualified admission of any portion of the requested admission, including identifying with specificity all documents, events, occurrences, or conduct on which you base your denial or qualified admission.

**OBJECTIONS**:  Defendants incorporate by reference the above objections to the definitions and instructions.  Defendants further incorporate by reference each and every objection made to Plaintiffs' request for admissions.  Defendants further object that this interrogatory asks for the basis for responses that are "anything other than unqualified admissions" to requests for admissions that are not relevant to any claim or defense and not proportionate to the needs of the case.  Many of Plaintiffs' requests for admissions have no relevance as to whether the Secretary of Commerce's decision to reinstate a citizenship question is arbitrary or capricious or whether his decision violates equal protection principles.

Defendants further object to this interrogatory as constituting multiple, discrete subparts.  *Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 445-46 (C.D. Cal. 1998) (holding that an interrogatory that asks for the basis for the denial of each request for admission constitutes multiple interrogatories); *Jovanovich v. Redden Marine Supply, Inc.*, No. C10-924, 2011 WL 4459171,*2-3 (W.D. Wash. Sept. 26, 2011) (same); *Estate of Manship v. United States*, 232 F.R.D. 552, 557 (M.D. La. 2005) (same); *American Chiropractic Assoc. v. Trigon Healthcare, Inc.*, No. 1:00-CV-00113, 2002 WL 534459, *3 (W.D. Va. 2002) (same); *Commodores Enter. Corp. v. McClary*, No. 6:14-cv-1335, 2015 WL 12843874 (S.D. Fla. Nov. 6, 2015) (same). Furthermore, Plaintiffs' request that Defendants provide up to 141 separate interrogatory responses is unduly burdensome and not proportionate to the needs of the case.  Accordingly, because Defendants do not stipulate to responding to more than 25 interrogatories in total, *see* Federal Rule of Civil Procedure 33(a)(1), and interrogatory 5 constitutes four discrete subparts, Defendants will only respond to the first sixteen requests for admissions that are not unqualified admissions.

**RESPONSES:**

**Interrogatory No. 9 (request for admission no. 1):**  The reason Defendants did not provide an unqualified admission to request for admission number 1 is because Defendants lack any reasonable means of verifying the accuracy of statements purportedly made by a private party not within the control of the United States at the time the statement is said to have been made.

4

**Interrogatory No. 10 (request for admission no. 2):** The reason Defendants did not provide an unqualified admission to request for admission number 2 is because Defendants lack any reasonable means of verifying the accuracy of statements purportedly made by a private party not within the control of the United States at the time the statement is said to have been made.

**Interrogatory No. 11 (request for admission no. 3):** The reason Defendants did not provide an unqualified admission to request for admission number 3 is because Defendants lack any reasonable means of verifying the accuracy of statements purportedly made by a private party not within the control of the United States at the time the statement is said to have been made.

**Interrogatory No. 12 (request for admission no. 4):** The reason Defendants did not provide an unqualified admission to request for admission number 4 is because Defendants lack any reasonable means of verifying the accuracy of statements purportedly made by a private party not within the control of the United States at the time the statement is said to have been made.

**Interrogatory No. 13 (request for admission no. 5):** The reason Defendants did not provide an unqualified admission to request for admission number 5 is because Defendants lack any reasonable means of verifying the accuracy of statements purportedly made by a private party not within the control of the United States at the time the statement is said to have been made.

**Interrogatory No. 14 (request for admission no. 6):** The reason Defendants did not provide an unqualified admission to request for admission number 6 is because Defendants lack any reasonable means of verifying the accuracy of statements purportedly made by a private party not within the control of the United States at the time the statement is said to have been made.

**Interrogatory No. 15 (request for admission no. 7):** The reason Defendants did not provide an unqualified admission to request for admission number 7 is because Defendants lack any reasonable means of verifying the accuracy of statements purportedly made by a private party not within the control of the United States at the time the statement is said to have been made.

5

**Interrogatory No. 16 (request for admission no. 8):**  The reason Defendants did not provide an unqualified admission to request for admission number 8 is because Defendants lack any reasonable means of verifying the accuracy of statements purportedly made by a private party not within the control of the United States at the time the statement is said to have been made.

**Interrogatory No. 17 (request for admission no. 9):**  The reason Defendants did not provide an unqualified admission to request for admission number 9 is because Defendants lack any reasonable means of verifying the accuracy of statements purportedly made by a private party not within the control of the United States at the time the statement is said to have been made.

**Interrogatory No. 18 (request for admission no. 10):**  The reason Defendants did not provide an unqualified admission to request for admission number 10 is because Defendants lack any reasonable means of verifying the accuracy of statements purportedly made by a private party not within the control of the United States at the time the statement is said to have been made.

**Interrogatory No. 19 (request for admission no. 11):**  The reason Defendants did not provide an unqualified admission to request for admission number 11 is because Defendants lack any reasonable means of verifying the accuracy of statements purportedly made by a private party not within the control of the United States at the time the statement is said to have been made.

**Interrogatory No. 20 (request for admission no. 12):**  The reason Defendants did not provide an unqualified admission to request for admission number 12 is because Defendants lack any reasonable means of verifying the accuracy of statements purportedly made by a private party not within the control of the United States at the time the statement is said to have been made.

**Interrogatory No. 21 (request for admission no. 13):**  The reason Defendants did not provide an unqualified admission to request for admission number 13 is because Defendants lack any reasonable means of verifying the accuracy of statements purportedly made by a private party not within the control of the United States at the time the statement is said to have been made.

**Interrogatory No. 22 (request for admission no. 14):**  The reason Defendants did not provide an

6

unqualified admission to request for admission number 14 is because Defendants lack any reasonable means of verifying the accuracy of statements purportedly made by a private party not within the control of the United States at the time the statement is said to have been made.

**Interrogatory No. 23 (request for admission no. 15):**  The reason Defendants did not provide an unqualified admission to request for admission no. 15 is that Defendants lack any reasonable means of verifying whether statements attributed to President Donald J. Trump as reported by TIME Magazine are accurately reported.

**Interrogatory No. 24 (request for admission no. 16):**  The reason Defendants did not provide an unqualified admission to request for admission no. 16 is because is that Defendants lack any reasonable means of verifying whether statements attributed to President Donald J. Trump as reported by the media are accurately reported.

**Interrogatory No 25 (request for admission 17):**  The reason Defendants did not provide an unqualified admission to request for admission no. 17 is because the request for admission did not accurately characterize President Donald J. Trump's January 27, 2017 executive order.  An accurate characterization of that executive order is reflected in Defendants' response to Plaintiffs' request for admission no. 17.

As to Interrogatories, see Verification page *infra*.

7

As to objections:

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

BRETT A. SHUMATE
Deputy Assistant Attorney General

JOHN R. GRIFFITHS
Director, Federal Programs Branch

CARLOTTA P. WELLS
Assistant Director, Federal Programs Branch

_/s/ Stephen Ehrlich_
KATE BAILEY
GARRETT COYLE
STEPHEN EHRLICH
CAROL FEDERIGHI
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC  20005
Tel.:  (202) 305-9803
Email:  stephen.ehrlich@usdoj.gov

_Counsel for Defendants_

Dated:  October 23, 2018

8

## CERTIFICATION OF EARL COMSTOCK

I certify under penalty of perjury that the foregoing responses to Plaintiffs' Interrogatories No. 5 and 6, both of which contain multiple discrete subparts that are not separately numbered, are true and correct to the best of my knowledge, information, belief, understanding, and recollection.

Dated: _10/12/2018_

Earl Comstock

9

**Page 9 of 9**

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

NEW YORK IMMIGRATION
COALITION, *et al.*,

       Plaintiffs,

    v.

UNITED STATES DEPARTMENT OF
COMMERCE, *et al.*,

       Defendants.

No. 1:18-cv-5025 (JMF)

**DEFENDANTS' SUPPLEMENTAL RESPONSES TO PLAINTIFFS' FIRST SET OF
INTERROGATORIES TO DEFENDANTS UNITED STATES DEPARTMENT OF
COMMERCE AND WILBUR ROSS**

Pursuant to Federal Rules of Civil Procedure 26, 33, and 34, Defendants United States

Department of Commerce and Wilbur Ross submit these supplemental objections and responses to

Plaintiffs' First Set of Interrogatories to Defendants United States Department of Commerce and

Wilbur Ross, as modified by Plaintiffs' counsel by email dated August 27, 2018.

**OBJECTIONS AND RESPONSES TO INTERROGATORIES**

**Interrogatory No. 1.**  With regard to the document found in the Administrative Record at 1321,
please IDENTIFY:

    a. the "senior Administration officials" who "previously raised" reinstating the citizenship
question;

    b. the "various discussions with other government officials about reinstating a citizenship
question to the Census";

    c. the consultations Secretary and his staff participated in when they "consulted with Federal
governmental components";

    d. the date on which the "senior Administration officials" who "previously raised"
reinstating the citizenship question first raised this subject with SECRETARY ROSS or with
COMMERCE; and

    e. all PERSONS with whom, to the knowledge of COMMERCE and SECRETARY ROSS,
the "senior Administration officials had previously raised" reinstating the citizenship
question.



**EXHIBIT**

**PTX-238**

**Objections:**

Defendants object to this interrogatory to the extent that it seeks (a) communications or information protected by the attorney-client privilege or (b) communications or information protected by the deliberative-process privilege.

Defendants further object to this interrogatory as vague and overbroad to the extent it seeks information about meetings or conversations with government officials and other persons whose identities are immaterial to the claims in this litigation, and because the burden of responding is disproportionate to the needs of this case.

**Response:**

After conducting a diligent search, Defendants do not distinguish among the terms used synonymously in the Secretary's Supplemental Memorandum: "senior Administration officials," "other government officials," and officials at other "Federal governmental components". In order to respond as fully as possible to this interrogatory, Defendants therefore will construe subparts a, b, and c, as coextensive and will identify, as a single group, the individuals within the executive branch but outside the Department of Commerce who, before the December 12, 2017 Department of Justice letter, and as referenced in the Secretary's Supplemental Memorandum, either (a) discussed the citizenship question with Secretary Ross, (b) had raised or discussed whether to reinstate a citizenship question, or (c) were consulted by Secretary Ross or his staff regarding whether the Department of Justice would support, and if so would request, inclusion of a citizenship question as consistent with and useful for enforcement of the Voting Rights Act. In accordance with that interpretation, and subject to and without waiving the above objections, Defendants identify the following individuals:

Mary Blanche Hankey, James McHenry, Gene Hamilton, Danielle Cutrona, John Gore and Jefferson Sessions. Although Kris Kobach is not a "government official" within the meaning of the Supplemental Memorandum, the Defendants identify him nonetheless for

2

the sake of completeness.  Lastly, the Defendants cannot confirm that the Secretary spoke to Steve Bannon regarding the Citizenship Question. However, since the current Administrative Record indicates that Mr. Bannon was attempting to put Mr. Kobach in touch with the Secretary, the Defendants are also listing Mr. Bannon for the sake of completeness.

With respect to Interrogatory 1, subparagraphs a, d, and e, as reflected in the Administrative Record, Secretary Ross discussed the possible reinstatement of a citizenship question on the 2020 decennial census with Attorney General Sessions in August 2017.  In addition, it is possible that the two had an additional discussion concerning this issue, and although the date of that conversation is unknown, Defendants believe it took place earlier in 2017.

3

**Page 3 of 5**

As to Interrogatories, see Verification page *infra*.

As to objections:

Dated: August 30, 2018

JOSEPH H. HUNT
Assistant Attorney General

BRETT A. SHUMATE
Deputy Assistant Attorney General

JOHN R. GRIFFITHS
Director, Federal Programs Branch

CARLOTTA P. WELLS
Assistant Director, Federal Programs Branch

*/s/    Kate Bailey*
KATE BAILEY
GARRETT COYLE
STEPHEN EHRLICH
CAROL FEDERIGHI
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel.:  (202) 514-9239
Email:  kate.bailey@usdoj.gov

*Counsel for Defendants*

4

## CERTIFICATION OF EARL COMSTOCK

I certify under penalty of perjury that the foregoing supplemental response to Plaintiffs'

Interrogatory No. 1 is true and correct to the best of my knowledge, information, belief,

understanding, or recollection, with the understanding that the Department of Commerce is

continuing to research its responses to Plaintiffs' interrogatories and reserves the right to further

supplement its responses.

Dated: September 5, 2018

_____

Earl Comstock

# EXHIBIT F

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NEW YORK IMMIGRATION COALITION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF COMMERCE, *et al.*,<br><br>Defendants. | No. 1:18-cv-5025 (JMF) |

**DEFENDANTS' SECOND SUPPLEMENTAL RESPONSES TO PLAINTIFFS' FIRST
SET OF INTERROGATORIES TO DEFENDANTS UNITED STATES DEPARTMENT
OF COMMERCE AND WILBUR ROSS**

Pursuant to Federal Rules of Civil Procedure 26, 33, and 34, Defendants United States Department of Commerce and Wilbur Ross submit these second supplemental objections and responses to Plaintiffs' First Set of Interrogatories to Defendants United States Department of Commerce and Wilbur Ross, as modified by Plaintiffs' counsel by email dated August 27, 2018.

**OBJECTIONS AND RESPONSES TO INTERROGATORIES**

**Interrogatory No. 1.** With regard to the document found in the Administrative Record at 1321, please IDENTIFY:

     a. the "senior Administration officials" who "previously raised" reinstating the citizenship question;

     b. the "various discussions with other government officials about reinstating a citizenship question to the Census";

     c. the consultations Secretary and his staff participated in when they "consulted with Federal governmental components";

     d. the date on which the "senior Administration officials" who "previously raised" reinstating the citizenship question first raised this subject; and

     e. all PERSONS with whom the "senior Administration officials had previously raised" reinstating the citizenship question.



EXHIBIT
**PTX-239**

**Objections:**

Defendants object to this interrogatory to the extent that it seeks (a) communications or information protected by the attorney-client privilege or (b) communications or information protected by the deliberative-process privilege.

Defendants further object to this interrogatory as vague and overbroad to the extent it seeks information about meetings or conversations with government officials and other persons whose identities are immaterial to the claims in this litigation, and because the burden of responding is disproportionate to the needs of this case.

**Response:**

After conducting a diligent search, Defendants do not distinguish among the terms used synonymously in the Secretary's Supplemental Memorandum: "senior Administration officials," "other government officials," and officials at other "Federal governmental components." In order to respond as fully as possible to this interrogatory, Defendants therefore will construe subparts a, b, and c, as coextensive and will identify, as a single group, the individuals within the executive branch but outside the Department of Commerce who, before the December 12, 2017 Department of Justice letter, and as referenced in the Secretary's Supplemental Memorandum, either (a) discussed the citizenship question with Secretary Ross, (b) had raised or discussed whether to reinstate a citizenship question, or (c) were consulted by Secretary Ross or his staff regarding whether the Department of Justice would support, and if so would request, inclusion of a citizenship question as consistent with and useful for enforcement of the Voting Rights Act. In accordance with that interpretation, and subject to and without waiving the above objections, Defendants identify the following individuals.

Mary Blanche Hankey, James McHenry, Gene Hamilton, Danielle Cutrona, John Gore, and Jefferson Sessions. Although Kris Kobach is not a "government official" within the meaning of the Supplemental Memorandum, the Defendants identify him

2

nonetheless for the sake of completeness.  Secretary Ross recalls that Steven Bannon called Secretary Ross in the Spring of 2017 to ask Secretary Ross if he would be willing to speak to then-Kansas Secretary of State Kris Kobach about Secretary Kobach's ideas about a possible citizenship question on the decennial census.  The Defendants therefore are also listing Mr. Bannon for the sake of completeness.

In addition, Secretary Ross discussed the possible reinstatement of a citizenship question on the 2020 decennial census with Attorney General Sessions in the Spring of 2017 and at subsequent times.

As to Interrogatories, see Verification page *infra*.

3

As to objections:

Dated: October 11, 2018

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

BRETT A. SHUMATE
Deputy Assistant Attorney General

JOHN R. GRIFFITHS
Director, Federal Programs Branch

CARLOTTA P. WELLS
Assistant Director, Federal Programs Branch

*/s/ Stephen Ehrlich*
KATE BAILEY
GARRETT COYLE
STEPHEN EHRLICH
CAROL FEDERIGHI
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC  20005
Tel.:  (202) 305-9803
Email:  stephen.ehrlich@usdoj.gov

*Counsel for Defendants*

4

## CERTIFICATION OF EARL COMSTOCK

I certify under penalty of perjury that the foregoing second supplemental response to Plaintiffs' Interrogatory No. 1 is true and correct to the best of my knowledge, information, belief, understanding, or recollection, with the understanding that the Department of Commerce is continuing to research its responses to Plaintiffs' interrogatories and reserves the right to further supplement its responses.

Dated: October 11, 2018

Earl Comstock

5

PTX-239

# EXHIBIT G

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

STATE OF NEW YORK, *et al.*,

      Plaintiffs,

      v.

UNITED STATES DEPARTMENT OF
COMMERCE, *et al.*,

      Defendants.

No. 1:18-cv-2921 (JMF)

## DEFENDANTS' RESPONSES TO PLAINTIFFS' SECOND SET OF
## INTERROGATORIES TO DEFENDANTS

Pursuant to Federal Rules of Civil Procedure 26, 33, and 34, Defendants United States

Department of Commerce and Wilbur Ross submit these objections and responses to Plaintiffs'

Second Set of Interrogatories to Defendants.

### OBJECTIONS AND RESPONSES TO INTERROGATORIES

**Interrogatory No. 4.** With regard to the randomized controlled trials (RCTs) concerning the addition of a citizenship question to the DECENNIAL CENSUS proposed by Victoria Velkoff in or around May 2018 discussed during the August 29 deposition of the CENSUS BUREAU 30(b)(6) witness, please IDENTIFY:

    a. all persons outside the CENSUS BUREAU who were aware of the proposal to conduct the RCTs; and

    b. all persons involved in the decision not to conduct the RCTs.

**Objections:** Defendants object to the defined term "IDENTIFY" as unduly burdensome,

disproportionate to the needs of the case, and resulting in multiple interrogatories. Accordingly,

Defendants will provide only the names of individuals, the identities of which are clear from the

materials produced in this litigation. Defendants also object to this interrogatory as vague and

overbroad because the phrases "aware of" and "involved in" are undefined, and therefore Defendants

object to the extent this interrogatory seeks information about meetings or conversations with



**Page 1 of 3**

government officials and other persons whose identities are immaterial to the claims in this litigation, and because the burden of responding is disproportionate to the needs of this case. Further, Defendants object to subparts (a) and (b) on the grounds that they are discrete interrogatories under Rule 33(a)(1).

**Response:**  Subject to and without waiving these objections, Defendants state that the following individuals are responsive to this interrogatory:

    a.   Karen Dunn Kelly.

    b.   Karen Dunn Kelley, Ron Jarmin, Enrique Lamas

As to Interrogatories, see Verification page *infra.*

As to objections:

Dated: September 28, 2018

JOSEPH H. HUNT
Assistant Attorney General

BRETT A. SHUMATE
Deputy Assistant Attorney General

JOHN R. GRIFFITHS
Director, Federal Programs Branch

JOSHUA E. GARDNER
CARLOTTA P. WELLS
Assistant Directors, Federal Programs Branch

*/s/    Stephen Ehrlich*
STEPHEN EHRLICH
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel.:  (202) 305-9803
Email:  stephen.ehrlich@usdoj.gov

*Counsel for Defendants*

2

PTX-240

## **CERTIFICATION OF RON JARMIN**

I certify under penalty of perjury that the foregoing response to Plaintiffs' Interrogatory No. 4 is true and correct to the best of my knowledge, information, belief, understanding, and recollection.

Dated: __9/21/18_____

_____

Ron Jarmin

# CERTIFICATE OF SERVICE

Case Name: **State of California, et al. v.** No. **3:18-cv-01865**
**Wilbur L. Ross, et al.**

I hereby certify that on <u>January 2, 2019</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**NOTICE OF FILING DESIGNATIONS OF DEFENDANTS' WRITTEN DISCOVERY RESPONSES**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>January 2, 2019</u>, at Sacramento, California.

|  |  |
|:---:|:---:|
| Tracie L. Campbell | */s/ Tracie Campbell* |
| Declarant | Signature |

SA2018100904
13387240.docx