JOSEPH H. HUNT
Assistant Attorney General
CARLOTTA P. WELLS
Assistant Director
MARSHA STELSON EDNEY
Senior Trial Counsel
KATE BAILEY
CAROL FEDERIGHI
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC  20005
Tel.: (202) 514-4520
Email: marsha.edney@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| STATE OF CALIFORNIA, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>WILBUR L. ROSS, JR., *et al.*,<br><br>    Defendants. | Civil Action No. 3:18-cv-01865-RS<br><br>**DEFENDANTS' OBJECTIONS TO PLAINTIFFS' TRIAL DECLARATIONS**<br><br>Date: January 7, 2019<br>Time: 9:00 am<br>Judge: Hon. Richard Seeborg |

1

DEFENDANTS' OBJECTIONS TO PLAINTIFFS' TRIAL DECLARATIONS – No. 3:18-cv-01865-RS

Defendants United States Department of Commerce, Wilbur L. Ross, Jr., in his official capacity as Secretary of Commerce, Census Bureau, and Ron S. Jarmin, in his official capacity as performing the non-exclusive functions and duties of the Director of the Census Bureau, hereby submit objections to the following portions of Plaintiffs' trial declarations.

### Trial Declaration of Douglas Baron

<u>Objections to Attachments A and B</u>: Hearsay (802) if offered for the truth of the matters asserted.

### Trial Declaration of Amy Bodek

¶ 21. "*This lack of accurate data, in turn, could result in long-term misallocations of County resources, impairing the County's ability to balance the economic, social, environmental, and other goals set out in the Planning and Zoning Law and the County's General Plan. Further, without reliable demographic Census information, DRP would be unable to maintain the current level of assistance to other County agencies charged with the responsibility of making policy or financial decisions in accordance with California law and the County's Equitable Development programs and policies.*" Improper Lay Testimony and Undisclosed Expert Testimony (701/702). Ms. Bodek is not offering a lay opinion based on personal perception; rather, she purports to conduct an analysis based on her specialized knowledge through reliance on census data and offers a predictive opinion about the outcome of the 2020 decennial census and its effects on the county. Under these circumstances, Ms. Bodek's opinions are subject to the relevance and reliability criteria of Rule 702. Further, Plaintiffs' failure to disclose Ms. Bodek's testimony under Rule 26(a)(2)(C) should result in its exclusion.

Rule 701 precludes lay testimony based on specialized knowledge. *FiTeq INC v. Venture Corp.*, No. 13-CV-01946-BLF, 2016 WL 693256, at *3 (N.D. Cal. Feb. 22, 2016 (agreeing that defendants are correct to draw a line between lay and expert witness testimony). "Lay witness

DEFENDANTS' OBJECTIONS TO PLAINTIFFS' TRIAL DECLARATIONS – No. 3:18-cv-01865-RS

testimony is governed by Rule 701, which limits opinions to those 'rationally based on the perception of the witness.' Rule 702, on the other hand, governs admission of expert opinion testimony concerning 'specialized knowledge.' " *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246 (9th Cir. 1997) (citing Fed. R. Evid. 701). Rule 701 "expressly excludes lay opinion testimony 'based on scientific, technical, or other specialized knowledge within the scope of Rule 702.' " *Synthes USA, LLC v. Spinal Kinetics, Inc.*, No. C-09-01201 RMW, 2011 WL 11709387, at *10 (N.D. Cal. Aug. 19, 2011) (citing Fed. R. Evid. 701(c)); *see also Calloway v. Contra Costa Cty. Jail Corr. Officers*, No. C 01-2689 SBA, 2007 WL 134581, at *19 (N.D. Cal. Jan. 16, 2007), *aff'd*, 243 F. App'x 320 (9th Cir. 2007) (excluding declaration testimony describing medical condition as improper lay testimony under 701): *United States v. Tomasetta*, No. 10 CR 1205 PAC, 2012 WL 1080293, at *4 (S.D.N.Y. Mar. 30, 2012) (holding that testimony by research analysts about predictions about the effect of making different disclosures or opinions based on generalized knowledge about the industry constituted expert testimony); *In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 (JMF), 2016 WL 4410008, at *2 (S.D.N.Y. Aug. 18, 2016) (holding that testimony by an EMT and a state trooper about why air bags didn't deploy in a crash required specialized or technical knowledge and thus constituted expert testimony).

### Trial Declaration of Jefferson Crain

¶¶ 12, 13, 16, 17, 19.  Lack of foundation.  Lack of personal knowledge (602).  Mr. Crain is the Executive Officer to the Board of Education for LAUSD.  In these paragraphs, his testimony discusses actions and decisions by others including those who serve on the Redistricting Commission and who work for the City of Los Angeles.

¶ 21. *"The census data is necessary to ensure compliance with the federal Voting Rights Act and the California Voting Rights Act by preventing improper dilution of minority voting rights. Many of the public comments*

*received in support or opposition to the proposed plans addressed potential impacts to particular races, ethnicities, cultures, and local communities within LAUSD."* Lack of Personal Knowledge (602). Improper Lay Testimony and Undisclosed Expert Testimony (701/702). Mr. Crain is not offering a lay opinion based on personal perception; rather, he purports to conduct an analysis based on his specialized knowledge through reliance on census data and offers a predictive opinion about the outcome of the 2020 decennial census. Under these circumstances, Mr. Crain's opinions are subject to the relevance and reliability criteria of Rule 702. Further, Plaintiffs' failure to disclose Mr. Crain's testimony under Rule 26(a)(2)(C) should result in its exclusion.

¶ 25. *"The data derived from the 2020 decennial census and American Community Survey are integral to the commission's map drawing, allowing members to see the community demographic shaping local communities of interest and ensuring compliance with the federal Voting Rights Act and California Voting Rights Act. Often the revisions to the commission's plans involved a few thousand residents or less. The public input also relies on this same data to identify strengths and weaknesses in the redistricting commission's proposals."* Improper Lay Testimony and Undisclosed Expert Testimony (701/702), for the same reasons noted above.

¶ 26. *"Any decrease in the accuracy of the census data undermines these public efforts to preserve local communities within LAUSD's boundaries."* Improper Lay Testimony and Undisclosed Expert Testimony (701/702), for the same reasons noted above.

Objections to Exhibits:

PTX-855, 856, 857, 858: Relevance (401/403) and hearsay (802) (if submitting for truth of the statements contained in the documents).

PTX 857: Lack of ability to sufficiently authenticate.

DEFENDANTS' OBJECTIONS TO PLAINTIFFS' TRIAL DECLARATIONS – No. 3:18-cv-01865-RS

**Trial Declaration of Pia Escudero**

Objections to Exhibits:  PTX- 848, 849, 850, 851, 853,853 – Relevance (401/403) and hearsay (802) (if submitting for truth of the statements contained in the documents).

**Trial Declaration of Bernard Fraga**

¶ 40.  Dr. Fraga states that he relied on *two additional tables"* which *"include the percentage of survey respondents who responded 'Yes, will participate' on Question 8, after having responded 'Yes, will participate' on Question 1, and 'No, will NOT participate' or refusing to respond to Question 2.  The response rates are broken down by ethnicity and, for the Latino and Asian respondents, by whether they those groups were foreign-born or U.S.-born."*  These tables were only disclosed on December 21, 2018.  Therefore, the tables and the foregoing sentences should be excluded for failure to timely disclose pursuant to FRCP 26(a)(2)(B) and FRCP 37.

¶ 49.  The discussion of the provenance of the 86.63% NRFU success rate is outside the scope of Dr. Fraga's expert report and of his deposition.  In his deposition (65:22-25), he stated only that the 86.63% number was provided by counsel and that his understanding was that "it was based on census data and analysis."  Ex. 1.  This paragraph should be excluded pursuant to FRCP 26(a)(2)(B) and 37(c)(1).

¶ 64.  *In addition, under any uniform NRFU success rate (less than 100%) applied to Scenarios A or C, California will always have the largest undercount of all of the states due to the citizenship question. Thus, even if the uniform NRFU success rate were greater than 86.63% (but still less than 100%), California would still suffer the largest differential undercount.*  These statements are outside the scope of Dr. Fraga's expert report and his deposition—he did not previously provide any opinions on the impact on California of any other NRFU success rates.  These sentences should be excluded pursuant to FRCP 26(a)(2)(B) and 37(c)(1).

<u>Objection to Exhibits</u>: Exhibit A is Dr. Fraga's curriculum vitae which is hearsay and should not be admitted (802).  Exhibit B is the list of materials Dr. Fraga relied upon for his report, which is hearsay (802) but admissible under Rule 703.  Exhibits C and D are charts of data, which are hearsay (802) but admissible under Rule 703.

### Trial Declaration of Andrew Reamer

Paragraphs 67-73 of his affidavit are new and outside the scope of his expert report and therefore should be excluded. These paragraphs discuss new programs not previously analyzed as part of his expert report. At his deposition, he admitted that he had not performed any additional calculations for programs beyond the five he analyzed in the New York case.  *See* Transcript of Deposition of Dr. Reamer at 71:25-72:2.  Ex 2.

<u>Objection to Exhibits</u>: Exhibit A and B are Dr. Reamer's expert report and curriculum vitae which are hearsay and should not be admitted (802). Exhibit C is a list of sources for his affidavit and is admissible only under Rule 703. Exhibits D and E should be excluded because they are not relevant (401/403) and are hearsay (802) if for truth of matter asserted.

### Trial Declaration of Karen Ryback

<u>Objections to Exhibits:</u> PTX-845, 846, 847 -- Relevance (401/403) and hearsay (802) (if submitting for truth of the statements contained in the documents). PTX-846 and 847 –lack of authenticity (901).

### Trial Declaration of Andrew Westall

¶¶ 22. *Both law and equity disfavor large population deviations between districts. Even a deviation of 10% (5 in either a plus or minus direction) may not be considered in a "safe harbor" for purposes of a legal challenge.* Improper Lay Testimony (701/702) and Undisclosed Expert Testimony Rule 26(a)(2)(C).  Mr. Westall is not offering a lay opinion based on personal perception; rather, he purports to conduct an

6

DEFENDANTS' OBJECTIONS TO PLAINTIFFS' TRIAL DECLARATIONS – No. 3:18-cv-01865-RS

analysis based on his specialized knowledge through reliance on census data and offers a predictive opinion about the outcome of the 2020 decennial census and the impact he believes it will have on various city programs.  Under these circumstances, Mr. Westall's opinions are subject to the relevance and reliability criteria of Rule 702.  Further, Plaintiffs' failure to disclose Mr. Westall's testimony under Rule 26(a)(2)(C) should result in its exclusion.

¶¶ 27, 35. Improper Lay Testimony (701/702) and Undisclosed Expert Testimony Rule 26(a)(2)(C) the for reasons explained above.

¶ 29. *Inaccurate population count data will thus result in unevenly reported population distribution, which will in turn deny equal representation to the City's resident*s. Improper Lay Testimony (701/702) and Undisclosed Expert Testimony Rule 26(a)(2)(C) the for reasons explained above.

¶ 36. *Accordingly, undercounted neighborhoods will suffer from the lack of sufficiently allocated resources due to inaccurate census data. The City thus needs accurate Decennial Census data to meet the needs of all of its residents and to plan for future needs*. Improper Lay Testimony (701/702) and Undisclosed Expert Testimony Rule 26(a)(2)(C),  for the reasons explained above.

<u>Objection to Exhibit A</u>: Mr. Westall's curriculum vitae is hearsay and should not be admitted (802).

Date:  January 6, 2019                            Respectfully submitted,

JOSEPH H. HUNT
Acting Assistant Attorney General

BRETT A. SHUMATE
Deputy Assistant Attorney General

JOHN R. GRIFFITHS
Director, Federal Programs Branch

CARLOTTA P. WELLS
Assistant Director

DEFENDANTS' OBJECTIONS TO PLAINTIFFS' TRIAL DECLARATIONS – No. 3:18-cv-01865-RS

          */s/ Marsha Stelson Edney*
          MARSHA STELSON EDNEY
          Senior Trial Counsel
          KATE BAILEY
          CAROL FEDERIGHI
          Trial Attorneys
          United States Department of Justice
          Civil Division, Federal Programs Branch
          1100 L Street, NW
          Washington, DC 20005
          Tel.: (202) 514-4520
          Email: marsha.edney@usdoj.gov

          *Attorneys for Defendants*

DEFENDANTS' OBJECTIONS TO PLAINTIFFS' TRIAL DECLARATIONS – No. 3:18-cv-01865-RS

**Exhibit 1**

# In the Matter Of:

## STATE OF CALIFORNIA vs WILBUR L. ROSS, JR.

3:18-cv-01865 and 5:18-cv-02279

## BERNARD L. FRAGA, PH.D.

*October 17, 2018*



800.211.DEPO (3376)
EsquireSolutions.com

```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF CALIFORNIA


STATE OF CALIFORNIA, et al.,

     Plaintiffs,              CASE NO.
                              3:18-cv-01865 and
 vs.                          5:18-cv-02279

WILBUR L. ROSS, JR., et al.,

     Defendants.
```

The deposition upon oral examination of BERNARD L. FRAGA, Ph.D., a witness produced and sworn before me, Paula A. Morgan, Notary Public in and for the County of Hamilton, State of Indiana, taken on the 17th day of October, 2018, in the United States Attorney's Office, 10 West Market Street, Suite 2100, Indianapolis, Marion County, Indiana, pursuant to the Federal Rules of Civil Procedure.  This deposition was taken on behalf of the Defendants in the above-captioned matter.



```
 1        the scenarios?
 2   A    I don't recall that I chose the -- no.
 3   Q    Okay.  And Scenario D, now you are taking into
 4        account an estimate of the NRFU success, correct?
 5        This is the bottom of page 14 of your report.
 6   A    Yes, that is correct.
 7   Q    And you say, "The NRFU enumeration success rate I was
 8        provided with was 86.63 percent."  How did you get
 9        that rate?
10            MS. BOUTIN:  Objection to the extent that it --
11        an answer requires disclosure of attorney work
12        product response.  But you can answer generally.
13   A    So, yeah, in general, I was provided with that
14        estimate.
15   Q    By whom?
16            MS. BOUTIN:  Same objection.  Actually, no, not
17        same objection.  Withdrawn.  You can answer.
18   A    By counsel.  Right terminology?
19   Q    Yes.  Do you know where counsel got that number?
20            MS. BOUTIN:  Objection.
21            MS. FEDERIGHI:  He can say whether he knows.
22   A    As I mention in my report, my understanding is that,
23        and my understanding at the time, my understanding
24        now, is that it was based on census data and
25        analyses.
```



```
 1   STATE OF INDIANA    )
                         )   SS:
 2   COUNTY OF HAMILTON  )

 3

 4        I, Paula A. Morgan, Notary Public in Hamilton
     County, Indiana, do hereby certify that the deponent
 5   was, by me, sworn to tell the truth in the
     aforementioned matter;
 6        That the deposition was taken on behalf of the
     Defendants at the time and place heretofore mentioned
 7   with counsel present as noted;
          That the deposition was taken down by means of
 8   Stenograph notes, reduced to typewriting under my
     direction and is a true record of the testimony given
 9   by said deponent and was thereafter presented to the
     deponent for signature.
10        I do further certify that I am a disinterested
     person in this cause of action; that I am not a
11   relative or attorney of any of the parties or
     otherwise interested in the event of this action and
12   am not in the employ of the attorneys for the
     respective parties.
13
          IN WITNESS HEREOF, I have hereunto set my hand
14   and affixed my notarial seal this 22nd day of
     October, 2018.
15

16
                         /s/ Paula A. Morgan
17
                         _____
18                       Paula A. Morgan, Notary Public

19
     County of Residence:  Hamilton
20
     My Commission expires:  October 9, 2024
21

22

23

24

25
```



```
 1   Reference No.: 2949500
 2
 3   Case:   STATE OF CALIFORNIA vs WILBUR L. ROSS, JR.
 4
             DECLARATION UNDER PENALTY OF PERJURY
 5
            I declare under penalty of perjury that
 6   I have read the entire transcript of my Depo-
     sition taken in the captioned matter or the
 7   same has been read to me, and the same is
     true and accurate, save and except for
 8   changes and/or corrections, if any, as indi-
     cated by me on the DEPOSITION ERRATA SHEET
 9   hereof, with the understanding that I offer
     these changes as if still under oath.
10
11   _____
12   Bernard L. Fraga, Ph.D.
13
14              NOTARIZATION OF CHANGES
15                   (If Required)
16
17   Subscribed and sworn to on the _____ day of
18
19   _____, 20____ before me,
20
21   (Notary Sign)_____
22
23   (Print Name)                       Notary Public,
24
25   in and for the State of _____
```


800.211.DEPO (3376)
EsquireSolutions.com

```
 1  Reference No.: 2949500
    Case:  STATE OF CALIFORNIA vs WILBUR L. ROSS, JR.
 2
 3  Page No. 23    Line No. 24    Change to:
 4  I'm trying to clarify "set forth in the report." Is it
 5  Reason for change: Incorrect stenography
 6  Page No. 27    Line No. 1    Change to:
 7  form of undercount that I was interested in that
 8  Reason for change: Incorrect stenography
 9  Page No. 45    Line No. 25    Change to:
10  sentence, "it requires all households to list." So I'm
11  Reason for change: Incorrect stenography
12  Page No. 50    Line No. 2    Change to:
13  is "yes, will participate" -- to question 1, no longer
14  Reason for change: Incorrect stenography
15  Page No. 56    Line No. 4    Change to:
16  But if we think that, it is plausible that the
17  Reason for change: Incorrect stenography
18  Page No. 62    Line No. 5    Change to:
19  Section 5.1.2, page 12, I describe Scenario B.
20  Reason for change: Incorrect stenography
21  Page No. 76    Line No. 10    Change to:
22  different demographic groups, by race, ethnicity, some
23  Reason for change: Incorrect stenography
24  SIGNATURE: _____  DATE: 11/17/2018
25  Bernard L. Fraga, Ph.D.
```



```
Reference No.: 2949500
Case:  STATE OF CALIFORNIA vs WILBUR L. ROSS, JR.

Page No. 77    Line No. 13    Change to:
Population Estimates Program estimates. The ACS
Reason for change: Incorrect stenography
Page No. _____ Line No. _____ Change to: _____
_____
Reason for change: _____
Page No. _____ Line No. _____ Change to: _____
_____
Reason for change: _____
Page No. _____ Line No. _____ Change to: _____
_____
Reason for change: _____
Page No. _____ Line No. _____ Change to: _____
_____
Reason for change: _____
Page No. _____ Line No. _____ Change to: _____
_____
Reason for change: _____
Page No. _____ Line No. _____ Change to: _____
_____
Reason for change: _____

SIGNATURE: [signature]            DATE: 11/17/2018
Bernard L. Fraga, Ph.D.
```



**Exhibit 2**

1    poverty level.

2    BY MR. TOMLINSON:

3         Q.    Right.

4         A.    So the poverty level might seem funny,

5    but the poverty level is itself census derived

6    because it relies on the consumer price index.  It

7    gets adjusted every year, and the housing portion of

8    the consumer price index is based on the American

9    Community Survey.

10        So programs that rely on the inflation factor

11   are not going to be as sensitive as ones that where

12   -- particularly when that inflation factor is applied

13   across the board, across the U.S., it will not be as

14   sensitive as programs in which it is specifically

15   saying this State gets this amount of money.

16        Q.    Okay.

17        A.    I want to add one thing.  You know,

18   we've been talking about the impact of a citizenship

19   question on the distribution of federal funds.

20   Census data get used for lots and lots of things

21   beyond that.

22        So if the CPI gets screwed up, that has

23   ramifications that go well beyond what we're talking

24   about.

25        Q.    Okay.  So you've only done calculations

1  of these five specific programs.  Correct?
2       A.   Correct.
3       Q.   And, as I understand it, your expert
4  opinion is that those five specific programs are
5  representative of the 24 total programs that use
6  geographic allocation formulas; is that correct?
7       MS. MORGAN:  Objection to form.
8       THE WITNESS:  I would say they're
9  representative of the principle that a differential
10 -- that programs that rely on either FMAP or State
11 share would be -- the grantees would differentially
12 affected by a differential undercount, and so it is
13 illustrative of the dynamic of the 24 programs, but
14 the 24 programs themselves are representative of a
15 larger group.
16 BY MR. TOMLINSON:
17      Q.   But you have not conducted any specific
18 analysis of any government program that does not use
19 a geographic allocation formula.  Correct?
20      A.   Correct.  All five of these use
21 geographic allocation.
22      Q.   So are you intending to offer expert
23 testimony as to the impact the differential
24 undercount in the decennial census would have on the
25 government programs that do not use geographic