XAVIER BECERRA
Attorney General of California
MARK R. BECKINGTON
ANTHONY R. HAKL
Supervising Deputy Attorneys General
GABRIELLE D. BOUTIN, SBN 267308
R. MATTHEW WISE, SBN 238485
ANNA T. FERRARI, SBN 261579
TODD GRABARSKY, SBN 286999
NOREEN P. SKELLY, SBN 186135
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-6053
 Fax: (916) 324-8835
 E-mail: Gabrielle.Boutin@doj.ca.gov
*Attorneys for Plaintiff State of California, by and
through Attorney General Xavier Becerra*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| **STATE OF CALIFORNIA, et al.** | Case Nos.  18-cv-01865-RS |
|  | 18-cv-02279-RS |
| Plaintiffs, |  |
|  | **PLAINTIFF'S ADMINISTRATIVE MOTION FOR IMMEDIATE TELEPHONIC STATUS CONFERENCE; DECLARATION OF GABRIELLE D. BOUTIN** |
| **v.** |  |
| **WILBUR L. ROSS, et al.,** |  |
| Defendants. | Trial Date: January 7, 2019 |
|  | Dept:          3 |
|  | Judge: The Honorable Richard G. Seeborg |
| **CITY OF SAN JOSE, et al.,** | Action Filed: March 26, 2018 |
| Plaintiffs, |  |
| **WILBUR L. ROSS, et al.,** |  |
| Defendants. |  |

1

1    Plaintiff State of California respectfully submits the following motion for administrative

2    relief pursuant to Civil Local Rule 7-11.

3    Plaintiff requests a telephonic status conference with the Court on Friday, July 5, 2019, or

4    as soon as the Court's schedule otherwise allows, to confirm the continued effect of this Court's

5    permanent injunction, and the appropriate procedures and schedule for future proceedings in this

6    case, if necessary.  A status conference is necessary due to recent developments in related

7    litigation and Defendants' contradictory statements regarding their intent to include a citizenship

8    question on the 2020 Decennial Census.

9    On March 13, 2019, defendants filed a notice of appeal of the final judgment in this case.

10   On March 18, 2019, defendants filed a petition for certiorari before judgment in the United States

11   Supreme Court.

12   On June 27, 2019, the United States Supreme Court issued its opinion in the case of *Dept.*

13   *of Commerce v. New York*, No. 18-966, holding that Secretary Ross' decision to add the

14   citizenship question to the 2020 Census violates the Administrative Procedure Act due to his

15   failure to disclose the basis of his decision.  *Dept. of Commerce v. New York*, --- S. Ct.---, 2019

16   WL 2619473 (2019).

17   On June 28, 2019, the Supreme Court granted Defendants' petition for certiorari before

18   judgment in this proceeding.  Its order directed as follows:  "The judgment is vacated, and the

19   case is remanded to the United States Court of Appeals for the Ninth Circuit for further

20   consideration in light of *Department of Commerce v. New York*, 588 U.S. ____ (2019)."  *Ross v.*

21   *California*, --- S. Ct.---, 2019 WL 1243674 (2019).

22   On July 2, 2019, Defendants represented in court and publicly that they had ordered the

23   printing of census forms without the citizenship question and that they would no longer attempt to

24   add the question to the 2020 Census.  This representation was made in an email from Defendants'

25   counsel to the New York Attorney General's Office (*see* Ex. 1), in a conference before Judge

26   Hazel in the District of Maryland (*see* Ex. 2 at 1-6 [transcript of July 3, 2019 conference

27   referencing July 2 conference]), and in a statement to the press by Secretary Ross himself (*see,*

28

1 *e.g.*, Mark Sherman & Jill Colvin, *Trump insists he's not dropping citizenship question effort*,

2 Washington Post (July 3, 2019, 12:35 p.m.).

3  However, less than 24 hours later, Defendants reversed themselves in both the Maryland

4 and New York census actions.  *See* Ex. 2 at 10-12; Ex. 3 [Defendants' letter to Judge Furman,

5 *State of New York, et al., v. U.S. Department of Commerce*, 18-cv-2921, ECF No. 613].  They

6 now state that the Departments of Justice and Commerce have "been asked to reevaluate all

7 available options following the Supreme Court's decision," that they are currently performing that

8 analysis, and that if they determine a path forward for including a citizenship question on the

9 2020 Census, Defendants may move the Supreme Court for further guidance.  Ex. 3 at 1; Ex. 2 at

10 10-12.

11  In light of the uncertainty created by Defendants' inconsistent public statements and the

12 importance of the issues before the Court, Plaintiff respectfully asks the Court to schedule a

13 telephonic status conference this Friday, July 5, 2019, or as soon thereafter as possible, to confirm

14 that this Court's permanent injunction precluding Defendants "from including the citizenship

15 question on the 2020 Census" remains in effect, to ascertain Defendants' position on the current

16 posture of this case and their intentions regarding further efforts to include a citizenship question,

17 and to clarify the appropriate procedures for future proceedings in this Court, if necessary.  Given

18 Defendants' repeated representations to this Court and the Supreme Court that printing of the

19 final 2020 Census forms needed to begin by the end of June 2019, time is of the essence in this

20 matter.

21

22

23

24

25

26

27

28

Dated:  July 3, 2019                    Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
MARK R. BECKINGTON
ANTHONY R. HAKL
Supervising Deputy Attorneys General
ANNA T. FERRARI
TODD GRABARSKY
NOREEN P. SKELLY
R. MATTHEW WISE
Deputy Attorneys General


*/s/   Gabrielle D. Boutin*
GABRIELLE D. BOUTIN
Deputy Attorney General
*Attorneys for Plaintiff State of California, by and through Attorney General Xavier Becerra*

## DECLARATION OF GABRIELLE D. BOUTIN

1.      I am a Deputy Attorney General with the California Department of Justice, duly licensed to practice law in the State of California.  I am counsel of record in this action for the State of California.  I make this declaration in support of Plaintiff's Motion for Immediate Telephonic Status Conference.  I have personal knowledge of the facts stated herein and, if called upon to do so, could and would testify competently thereto.

2.      Earlier today, at 3:30 p.m. Eastern time, Judge Hazel in the District Court of Maryland held a conference with the parties to the census cases of *Kravitz v. U.S. Department of Commerce*, No. 8:18-cv-01041-GJH and *La Union Del Pueblo Entero v. U.S Department of Commerce*, No. 8:18-cv-01570-GJH.  During the conference, Defendants' counsel stated that, although the previous day they had represented to Judge Hazel that they had definitively decided not to add the citizenship question to the 2020 Census, they were now reevaluating that decision.  *See* Ex. 2.  The State of California received a copy of the transcript from that hearing at 4:58 p.m. Eastern time.

3.      At 5:59 p.m. Eastern time, Defendants filed in the New York census action a letter to Judge Furman repeating the same position (which was contrary to Defendants' statements to the New York and Maryland plaintiffs the day before).  *See* Ex. 3.

4

4.     Because the State of California did not receive written confirmation of the Defendants' position in these matters until after the close of business today on the East Coast (where Defendants' counsel are located), and because tomorrow is a federal holiday, there was insufficient time for the State of California to obtain Defendants' stipulation for a status conference on this Friday, July 5, 2019.

5.     Plaintiffs in this action have not received any direct communication from Defendants regarding the status of this Court's permanent injunction, or Defendants' intentions going forward.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.  Executed on July 3, 2019, in Sacramento, California.

*/s/ Gabrielle D. Boutin*
Gabrielle D. Boutin

# EXHIBIT 1

| | |
|---|---|
| **From:** | Bailey, Kate (CIV) <Kate.Bailey@usdoj.gov> |
| **Sent:** | Tuesday, July 2, 2019 3:56 PM |
| **To:** | Freedman, John A.; Federighi, Carol (CIV); Ehrlich, Stephen (CIV); Coyle, Garrett (CIV); Wells, Carlotta (CIV); Gardner, Joshua E (CIV) |
| **Cc:** | DHo@aclu.org; Goldstein, Elena; Colangelo, Matthew; SBrannon@aclu.org; Gersch, David P. |
| **Subject:** | RE: New York et al v. Department of Commerce et al., SDNY 18-cv-2921 |

Counsel—

We can confirm that the decision has been made to print the 2020 Decennial Census questionnaire without a citizenship question, and that the printer has been instructed to begin the printing process.

Best,

**Kate Bailey**
Trial Attorney
United States Department of Justice
Civil Division – Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
202.514.9239 | kate.bailey@usdoj.gov

---

**From:** Freedman, John A. <John.Freedman@arnoldporter.com>
**Sent:** Monday, July 01, 2019 3:47 PM
**To:** Bailey, Kate (CIV) <katbaile@CIV.USDOJ.GOV>; Federighi, Carol (CIV) <CFederig@CIV.USDOJ.GOV>; Ehrlich, Stephen (CIV) <sehrlich@CIV.USDOJ.GOV>; Coyle, Garrett (CIV) <gcoyle@CIV.USDOJ.GOV>; Wells, Carlotta (CIV) <CWells@CIV.USDOJ.GOV>; Gardner, Joshua E (CIV) <jgardner@CIV.USDOJ.GOV>
**Cc:** DHo@aclu.org; Goldstein, Elena <Elena.Goldstein@ag.ny.gov>; Colangelo, Matthew <Matthew.Colangelo@ag.ny.gov>; SBrannon@aclu.org; Gersch, David P. <David.Gersch@arnoldporter.com>
**Subject:** New York et al v. Department of Commerce et al., SDNY 18-cv-2921

Dear Counsel --

In light of the Defendants' repeated representations to the public, Congress, and the courts (as recently as last Tuesday) that "the Census Bureau needs to finalize the 2020 questionnaire by June of this year," and "changes to the paper questionnaire after June of 2019 . . . would impair the Census Bureau's ability to timely administer the 2020 census," *see* 6/25/19 letter from Solicitor General to Scott Harris, we are writing to confirm that the Census Bureau finalized the questionnaire over the weekend and that the final questionnaire does not include the citizenship question.

Please advise by 10 am tomorrow so that we can consider whether, if necessary, to seek further relief from the court.

Best,

John

John A. Freedman
**Arnold & Porter**
601 Massachusetts Avenue, NW
Washington, DC 20001

Office: +1 202.942.5316
john.freedman@arnoldporter.com
www.arnoldporter.com

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

For more information about Arnold & Porter, click here:
http://www.arnoldporter.com

# EXHIBIT 2

1          UNITED STATES DISTRICT COURT

2          SOUTHERN DISTRICT OF MARYLAND

3

ROBYN KRAVITZ, et al.,        )
4                             )
          Plaintiffs,         )
5                             )
       vs.                    )   Case Number:  8:18-cv-01041-GJH
6                             )
UNITED STATES DEPARTMENT      )
7   OF COMMERCE, et al.,       )
                              )
8          Defendants.        )
_____ )
9                             )
LA UNION DEL PUEBLO           )
10   ENTERO, et al.,            )
                              )
11          Plaintiffs,        )
                              )
12       vs.                   )   Case Number:  8:18-cv-01570-GJH
                              )
13   UNITED STATES DEPARTMENT   )
OF COMMERCE, et al.,          )
14                            )
          Defendants.         )
15  _____ )

16

17       TRANSCRIPT OF PROCEEDINGS - TELEPHONE CONFERENCE
         BEFORE THE HONORABLE GEORGE JARROD HAZEL
           WEDNESDAY, JULY 3, 2019; 3:30 P.M.
18                 GREENBELT, MARYLAND

19

20

21  Proceedings recorded by mechanical stenography; transcript
    produced by computer-aided transcription
22  _____

23

                     CINDY S. DAVIS, RPR
24              FEDERAL OFFICIAL COURT REPORTER
               6500 CHERRYWOOD LANE, SUITE 200
25                 GREENBELT, MD  20770

```
 1   FOR THE KRAVITZ PLAINTIFFS:

 2         Shankar Duraiswamy, Esquire
           Benjamin Duke, Esquire
 3         COVINGTON & BURLING, LLP
           1 City Center
 4         850 Tenth Street, N.W.
           Washington, D.C.  20001
 5

 6   FOR THE LUPE PLAINTIFFS:

 7         Denise Hulett, Esquire
           MALDEF
 8         1016 16th Street, N.W., Suite 100
           Washington, D.C.  20036
 9

10   FOR THE DEFENDANTS:

11         Joshua Gardner, Special Counsel
           Stephen Ehrlich, Special Counsel
12         UNITED STATES DEPARTMENT OF JUSTICE
           Civil Division, Federal Programs Branch
           1100 L Street, N.W.
13         Washington, D.C.  20005

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                    P R O C E E D I N G S
2          THE COURT:  Good afternoon.  Who do I have for the
3   LUPE plaintiffs?
4          MS. HULETT:  Denise Hulett.
5          THE COURT:  For the Kravitz plaintiffs?
6          MR. DURAISWAMY:  Shankar Duraiswamy.
7          THE COURT:  And for the Government?
8          MR. DUKE:  And Ben Duke.
9          MR. GARDNER:  For the Government, Josh Gardner and
10  Jody Hunt, Assistant Attorney General for the Civil Division.
11         THE COURT:  Mr. Gardner, I know you're on vacation,
12  and so I hated to interrupt that.
13      Couple things.  One, we do have a court reporter here.
14  It's Ms. Davis, who knows each of your voices well at this
15  point.  She does ask that Mr. Duraiswamy speak slowly, and so
16  I'm sure you all will accommodate that.  She does know each of
17  your voices at this point, so it's probably not necessary to
18  identify yourselves every time you speak.
19      So I guess the reason I wanted to have this call,
20  obviously, we had our call -- I guess it was yesterday; feels
21  like a while ago, but I think it was yesterday -- and then this
22  morning I saw a tweet that got my attention.  I don't know how
23  many federal judges have Twitter accounts, but I happen to be
24  one of them, and I follow the President, and so I saw a tweet
25  that directly contradicted the position that Mr. Gardner had
```

1    shared with me yesterday.

2        I'll say in that regard I had felt somewhat bad about not

3    just immediately accepting Mr. Gardner's representation and

4    sort of taking some measures to try to pin it down.  I think I

5    even indicated yesterday, and I'll indicate again today, that

6    Mr. Gardner and every government attorney who has appeared in

7    this case has been nothing but professional and candid with the

8    Court.  And so my attempts to pin him down yesterday were not

9    sort of any reflection on him or what I think of his candor.

10   But then the tweet that I saw, which I suspect we all know the

11   tweet I'm referring to, then caused me to think I hadn't gone

12   far enough in terms of pinning the Government down on where

13   things stand.

14       So now we have a court reporter here.  I'm going to ask,

15   frankly, the same question I asked yesterday to Mr. Gardner.

16   Is the Government going to continue efforts to place a

17   citizenship question on the 2020 census?

18           MR. GARDNER:  Your Honor, this is Mr. Gardner.  I

19   want to back up just a step and say that I've been with the

20   United States Department of Justice for 16 years, through

21   multiple Administrations, and I've always endeavored to be as

22   candid as possible with the Court.  What I told the Court

23   yesterday was absolutely my best understanding of the state of

24   affairs and, apparently, also the Commerce Department's state

25   of affairs, because you probably saw Secretary Ross issued a

 1  statement very similar to what I told the Court.

 2       The tweet this morning was the first I had heard of the

 3  President's position on this issue, just like the plaintiffs

 4  and Your Honor.  I do not have a deeper understanding of what

 5  that means at this juncture other than what the President has

 6  tweeted.  But, obviously, as you can imagine, I am doing my

 7  absolute best to figure out what's going on.

 8       I can tell you that I have confirmed that the Census

 9  Bureau is continuing with the process of printing the

10  questionnaire without a citizenship question, and that process

11  has not stopped.

12            THE COURT:  All right.  I'll hear from either

13  plaintiffs' counsel.  Mr. Duraiswamy, I'll start with you if

14  you have any comments.

15            MR. DURAISWAMY:  Your Honor, I think it underscores,

16  obviously, the need for a stipulated order, as we talked about

17  yesterday, that makes clear not only that the Government is

18  printing the questionnaire for the 2020 census without a

19  citizenship question but that there will be no further effort

20  to inquire about citizenship status as part of the 2020 census

21  in any manner.  We prepared a draft stipulated order that we're

22  prepared to send to the Government along those lines.

23       I think it also suggests that we may need a further

24  provision of that order that makes clear that the defendants

25  will not communicate to the public anything to the contrary

1   suggesting that the 2020 census is inquiring about citizenship

2   status.  And, further, that they will counter, publicly counter

3   any such misinformation that comes from government officials.

4   So we are working on a stipulated order to that effect.

5        Given Mr. Gardner's own uncertainty, it's not clear to me

6   if the Government is saying we will continue with the process

7   of working out the stipulated order, that they're prepared to

8   move forward with that, or if they're saying that they need to

9   revisit this.

10        THE COURT:  Let me ask before I get Ms. Hulett's

11  perspective.  As to your second point that there should be some

12  requirement that they not say anything to the contrary, what

13  would be the authority, what would be the basis for me to issue

14  that order?  Obviously, if they're willing to stipulate to that

15  in an order they agree to.  But let's assume for the sake of

16  argument that they're not.  What would be the basis for me to

17  order them not to -- and I assume you're including the

18  President of the United States in what you're suggesting -- not

19  to make any statements contrary to the order that they're not

20  going to include the question?

21        MR. DURAISWAMY:  Well, we have included in our

22  complaint, I think both in the Kravitz complaint and in the

23  LUPE complaint, as part of our request for relief not just an

24  injunction but any such relief as is necessary in the interest

25  of justice.  Given the way in which this has developed and

1    given the inconsistent statements that we're hearing from the

2    Justice Department and the Commerce Department, on the one

3    hand, and from the President on the other hand, we think that

4    to effectuate the relief that we've sought, which is an

5    injunction barring the inquiring of citizenship status on the

6    2020 census, this is the kind of relief that's necessary.  And

7    it's appropriate and within the power of the Court.

8             MS. HULETT:  Your Honor, if I may add something.

9    This is Denise Hulett.

10            THE COURT:  Sure.

11            MS. HULETT:  The President's tweet has some of the

12   same effects that the addition of the question would in the

13   first place and some of the same effects on the 18-month battle

14   that was just waged over the citizenship question.  It leaves

15   the immigrant communities to believe that the Government is

16   still after information that could endanger them.  If you add

17   that to the interview that the President did, sharing that his

18   reason for wanting the citizenship question on the form was so

19   that the Government could distinguish between citizens and

20   illegal aliens and how nonsensical that is, it has the effect

21   of leading the public to believe that the Census is not only

22   after that information but is willing to violate some of the

23   provinces of protection that our plaintiff organizations have

24   been trying to reassure communities about.

25            So we strongly believe that we're going to need some

1   affirmative commitment, whether it's through a stipulation or

2   by order of this Court, an affirmative commitment from the

3   Government to counter misinformation wherever in the Government

4   that it comes from, a commitment that they will respond quickly

5   and comprehensively to that kind of misinformation.

6         Today is a good example.  There was no response from the

7   Commerce Department, that I know of, to counteract the position

8   that was expressed either in a tweet or in an interview, and

9   that's going to cause the same kinds of harm and injury and --

10        THE COURT:  Let me -- I'm sorry.  I didn't mean to

11   cut you off.  I apologize.  Go ahead.

12        MS. HULETT:  I was just going to add that if the

13   Government is not prepared at this point to say that they will

14   be negotiating quickly over this, we think that we would have

15   to make a request to reinstate our preliminary injunction

16   motion and to move forward with a scheduling order on discovery

17   because the injury at this point is ongoing.

18        THE COURT:  Let me make a couple of comments, and

19   then I'll turn back to Mr. Gardner to get his thoughts.

20        I assume, although maybe I'm wrong about this, that the

21   parties aren't suggesting I can enjoin the President of the

22   United States from tweeting things.  Maybe you are suggesting

23   that.  But I will say my initial reaction to that is to have

24   some concern.

25        But what I perhaps am taking you to suggest is that there

1  could be an order -- and I'm not saying I agree to this; I'm

2  just trying to tee up the issue for Mr. Gardner to respond --

3  that there could be a mechanism by which I order -- and, again,

4  I'm not saying I'm inclined to do this -- the Census Bureau or

5  the Department of Commerce to take whatever steps are necessary

6  to counteract any such message, which, again, I this is an odd

7  place for the judiciary to be.

8       But I'll at least hear what Mr. Gardner's initial take

9  is, understanding you're still unclear yourself, it seems, on

10 the primary question as to whether or not any of this is going

11 to end up being necessary.  I am at least curious as to your

12 initial response to those secondary suggestions from

13 plaintiffs.

14           MR. GARDNER:  Sure, Your Honor.  To back up, this is

15 a very fluid situation which we are trying to get our arms

16 around and, obviously, once we get more information, we will

17 communicate that immediately to the Court and the parties.

18      I do want to address a preliminary issue though, and that

19 is that the current status quo is that plaintiffs are fully

20 protected.  The Supreme Court vacated the March decision which

21 was the basis for the inclusion of the citizenship question.

22 So that final-agency action has been enjoined, and there is no

23 current additional final-agency action out there to enjoin or

24 to even challenge.

25      I recognize this is a fluid situation and perhaps that

1   might change, but we're just not there yet, and I can't

2   possibly predict at this juncture what exactly is going to

3   happen.  I think the process by which we have been sort of

4   operating for the past week, while it may be inconvenient for

5   the Court, and I apologize about that, is to maintain

6   consistent contact so we can keep updating the Court and the

7   parties as to the state of affairs.

8        But as of now, the basis for the citizenship question is

9   firmly enjoined, vacated, and does not exist.  If there is a

10  different decision in the future, plaintiffs obviously would

11  have every opportunity to file an amended complaint, file a PI

12  or whatever other processes they think are appropriate.  But I

13  think the current fluidity of the state of play suggests the

14  status quo is we need to see how these things develop.

15       And at that juncture, Your Honor, if you have additional

16  questions, I can turn it over to AAG Hunt.

17            MR. HUNT:  Your Honor, this is Joseph Hunt, Assistant

18  Attorney General for the Civil Division.  If I might just add

19  my thoughts to what Mr. Gardner just said.

20            THE COURT:  Sure.

21            MR. HUNT:  We at the Department of Justice have been

22  instructed to examine whether there is a path forward,

23  consistent with the Supreme Court's decision, that would allow

24  us to include the citizenship question on the census.  We think

25  there may be a legally available path under the Supreme Court's

1    decision.  We're examining that, looking at near-term options

2    to see whether that's viable and possible.

3         And so to the extent we can identify an option for that

4    to work, if we continue to examine the decision and believe

5    that we have a viable path forward to that work, our current

6    plan would be to file a motion in the Supreme Court to request

7    instructions on remand to govern further proceedings in order

8    to simplify and expedite the remaining litigation and provide

9    clarity to the process going forward.

10        So as Mr. Gardner said, it's very fluid at present

11   because we are still examining the Supreme Court's decision to

12   see if that option is still available to us.

13            THE COURT:  That's helpful to understand, and I

14   appreciate you adding that.

15        Here's where we are.  And then if either side has a

16   different view, I'll hear that.

17        By Friday at 2 p.m. I want one of two things.  I either

18   want a stipulation, as we've been discussing, indicating that

19   the citizenship question will not appear on the census, or I

20   want a proposed scheduling order for how we're going forward on

21   the equal protection claim that's been remanded to this Court.

22   I want one of those two things by Friday at two o'clock.

23        So I would expect that the parties will have to meet and

24   confer sometime earlier on Friday to determine which of those

25   things you're submitting to me by Friday at two o'clock.  But I

1  want one of those two things by Friday at two o'clock.

2      If, in the case of the scheduling order, the parties are

3  not able to come to an agreement as to what it should look

4  like, you can submit to me competing options, and we'll have a

5  call that afternoon.  I'll be here Friday.  We'll have a call

6  that afternoon where the Court will mike a final decision on

7  how we're proceeding.  But we will, if this is not resolved by

8  Friday at 2 p.m., the equal protection claim in this case is

9  moving forward.

10      Any questions as to that?

11      MR. GARDNER:  Your Honor, this is Mr. Gardner.  The

12  one thing I would request is, given that tomorrow is the Fourth

13  of July and the difficulty in assembling people from all over

14  the place, is it possible that we could do this on Monday?

15      THE COURT:  No.

16      MR. GARDNER:  And again -- okay.

17      THE COURT:  No.  Because timing is an issue.  Timing

18  is an issue, and we've lost a week at this point.  And this

19  isn't anything against anybody on this call.  I've been told

20  different things, and it's becoming increasingly frustrating.

21      If you were Facebook and an attorney for Facebook told me

22  one thing, and then I read a press release from Mark Zuckerberg

23  telling me something else, I would be demanding that Mark

24  Zuckerberg appear in court with you the next time because I

25  would be saying I don't think you speak for your client

1    anymore.

2         I think I'm actually being really reasonable here and

3    just saying I need a final answer by Friday at 2 p.m. or we're

4    going forward.  That's where we are.  Because we've wasted a

5    week.  The Fourth Circuit sent this back to me with a promise

6    from me that I would get it done, the discovery done in 45

7    days, a hearing, and then a decision, and they sent it back to

8    me with that promise having been made.  And we've lost seven

9    days already with the back and forth, which, again, I don't

10   blame anybody on this call for, but that's where we are.

11        So Friday, 2 p.m., we're going forward or we're resolving

12   it.  That's where we are.

13            MR. DUKE:  Your Honor, this is Ben Duke for the

14   Kravitz plaintiffs.  Could we ask what happened to the

15   Government's repeated representations, including to the United

16   States Supreme Court, which the Supreme Court relied on, that

17   June 30th was an absolute deadline and that they needed to have

18   this finalized and to move forward as of that date?  Because

19   what we've now heard from the defendants is that that wasn't

20   true, that they now think that they can even dither over the

21   July 4th weekend and ask for more time to examine this and

22   possibly make a further motion to the Supreme Court for

23   instructions on how to eventually undercut what the Supreme

24   Court has already decided.  It is completely inconsistent with

25   the positions that they've been taking.

1      THE COURT:  I understand that.  I suspect we're not

2  going to get a useful answer to that question, so I'm not sure

3  that I really want to wade into that at this juncture.

4      Any other questions?

5      MR. GARDNER:  Nothing from the Government, Your

6  Honor.

7      THE COURT:  Plaintiffs?

8      MR. DURAISWAMY:  Your Honor, this is Shankar

9  Duraiswamy.  The only thing I would add is that, consistent

10  with Mr. Gardner's prior communications with us, the permanent

11  injunction from this Court remains in effect, the injunction

12  permanently preventing the Government from adding a citizenship

13  question to the 2020 census.  So we agree at least on that

14  point.

15      THE COURT:  And I meant to respond to that.  I made a

16  note and then overlooked it.

17      I don't think there is currently a need to litigate the

18  motion for preliminary injunction because there is at least

19  one, if not more, injunction in place.  So I do agree with

20  that.

21      So I'll look forward to getting something Friday at 2

22  p.m., and then, if necessary, we'll get on the phone after

23  that.

24      (The telephonic conference ended at 3:50 p.m.)

25

1             CERTIFICATE OF OFFICIAL REPORTER

2

3      I, Cindy S. Davis, Federal Official Court Reporter in and

4  for the United States District Court for the Southern District

5  of Maryland, do hereby certify that I reported, by machine

6  shorthand and computer-aided transcription, in my official

7  capacity the motions hearing proceedings had in the case of

8  Kravitz, et al., versus United States Department of Commerce,

9  et al., case numbers 8:18-cv-01041-GJH and 8:18-cv-01570-GJH,

10  in said court on July 3, 2019.

11     I further certify that the foregoing 14 pages constitute

12  the official transcript of said proceedings, as taken from my

13  electronic notes to the best of my ability.

14     In witness whereof, I have hereto subscribed my name this

15  third day of July 2019.

16

17

18

19

20              *Cindy S. Davis*

21           _____

22           CINDY S. DAVIS, RPR
              FEDERAL OFFICIAL COURT REPORTER

23

24

25

# EXHIBIT 3



**U.S. Department of Justice**
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005

July 3, 2019

<u>By ECF</u>
The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
Thurgood Marshall Courthouse
40 Foley Square
New York, New York 10007

      Re:   *State of New York, et al., v. U.S. Department of Commerce, et al.*, 18-cv-2921 (JMF)
              *N.Y. Immigration Coalition v. U.S. Dep't of Commerce,* 18-cv-5025 (JMF)

Dear Judge Furman:

      Pursuant to ECF No. 611, Defendants write to respond to Plaintiffs' letter request for an immediate status conference and to provide the Court with information regarding a status conference held earlier this afternoon in a matter before another court, *Kravitz v. U.S. Dep't of Commerce*, No. 18-cv-1041 (D. Md.).

      On July 2, 2019, counsel for Defendants sent an email communication to counsel for Plaintiffs confirming that the questionnaire for the 2020 Decennial Census had been sent to the printer, without a question inquiring about respondents' citizenship status, and that the process of printing the questionnaires had started. ECF No. 610-3. That representation was based on the information undersigned counsel had at the time, and it remains undersigned counsel's understanding that the process of printing the questionnaires, without the citizenship question, continues.

      The Departments of Justice and Commerce have now been asked to reevaluate all available options following the Supreme Court's decision and whether the Supreme Court's decision would allow for a new decision to include the citizenship question on the 2020 Decennial Census. The agencies are currently performing the analysis requested, and, if they determine that the Supreme Court's decision does allow any path for including such a decision, DOJ may file a motion with the Supreme Court seeking further procedural guidance for expediting litigation on remand. In the event that the Commerce Department adopts a new rationale for including the citizenship question on the 2020 Decennial Census consistent with the decision of the Supreme Court, the Government will immediately notify this Court so that it can determine whether there is any need for further proceedings or relief.

      However, Defendants can confirm that they are taking no action in contravention of the injunction of this Court, which vacated the Secretary's March 2018 decision to place a citizenship question on the 2020 decennial census, and which was affirmed in relevant part by the Supreme Court and remains in place to protect the interests of Plaintiffs in this matter.

Finally, with respect to today's proceedings before Judge Hazel, he ordered that the parties, by 2:00 pm on July 5, 2019, submit either a stipulation that the Government would undertake no further efforts to include a citizenship question on the 2020 Decennial Census, or file a proposed discovery schedule regarding Plaintiffs' equal protection and conspiracy claims.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

JAMES M. BURNHAM
Deputy Assistant Attorney General

JOHN R. GRIFFITHS
Director, Federal Programs Branch

*/s/Joshua E. Gardner*
JOSHUA E. GARDNER
Special Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC  20005
Tel.:  (202) 305-7583
Fax:  (202) 616-8470
Email: joshua.e.gardner@usdoj.gov

*Counsel for Defendants*

CC:

All Counsel of Record (by ECF)

# CERTIFICATE OF SERVICE

Case Name: **State of California, et al. v.**          No.   **3:18-cv-01865**
**Wilbur L. Ross, et al.**

I hereby certify that on <u>July 3, 2019</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**PLAINTIFF'S ADMINISTRATIVE MOTION FOR IMMEDIATE TELEPHONIC STATUS CONFERENCE; DECLARATION OF GABRIELLE D. BOUTIN**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>July 3, 2019</u>, at Sacramento, California.


Tracie L. Campbell                                      */s/  Tracie Campbell*
Declarant                                                       Signature

SA2018100904
13888482.docx